**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
ENFORCING THE AUTOMATIC STAY AGAINST THE OFFICE OF THE
ATTORNEY GENERAL OF THE COMMONWEALTH OF PENNSYLVANIA**

> EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 17, 2020, AT 9:00 A.M. (CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.
>
> RELIEF IS REQUESTED NOT LATER THAN JULY 17, 2020.
>
> PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.
>
> IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.
>
> AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS +1(832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGE S. YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER. JUDGE JONES'S CONFERENCE ROOM NUMBER IS 205691.
>
> PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION. THE INTERNET SITE IS WWW.JOIN.ME. PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.
>
> ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING". THE CODE FOR JOINING THIS HEARING BEFORE JUDGE JONES IS "JUDGEJONES". THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER. PLEASE COMPLETE THE NAME AND CLICK "NOTIFY".
>
> HEARING APPEARANCES SHOULD BE MADE ELECTRONICALLY AND IN ADVANCE OF THE HEARING. YOU MAY MAKE YOUR ELECTRONIC APPEARANCE BY:
>
> 1) GOING TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE;

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

> **2) SELECTING "BANKRUPTCY COURT" FROM THE TOP MENU;**
>
> **3) SELECTING JUDGES' PROCEDURES AND SCHEDULES;**
>
> **4) SELECTING "VIEW HOME PAGE" FOR JUDGE JONES;**
>
> **5) UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE;"**
>
> **6) SELECT CHESAPEAKE ENERGY CORPORATION, ET AL. FROM THE LIST OF ELECTRONIC APPEARANCE LINKS, AND**
>
> **7) AFTER SELECTING CHESAPEAKE ENERGY CORPORATION, ET AL. FROM THE LIST, COMPLETE THE REQUIRED FIELDS AND HIT THE "SUBMIT" BUTTON AT THE BOTTOM OF THE PAGE.**
>
> **SUBMITTING YOUR APPEARANCE ELECTRONICALLY IN ADVANCE OF THE HEARING WILL NEGATE THE NEED TO MAKE AN APPEARANCE ON THE RECORD AT THE HEARING**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion.

## Summary of the Relief Requested

Despite the Debtors having sought relief under the United States Bankruptcy Code, they find themselves subject to the continued efforts of the Office of the Attorney General of the Commonwealth of Pennsylvania ("PA AG") to collect a debt allegedly owed to citizens of the State. More perplexing, the PA AG continues to stand in the way of agreed compromises of the disputes reached with class representatives asserting claims on behalf of themselves and those similarly situated. The Debtors ask that this Court enter an order prohibiting the PA AG from continued violations of the Bankruptcy Code.

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C.

§§ 1408 and 1409.  The statutory bases for the relief requested herein are sections 105 and 362 of title 11 of the United States Code (the "Bankruptcy Code").

## Relief Requested

2.  The Debtors seek entry of an order ("the Order"), enforcing the automatic stay with respect to the actions of the PA AG in the litigation styled *Commonwealth of Pennsylvania v. Chesapeake Energy Corporation*, No. 2015IR0069 (Pa. Ct. Com. Pl.) and related appeal ("PA AG Lawsuit").

## Background

### I. Pennsylvania Royalty Litigation

3.  Chesapeake is the lessee under approximately 14,000 operating oil and gas leases in Pennsylvania.  The leases can be categorized generally as "MEC Leases" and "Non-MEC Leases."  MEC Leases are leases that have a form of royalty provision known as a Market Enhancement Clause ("MEC").  MEC Leases generally provide that royalty owners share in post-production costs that enhance the value of marketable gas, but do not share in post-production costs to make the gas marketable.  Non-MEC Leases consist substantially of leases that expressly provide that royalty owners share in post-production costs.

4.  There are three principal lawsuits against Chesapeake pending in Pennsylvania, two of which were brought by private plaintiffs:

- ***The MEC Class Action.***  The MEC Class Action (the *Demchak/Burkett* litigation) was filed in 2013 and seeks damages for alleged underpayment of royalties for MEC Leases.[2]  The primary allegation is that Chesapeake took post-production cost deductions before the gas was marketable.

---

[2] *Demchak Partners Limited Partnership v. Chesapeake Appalachia, L.L.C.*, No. 3:13-cv-02289-MEM (M.D. Pa.)  The *Demchak* settlement includes plaintiffs in a related arbitration, *Burkett v. Chesapeake Energy Corp.*, Arb. No. 14-115-00436-13 (AAA).  Order, *Demchak* (M.D. Pa. Dec. 30, 2014), ECF No. 82 (granting Burketts' motion to intervene as plaintiffs for settlement purposes only).

3

- *The Non-MEC Class Action.* The Non-MEC Class Action (the *Brown/Suessenbach* litigation) was filed in 2014 and seeks damages for alleged underpayment of royalties for Non-MEC Leases.[3] The primary allegation is that Chesapeake took post-production cost deductions that were inflated. Both the MEC and Non-MEC Class Actions are pending before Judge Malachy E. Mannion of the United States District Court for the Middle District of Pennsylvania.

- *MEC & Non-MEC Class Settlements.* Chesapeake and the class plaintiffs in the MEC Class Action and the Non-MEC Class Action negotiated separate class action settlements, each of which provides a monetary fund and specified prospective relief for class members, among other relief.[4] Both settlements have been pending approval; however, such approval has been put on hold by an objection and overlapping lawsuit brought by the PA AG (the "PA Objection and Lawsuit").

- *The PA AG Lawsuit.* The PA AG later initiated a lawsuit seeking recovery of damages for alleged royalty underpayments for Pennsylvania lessors. This action was filed in Pennsylvania state court in 2015, after the MEC Class Action settlement had been preliminarily approved, and simultaneously with the PA AG's objection to approval of the MEC Class Action Settlement. The primary allegation is that Chesapeake took post-production deductions from royalties after allegedly representing during the leasing process that there would be no such deductions. The PA AG asserted claims under the Pennsylvania Unfair Trade Practices & Consumer Protection Law (the "UTPCPL") and state antitrust common law. Since the filing of the PA AG Lawsuit more than four years ago, the threshold disputed issue is whether the PA AG has authority to assert UTPCPL claims on behalf of lessors. That legal issue is currently pending on interlocutory appeal before the Pennsylvania Supreme Court.

**II.    The MEC Class Action, the Non-MEC Class Action, and the Class Settlements**

5.    On August 30, 2013, the MEC Class Action lawsuit was filed. Plaintiffs alleged that Chesapeake underpaid royalties by deducting costs that were incurred before the gas was "marketable" under the terms of the MEC Leases.

---

[3]    *Brown v. Access Midstream Partners, L.P.*, No. 3:14-cv-00591-MEM (M.D. Pa.). *Brown* was consolidated for settlement with another related action, *Suessenbach Family Limited Partnership v. Access Midstream Partners, L.P.*, No. 3:14-cv-01197-MEM (M.D. Pa.).

[4]    For example, the Non-MEC Class Settlement provides prospective relief that permits Non-MEC lessors to choose a royalty provision that is based on either (i) an in-basin index price without any post-production cost deductions, or (ii) a downstream sales price net of pro-rata post-production costs. The primary mediator of the settlements was the retired Chief Judge of the Eastern District of Pennsylvania, Edward Cahn. The parties also had the assistance of well-known oil and gas mediator John Perry, Jr.

6. On March 28, 2014, the Non-MEC Class Action lawsuit was filed. Plaintiffs alleged that Chesapeake underpaid royalties by deducting inflated post-production costs under the terms of the Non-MEC Leases.

7. On October 2, 2015, the district court in the MEC Class Action certified a settlement class and preliminarily approved a class settlement. The MEC Class Settlement provided a lump-sum settlement payment of over $17 million at that time and a revised royalty formula on a go-forward basis.

8. In August 2018, the parties in the Non-MEC Class Action also reached a class settlement that was submitted to the court for preliminary approval. The Non-MEC Class Settlement provided for a $7.75 million settlement fund and a revised royalty formula on a go-forward basis. Together, the MEC and Non-MEC Class Settlements would resolve virtually all Pennsylvania royalty claims against Chesapeake.

### III. The PA AG Objection and Lawsuit

9. On December 9, 2015, the PA AG filed an objection to the proposed MEC Class Settlement, requesting that the federal court reject the proposed settlement in its current form. The PA AG argued that the settlement attempted to release *parens patriae* claims that only the Commonwealth had standing to assert. Based on the PA AG's objection, on January 5, 2016, the district court stayed the final fairness hearing in the MEC Class Action. Both MEC and Non-MEC Class Actions have remained stayed due to the PA AG Objection and Lawsuit.

10. On the same day that it objected to the MEC Class Settlement, the PA AG, purportedly as *parens patriae* on behalf of Pennsylvania landowners, filed a complaint in Pennsylvania state court alleging that Chesapeake Energy Corporation and three of its affiliates violated the UTPCPL and Pennsylvania antitrust common law. The PA AG's allegations center

on Chesapeake's purported improper post-production cost deductions from royalty payments, pursuant to the same leases at issue in the MEC and Non-MEC Class Actions. The PA AG alleges that Chesapeake made misrepresentations to landowners during the leasing process regarding Chesapeake's right to take post-production cost deductions from royalty payments. The PA AG seeks monetary damages on behalf of the Pennsylvania lessor landowners, civil penalties, and a permanent injunction restraining Chesapeake from "engaging in the acts and practices allege in this complaint and any other acts and practices that violate the UTPCPL." PA AG Second Am. Compl. at 35-36.

11. At its core, the PA AG Lawsuit concerns how royalties should be paid to Pennsylvania lessors and seeks the recovery of money damages for alleged royalty underpayments—the same relief sought in the MEC and Non-MEC Class Actions. The first paragraph of the PA AG's complaint states: "This action seeks to recover for Pennsylvania Landowners money wrongfully deducted from royalty checks as a result of the wrongful conduct of Defendants. . . ." *See* PA AG Second Am. Compl. ¶ 1. Similarly, the complaint later states that the action seeks an order compelling Chesapeake "to restore to Pennsylvania Landowners any moneys which may have been acquired by means of any violation of the UTPCPL." *Id.* at pp. 35, 61, 70, 77, 81.

**IV. Substantial Mediation Efforts**

12. In the nearly five years following the filing of the PA AG Objection and Lawsuit, the parties engaged in substantial mediation efforts to resolve the Pennsylvania royalty cases. The mediation process involved over 12 law firms representing plaintiff lessors and the settlement classes. As described further below, the district court repeatedly urged the PA AG to mediate with the parties to the MEC Class Action and the Non-MEC Class Action.

13. On June 27, 2016, the district court held a status conference in the MEC Class Action with the parties and the PA AG. By this point, the PA AG had moved for a stay of discovery, amended its complaint twice, and the PA AG Lawsuit had not advanced beyond the motion to dismiss stage. Furthermore, the PA AG had declined to identify any purportedly "deceived" lessor. At the status conference, lead class counsel explained his concern with the PA AG's objection to the class settlement and resulting delay in achieving a class settlement:

> But the fact is, we have already achieved a settlement that is an excellent one, all things considered for these landowners in Pennsylvania. . . . [W]e think it's critical that the parties talk with insistence from your Honor and figure out a way to get this done, especially given that Chesapeake has the money now. We don't know what the future is going to bring for any of us. But what we do know is that there is a fund of approximately 20 million dollars that is sitting there ready to be distributed to these class members, and we need to move this process along so that that can be accomplished.

June 27, 2016 Hr'g Tr. 19-20, *Demchak* (M.D. Pa. July 8, 2016), ECF No. 160.

14. The district court also expressed serious concern with further delays to the settlement caused by the PA AG Objection and Lawsuit: "[I]t seems to me while I'm sure the Attorney General's Office is trying to [do] what's best for the public, the longer your case takes the longer that those people that are waiting for compensation have to get it, ***and that's not in the public interest nor in their interest***." *Id.* at 23 (emphasis added). Judge Mannion implored the PA AG and the MEC Class Action parties to participate in a mediation, which was unsuccessful.

15. Throughout 2017, Chesapeake and the PA AG held four in-person meetings to discuss potential settlement. In December 2017, the district court held another status conference with the parties and the PA AG. The district court stated that the PA AG Lawsuit "ultimately is going to settle" and again urged the PA AG to resolve the PA AG Lawsuit in mediation:

> So why is it that the Attorney General doesn't want to engage itself with somebody like Judge Cahn when it's not a binding arbitration to see if they can work these remaining things out, rather than sit around in some ethereal academic world for

7

the next five years in what we all know? I can tell you that this case ultimately is going to settle. It is going to settle. My case, your case, they are going to settle, and yet it seems to me that there ought to be a quicker way at this stage, three years or four years, depending on how many years we're into this case, there ought to be a better way."

*See* Dec. 20, 2017 Hr'g Tr. 54-56, *Demchak* (M.D. Pa. Dec. 27, 2017), ECF No. 186.

16. In 2016, Chesapeake filed a motion to dismiss the PA AG's Second Amended Complaint on the grounds that the PA AG could not assert UTPCPL claims on behalf of private landowners because (a) Chesapeake is a purchaser of mineral rights and the UTPCPL does not regulate the conduct of buyers, and (b) the UTPCPL does not authorize the Attorney General to seek remedies for alleged anticompetitive conduct. The trial court denied Chesapeake's motion to dismiss in relevant part, but noted that the issues raised were "close and extremely difficult," concluded that an immediate appeal would greatly benefit the litigation, and specifically stated that the trial court would *sua sponte* certify two questions regarding the contours of the UTPCPL. Op. & Orders on Prelim. Objs. of Chesapeake Defs. & Anadarko Defs. to Pl. Commonwealth's Second Am. Compl. at 31, 73-75, *Commonwealth v. Chesapeake Energy Corp.*, No. 2015IR0069 (Pa. Ct. Com. Pl. Dec. 14, 2017). The court then granted Chesapeake permission to file an interlocutory appeal to the Commonwealth Court, and that court affirmed, in part, the trial court's decision. On October 30, 2019, the Pennsylvania Supreme Court granted Chesapeake's petition for allowance of appeal, and the parties argued the interlocutory appeal on May 27, 2020. A final decision is pending before the Pennsylvania Supreme Court.

## V. PA AG Objection to Automatic Stay

17. On June 28, 2020 (the "Petition Date"), the Debtors filed petitions for relief in this court under Chapter 11 of the Bankruptcy Code.

8

18. On June 29, 2020, the Debtors filed a Notice of Suggestion of Bankruptcy with the Pennsylvania Supreme Court in the PA AG Lawsuit, attached hereto as Ex. A.

19. On July 2, 2020, the PA AG filed a Response to the Debtors' Notice of Suggestion of Bankruptcy (the "Response") with the Pennsylvania Supreme Court, attached hereto as Ex. B. *See also* Commonwealth of Pa.'s Resp. to Appellant Chesapeake's Notice of Suggestion of Pendency of Bankruptcy & Automatic Stay of Proceedings, Dkt. 273-1 (July 6, 2020). The PA AG argued that that the PA AG Lawsuit "clearly constitutes an exercise of its 'police and regulatory power' under the applicable legal standards. . . ." Resp. § B(1). Furthermore, the PA AG requested that the Pennsylvania Supreme Court declare that the PA AG Lawsuit "is excepted from the automatic stay by the operation of 11 U.S.C. § 362(b)(4)" and sought an order permitting the action to "proceed up to, and including, the entry of a final judgment against the [Debtors]." *See* Resp. Prayer for Relief; *id.* § B(12).

### VI. Continued Settlement Discussions with Class Plaintiffs

20. Since the Petition Date, the Debtors and plaintiffs in the MEC Class Action and the Non-MEC Class Action have engaged in settlement discussions, including as recently as July 8, 2020. Counsel for class plaintiffs continue to support a settlement with the Debtors to resolve their class royalty underpayment claims. Chesapeake is also interested in resolving the PA AG's concerns on a reasonable basis within the confines of the bankruptcy process.

### Basis for Relief

### I. The Automatic Stay Applies To The PA AG Lawsuit Seeking Recovery For Underpaid Royalties.

21. Section 362(a)(1) of the Bankruptcy Code applies to the PA AG Lawsuit. The purpose of the automatic stay is to provide debtors with a "breathing spell from [their] creditors"

and channel competing claims for a debtor's assets into a single forum to provide a platform for the debtor's reorganization. *Browning v. Navarro*, 743 F.2d 1069, 1083 (5th Cir. 1984).

22. Given its fundamental importance to a debtor's reorganization, courts broadly construe the Bankruptcy Code's automatic stay provisions. *See Padilla v. Wells Fargo Home Mortg., Inc.* (*In re Padilla*), 379 B.R. 643, 662 (Bankr. S.D. Tex. 2007); *Nat'l Mediation Bd. v. Cont'l Airlines Corp.* (*In re Cont'l Airlines Corp.*), 50 B.R. 342, 350 (S.D. Tex. 1985), *aff'd*, 790 F.2d 35 (5th Cir. 1986) (per curiam).

23. The bankruptcy court has authority to fashion appropriate remedies for violations of the automatic stay. *See, e.g.*, 11 U.S.C. §§ 105(a), 362(k).

24. Bankruptcy courts have original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Though "state courts have jurisdiction to rule on the applicability of the automatic stay to non-debtors, ***they do not have authority to do so when the automatic stay precludes the continuation of the proceeding against the debtor***." *In re Edwin A. Epstein, Jr. Operating Co.*, 314 B.R. 591, 599 (Bankr. S.D. Tex. 2004) (emphasis added). And "[i]t is undisputed that only a bankruptcy court has jurisdiction to terminate, annul or modify the automatic stay." *Id*. at 600.

25. Any action a party takes in violation of the automatic stay is voidable and may warrant a finding of civil contempt—even if the party taking such action had no knowledge of the bankruptcy filing. *See, e.g.*, *BroadStar Wind Sys. Grp. Ltd. Liab. Co. v. Stephens*, 459 F. App'x 351, 356-57 (5th Cir. 2012) (per curiam); *West v. Peterson* (*In re Noram Res., Inc.*), Adv. No. 11-03598, 2015 WL 5965654, at *4-5 (Bankr. S.D. Tex. Oct. 9, 2015).

26. The PA AG's recent filing in the PA AG Lawsuit, in which it seeks an order permitting the action to "proceed up to, and including, the entry of a final judgment against the

10

[Debtors]," Resp. § B(12), constitutes a violation of the automatic stay under 11 U.S.C. § 362(a). The PA AG may eventually seek relief from the automatic stay for cause by filing a motion before this Court under 11 U.S.C. § 362(d). Until the Court grants such relief, the automatic stay remains in place. *See, e.g.*, *In re JCP Props., Ltd.*, 540 B.R. 596, 613 (Bankr. S.D. Tex. 2015).

## II.   The Police Power Exception To The Automatic Stay Does Not Apply To The PA AG Lawsuit.

27.   The Debtors anticipate that the PA AG will argue that the police power exception to the automatic stay applies to the PA AG Lawsuit, consistent with the filing it made in the Supreme Court of Pennsylvania. In reality, however, the PA AG Lawsuit does not fall within any of the enumerated exceptions to the automatic stay and, in particular, fails to meet the police power exception.

28.   Section 362(b)(4) of the Bankruptcy Code provides a limited exception to the automatic stay for "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power." 11 U.S.C. § 362(b)(4).

29.   The PA AG Lawsuit does not fall within the police or regulatory power exception to the automatic stay. The PA AG Lawsuit does not involve a core governmental activity—such as health, welfare, or safety—or environmental protection, but rather involves oil-and-gas royalty calculation claims pursuant to written oil-and-gas leases that can, and were, brought by private parties. The fact that the PA AG asserted claims that it alleges only it can assert (which Chesapeake contests and is the issue currently pending before the Pennsylvania Supreme Court) does not change the fact that the PA AG Lawsuit is a follow-on lawsuit to the class actions seeking

11

to recover the same alleged royalty underpayments for the Pennsylvania landowners represented in the class actions.

30. The PA AG Lawsuit primarily seeks monetary relief—not the enforcement of a "governmental unit's or organization's police and regulatory power." *See* 11 U.S.C. § 362(b)(4). As the PA AG stated in the first paragraph of its complaint, "[t]his action seeks to recover for Pennsylvania Landowners ***money wrongfully deducted from royalty check*s** as a result of the wrongful conduct of Defendants detailed herein." *See* PA AG Second Am. Compl. ¶ 1 (emphasis added); *see also id.* at pp. 35, 61, 70, 77, 81 (seeking an order compelling Chesapeake "to restore to Pennsylvania Landowners any moneys which may have been acquired by means of any violation of the UTPCPL"). Even in its filing to the Supreme Court on this issue, the PA AG admits that it primarily seeks monetary relief: it seeks "to restore money," pay civil penalties, disgorge profits, and pay the Commonwealth costs of investigation and prosecution. Resp. § A(3). The PA AG Lawsuit does not fall within the statutory police power exception to the automatic stay.[5]

31. Enforcing the automatic stay as to the PA AG Lawsuit is also necessary to allow for resolution of substantially identical class-action claims against the Debtors and preserve estate resources. The PA AG Lawsuit involves the same leases and seeks to address alleged royalty underpayments under the same leases as the MEC Class Action and the Non-MEC Class Action

---

[5] Earlier this year, the United States Bankruptcy Court for the Eastern District of Kentucky denied the PA AG's request for relief from the automatic stay based on similar police power arguments. *See* Order, *In re Americore Holdings, LLC*, No. 19-61608-grs (E.D. Ky. Jan. 24, 2020), ECF No. 143. There, the PA AG had brought pre-petition claims against the owners of a non-profit hospital, which was not paying its obligations pursuant to a state-court sanctioned sale. The PA AG had purportedly brought the claims as *parens patriae* and argued that it was exercising its police and regulatory power to prevent harm to residents by ensuring access to healthcare and preventing diversion of charitable assets. The court found that the claims did not involve a matter of public safety, given that the hospital had closed and there was no evidence of immediate harm to the residents, and the action was ultimately a request to adjudicate the private rights of residents.

and together, the MEC and Non-MEC Class Settlements cover virtually all landowner royalty claims against Chesapeake in Pennsylvania. The PA AG agreed that Chesapeake would be entitled to an offset for monies paid to resolve the class actions against any recovery by the PA AG for the Pennsylvania landowners; thus, it is not in dispute that the PA AG Lawsuit's claims are intertwined with and duplicative of the class action royalty claims. *See* June 27, 2016 Hr'g Tr. 5, *Demchak* (M.D. Pa. July 8, 2016), ECF No. 160.

32. It also bears emphasis that it is not even clear that the PA AG had the authority to bring the PA AG Lawsuit in the first place (and Chesapeake maintains that the PA AG does ***not*** have such authority). After the PA AG twice amended its claims, Chesapeake answered with a motion to dismiss the claims on the grounds that the PA AG's UTPCPL claims—which it brought on behalf of private landowners—were not cognizable. That issue was appealed to the Pennsylvania Supreme Court, was fully briefed and argued on May 27, 2020, and awaits a final decision from that court. If the Pennsylvania Supreme Court rules for Chesapeake, the PA AG will have delayed mutually agreeable settlements of the MEC Class Action and Non-MEC Class Action for years without authority.

33. To the extent the PA AG Lawsuit (filed more than four years ago) seeks limited injunctive relief, it is indisputably monetary in nature and based on the same leases at issue in the class actions (*i.e.*, it seeks to have Chesapeake pay future royalties in the same manner the state court determines it should have paid in the past) or concerns past conduct that ended long ago. In any event, the PA AG's request for injunctive relief will be resolved by settlement of the MEC Class Action and the Non-MEC Class Action. Those settlements will allow class members to elect how Chesapeake will calculate their royalties on a go-forward basis. Consequently, once the settlements are entered and approved by this Court, there will be no ongoing conduct to enjoin.

34. At the end of the day, Pennsylvania royalty owners have made claims of royalty underpayment directly against Chesapeake through class actions, and the PA AG has made claims of royalty underpayment against Chesapeake through its lawsuit. They both seek monetary relief for those claims. Through this bankruptcy process, any claims of royalty underpayment will be addressed through settlements or the claims process. It is not permitted, and there is no good reason, to have collateral litigation proceed during the bankruptcy process—and the automatic stay prevents such action.

## Emergency Relief is Warranted

35. If the automatic stay is not enforced, the Debtors will be compeled to file a brief in the Pennsylvaina Supreme Court on Monday, July 20, 2020. Therefore, the Debtors request relief not later than Friday, July 17, 2020.

## Conclusion

36. For the foregoing reasons, the Debtors respectfully request that this Court enforce the automatic stay.

## Notice

37. The Debtors will provide notice of this Motion to the following parties or their respective counsel (if known): (a) the United States Trustee for the Southern District of Texas; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' proposed debtor-in-possession credit facility and counsel thereto; (d) the administrative agent under the Debtors' prepetition revolving credit facility and counsel thereto; (e) the administrative agent for the Debtors' prepetition term loan facility and counsel thereto; (f) the indenture trustee for the Debtors' senior secured second lien notes and counsel thereto; (g) the indenture trustees for the Debtors' unsecured notes; (h) counsel to the ad hoc group of term loan lenders; (i) counsel to Franklin Advisers, Inc., as investment manager on

behalf of certain funds and accounts; (j) the United States Attorney's Office for the Southern District of Texas; (k) the Internal Revenue Service; (l) the United States Securities and Exchange Commission; (m) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (n) the state attorneys general for states in which the Debtors conduct business; and (o) any party that has requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002.  In light of the nature of the relief requested, no other or further notice need be given.

  WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
July 14, 2020

/s/ *Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Patrick J. Nash, Jr., P.C. (*pro hac vice*) |
| Kristhy M. Peguero (TX Bar No. 24102776) | Marc Kieselstein, P.C. (*pro hac vice*) |
| Veronica A. Polnick (TX Bar No. 24079148) | Alexandra Schwarzman (*pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | 300 North LaSalle Street |
| Houston, Texas 77010 | Chicago, Illinois 60654 |
| Telephone:   (713) 752-4200 | Telephone:   (312) 862-2000 |
| Facsimile:    (713) 752-4221 | Facsimile:    (312) 862-2200 |
| Email:           mcavenaugh@jw.com | Email:           patrick.nash@kirkland.com |
|                       jwertz@jw.com |                       marc.kieselstein@kirkland.com |
|                       kpeguero@jw.com |                       alexandra.schwarzman@kirkland.com |
|                       vpolnick@jw.com | |

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**CERTIFICATE OF SERVICE**

I certify that on July 14, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.  Additionally, a copy of this motion was sent via e-mail to Office of the Attorney General of the Commonwealth of Pennsylvania.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh