**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | ) | Case no. 20-33233 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**PRELIMINARY OBJECTION AND RESERVATION OF RIGHTS BY THE OFFICIAL
COMMITTEE OF ROYALTY OWNERS TO DEBTORS' EMERGENCY MOTION FOR ENTRY
OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN
POSTPETITION FINANCING, (II) AUTHORIZING THE  DEBTORS TO USE CASH
COLLATERAL, (III) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE
EXISTING SECURED PARTIES, (V) MODIFYING THE AUTOMATIC STAY, (VI)
<u>SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF</u>**

COMES NOW the Official Committee of Royalty Owners (the "<u>RO Committee</u>") and files

this Preliminary Objection and Reservation of Rights (the "<u>Objection</u>") to the relief requested by

the debtors, Chesapeake Energy Corporation; Chesapeake Operating, L.L.C., f/k/a Chesapeake

Operating, Inc.; Chesapeake Exploration, L.L.C. as successor by merger to Chesapeake

Exploration, L.P.; and Chesapeake Energy Marketing, L.L.C., f/k/a Chesapeake Energy

Marketing, Inc. (collectively "<u>Chesapeake</u>" or the "<u>Debtors</u>"), in the Debtor's Emergency Motion

for Approval of Interim and Final Postpetition Financing [Docket No. 22] (the "<u>DIP Motion</u>").[2]

## I. PROCEDURAL HISTORY

1. The Debtors initiated these bankruptcy proceedings through the filing of voluntary

chapter 11 petitions on June 28, 2020 (the "<u>Petition Date</u>").  Attached to Chesapeake's

bankruptcy petition was a schedule of its 50 largest unsecured (non-insider) claims.  Notably,

although Chesapeake is currently being sued by thousands of royalty owners across the country

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
proposed claims and noticing agent at https://dm.epiq11.com/chesapeake.  The location of Debtor Chesapeake
Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100
North Western Avenue, Oklahoma City, Oklahoma 73118.

[2] Any capitalized terms not otherwise defined herein have the meaning ascribed to such terms in the DIP Motion.

for hundreds of millions of dollars in unpaid royalties and other relief, including release of acreage claims, *none* of Chesapeake's royalty interest owners or the various classes of royalty owners involved in pending litigation with Chesapeake were listed by the Debtors among Chesapeake's 50 largest unsecured creditors.  Indeed, it does not appear that the thousands of royalty owners impacted by these bankruptcy cases have even been given notice of the DIP Motion and, perhaps, have not yet even received notice of the filing of the case.

2.      For example, there currently are two multi-district litigation (MDL) cases[3] against Chesapeake pending in Texas state court in which approximately 194 royalty owners plaintiffs collectively seek damages of more than $200 million and assert claims that mineral acreage under leases affecting thousands of mineral acres (valued by Chesapeake at more than $100 million) was released.  Likewise, there are approximately 760 royalty owners in Pennsylvania asserting claims in a number of actions against Chesapeake under oil and gas leases affecting over 30,000 mineral acres in the Marcellus Shale region of Pennsylvania.  Further, there are certified class actions pending against the Debtors in Pennsylvania for the underpayment of tens of millions of dollars of royalty obligations involving more than 10,000 landowners and 12,000 leases.  These actions and other pending cases against Chesapeake across the country, including in Texas, Oklahoma, Pennsylvania and Ohio are reflected on the attached **Exhibit A**.  In addition to the royalty owners that are already parties to lawsuits with Chesapeake, there are literally thousands of other royalty owners throughout the country (collectively, the "Royalty Owners") who did not even receive notice of the DIP Motion, but whose interests will be affected by the Court's ruling on the DIP Motion.

3.      On June 28, 2020, the Court entered an order jointly administering the Debtors' bankruptcy cases under Case No. 20-33233 (DRJ).  [Docket No. 91].

---

[3] *See In re Chesapeake Eagle Ford Royalty Litigation,* Cause No. 2016C122093, pending in the 224th District Court in Bexar County, Texas (MDL No. 1); *In re Chesapeake Barnett Royalty Litigation #2,* pending in the 96th District Court in Tarrant County, Texas.

4.      On June 28, 2020, the Debtors filed a number of "first day" motions.  Such first day motions included the instant DIP Motion as well as an *Emergency Motion for Entry of an Order (I) Authorizing Payment of (A) Obligations Owed to Holders of Mineral and Other Interests and Non-Op Working Interests and (B) Joint Interest Billings, and (II) Granting Related Relief* (the "Royalty Payment Motion") [Docket No. 16].

5.      On June 29, 2020, the Court held an interim hearing on the DIP Motion and entered its *Interim Order (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Existing Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "Interim DIP Order") [Docket No. 128].

6.      On July 24, 2020, the U.S. Trustee filed a *Notice of Appointment of Committee of Royalty Owners* [Docket No. 488], which formed the official RO Committee.  The first meeting of the RO Committee was held on July 25, 2020, in which the RO Committee voted to retain the undersigned firm as proposed counsel.

7.      On July 27, 2020, the Official Committee of Unsecured Creditors (the "UCC") filed an objection to the DIP Motion (the "UCC Objection") [Docket No. 514].

## II.      JOINDER BY RO COMMITTEE IN UCC OBJECTION

8.      The RO Committee hereby joins in all aspects of the UCC Objection to the DIP Motion filed by the UCC.  Without waiver of the arguments raised in the UCC Objection, the RO Committee files this separate preliminary Objection and reservation of rights to address additional matters affecting Royalty Owners specifically.

9.      The RO Committee vigorously joins the UCC in noting that the DIP Motion was negotiated at a time when oil prices were at historic lows.  The price of oil has significantly rebounded since the lows in early and mid-May 2020.  There is no valid reason why the unsecured creditors should be saddled with such a deal thirty (30) days into the case.  This

locks the Debtors into a course of action dictated by the DIP Motion and irrevocably deprives the unsecured creditors of any possibility of ever exploring any alternative options which might provide a greater return.

10.     As the UCC Objection notes at paragraph 3, the enterprise value of the Debtors is already subject to wide-ranging debate in the market place, and the value embedded in the RSA is a "negotiated valuation."  As reflected at paragraph 14 of the Dell'Osso Declaration, based on this valuation, the RSA carves up the pie.  If the DIP Motion is approved, it will result in the following:

- The Debtors' enterprise value will be determined based on a negotiated valuation, apparently negotiated when commodity process were at a historically depressed level;

- The DIP Lenders will, based on their rolled up loans, have control of the bankruptcy cases; and,

- The opportunity to explore other options for the Debtors will likely be forever lost.

All of this will occur only thirty (30) days into the case without any notice to a majority of Royalty Owners represented by the RO Committee.

### III.     PRELIMINARY OBJECTION

11.     The DIP Motion provides:

> A significant portion of the Debtors' prepetition collateral includes oil and gas properties on which the secured parties have liens, including the oil and gas extracted by the Debtors from those properties and the proceeds generated from the sales thereof. *See* First Day Decl. ¶ 110.  The Debtors' business model is predicated upon their ability to maximize the value of their oil and gas assets through extraction, bring the extracted hydrocarbons to market, and utilize the proceeds of such hydrocarbon sales to fund their business operations.  *See id.*  The continuation of the Debtors' operations and the preservation of their going concern value is largely dependent upon their ability to regularly convert the prepetition oil and gas collateral into cash collateral and use the cash in their operations.

See DIP Motion, ¶ 59.  In other words, the Debtors most valuable assets are their oil and gas properties.  Moreover, their ability to continue as a going concern depends upon their ability to continue extracting hydrocarbons, bring them to market, and use the proceeds to fund their business operations.

12.     Not mentioned in the DIP Motion, however, is the fact that the Debtors' ability to utilize such oil and gas assets remains subject to the terms of oil and gas leases with thousands of Royalty Owners.  In addition, some or all of such Royalty Owners may assert that they possess secured claims against Chesapeake for amounts due under their leases based on applicable state law or the terms of their respective leases.  Finally, a number of Royalty Owners assert or may possess release of acreage claims pertaining to tens of thousands of mineral acres against the Debtors based on, e.g., the Debtors failure to continuously develop their oil and gas leases as required under the terms of their leases and/or applicable state law. The Court should not permit these important rights of Chesapeake's Royalty Owners to be trampled on by Chesapeake through a hasty ruling one month into the case on a DIP Motion which was not even served by Chesapeake on its Royalty Owners.

**A.      *The DIP Motion Seeks to Prime the Royalty Owners' Secured Claims Without Providing Adequate Notice and an Opportunity to Be Heard***

13.     In the DIP Motion, the Debtors seek to grant the DIP Lenders "perfected, first priority priming security interests in and liens on all of the Existing Collateral."  DIP Motion, p. 3. The term "Existing Collateral" is defined in the DIP Motion as ***"substantially all of the Debtors' assets and property, whether real, personal or mixed."***  DIP Motion, ¶ 23 (emphasis added). The oil and gas leases with the Royalty Owners and the proceeds therefrom are thus squarely within the definition of Existing Collateral and constitute property upon which the Debtors seek to grant the DIP Lenders perfected, first priority priming security interests and liens.

14.     The Interim Order on the DIP Motion [Docket No. 128] at paragraph 11 likewise provides as follows:

**DIP Liens**.  As security for the DIP Obligations and any DIP Hedges, the DIP Agent, on behalf of and for the benefit of the DIP Secured Parties, is hereby granted . . . ***valid, enforceable, binding and fully perfected security interests in and liens upon (the "DIP Liens") all present and after-acquired property of the Debtors of any nature whatsoever*** (including without limitation "Collateral"), and all cash and cash equivalents contained in any account maintained by any of the Debtors, and, subject to entry of a Final Order, all Avoidance Actions Proceeds of the Debtors or their estates (collectively with all rents, issues, products, offspring, proceeds and profits of any or all of the foregoing, but excluding "Excluded Property" as defined in the DIP Credit Agreement, the "DIP Collateral"), subject only to the payment of the Carve Out....

See Interim DIP Order, ¶ 11 (emphasis added).  Paragraph 11(c) of the Interim DIP Order further provides that, pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Liens constitute ***"valid, enforceable, binding, continuing, enforceable, fully perfected, first priority senior priming liens upon and security interests in all of the Debtors' right, title and interest in, to, and under all DIP Collateral that is subject to the Existing Liens."*** Interim DIP Order, ¶11(c) (emphasis added).  Consequently, the Debtors' oil and gas assets and the proceeds therefrom, which are subject to the terms of oil and gas leases with the Royalty Owners, are among the Collateral and DIP Collateral upon which the Debtors seek to grant the DIP Lenders a first priority, senior priming lien and security interest on a final basis.

15.     The priming lien sought to be granted by the Debtors to the DIP Lender is not limited to priming the Debtors' prepetition lenders.  Instead, the "fully perfected, first priority senior priming liens" would prime all liens and security interests asserted by any other parties in the Debtors' property, including the liens or security interests asserted by the Royalty Owners in the proceeds of or production from their oil and gas leases under either applicable state law or the terms of their oil and gas leases.  Specifically, different states have passed laws granting Royalty Owners a security interest in or lien on any oil and gas production and the proceeds of that production to secure the payment of royalties under an oil and gas lease.  For example, Tex. Bus. & Com. Code § 9.343 grants Texas Royalty Owners an automatically perfected

statutory lien in oil and gas production without the filing of a financing statement to secure the obligations due under an oil and gas lease.  Likewise, Okla. Stat. Ann. Title 52 §§ 549.3 and 549.4 grant Oklahoma Royalty Owners an oil and gas lien to secure the obligations due under an oil and gas lease, which liens are also perfected automatically "without the need to file a financing statement or any other type of documentation."  Other states in which Chesapeake holds interests in oil and gas leases may also provide similar protection to Royalty Owners.  In addition, a number of the Debtors' oil and gas leases are believed to be non-standard and may include lease terms granting the Royalty Owners security interests in or liens on the production and proceeds of the mineral acreage subject to the lease to secure payment to the Royalty Owners under the leases.

16.    Here, it is completely inappropriate for the Debtors to attempt to prime the secured prepetition and post-petition claims of the Royalty Owners one (1) month into the case based on a DIP Motion that was never even served on the Royalty Owners.  Indeed, the "Notice" provision at paragraph 110 of the DIP Motion makes it clear that the DIP Motion was never served on any Royalty Owners in this case.  Further, although the Debtors have filed and updated their Master Service List [Docket Nos. 164 and 286], the Master Service List likewise contains only a small number of entities and does not appear to include any of the Royalty Owners.  Consequently, it is unclear whether the Royalty Owners have even been given notice of the commencement of these bankruptcy cases.

17.    Because the DIP Motion plainly seeks to prime any prepetition or post-petition secured claims asserted by Royalty Owners, the Debtors' failure to give Royalty Owners adequate notice of the DIP Motion is inexcusable.  This is particularly true given the Debtors' knowledge that Royalty Owners may possess secured claims based on the nonpayment of royalties under their oil and gas leases.  Indeed, the existence of secured claims in favor of Royalty Owners was acknowledged by the Debtors in the Royalty Payment Motion, which provided that the nonpayment of royalties and other working interests under their leases "could

result in the assertion of significant secured or unsecured claims against property of the estate."
See Royalty Payment Motion, ¶ 7. Here, hundreds of Royalty Owners have already instituted
enforcement actions against Chesapeake seeking hundreds of millions of dollars in unpaid
royalties and other amounts due under their leases, some or all of which may give rise to
secured claims against property of the estate. In addition, although not parties to existing
actions, other Royalty Owners may also possess secured claims against Chesapeake for
unpaid amounts under their respective leases.

18.     Moreover, even if the Debtors were to challenge the Royalty Owners' secured
claims, they likewise cannot adjudicate the validity, priority or extent of the Royalty Owners'
secured claims through a contested matter on the DIP Motion. Instead, any challenge to the
validity, priority or extent of the Royalty Owners' secured claims requires an adversary
proceeding under Fed. R. Bankr. P. 7001(2). The validity of the Royalty Owners' secured
claims cannot be determined in a DIP Motion which is not even served on the Royalty Owners.

19.     Moreover, a number of courts have found that proceeds of oil and gas production
that the debtor holds for the benefit of a third party are not property of the debtor's bankruptcy
estate. *See, e.g., Dahlberg v. ConocoPhillips Co. (In re Reichmann Petroleum Corp.),* 434 B.R.
790, 797 (Bankr. S.D. Tex. 2010) (revenue earned by working interests was property of the
working interest owners and not property of the estate); *Vess Oil Corp. v. SemCrude, L.P. (In re
SemCrude, L.P.),* 418 B.R. 98, 106 (Bankr. D. Del. 2009) (production proceeds held in trust by
the debtor for the benefit of third parties were not property of the debtor's estate). "Where [a]
Debtor merely holds bare legal title to property as agent or bailee for another, Debtor's bare
legal title is of no value to the estate, and Debtor should convey the property to its rightful
owner." *MCZ, Inc. v. Andrus Res., Inc. (In re MCZ, Inc.),* 82 B.R. 40, 42 (Bankr. S.D. Tex.
1987). Bankruptcy Code section 541(d) expressly provides that if a debtor holds only legal, but
not an equitable, interest in the property as of the petition date, such property is not property of
the estate. *See, e.g., In re Lenox Healthcare, Inc.,* 343 B.R. 96, 100 (Bankr. D. Del. 2006).

Consequently, the RO Committee further objects to the DIP Motion to the extent it seeks to grant priming liens in any prepetition or post-petition property held by the Debtors for the benefit of the Royalty Owners.

20.     Finally, the RO Committee objects to the DIP Motion to the extent it requests approval of superpriority administrative expense claim status for the DIP Lenders (the "Superpriority Claims").  See DIP Motion, p. 3.  Post-petition amounts owed to the Royalty Owners under their oil and gas leases may be entitled to priority of payment as an administrative expense under section 503(b)(1)(A) of the Bankruptcy Code.  Moreover, although the Debtors have been authorized to continue making royalty payments in the ordinary course on a post-petition basis [see Docket No. 141], based on Chesapeake's widespread and historical underpayment of royalties, disputes may arise regarding whether the post-petition payments to Royalty Owners were correctly calculated.  Consequently, the RO Committee objects to the DIP Motion to the extent it seeks to grant Superpriority Claims to the DIP Lenders that would be paid ahead of any administrative expense claims granted in favor of the Royalty Owners.

21.     Because the RO Committee was only recently appointed on July 24, 2020, i.e., one week before the final hearing on the DIP Motion, counsel for the RO Committee has not yet been able to ascertain (i) whether or what extent the Royalty Owners assert or may possess secured prepetition and/or post-petition secured claims against Chesapeake under applicable state law or the terms of their respective leases, (ii) whether Chesapeake is in possession of prepetition or post-petition property that belongs to the Royalty Owners, or (iii) whether or to what extent Royalty Owners may be entitled to administrative expense claims for post-petition royalties.  The RO Committee therefore objects to the DIP Motion to the extent it seeks to prime any prepetition or post-petition secured claims asserted by the Royalty Owners, grant liens in property held by the Debtors for the benefit of Royalty Owners, or grant Superpriority Claims to

the DIP Lenders with priority of payment ahead of administrative claims granted to the Royalty

Owners, without adequate notice and an opportunity to be heard.

**B.**  ***Any Priming Liens or Security Interests Granted to the DIP Lenders Cannot
Exceed the Debtors' Valid Interest in Such Property or Be Deemed an Adjudication
of Chesapeake's Rights to Disputed Mineral Acreage***

22.     The Interim DIP Order specifically limits the DIP Liens to "all of the Debtors' right,

title and interest in, to, and under all DIP Collateral…."  See Interim DIP Order, ¶11(c).  Stated

differently, the DIP Liens purport to extend solely to property in which the Debtors have an

interest (and not to property in which the Debtors no longer have an interest).  This distinction is

important because a number of Royalty Owners assert or may possess claims that

Chesapeake's right to develop the mineral acreage subject to their oil and gas leases was

released (in whole or in part) under either the terms of their respective leases or applicable state

law.  As a result, although the RO Committee does not believe that the Interim DIP Order should

be construed as granting the DIP Lenders security interests in and liens on anything other than

property in which the Debtors have a valid interest, it objects so as to ensure that any final order

on the DIP Motion likewise clarifies that the DIP Liens are only coextensive with the "Debtors'

right, title and interest in, to and under all DIP Collateral" and *does not* extend to any property in

which the Debtors no longer have a valid interest, including mineral acreage that was released

or may be released under the terms of the particular lease or applicable state law.

23.     Moreover, to the extent the Debtors may claim an interest in any disputed

mineral acreage, the Debtors' grant of blanket priming liens and security interests to the DIP

Lenders cannot be construed as an adjudication of the Debtors' rights to such disputed mineral

acreage.  In other words, the fact that the Debtors may claim a right to certain mineral acreage,

and may purport to grant the DIP Lenders perfected liens and security interest in such mineral

acreage, is not dispositive of the Debtors' legal rights to such acreage, especially where the

Debtors' rights under the leases have been or may be disputed by the Royalty Owners.

Instead, where the Debtors' rights in such mineral acreage has been released or will be

released under the terms of a lease such that the Debtors have or will have no rights to such acreage, then the Debtors cannot alter or revive those rights by granting a perfected lien in such mineral acreage through their DIP Motion. The RO Committee does not believe that the Debtors are attempting to grant security interests and liens to the DIP Lenders in any property in which the Debtor does not or may no longer have an interest. Nevertheless, the RO Committee objects to the DIP Motion to make it clear that (i) the liens and security interests granted by the Debtors to the DIP Lender can only extend to property to the extent the Debtors continue to have a valid legal interest in such property, and (ii) the granting of such liens and security interests is not an adjudication of the Debtors' rights in any disputed mineral acreage.

**C.      Objection to Investigative and Challenge Provisions**

24.      Paragraph 19 of the Interim DIP Order (the "<u>Investigative Provision</u>") limits the rights of the Unsecured Creditors Committee ("<u>UCC</u>") and other parties in interest to investigate the Existing RBL Liens and Obligations, the Existing FLLO Liens and Obligations, and the Existing Second Liens and Obligations to sixty (60) days from the appointment of the UCC for the UCC and seventy-five (75) days from the entry of the Interim DIP Order for other parties in interest. See Interim DIP Order, ¶ 19. Moreover, if a challenge is not initiated during this time period, then the Debtors, their estates, the UCC, and all other parties in interest are forever barred from challenging these transactions, and the liens and security interest of the Existing RBL Secured Parties, Existing FLLO Secured Parties, and Existing Second Lien Secured Parties "shall be deemed to constitute valid, binding, enforceable and perfected liens and security interests no subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law." See id.

25.      The RO Committee objects to the foregoing Investigative Provision for two reasons. First, taken in context, the Investigative Provision appears to pertain solely to the rights of parties to challenge the obligations to and liens and security interests asserted by the Existing RBL Secured Parties, Existing FLLO Secured Parties, and Existing Second Lien

Secured Parties either under the terms of their loan documents and/or as preferences or fraudulent transfers under the Bankruptcy Code or applicable state law.  This provision does not appear to require any existing Royalty Owners to challenge the validity of any liens or security interests previously granted by the Debtors to the Existing RBL Secured Parties, Existing FLLO Secured Parties, and Existing Second Lien Secured Parties in any specific mineral acreage subject to the terms of their respective leases.  However, to the extent the Investigative Provision could be construed as requiring Royalty Owners to assert that blanket liens and security interests previously granted by the Debtors to such secured parties improperly include their specific mineral acreage and then object on the basis that such mineral acreage was released under their mineral leases or applicable law, the RO Committee objects.  The extent and validity of Chesapeake's interest in mineral acreage subject to the terms of various mineral leases throughout the country cannot be adjudicated through a ruling on the DIP Motion, particularly where the extent of Chesapeake's rights to certain mineral acreage has already been challenged by a number of Royalty Owners in pending state court litigation.

26.     The RO Committee likewise objects to the challenge period within the Investigative Provision on the grounds that the RO Committee was just recently formed on July 24, 2020 and has not yet had an opportunity to review the various and complicated transactions between the Debtors and the Existing RBL Secured Parties, Existing FLLO Secured Parties, and Existing Second Lien Secured Parties.  The existing Investigative Provision in the Interim DIP Order, if applied to the RO Committee, would not give the RO Committee adequate time to investigate the transactions and make an informed decision regarding whether to challenge them or to joint in any challenge by the UCC.  The RO Committee needs an adequate time to investigate and understand the dealings between the Debtor and the Existing RBL Secured Parties, Existing FLLO Secured Parties, and Existing Second Lien Secured Parties. Consequently, the RO Committee requests that challenge period in the Investigative Provision, as applied to the RO Committee, should be extended from seventy-five (75) days from the entry

of the Interim DIP Order to one hundred eighty (180) days from July 24, 2020, the date the RO Committee was appointed and retained counsel.

**D.** ***The Carve Out Is Unreasonable and Should Be Delinked from Any Event of Default under the DIP Credit Agreement***

27.     Finally, the DIP Motion describes the "Carve Out" for professional fees as including "allowed professional fees of the Debtors pursuant to section 1103 of the Bankruptcy Code."  See DIP Motion, p. 14.  Paragraph 18 of the Interim DIP Order, however, defines the Carve Out to include "to the extent allowed at any time … all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors … and the Committee (defined below) pursuant to section 328 or 1103 of the Bankruptcy Code…."  Paragraph 19 of the Interim DIP Order defines the "Committee" as the "official committee of creditors holding unsecured claims appointed in these Chapter 11 cases, if any, pursuant to section 1102 of the Bankruptcy Code."

28.     At the time the DIP Motion was filed and the Interim DIP Order was entered, the RO Committee had not yet been appointed.  However, because the definition of Committee in the Interim DIP Order is limited to approved fees incurred by professionals of the Debtor and the UCC, it would not appear to include approved professional fees incurred by the RO Committee. The RO Committee thus objects to the entry of any Final Order on the DIP Motion that does not include any approved professional fees incurred by the RO Committee's professionals.

29.     Moreover, the RO Committee echoes the concerns raised by the UCC about the Debtors' attempt to thwart any investigation into the Debtors' conduct by controlling the amount of fees available to pay non-Debtor professionals.  The RO Committee agrees that professional fees paid by the Debtors should be excluded from budget testing and delinked from any potential events of default under the DIP Credit Agreement.  Alternatively, if included in the budget, they must be increased to reflect the reality of the amount of work that will need to be performed by the UCC and RO Committee in these cases.

30.     The RO Committee was appointed by the U.S. Trustee to represent a large but distinct group of creditors in this case.  Further, although the RO Committee will avoid duplicating any investigation being performed by the UCC, there are matters peculiar to Royalty Owners that need to be investigated by the RO Committee including, e.g., the amount of Chesapeake's total mineral acreage, the total amount of Royalty Owners' claims, the amount of any potentially released mineral acreage, issues pertaining to the perfection and priority of the Royalty Owners' security interests, and other matters that affect the Royalty Owners specifically. The RO Committee therefore requests that any final order on the DIP Motion include a reasonable Carveout to cover professional fees incurred by the RO Committee during the challenge period for investigation costs.

## IV.      RESERVATION OF RIGHTS

31.     The RO Committee was just recently appointed in this case and has not yet had an adequate opportunity to review and evaluate all aspects of the DIP Motion and the various transactions described therein.  For example, the UCC only recently deposed a corporate representative of the Debtors pursuant to Fed. R. Civ. P. 30(b)(6) regarding the DIP Motion on July 28, 2020.  The RO Committee therefore reserves the right to raise any additional objections to the DIP Motion or any proposed final order on the DIP Motion either before or at the final hearing on the DIP Motion.

Dated: July 28, 2020.     Respectfully submitted,

          /s/  J. Robert Forshey
          J. Robert Forshey
          State Bar No. 07264200
          Jeff P. Prostok
          State Bar No. 16352500
          Suzanne K. Rosen
          State Bar No. 00798518
          FORSHEY PROSTOK LLP
          777 Main St., Suite 1550
          Fort Worth, TX  76102
          Telephone: (817) 877-8855
          Facsimile:  (817) 877-4151
          bforshey@forsheyprostok.com
          jprostok@forsheyprostok.com
          srosen@forsheyprostok.com

          -and-

          Deirdre C. Brown
          State Bar No. 24049116
          FORSHEY PROSTOK, LLP
          1990 Post Oak Blvd., Suite 2400
          Houston, TX 77056
          Telephone: (832) 536-6910
          Facsimile:  (832) 310-1172
          dbrown@forsheyprostok.com

          *Proposed Counsel for the Official Committee*
          *of Royalty Owners*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served electronically on all parties that are registered to receive electronic notices through this Court's CM/ECF noticing system in the above cases (listed below) on July 28, 2020.

Richard A Aguilar on behalf of Creditor ARI Fleet LT
Richard A Aguilar on behalf of Creditor Automotive Rentals, Inc.
raguilar@mcglinchey.com, jfalati@mcglinchey.com

Vienna Flores Anaya on behalf of Debtor CHK Utica, L.L.C.
Vienna Flores Anaya on behalf of Debtor Chesapeake AEZ Exploration, L.L.C.
Vienna Flores Anaya on behalf of Debtor Chesapeake Midstream Development, L.L.C.
Vienna Flores Anaya on behalf of Debtor MC Mineral Company, L.L.C.
Vienna Flores Anaya on behalf of Debtor Wildhorse Resources II, LLC
vanaya@jw.com, kgradney@jw.com

Victoria Nicole Argeroplos on behalf of Debtor Burleson Water Resources, LLC
Victoria Nicole Argeroplos on behalf of Debtor Chesapeake Louisiana, L.P.
Victoria Nicole Argeroplos on behalf of Debtor Chesapeake NGV Leasing Company, L.L.C.
Victoria Nicole Argeroplos on behalf of Debtor MC Louisiana Minerals, L.L.C.
Victoria Nicole Argeroplos on behalf of Debtor WHR Eagle Ford LLC
vargeroplos@jw.com, amalone@jw.com;dtrevino@jw.com;kgradney@jw.com

Patrick Holder Autry on behalf of Creditor Mary Wheeler Family Limited Partnership
pautry@branscombpc.com, bsmith@branscombpc.com

James B. Bailey on behalf of Creditor Cactus Wellhead, LLC
jbailey@bradley.com

James Paul Barnett, Jr on behalf of Creditor Joey Gloyna
jimbarnett@jpb-law.com, lposey@jpb-law.com;scanner@jpb-law.com

Misti Lachelle Beanland on behalf of Creditor Elliott Electric Supply, Inc.
beanland@mssattorneys.com

Charles A Beckham, Jr on behalf of Creditor The Williams Companies, Inc.
beckhamc@haynesboone.com, kenneth.rusinko@haynesboone.com

Joseph S Betsko on behalf of Creditor Commonwealth of Pennsylvania
jbetsko@attorneygeneral.gov

Jason Bradley Binford on behalf of Interested Party Railroad Commission of Texas
Jason Bradley Binford on behalf of Interested Party Texas Comptroller of Public Accounts, Unclaimed Property Division
Jason.binford@oag.texas.gov

Jason Lee Boland on behalf of Creditor Committee Official Committee Of Unsecured Creditors
jason.boland@nortonrosefulbright.com

Andrew A Braun on behalf of Creditor Westerngeco LLC
abraun@glllaw.com

Duane J Brescia on behalf of Creditor Seitel Data, Ltd.
duane.brescia@clarkhillstrasburger.com,
donna.krupa@clarkhillstrasburger.com;Kathryn.Alexander@clarkhillstrasburger.com;bkrtcynotic
es@strasburger.com

Marty L Brimmage on behalf of Interested Party Franklin Advisers, Inc., as Investment Manager
on Behalf of Certain Funds and Accounts
mbrimmage@akingump.com, lmonreal@akingump.com;bkemp@akingump.com

Jason S Brookner on behalf of Creditor Jackalope Gas Gathering Services, L.L.C.
Jason S Brookner on behalf of Creditor Stagecoach Pipeline & Storage Company LLC
jbrookner@grayreed.com, lwebb@grayreed.com;cpatterson@grayreed.com

Deirdre Carey Brown, pllc on behalf of Creditor Official Committee of Royalty Owners
dbrown@forsheyprostok.com,
dcbfirm@gmail.com;deirdrecbrown@yahoo.com;calendar@forsheyprostok.com;lbreedlove@for
sheyprostok.com;dcb@ecf.courtdrive.com,dcb@dcbfirm.com

Tiffiney Frances Carney on behalf of Creditor Department of Interior United States
tiffiney.carney@usdoj.gov

Winstol Dean Carter, Jr. on behalf of Trustee Deutsche Bank Trust Company Americas
winn.carter@morganlewis.com, daryl.lerner@morganlewis.com

Annie E Catmull on behalf of Creditor c/o Annie Catmull Royalty Owner Plaintiffs c/o
aecatmull@o-w-law.com, aecatmull@ecf.courtdrive.com

Matthew D Cavenaugh on behalf of Debtor CHK Energy Holdings, Inc.
Matthew D Cavenaugh on behalf of Debtor Chesapeake E&P Holding, L.L.C.
Matthew D Cavenaugh on behalf of Debtor Chesapeake Energy Corporation
Matthew D Cavenaugh on behalf of Debtor Chesapeake Energy Louisiana, LLC
Matthew D Cavenaugh on behalf of Debtor Chesapeake Operating, L.L.C.
Matthew D Cavenaugh on behalf of Debtor Chesapeake Plains, L.L.C.
Matthew D Cavenaugh on behalf of Debtor EMLP, L.L.C.
Matthew D Cavenaugh on behalf of Debtor Empress Louisiana Properties, L,P.
Matthew D Cavenaugh on behalf of Debtor Nomac Services, L.L.C.
Matthew D Cavenaugh on behalf of Debtor Northern Michigan Exploration Company, L.L.C.
Matthew D Cavenaugh on behalf of Debtor Winter Moon Energy Corporation
Matthew D Cavenaugh on behalf of Plaintiff Chesapeake Energy Corporation
mcavenaugh@jw.com, kgradney@jw.com;dtrevino@jw.com

Rudy Cerone on behalf of Creditor ARI Fleet LT
Rudy Cerone on behalf of Creditor Automotive Rentals, Inc.
rcerone@mcglinchey.com, lgraff@mcglinchey.com

Mark J. Chaney, III, III on behalf of Creditor ARI Fleet LT
Mark J. Chaney, III, III on behalf of Creditor Automotive Rentals, Inc.
mchaney@mcglinchey.com, lgraff@mcglinchey.com

Scott Robert Cheatham on behalf of Creditor CCG Land (U.S.), Inc.
Scott Robert Cheatham on behalf of Creditor CGG Services (U.S.), Inc. f/k/a Digicon
Geophysical Corp.
scott.cheatham@arlaw.com, vicki.owens@arlaw.com

Annmarie Antoinette Chiarello on behalf of Creditor Wells Fargo Bank, National Association
achiarello@winstead.com

Shawn M Christianson on behalf of Creditor Oracle America, Inc.
schristianson@buchalter.com, cmcintire@buchalter.com

Lisa Large Cockrell on behalf of Creditor Grayson county
Lisa Large Cockrell on behalf of Creditor Gregg County
Lisa Large Cockrell on behalf of Creditor Hood CAD
Lisa Large Cockrell on behalf of Creditor Parker CAD
Lisa.cockrell@lgbs.com, Dora.Casiano-Perez@lgbs.com

Michael Edward Collins on behalf of Creditor Philadelphia Indemnity Insurance Company
mcollins@manierherod.com, rmiller@manierherod.com

Ryan Dodson Dry on behalf of Interested Party RLI Insurance Company
rdry@krebsfarley.com, khaley@krebsfarley.com

Hector Duran, Jr on behalf of U.S. Trustee US Trustee
Hector.Duran.Jr@usdoj.gov

Andrew G Edson on behalf of Creditor Waste Management, Inc.
andrew.edson@clarkhillstrasburger.com, mina.alvarez@clarkhillstrasburger.com

Epiq Corporate Restructuring LLC
nmrodriguez@epiqsystems.com

J Robert Forshey on behalf of Creditor Official Committee of Royalty Owners
bforshey@forsheyprostok.com,
calendar@forsheyprostok.com;lbreedlove@forsheyprostok.com;jgonzalez@forsheyprostok.com

Bernard R. Given, II on behalf of Trustee U.S. Bank National Association, as Indenture Trustee
bgiven@loeb.com,
mortiz@loeb.com;fmckeown@loeb.com;ladocket@loeb.com;ljurich@loeb.com;karnote@loeb.com;chdocket@loeb.com;mjackson@loeb.com

Nicholas Christian Glenos on behalf of Creditor Cactus Wellhead, LLC
cglenos@bradley.com

Kristian W. Gluck on behalf of Creditor Committee Official Committee Of Unsecured Creditors
kristian.gluck@nortonrosefulbright.com

Aaron Matthew Gober Sims on behalf of Creditor MUFG Union Bank, N.A.
aarongobersims@paulhastings.com, shelbywidawski@paulhastings.com

Paul Joseph Goodwine on behalf of Creditor Argonaut Insurance Company
pgoodwine@loopergoodwine.com,
hocchipinti@loopergoodwine.com;ljohnson@loopergoodwine.com;smarrone@loopergoodwine.com

Genevieve Marie Graham on behalf of Debtor Burleson Sand LLC
Genevieve Marie Graham on behalf of Debtor Chesapeake Land Development Company, L.L.C.
Genevieve Marie Graham on behalf of Debtor Chesapeake-Clements Acquisition, L.L.C.
Genevieve Marie Graham on behalf of Debtor GSF, L.L.C.
Genevieve Marie Graham on behalf of Debtor WHE ACQCO., LLC
ggraham@jw.com, dtrevino@jw.com;kgradney@jw.com

Brian L Greenert on behalf of Interested Party Commonwealth of Pennsylvania
bgreenert@pa.gov

Tara L Grundemeier on behalf of Creditor Angelina County
Tara L Grundemeier on behalf of Creditor Cypress-Fairbanks ISD
Tara L Grundemeier on behalf of Creditor Fort Bend County
Tara L Grundemeier on behalf of Creditor Galveston County
Tara L Grundemeier on behalf of Creditor Harris County
Tara L Grundemeier on behalf of Creditor Houston CAD
Tara L Grundemeier on behalf of Creditor Jasper County
Tara L Grundemeier on behalf of Creditor Liberty County
Tara L Grundemeier on behalf of Creditor Madison County
Tara L Grundemeier on behalf of Creditor Matagorda County
Tara L Grundemeier on behalf of Creditor Montgomery County
Tara L Grundemeier on behalf of Creditor Orange County
Tara L Grundemeier on behalf of Creditor Polk County
Tara L Grundemeier on behalf of Creditor Sabine County
Tara L Grundemeier on behalf of Creditor San Augustine County
Tara L Grundemeier on behalf of Creditor Shelby County
Tara L Grundemeier on behalf of Creditor Tyler County

Tara L Grundemeier on behalf of Creditor Washington County
houston_bankruptcy@publicans.com

Julie Goodrich Harrison on behalf of Creditor Committee Official Committee Of Unsecured
Creditors
julie.harrison@nortonrosefulbright.com

Mary Elizabeth Heard on behalf of Creditor Dan W. Kinsel III, Trustee of the 2009 Dan and
Leslie Kinsel Childrens Trust and Karl Gene Kinsel, Trustee of the 2009 Karl Gene Kinsel Childs
Trust
Mary Elizabeth Heard on behalf of Creditor Dilworth Group
Mary Elizabeth Heard on behalf of Creditor Gates Mineral Company, LTD and related entities
and individuals
Mary Elizabeth Heard on behalf of Creditor Kelly Vesper, Individually, as Trustee of the Kelly
Vesper Heritage Trust, and as Executrix of the Estate of John B. Vesper, Deceased and the
Estate of Leslie T. Vesper, Deceased
Mary Elizabeth Heard on behalf of Creditor Kelly Vesper, as Trustee of the Kelly Vesper
Heritage Trust, and as Executrix of the Estate of John B. Vesper, Deceased and the Estate of
Leslie T. Vesper, Deceased
Mary Elizabeth Heard on behalf of Creditor Leojua, Ltd.
Mary Elizabeth Heard on behalf of Creditor MBF Holdings La Salle LP, formerly MBF
Partnership
Mary Elizabeth Heard on behalf of Creditor Wier Group
meheard@legalcounseltexas.com, bkhdlaw@legalcounseltexas.com

William Lake Hearne on behalf of Creditor BRP, LLC
William Lake Hearne on behalf of Creditor CoVal Leasing Company, LLC
William Lake Hearne on behalf of Creditor Allen Johnson
William Lake Hearne on behalf of Creditor Rodney Hudson
William Lake Hearne on behalf of Creditor Ruth Middleton
William Lake Hearne on behalf of Creditor Saundra Nelson
lhearne@davidsonsummers.com,
jlangley@davidsonsummers.com;jblewer@davidsonsummers.com;dmartin@davidsonsummers.
com

Simon W Hendershot, III on behalf of Creditor Jason Dean
trey@hcmhlaw.com, bgregg@hcmhlaw.com;kcowart@hcmhlaw.com;rpanneton@hcmhlaw.com

Jennifer Nicole Huckleberry on behalf of Creditor Wilmington Savings Fund Society, FSB
jhuckleberry@foley.com, amiller@foley.com

Michael E. Idzkowski on behalf of Attorney Ohio Environmental Protection Agency
Michael E. Idzkowski on behalf of Attorney State of Ohio
michael.idzkowski@OhioAttorneyGeneral.gov, Sandra.Finn@OhioAttorneyGeneral.gov

T. Josh Judd on behalf of Creditor Enterprise Texas Pipeline LLC
jjudd@andrewsmyers.com, sray@andrewsmyers.com

Vera Kanova on behalf of Creditor Pennsylvania Dept. of Environmental Protection
verkanova@pa.gov

Timothy James Kern on behalf of Attorney State of Ohio OEPA & ODNR
timothy.kern@ohioattorneygeneral.gov

Richard A. Kincheloe on behalf of Interested Party Federal Energy Regulatory Commission
Richard.Kincheloe@usdoj.gov,
caseview.ecf@usdoj.gov;sonja.mccoy@usdoj.gov;sydnie.kempen@usdoj.gov;Nicole.robbins@
usdoj.gov;rhoma.romero@usdoj.gov;USATXS.Bankruptcy-ECF@usdoj.gov

Lance M. Kodish on behalf of Creditor Brandes Investment Partners LP
lkodish@pbwt.com

Anthony Thomas Kovalchick on behalf of Creditor Commonwealth of Pennsylvania
akovalchick@attorneygeneral.gov

Phillip L Lamberson on behalf of Creditor Wells Fargo Bank, National Association
plamberson@winstead.com, pschneller@winstead.com;bdaniels@winstead.com

Tara LeDay on behalf of Creditor Texas Taxing Authorities
tleday@ecf.courtdrive.com;kmorriss@mvbalaw.com;vcovington@mvbalaw.com;bankruptcy@m
vbalaw.com;alocklin@mvbalaw.com

Daniel A. Lowenthal on behalf of Creditor Brandes Investment Partners LP
dalowenthal@pbwt.com

Kevin M Maraist on behalf of Creditor Archrock Partners Operating, LLC
kmaraist@albmlaw.com

Shelley B Marmon on behalf of Creditor Faith Operating Company, LP
Shelley B Marmon on behalf of Creditor Faith Ranch, LP
Shelley B Marmon on behalf of Creditor Wesley West Minerals, Ltd.
Shelley B Marmon on behalf of Creditor James Wendell West
samarmon@cjmhlaw.com

Jarrod B. Martin on behalf of Creditor Tributary Resources, LLC
jarrod.martin@chamberlainlaw.com,
Lara.Coleman@chamberlainlaw.com;atty_jmartin@bluestylus.com;3012436420@filings.docket
bird.com

John S Mayer on behalf of Creditor Caterpillar Financial Services Corporation
jmayer@rossbanks.com

Timothy J Mayer on behalf of Creditor Commonwealth Of Kentucky
timothy.mayer@ky.gov

Duston K McFaul on behalf of Creditor MUFG Union Bank, N.A.
txefilingnotice@sidley.com;duston-mcfaul-2509@ecf.pacerpro.com

Lauren A Michaels on behalf of Creditor Commonwealth of Pennsylvania
lmichaels@attorneygeneral.gov

John E Mitchell on behalf of Creditor ETC Katy Pipeline, Ltd.
John E Mitchell on behalf of Creditor ETC Texas Pipeline Ltd.
John E Mitchell on behalf of Creditor ETC Tiger Pipeline LLC
John E Mitchell on behalf of Creditor Energy Transfer Fuel, LP
John E Mitchell on behalf of Creditor Houston Pipe Line Company, LP
John E Mitchell on behalf of Creditor Oasis Pipeline L.P.
John E Mitchell on behalf of Creditor Sunoco Pipeline L.P.
John E Mitchell on behalf of Creditor Trade Star, LLC
john.mitchell@akerman.com

Carol E Momjian on behalf of Creditor Commonwealth of Pennsylvania
cmomjian@attorneygeneral.gov

Laura J Monroe on behalf of Creditor Dawson County Central Appraisal District, et al
lmbkr@pbfcm.com, krobertson@ecf.inforuptcy.com

Stephen M. Nagle on behalf of Interested Party New York State Department of Environmental
Conservation
Stephen.nagle@ag.ny.gov

John Thomas Oldham on behalf of Creditor Well Water Solutions and Rentals, Inc.
joldham@okinadams.com, bmoore@okinadams.com

Rosa R Orenstein on behalf of Creditor Dallas/Fort Worth International Airport Board, City of
Dallas, City of Fort Worth
rosa@orenstein-lg.com, nathan@orenstein-lg.com;melissa@orenstein-lg.com

Jean Paul Picou Overton on behalf of Creditor Complete Energy Services, Inc.
Jean Paul Picou Overton on behalf of Creditor H.B. Rentals, L.C.
Jean Paul Picou Overton on behalf of Creditor SPN Well Services, Inc.
Jean Paul Picou Overton on behalf of Creditor Workstrings International, L.L.C.
jeanpaul.overton@superiorenergy.com

Kristhy M Peguero on behalf of Debtor Brazos Valley Longhorn Finance Corp.
Kristhy M Peguero on behalf of Debtor Chesapeake Energy Corporation
Kristhy M Peguero on behalf of Debtor Chesapeake Energy Marketing, L.L.C.
Kristhy M Peguero on behalf of Debtor Chesapeake Royalty, L.L.C.
Kristhy M Peguero on behalf of Debtor Empress, L.L.C.
Kristhy M Peguero on behalf of Debtor Petromax E&P Burleson, LLC
kpeguero@jw.com, kgradney@jw.com;dtrevino@jw.com

Kiran A Phansalkar on behalf of Creditor Big Star Transportation LLC d/b/a Big Star Crude Co., LLC
Kiran A Phansalkar on behalf of Creditor Plains Marketing, L.P.
kphansalkar@cwlaw.com, lskinner@cwlaw.com;OKC_ECF@cwlaw.com;knewby@cwlaw.com

Thomas Pitta on behalf of Creditor The Bank of New York Mellon Trust Company, N.A.
tpitta@emmetmarvin.com

Veronica Ann Polnick on behalf of Debtor Brazos Valley Longhorn, L.L.C.
Veronica Ann Polnick on behalf of Debtor Chesapeake Exploration, L.L.C.
Veronica Ann Polnick on behalf of Debtor Chesapeake VRT, L.L.C.
Veronica Ann Polnick on behalf of Debtor Esquisto Resources II, LLC
Veronica Ann Polnick on behalf of Debtor Sparks Drive SWD, Inc.
vpolnick@jw.com, kgradney@jw.com;dtrevino@jw.com

Patricia Williams Prewitt on behalf of Creditor Plains Marketing, L.P.
pwp@pattiprewittlaw.com

Michael Robert Proctor on behalf of Creditor ECorp Resource Partners 1, LP
Michael Robert Proctor on behalf of Creditor Minion Trail Ltd
Michael Robert Proctor on behalf of Creditor Rock Creek Ranch Ltd
mproctor@bowlesrice.com, lcrown@bowlesrice.com

Jeffrey Philipp Prostok on behalf of Creditor Official Committee of Royalty Owners
jprostok@forsheyprostok.com, lbreedlove@forsheyprostok.com;calendar@forsheyprostok.com

Maegan Quejada on behalf of Creditor MUFG Union Bank, N.A.
mquejada@sidley.com, txefilingnotice@sidley.com;maegan-quejada-3302@ecf.pacerpro.com;efilingnotice@sidley.com

Michael P Ridulfo on behalf of Creditor VFS Leasing Co.
mridulfo@krcl.com, rcoles@krcl.com

Edward L Ripley on behalf of Creditor CNOOC Energy U.S.A. LLC
eripley@andrewsmyers.com

Suzanne K. Rosen on behalf of Creditor Official Committee of Royalty Owners
srosen@forsheyprostok.com, calendar@forsheyprostok.com

Judith W Ross on behalf of Creditor Petty Business Enterprises, LP, Petty Energy L.P. and their related entities
judith.ross@judithwross.com

Michael D Rubenstein on behalf of Creditor BP America Production Company
mdrubenstein@liskow.com, lschnabel@Liskow.com

Diane Wade Sanders on behalf of Creditor DeWitt County
Diane Wade Sanders on behalf of Creditor Goliad County
Diane Wade Sanders on behalf of Creditor Jim Wells CAD
Diane Wade Sanders on behalf of Creditor Lee County
Diane Wade Sanders on behalf of Creditor Nueces County
Diane Wade Sanders on behalf of Creditor Robertson County
Diane Wade Sanders on behalf of Creditor Webb CISD
Diane Wade Sanders on behalf of Creditor Zapata County
austin.bankruptcy@publicans.com

Chad L Schexnayder on behalf of Creditor Liberty Mutual Insurance Company
Chad L Schexnayder on behalf of Creditor Safeco Insurance Company of America
CLS@JHC.law, SH@JHC.law;DOCKET@JHC.LAW

Callan Clark Searcy on behalf of Creditor Genesis Endeavors, LLC
ccsearcy@jrsearcylaw.com, jrspc@jrsearcylaw.com

Cameron A. Secord on behalf of Debtor Chesapeake Appalachia, L.L.C.
Cameron A. Secord on behalf of Debtor Chesapeake NG Ventures Corporation
Cameron A. Secord on behalf of Debtor Compass Manufacturing, L.L.C.
Cameron A. Secord on behalf of Debtor Midcon Compression, L.L.C.
Cameron A. Secord on behalf of Debtor Wildhorse Resources Management Company, LLC
csecord@jw.com, sdueitt@jw.com;ygalvin@jw.com

Ryan Michael Seidemann on behalf of Creditor State of Louisiana, Department of Natural
Resources, Office of Mineral Resources
seidemannr@ag.state.la.us, lentoc@ag.state.la.us

Lena K Seward on behalf of Creditor Commonwealth Of Kentucky
lena.seward@ky.gov

Owen Mark Sonik on behalf of Creditor Dimmit County, et al
Owen Mark Sonik on behalf of Creditor Sheldon Independent School District
osonik@pbfcm.com, tpope@pbfcm.com;osonik@ecf.inforuptcy.com;mvaldez@pbfcm.com

Steven W Soule on behalf of Creditor Targa Pipeline Mid-Continent WestOk LLC
ssoule@hallestill.com

Stephen Douglas Statham on behalf of U.S. Trustee US Trustee
stephen.statham@usdoj.gov

Don Stecker on behalf of Creditor Bexar County
sanantonio.bankruptcy@lgbs.com

Jason L Swartley on behalf of Creditor Commonwealth of Pennsylvania
jswartley@attorneygeneral.gov

US Trustee
USTPRegion07.HU.ECF@USDOJ.GOV

Kiran K Vakamudi on behalf of Creditor Ad Hoc Group of FLLO Term Loan Lenders
kvakamudi@velaw.com

Chrysanthe E Vassiles on behalf of Creditor Douglas Houck Trust
cvassiles@bmsa.com, cvassiles@ecf.courtdrive.com;wpoling@ecf.courtdrive.com

Julie Ann Walker on behalf of Creditor J-W Power Company
jwalker@milmen.com, ndoyle@milmen.com

Michael D Warner on behalf of Interested Party Glas USA LLC
mwarner@coleschotz.com, klabrada@coleschotz.com

Mark A Weisbart on behalf of Creditor Mesa Natural Gas Solutions, LLC
mark@weisbartlaw.net, tsimmons@weisbartlaw.net

Broocks McClure Wilson on behalf of Creditor MUFG Union Bank, N.A.
mackwilson@paulhastings.com

Jolene M Wise on behalf of Interested Party Jolene Wise U.S. Securities and Exchange Commission
wisej@sec.gov

Ryan Coel Wooten on behalf of Creditor Royal Bank of Canada
rwooten@orrick.com,
casestream@ecf.courtdrive.com;nsabatino@orrick.com;mperrigino@orrick.com

/s/ Suzanne K. Rosen
Suzanne K. Rosen

L:\BFORSHEY\Chesapeake (RO Committee-CrR) #6092\Pleadings 20-33233 txsb\RO Committee Limited Objection to DIP Financing 7.28.2020.docx

# EXHIBIT A
## [Chesapeake Pending Litigation Cases]

**Exhibit A**

**Known Chesapeake Lawsuits**

| Court | Case Number | Case Title | Status/Type of case | Number of Plaintiffs | Acreage/Amounts Involved |
|---|---|---|---|---|---|
| Tarrant County District Court | 048-000000-15 096-000003-15 | IN RE: CHESAPEAKE BARNETT ROYALTY LITIGATION #2 | Barnett Shale Royalty case. | 24 | Multiple leases |
| Bexar County District Court | 2016ci22093 | In Re: Chesapeake Eagle Ford Royalty Litigation | Eagle Ford Shale Royalty case. | 170 | Multiple leases |
| Bexar County District Court | 2020CI07957 | Petty Business Enterprises, L.P. et al. v. Chesapeake Exploration, LLC et al. | Eagle Ford Shale Royalty case | 30 | Multiple leases |
| Middle District of Pennsylvania | 3:2015cv00340 | A & B Campbell Family et al v. Chesakpeake Energy Corporation  et al | Royalty case. Case is stayed pending issues to be addressed by the Pennsylvania Supreme Court. | 87 | Multiple leases |
| Ohio Northern District Court | 4:2013cv00391 | Ritteger et al v. Chesapeake Exploration et al | This case was remanded back to state court | | |
| Ohio Northern District Court 6th USCOA | 5:2017cv01695 0:2020cv03043 | Bounty Minerals, LLC v. Chesapeake Exploration, L.L.C. et al | This is royalty suit in which Ds MSJ was granted which resulted in the case being appealed. | 1 | Multiple leases |
| Ohio Northern District Court 6th USCOA | 4:15cv02449 | Zehentbauer Family Land LP et. al. v. Chesapeake Exploration, L.L.C. et.al. | This is royalty suit in which Ds MSJ was granted which resulted in the case being appealed. | 1 | Multiple leases |
| Ohio Northern District Court 6th USCOA | 4:2015cv02591 0:2019cv03942 | Henceroth et al v Chesapeake Exploration, LLC | USCOA-6th Circuit - on appeal from Northern District of Ohio at Youngstown. This is a royalty suit. | 2 | No information on the lease or acreage involved |
| Bexar County District Court | CJ-2018-26 | CTF LTD et al v. Chesapeake Exploration LLC et al | Breach of ALOV lease form for wells in Ohio.  Action was remanded from W.D. Oklahoma to state court for failure to establish federal subject matter jurisdiction. | 8 | Multiple leases |
| Wyoming District Court | 1:2020cv00029 | Wellstar Corporation et al v. Chesapeake Operating LLC, Chesapeake Exploration LLC, and CNOOC Energy USA LLC | Complaint filed - Breach of Contract, Violation of WY Royalty Payment Act, Conversion, Declaratory Relief | 2 | Multiple leases |
| Middle District of Pennsylvania | 4:16cv01343 | Patricia L. Abrams, et al., v. Chesapeake Energy Corp., et al. | Royalty case. Case is stayed pending issues to be addressed by the Pennsylvania Supreme Court. | 352 | Multiple leases |
| Middle District of Pennsylvania | 4:16cv01345 | Paul H. Arnold, et al., v. Chesapeake Energy Corp., et al. | Royalty case. Case is stayed pending issues to be addressed by the Pennsylvania Supreme Court. | 213 | Multiple leases |
| Middle District of Pennsylvania | 4:16cv01346 | Robert C. Abrams, Jr., et al., v. Chesapeake Energy Corp., et al. | Royalty case. Case is stayed pending issues to be addressed by the Pennsylvania Supreme Court. | 76 | Multiple leases |

**Exhibit A**

**Known Chesapeake Lawsuits**

| | | | | | |
|---|---|---|---|---|---|
| Middle District of Pennsylvania | 4:16cv01347 | Kylie E. Ahern, et al., v. Chesapeake Energy Corp., et al. | Royalty case. Case is stayed pending issues to be addressed by the Pennsylvania Supreme Court. | 32 | Multiple leases |
| Middle District of Pennsylvania | 3:16cv00456 | Timothy Tyler, et al., v. Chesapeake Energy Corp., et al. | Royalty case. Case is stayed pending issues to be addressed by the Pennsylvania Supreme Court. | 6 | Multiple leases |
| Middle District of Pennsylvania | 3:13cv02289 | Demchak Partners Limited Partnership, v. Chesapeake Energy Corp., et al. | Royalty case. Case is stayed pending issues to be addressed by the Pennsylvania Supreme Court. | Class | Multiple leases |
| Western District of Oklahoma | 5:18-cv-00565 | Dennis R Taylor, et al., v. Chesapeake Energy Corp., et al. | Jury Trial set for 1/12/2021. | 5 | Multiple leases |
| Western District of Oklahoma | 5:16-cv-00776 | CEOG, LLC, et al. v. Chesapeake Operating, LLC, et al. | Order Granting Class Action Settlement filed May 26, 2020. | Class | Multiple leases |
| Middle District of Pennsylvania | 3:14-cv-00591 | James L. Brown, v. Chesapeake Energy Corp., et al. | Royalty case with settlement stayed pending AG's action. | Class | Multiple leases |
| Middle District of Pennsylvania | 3:14-cv-01197 | Suessenbach v. Chesapeake Energy Corp., et al. | Royalty case with settlement stayed pending AG's action. | Class | Multiple leases |