**<u>Exhibit B</u>**

**Engagement Letter**

# AlixPartners

July 16, 2020

The Official Committee of Unsecured Creditors
of Chesapeake Energy Corporation

**Re:     Agreement for Financial Advisory and Consulting Services**

Dear Committee Members:

This letter, together with the attached Schedule(s) and General Terms and Conditions, sets forth the agreement ("Agreement") between AlixPartners, LLP ("AlixPartners") and the Official Committee of Unsecured Creditors (the "Committee") of Chesapeake Energy Corporation and certain of its affiliates and subsidiaries (the "Company"), for the engagement of AlixPartners to provide financial advisory and consulting services to the Committee with respect to the Company's Chapter 11 reorganization cases currently pending before the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s) and General Terms and Conditions.  The Committee and AlixPartners are each a "party," and together the "parties."

**Objectives and Tasks**

AlixPartners will provide advice to and assist the Committee in evaluating and implementing strategic and tactical options through the bankruptcy and restructuring process. A general list of tasks AlixPartners will likely perform is as follows:

- Review and evaluate the Company's current financial condition, business plans and cash and financial forecasts, and periodically report to the Committee regarding the same.

- Review the Company's cash management, tax sharing and intercompany accounting systems, practices and procedures.

- Review and investigate: (i) related party transactions, including those between the Company and non-debtor subsidiaries and affiliates (including, but not limited to, shared services expenses and tax allocations) and (ii) selected other pre-petition transactions.

- Identify and/or review potential preference payments, fraudulent conveyances and other causes of action that the various Company estates may hold against third parties, including each other.

- Analyze the Company's assets and claims and assess potential recoveries to the various creditor constituencies under different scenarios, in coordination with the Committee's investment banker.

- Support the Committee's investment banker's evaluation of proposed asset sales, as required.

# AlixPartners

The Official Committee of Unsecured Creditors of Chesapeake Energy Corporation
July 16, 2020
Page 2 of 10

- Assist in the development and/or review of the Company's plan of reorganization and disclosure statement.

- Review and evaluate court motions filed or to be filed by the Company or any other parties-in-interest, as appropriate.

- Render expert testimony and litigation support services, including e-discovery services, as requested from time to time by the Committee and its counsel, regarding any of the matters to which AlixPartners is providing services.

- Attend Committee meetings and court hearings as may be required in the role of advisors to the Committee.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

In addition, the Committee acknowledges and agrees it may be necessary and appropriate for AlixPartners to review certain information with the Company or its advisors for accuracy and validity before submitting its Work Product to the Committee.

**Staffing**

David MacGreevey will be the managing director responsible for the overall engagement, assisted by a staff of consultants at various levels who have a wide range of skills and abilities related to this type of assignment. In addition, AlixPartners has relationships with, and may periodically use, independent contractors with specialized skills and abilities to assist in this engagement.

We will periodically review the staffing levels to determine the proper mix for this assignment. We will only use the necessary staff required to complete the requested or planned tasks.

**Timing and Fees**

AlixPartners commenced this engagement on July 14, 2020, pending Bankruptcy Court approval.

The Committee will promptly apply to the Bankruptcy Court to obtain approval of AlixPartners' retention nunc pro tunc to the date of this Agreement. AlixPartners acknowledges that its retention and the terms thereof are subject to Bankruptcy Court approval.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1.

# AlixPartners

The Official Committee of Unsecured Creditors of Chesapeake Energy Corporation
July 16, 2020
Page 3 of 10

* * *

If these terms meet with your approval, please sign and return a copy of this Agreement.

**Terms and Conditions**

The Committee agrees to all the terms of the Agreement, and the Committee agrees to use its best efforts, through the application for retention of AlixPartners, to have the Company provide an indemnification to AlixPartners and its principals, employees, subcontractors, representatives, agents and counsel, as set forth in Section 7 of the General Terms and Conditions. Section 7 of the General Terms and Conditions provides that the Company will indemnify AlixPartners against certain claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP


David MacGreevey
Managing Director

Acknowledged and Agreed to:

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CHESAPEAKE ENERGY CORPORATION

By:

Its:

Dated:

On behalf of the Official Committee of Unsecured Creditors of The Official Committee of Unsecured Creditors of Chesapeake Energy Corporation, and certain of its affiliates and subsidiaries

By:

Its:  Co-Chair

Dated:   August 10, 2020

**Alix**Partners

**Schedule 1**

**Fees and Expenses**

1. **Fees:** AlixPartners' fees will be based on the hours spent by AlixPartners personnel at AlixPartners' hourly rates, which are:

| | |
|---|---|
| Managing Director | US$1,000 – US$1,195 |
| Director | US$800 – US$950 |
| Senior Vice President | US$645 – US$735 |
| Vice President | US$470 – US$630 |
| Consultant | US$175 – US$465 |
| Paraprofessional | US$295 – US$315 |

AlixPartners reviews and revises its billing rates on January 1 of each year.

2. **Success Fee:** AlixPartners does not seek a success fee in connection with this engagement.

3. **Expenses:** In addition to the Fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals.

4. **Break Fee:** AlixPartners does not seek a break fee in connection with this engagement.

5. **Payment:** AlixPartners will submit monthly invoices for services rendered and expenses incurred. All invoices shall be due and payable immediately upon receipt.

**AlixPartners**

**Data Protection Schedule**

**Processing, Personal Data and Data Subjects**

In connection with this Agreement, AlixPartners will not be receiving any Personal Data subject to the General Data Protection Regulation ((*EU) 2016/679*) (the "GDPR") or any applicable legislation implementing any provisions of the GDPR as may be enacted time to time (together the "Data Protection Legislation").

---

**AlixPartners, LLP**
General Terms and Conditions

---

These General Terms and Conditions ("Terms") are incorporated into the Agreement to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

**Section 1. Committee Responsibilities**

The Committee will undertake responsibilities as set forth below:

1.  Use all reasonable efforts to cause the Company to provide AlixPartners with (i) reliable and accurate detailed information, materials, and documentation concerning the Company; and (ii) access to management and other representatives of the Company as reasonably requested by AlixPartners.

2.  Make decisions and take future actions, as the Committee determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners' delivery of the services and the fees charged are dependent on (i) the Committee's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Committee's management.

**Section 2. Retainer, Billing, Payments and Taxes**

**Retainer.** Upon execution of the Agreement, the Company shall promptly pay AlixPartners the agreed-upon advance retainer, if any, as set forth on Schedule 1. Invoices shall be offset against the retainer. Payments of invoices will be used to replenish the retainer to the agreed-upon amount. Any unearned portion of the retainer will be applied against the final invoice or returned to the Company at the end of the engagement.

**Billing and Payments.** All payments to be made to AlixPartners shall be due and payable upon delivery of invoice via check or wire transfer to AlixPartners' bank account, as shown on the invoice. All amounts invoiced are based on services rendered and expenses incurred to date, and are not contingent upon future services or Work Product (as defined below), or the outcome of any case or matter. "Fees," as used in this Agreement, shall include all amounts payable by the Company to AlixPartners in accordance with Schedule 1, including any success fee or break fee, but excluding reimbursable expenses.

**Taxes.** AlixPartners' fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on AlixPartners' income generally). If AlixPartners' fees are subject to any taxes, such as State sales tax, Goods and Services Tax/Harmonized Sales Tax or Value Added Tax, then AlixPartners will include such taxes on its invoices as separate line items.

**Section 3. Relationship of the Parties**

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Committee.

AlixPartners is providing advisory and consulting services only, and will not make decisions for the Committee. While AlixPartners may from time to time suggest options available to the Committee, the ultimate decision as to such options rests with the Committee, and AlixPartners makes no promise or guarantee about the outcome of the Committee's matters.

AlixPartners is not an accounting firm and does not give accounting advice or guidance. While AlixPartners' work may involve analysis of accounting, business and other related records, this engagement does not constitute an audit in accordance with either generally accepted auditing standards or the standards of the Public Company Accounting Oversight Board or any other similar governing body.

AlixPartners is not authorized to practice law or provide legal advice. No services provided under this Agreement are intended to be, nor should be construed to be, legal services.

**Section 4. Confidentiality**

Each party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other party during the performance of AlixPartners' services hereunder (the "Confidential Information"), and neither party will disclose any Confidential Information to any other person or entity, except as may be required by the Bankruptcy Court order or otherwise agreed in writing. "Confidential Information" includes non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of the Committee members, the Company or AlixPartners its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, AlixPartners from making such disclosures of Confidential Information that AlixPartners reasonably believes are required by law or any regulatory requirement or authority to clear client

| **AlixPartners, LLP** |
|---|
| General Terms and Conditions |

conflicts. AlixPartners may also disclose Confidential Information to its partners, directors, officers, employees, independent contractors and agents who have a need to know the Confidential Information as it relates to the services being provided under this Agreement, provided AlixPartners is responsible for any breach of these confidentiality obligations by any such parties. AlixPartners may make reasonable disclosures of Confidential Information to third parties, such as the Committee's suppliers and/or vendors, in connection with the performance of AlixPartners' obligations and assignments hereunder, provided AlixPartners reasonably believes that such third party is bound by confidentiality obligations. In addition, AlixPartners will have the right to disclose to any person that it provided services to the Committee and a general description of such services, but shall not provide any other information about its involvement with the Committee. The obligations of the parties under this Section 4 shall survive the end of any engagement between the parties for a period of three (3) years.

Work Product (as defined in Section 5) may contain AlixPartners proprietary information or other information that is deemed to be Confidential Information for purposes of this Agreement, and the parties may not want to make public. Therefore, the parties acknowledge and agree that (i) all information (written or oral), including advice and Work Product (as defined in Section 5), generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Committee in connection with this Agreement, and (ii) no such information shall be used for any other purpose or disseminated to any third parties, or, quoted or referred to with or without attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval (not to be unreasonably withheld or delayed), except as required by law.  The Committee may not rely on any draft or interim Work Product.

### Section 5. Intellectual Property

All analyses, final reports, presentation materials, and other work product (other than any Engagement Tools, as defined below) that AlixPartners creates or develops specifically for the Committee and delivers to the Committee as part of this engagement (collectively known as "Work Product") shall be owned by the Committee and shall constitute Committee Confidential Information as defined above. AlixPartners may retain copies of the Work Product and any Confidential Information necessary to support the Work Product subject to its confidentiality obligations in this Agreement. In addition, the Committee acknowledges and agrees that before submitting its Work Product to the Committee, it may be necessary and appropriate for AlixPartners to review certain information with the Company or its advisors for accuracy and validity.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, templates, models, utilities and other intellectual property that AlixPartners has created, acquired or developed or will create, acquire or develop (collectively, "Engagement Tools"), are, and shall be,

the sole and exclusive property of AlixPartners. The Committee shall not acquire any interest in the Engagement Tools other than a limited, worldwide, perpetual, non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product.

The Committee acknowledges and agrees, except as otherwise set forth in this Agreement, that any Engagement Tools provided to the Committee are provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

### Section 6. Framework of the Engagement

The Committee acknowledges that it is retaining AlixPartners solely to assist and advise the Committee as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

### Section 7. Indemnification and Other Matters

The Committee agrees to use its best efforts, through the application for retention of AlixPartners, to have the Company provide an indemnification to AlixPartners Parties (defined below), whereby:

The Company shall indemnify, hold harmless and defend AlixPartners and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "AlixPartners Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement. The Company shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel. If, in the opinion of counsel, representing both parties in the matter covered by this indemnification creates a potential conflict of interest, the AlixPartners Parties may engage separate counsel to represent them at the Company's expense.

The Company's indemnification obligations in this Section 7 shall be primary to, and without allocation against, any similar indemnification obligations that AlixPartners may offer to its personnel generally.

AlixPartners is not responsible for any third-party products or services separately procured by the Committee. The Committee's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not against AlixPartners, whether or not AlixPartners is instrumental in procuring such third-party product or service.

### Section 8. Governing Law and Arbitration

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed

entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in New York, New York under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing, either party may proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement for any claim in connection with (i) the non-payment of Fees or expenses due under this Agreement, or (ii) the non-performance of obligations under Section 7.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

### Section 9. Termination and Survival

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that upon any such termination, AlixPartners agrees to transition any work product to the Committee or its designee. In the event of termination, AlixPartners will be entitled to the payment of the professional fees and expenses incurred due through the date of termination as well as any professional fees and costs incurred to transition its work. The foregoing shall, in any event, be subject to Bankruptcy Court approval and shall survive termination of the Agreement.

Sections 2, 4, 5, 7, 8, 9, 10, 11, 12, 13 and 14 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

### Section 10. Limitation of Liability

THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE TO THE COMMITTEE, THE COMMITTEE MEMBERS, THE COMPANY, OR ANY PARTY ASSERTING CLAIMS ON BEHALF OF THE COMPANY, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE, BAD FAITH, SELF-DEALING OR INTENTIONAL MISCONDUCT OF ALIXPARTNERS. THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, LOST PROFITS, LOST DATA, REPUTATIONAL DAMAGES, PUNITIVE DAMAGES OR ANY OTHER SIMILAR DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE ALIXPARTNERS PARTIES' AGGREGATE LIABILITY, WHETHER IN TORT, CONTRACT, OR OTHERWISE, IS LIMITED TO THE AMOUNT OF FEES PAID TO ALIXPARTNERS FOR SERVICES UNDER THIS AGREEMENT (OR IF THE CLAIM ARISES FROM AN ADDENDUM TO THIS AGREEMENT, UNDER THE APPLICABLE ADDENDUM) (THE "LIABILITY CAP"). The Liability Cap is the total limit of the AlixPartners Parties' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Committee members, to any other parties hereto, and to any others making claims relating to the work performed by AlixPartners pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the AlixPartners Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against the AlixPartners Parties pursuant to this Agreement exceed the Liability Cap.

### Section 11. General

**Equitable Remedies.** Each party acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of the Agreement. Each party agrees that the non-breaching party shall have the right to seek a restraining order and/or an injunction for any breach of the Agreement. If any provision of the Agreement is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** This Agreement, including the letter, the Terms and the schedule(s), contains the entire understanding of the parties relating to the services to be rendered by AlixPartners and supersedes any other communications, agreements, understandings, representations, or estimates among the parties (relating to the subject matter hereof) with respect to such services. The Agreement, including the letter, the Terms and the schedule(s), may not be amended or modified in any respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Related Matters.** If an AlixPartners Party is required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Committee shall reimburse AlixPartners for any professional time and expenses (including reasonable external and internal legal costs and e-discovery costs) incurred to respond to the request, except in cases where an AlixPartners Party is a party to the proceeding or the subject of the investigation.

AlixPartners will have the right to obtain independent legal counsel to obtain advice with respect to its

**AlixPartners, LLP**
General Terms and Conditions

services under this engagement. The Committee will reimburse AlixPartners' for the reasonable fees and expenses of such independent legal counsel.

**Joint and Several.** If more than one party signs this Agreement, the liability of each party shall be joint and several. In addition, in the event more than one entity is included in the definition of Company under this Agreement, the Company shall cause each other entity which is included in the definition of Company to be jointly and severally liable for the Company's liabilities and obligations set forth in this Agreement.

**Third-Party Beneficiaries.** The AlixPartners Parties shall be third-party beneficiaries with respect to Section 7 hereof.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

> AlixPartners, LLP
> 2000 Town Center, Suite 2400
> Southfield, MI 48075
> Attention: General Counsel

and if to the Committee, to its retained counsel. All notices under the Agreement shall be sufficient only if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.

### Section 12. Bankruptcy Related Matters

The Committee shall apply promptly to the Bankruptcy Court for approval of the Committee's retention of AlixPartners under the terms of the Agreement. The form of retention application and proposed order shall be reasonably acceptable to AlixPartners. AlixPartners shall have no obligation to provide services unless AlixPartners' retention under the terms of the Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to AlixPartners. The Committee shall assist, or cause their counsel to assist, with filing, serving and noticing of papers related to AlixPartners' fee and expense matters.

The Committee and AlixPartners agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement.

AlixPartners will have the right to obtain independent legal counsel to obtain advice with respect to its services under this engagement. The Committee will reimburse AlixPartners' for the reasonable fees and expenses of such independent legal counsel.

AlixPartners acknowledges that, during the pendency of any Bankruptcy Court approved retention, the indemnification provisions and Liability Cap set forth above may be subject to modification as stated within the Bankruptcy Court's retention order.

Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the date of filing, AlixPartners may have incurred but not billed fees and reimbursable expenses which relate to the prepetition period. AlixPartners will seek Bankruptcy Court approval to apply the retainer to these amounts.

If AlixPartners finds it desirable to augment its consulting staff with independent contractors (an "I/C") in this case, (i) AlixPartners will file, and require the I/C to file, 2014 affidavits indicating that the I/C has reviewed the list of the interested parties in this case, disclosing the I/C's relationships, if any, with the interested parties and indicating that the I/C is disinterested; (ii) the I/C must remain disinterested during the time that AlixPartners is involved in providing services on behalf of the Committee; and (iii) the I/C must represent that he/she will not work for the Committee or other parties in interest in this case during the time AlixPartners is involved in providing services to the Committee. AlixPartners' standard practice is to charge for an I/C's services at the rate equal to the compensation provided by AlixPartners to such I/C.

### Section 13. Data Protection

All capitalized terms used in this Section and not otherwise defined in this Agreement shall have the meanings given to them in the General Data Protection Regulation ((EU) 2016/679) (the "GDPR") and all applicable legislation implementing any provisions of the GDPR as may be enacted from time to time (together the "Data Protection Legislation").

The parties acknowledge and agree that, in performing services pursuant to this Agreement, AlixPartners may from time to time be required to Process certain Personal Data on behalf of the Committee. In such cases: (1) the Committee will ensure that it is lawfully permitted to transfer the Personal Data to AlixPartners for the purposes of AlixPartners performing services under this Agreement; and (2) AlixPartners shall (i) act as the Committee's Processor for the purposes of the Data Protection Legislation; (ii) only Process such Personal Data in accordance with the Committee's written instructions (including when making an international transfer of Personal Data) unless required to do so by law; (iii) implement appropriate technical and organisational measures to reasonably protect that Personal Data against unauthorized or unlawful Processing and accidental, unauthorized or unlawful loss, destruction, alteration, damage, disclosure or access; and (iv) obtain commitments from all AlixPartners' personnel who have access to and/or Process such Personal Data to keep such Personal Data confidential.

If AlixPartners is Processing Personal Data relating to individuals located in the EU or otherwise subject to the Data Protection Legislation, (x) AlixPartners and the Committee shall each comply with all relevant provisions of the Data Protection Legislation, and (y) the nature and extent of such Processing shall be set out in the GDPR Data Protection Schedule of this Agreement. AlixPartners shall, in relation to any

**AlixPartners, LLP**
General Terms and Conditions

Personal Data processed by AlixPartners in connection with this Agreement: (1) at the Committee's cost, assist the Committee in complying with its obligations as the Controller (or as Processor, as the case may be) of the Personal Data, to respond to requests from Data Subjects exercising their rights set out in Articles 12 to 22 of the GDPR; (2) notify the Committee without undue delay on becoming aware of a Personal Data Breach; (3) upon termination or expiration of this Agreement, at the written direction of the Committee either delete or return any Personal Data and any copies thereof to the Committee (except to the extent AlixPartners is required by law to retain such Personal Data, and except for Personal Data located on AlixPartners' disaster recovery or backup systems where it will be destroyed upon the normal expiration of the backup files); and (4) maintain appropriate records to demonstrate compliance with this Section.

AlixPartners is part of an international business, headquartered in the United States of America ("US"). AlixPartners may in the ordinary course of its business, including the performance of the services under this Agreement, transfer Personal Data received outside the US to its US-based affiliates. AlixPartners' US-based affiliates are certified under the EU-US Privacy Shield framework and any transfer of Personal Data from outside the US to its US-based affiliates will be transferred subject to, and in accordance with, the Privacy Shield requirements. AlixPartners' entities located in the EU have also entered into standard data protection clauses (in accordance with Article 46.2 (c) of the GDPR) with their non-EU-based affiliates. The Committee acknowledges and agrees that AlixPartners, as reasonably required for the performance of the services pursuant to this Agreement, be permitted to transfer Personal Data to its affiliates, subject to, and in accordance with, the Privacy Shield requirements and/or the aforementioned standard data protection clauses. Except as allowed above, AlixPartners shall not transfer any Personal Data received in the EU and subject to the Data Protection Legislation outside of the European Economic Area without the prior written consent of the Committee.

The Committee consents to AlixPartners appointing third party Processors of Personal Data under this Agreement. AlixPartners confirms that it will enter into a written agreement with any third-party Processor prior to supplying them with the Personal Data, incorporating terms which are substantially similar to those set forth in this Section. As between the Committee and AlixPartners, AlixPartners shall remain fully liable for all acts or omissions of any third-party Processor appointed by AlixPartners pursuant to this paragraph.