## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## DEBTORS' MOTION
## FOR ENTRY OF AN ORDER
## (I) AUTHORIZING THE REJECTION OF
## CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
## EFFECTIVE AS OF AUGUST 17, 2020 AND (II) GRANTING RELATED RELIEF

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")[2] respectfully state the following in support of this motion:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Domenic J. Dell'Osso, Jr., Executive Vice President and Chief Financial Officer of Chesapeake Energy Corporation in Support of Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), on June 28, 2020 (the "<u>Petition Date</u>").

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"): (a) authorizing the Debtors to reject certain executory contracts and unexpired leases identified on Exhibit A to the Order (collectively, the "Contracts and Leases"), effective as of August 17, 2020, and (b) granting related relief. In support of this motion, the Debtors submit the *Declaration of John Stuart in Support of the Debtors' Motion for Entry of an Order (I) Authorizing the Rejection of Certain Executory Contracts and Unexpired Leases Effective as of August 17, 2020 and (II) Granting Related Relief* (the "Stuart Declaration"), filed contemporaneously herewith.

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 6004 and 6006, and rule and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Contracts and Leases to Be Rejected**

5. In the lead up to and in the months following commencement of these chapter 11 cases, the Debtors undertook an analysis of certain of their executory contracts and unexpired

leases.  As a result of this ongoing analysis, the Debtors determined that the Contracts and Leases identified on <u>Exhibit A</u> to the Order are unnecessary and burdensome to the Debtors' estates and should be rejected.  The Contracts and Leases are described in more detail below:

**I.      IT Agreements.**

6.      The Debtors are parties to three contracts related to information technology services (collectively, the "<u>IT Agreements</u>").  One of the IT Agreements is a subscription-based research contract with Gartner Inc. (the "<u>Gartner Agreement</u>") that provides the Debtors with membership access to industry data.  The Debtors pay approximately $441,000 per year under the Gartner Agreement and have one annual payment remaining.  The Debtors seek to reject the Gartner Agreement because the Debtors no longer use the industry data provided thereunder.

7.      The Debtors are parties to two agreements with Rimini Street, Inc. (the "<u>Rimini Street Agreements</u>") for Oracle Database and technology support services.  The Debtors pay approximately $260,000 annually on account of the Rimini Street Agreements, and have 14 annual payments remaining under each Rimini Street Agreement.  The Debtors seek to reject the Rimini Street Agreements because they can maintain the Oracle Database without the extra support provided thereunder.

**II.     Oklahoma City Lease.**

8.      On February 28, 2006, Debtor Chesapeake Land Company, L.L.C. ("<u>Chesapeake Land</u>") and 3232 Nant, LLC entered into a lease agreement for office space located at 3232 West Britton Road, Oklahoma City, Oklahoma County, Oklahoma, commonly known as the Nantucket Office Building (the "<u>Oklahoma City Lease</u>").  The Debtors pay approximately $19,300 per month under the Oklahoma City Lease.  In addition, the Debtors are liable for all capital expenditure expenses.

3

9. Chesapeake Land sublet a portion of the space subject to the Oklahoma City Lease to Turner Oil & Gas Properties, Inc. ("Turner Oil & Gas") through January 31, 2021, and another portion of the space to Metro First Realty ("Metro First") on a month-to-month basis. The Debtors collect approximately $13,900 per month in the aggregate in connection with the subleases.

10. The Debtors seek to reject the Oklahoma City Lease and the related subleases to avoid continuing to pay approximately $5,400 per month on account of space they are not using and avoid any potential near term capital expenditures under the Oklahoma City Lease, including on account of a new roof, AC system, and windows. While Turner Oil & Gas and Metro First continue to occupy the premises pursuant to their respective sublease, the Debtors do not occupy any portion of the Oklahoma City Lease office space.

### III. Fort Worth Lease.

11. On August 28, 2018, WildHorse Resource Development Corporation ("WildHorse") and Sundance Plaza Properties LLC ("Sundance") entered into a lease agreement for office space located at Suite 750 in the building commonly known as the Carnegie Building, Fort Worth, Texas, on the north one-half of Block 76, Original City Addition to the City of Fort Worth, Tarrant County, Texas (the "Fort Worth Lease"). In February 2019, the Debtors acquired the Fort Worth Lease in connection with the WildHorse merger. WildHorse assigned its interests in the Fort Worth Lease to Debtor WildHorse Resources II, LLC on February 1, 2019.

12. The Debtors pay approximately $24,300 per month under the Fort Worth Lease. The Debtors are obligated to pay approximately $327,000 over the remaining 13 month life of the Fort Worth Lease. The Debtors do not occupy the Fort Worth Lease office space. As a result, the Debtors seek to reject the Fort Worth Lease to avoid paying unnecessary expenses for no benefit.

**IV.     Woodward Lease.**

13.     On January 12, 2016, Debtor Chesapeake Land Development Company, L.L.C. and W-L Investments, LLC entered into a lease agreement for office space located at 8912 State Hwy 15, Woodward, Oklahoma (the "Woodward Lease").  The Debtors pay approximately $7,600 per month under the Woodward Lease and have approximately $217,000 in rent obligations remaining over the 28 month life of the Woodward Lease.  The Debtors do not occupy the Woodward Lease office space.  As a result, the Debtors seek to reject the Woodward Lease to avoid paying unnecessary expenses for no benefit.

14.     In total, the Debtors' estates would save an estimated $4,700,000 by rejecting the Contracts and Leases, effective as of August 17, 2020.

## Basis for Relief

**I.     Rejection of the Contracts and Leases Constitutes a Sound Exercise of the Debtors' Reasonable Business Judgment.**

15.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)); *see also In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993) (noting that the purpose of rejection of executory contracts is to permit the debtor-in-possession to renounce title to and abandon burdensome property).

16.     A debtor's rejection of an executory contract or unexpired lease is ordinarily governed by the "business judgment" standard. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("It is well established that 'the question whether a lease

5

should be rejected . . . is one of business judgment.'" (quoting *Grp. of Institutional Inv'rs v. Chicago, M., St. P. & P. R. Co.*, 318 U.S. 523, 550 (1943))); *see also In re Texas Sheet Metals, Inc.*, 90 B.R. 260, 264 (Bankr. S.D. Tex. 1988) ("The traditional business judgment standard governs the rejection of ordinary executory contracts."). The business judgment standard requires a court to approve a debtor's business decision unless that decision is the product of "bad faith, or of whim, or caprice." *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) *citing Wheeling–Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling–Pittsburgh Steel Corp.*), 72 B.R. 845, 849–50 (Bankr. W.D.Pa. 1987).

17. Rejection of an executory contract or an unexpired lease is appropriate where such rejection would benefit the estate. *See In re Pisces Energy, LLC*, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment."); *see also Orion Pictures*, 4 F.3d at 1098–99 (stating that section 365 of the Bankruptcy Code permits a debtor in possession, subject to court approval, to decide which executory contracts would be beneficial to reject). Upon finding that a debtor exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection under section 365(a) of the Bankruptcy Code. *See In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

18. The Debtors believe that rejection of the Contracts and Leases is well within their business judgment and is in the best interest of their estates. Absent rejection, the Contracts and

6

Leases impose ongoing obligations on the Debtors and their estates that constitute an unnecessary drain on the Debtors' resources compared to any benefits associated therewith. Specifically, the Debtors are obligated to pay approximately $4,700,000 over the life of the Contracts and Leases, for which their estates do not receive a comparable benefit. As discussed, the Debtors no longer require the goods and services provided under the Contracts and Leases. As a result, the Debtors determined in their business judgment that continuing to pay for such goods and services would be a waste of estate assets. Thus, the Debtors seek to reject the Contracts and Leases effective as of August 17, 2020, to avoid incurring unnecessary administrative expense claims thereunder. The Debtors respectfully assert that rejecting the Contracts and Leases is appropriate under the circumstances and reflects the Debtors' sound business judgment.

## II. Deeming Rejection of the Contracts and Leases Effective as of August 17, 2020 Is Appropriate.

19. Under sections 105(a) and 365(a) of the Bankruptcy Code, bankruptcy courts may grant retroactive rejection of an executory contract or unexpired lease based on a balancing of the equities of the case. *See, e.g.*, *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (granting retroactive relief for contract rejection where debtors were "receiving no benefit" from the lease and the contract counterparties "had unequivocal notice of Debtors' intent to reject prior to the filing of the Motions"); *In re O'Neil Theatres, Inc.*, 257 B.R. 806, 808 (Bankr. E.D. La. 2000) (granting retroactive relief based on the circumstances of the case); *In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (finding that "nothing precludes a bankruptcy court, based on the equities of the case, from approving" retroactive rejection); *see also In re Joseph C. Spiess Co.*, 145 B.R. 597, 606 (Bankr. N.D. Ill. 1992) ("[A] trustee's rejection of a lease should be retroactive to the date that the trustee takes affirmative steps to reject said lease.").

7

20. The balance of equities favors the relief requested herein. Without a retroactive date of rejection, the Debtors may be forced to incur unnecessary administrative expenses for the Contracts and Leases—agreements that impose unduly financial obligations on the Debtors. *See* 11 U.S.C. § 365(d)(3). Moreover, the counterparties to the Contracts and Leases will not be unduly prejudiced if the rejection is deemed effective as of August 17, 2020. Contemporaneously with the filing of this motion, the Debtors will cause notice of this motion to be served on the counterparties to the Contracts and Leases, thereby providing the counterparties sufficient opportunity to respond.

21. Accordingly, it is fair and equitable for the Court to authorize but not direct rejection of the Contracts and Leases identified on Exhibit A attached to the Order, effective as of August 17, 2020.

## **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

22. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Reservation of Rights**

23. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim

8

or other priority claim; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## Notice

24. The Debtors will provide notice of this motion to:  (a) the United States Trustee for the Southern District of Texas; (b) proposed counsel to the official committee of unsecured creditors; (c) proposed counsel to the official committee of royalty owners; (d) the administrative agent under the Debtors' debtor-in-possession credit facility and counsel thereto; (e) the administrative agent under the Debtors' prepetition revolving credit facility and counsel thereto; (f) the administrative agent for the Debtors' prepetition term loan facility and counsel thereto; (g) the indenture trustee for the Debtors' senior secured second lien notes and counsel thereto; (h) the indenture trustees for the Debtors' unsecured notes; (i) counsel to the ad hoc group of term loan lenders; (j) counsel to Franklin Advisers, Inc., as investment manager on behalf of certain funds and accounts; (k) the United States Attorney's Office for the Southern District of Texas; (l) the Internal Revenue Service; (m) the United States Securities and Exchange Commission; (n) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (n) the state attorneys general for states in which

the Debtors conduct business; (o) the counterparties to the Contracts and Leases; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
August 17, 2020

*/s/ Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| Kristhy M. Peguero (TX Bar No. 24102776) | Marc Kieselstein, P.C. (admitted *pro hac vice*) |
| Veronica A. Polnick (TX Bar No. 24079148) | Alexandra Schwarzman (admitted *pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | 300 North LaSalle Street |
| Houston, Texas 77010 | Chicago, Illinois 60654 |
| Telephone: (713) 752-4200 | Telephone: (312) 862-2000 |
| Facsimile: (713) 752-4221 | Facsimile: (312) 862-2200 |
| Email: mcavenaugh@jw.com | Email: patrick.nash@kirkland.com |
|        jwertz@jw.com |        marc.kieselstein@kirkland.com |
|        kpeguero@jw.com |        alexandra.schwarzman@kirkland.com |
|        vpolnick@jw.com | |
| | |
| *Co-Counsel to the Debtors* | *Co-Counsel to the Debtors* |
| *and Debtors in Possession* | *and Debtors in Possession* |

**Certificate of Service**

   I certify that on August 17, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                   */s/ Matthew D. Cavenaugh*
                   Matthew D. Cavenaugh