**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**ORDER (I) APPROVING BIDDING**
**PROCEDURES FOR THE SALE OF THE DEBTORS'**
**MID-CON ASSETS, (II) APPROVING BID PROTECTIONS,**
**(III) SCHEDULING CERTAIN DATES WITH RESPECT THERETO,**
**(IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND**
**(V) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES**

Upon the motion  (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), (a) authorizing and approving the Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** (the "Bidding Procedures"), (b) establishing certain dates and deadlines in connection with the Bidding Procedures, (c) approving the Bid Protections, (d) approving procedures for assuming and assigning certain executory contracts and unexpired leases, and certain related notices, (e) approving the Sale Notice, substantially in the form attached hereto as **Exhibit 2**, and (f) approving the Cure Notice, substantially in the form attached hereto as **Exhibit 3**, all as more fully set forth in the Motion; and the Court having reviewed any evidence in support of the Motion;

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake.  The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures (as defined herein), as applicable.

and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the Motion having been withdrawn with prejudice or overruled on the merits at the Hearing; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, **THE COURT HEREBY FINDS AS FOLLOWS**:[3]

A.  <u>Jurisdiction and Venue</u>.  The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.  <u>Bases for Relief</u>.  The bases for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014.

C.  <u>Notice of the Bidding Procedures Motion</u>.  As reflected in the certificate of service filed on [●] [Docket No. [●]] (the "<u>Certificate of Service</u>"), the Motion and the notice of the Hearing was served on the Court's electronic filing system and the Notice Parties.  The notice of the Motion and of the Hearing is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice of the Motion or the Hearing is necessary.  A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded under the circumstances.

---

[3]  The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052 made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

D.      Bidding Procedures.  The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures attached hereto as **Exhibit 1**, which are fair, reasonable, and appropriate under the circumstances and designed to maximize value for the benefit of the Debtors' estates, their creditors, and other parties in interest.

E.      Bid Protections. Subject to the noticing requirements set forth in this Order, the Bid Protections provided to any Stalking Horse Bidder, (i) are an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code, (ii) are commensurate to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Bidder, (iii) are fair, reasonable, and appropriate, including in light of the size and nature of the proposed Sale, the commitments that have been made, and the efforts that have been and will be expended by any Stalking Horse Bidder. The Bid Protections are necessary to induce a Stalking Horse Bidder to pursue the Sale and to be bound by the Stalking Horse Agreement.

F.      Assumption and Assignment Procedures.  The Cure Notice is reasonably calculated to provide counterparties to the Contracts to be assumed or assumed and assigned with proper notice of the intended assumption or assumption and assignment of their Contracts, any cure amounts, and the Assumption and Assignment Procedures, and no other or further notice of such intention, the cure amounts, or the Assumption and Assignment Procedures shall be required.

G.      Sale Notice.  The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, including the date, time, and place of the Auction (if one is held) and the Bidding Procedures and certain dates and deadlines related thereto, and no other or further notice of the Auction shall be required.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT**:

1.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are overruled and denied on the merits with prejudice.

**I.      <u>Important Dates and Deadlines.</u>**

2.      The following dates and deadlines regarding the Sale are hereby established, subject to the right of the Debtors to modify the following dates, provided notice is given in accordance with the terms of this Order:

| Event or Deadline | Date and Time |
|---|---|
| Deadline to Designate a Stalking Horse Bidder (if any) | October 8, 2020 |
| Qualified Bid Deadline | October 15, 2020, at 12:00 p.m. (prevailing Central Time) |
| Cure Objection Deadline | October 23, 2020, at 4:00 p.m. (prevailing Central Time) |
| Sale Objection Deadline | October 23, 2020 at 4:00 p.m. (prevailing Central Time); *provided, however,* that any objections to the manner in which the Auction was conducted and the identity of the Successful Bidder or Backup Bidder may be filed up to 24 hours prior to the Sale Hearing |
| Auction (if applicable) | An Auction will be held on October 27, 2020 at 10:00 a.m. (prevailing Central Time) via remote video |
| Sale Hearing | October 30, 2020, at 9:30 a.m. (prevailing Central Time) |

3.      *Successful Bidder.*  The Debtors shall present the results of the Auction (if any) or otherwise present the Successful Bidder (as defined in the Bidding Procedures) to the Court at the Sale Hearing.

## II.        **The Bidding Procedures.**

4.        The Bidding Procedures, attached hereto as **Exhibit 1** and incorporated by reference as though fully set forth herein, are hereby approved and the Debtors are authorized to solicit bids and conduct an Auction, if necessary, on the terms set forth in the Bidding Procedures.  The Bidding Procedures shall govern the submission, receipt, and analysis of all bids, and any party desiring to submit a bid on the Mid-Con Assets must do so strictly in accordance with the terms of the Bidding Procedures and this Order.  The Debtors are authorized to take all actions as are necessary or appropriate to implement the Bidding Procedures.

5.        Each bidder participating at an Auction (if any) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures and an Auction (if any) shall be transcribed or recorded.

6.        Pursuant to the Bidding Procedures, including any applicable consent and consultation rights therein, the Debtors may (a) determine which Qualified Bid is the highest or otherwise best offer, (b) at any time prior to entry of an Order of the Court approving the Successful Bid, reject any Bid (other than any Stalking Horse Bid (if any)) that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors, and (c) prior to conclusion of an Auction (if any), may impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases.

7.        If the Auction is cancelled, then the Debtors shall file a notice with the Court of such election within two business days of the determination of such election by the Debtors.  The deadline to object to the Sale shall be October 23, 2020 at 4:00 p.m. (prevailing Central Time); *provided, however,* that any objections to the manner in which the Auction was conducted and the

identity of the Successful Bidder or Backup Bidder may be filed up to 24 hours prior to the Sale Hearing.

8.          No person or entity, other than any Stalking Horse Bidder (if any), shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature in connection with such bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

## III.          **The Stalking Horse and Bid Protections.**

9.          Pursuant to the Bidding Procedures, including any applicable consent and consultation rights therein, the Debtors are authorized, but not directed, with the consent of the Consenting Stakeholders, to select one or more bidders to act as the Stalking Horse Bidder and enter into a Stalking Horse Agreement with such Stalking Horse Bidder.

10.          The Bid Protections are approved in their entirety and are payable in accordance with, and subject to the terms of, any Stalking Horse Agreement (if any).  Any Break-Up Fee or Expense Reimbursement in excess of 2% and 1%, respectively, of the purchase price contemplated by any Stalking Horse Agreement are not approved by this Order.  Except as expressly provided for herein or in the Stalking Horse Agreement (if any), no other termination payments are authorized or permitted under this Order.

11.          No later than three business days after the selection of a Stalking Horse Bidder (if such selection is made), the Debtors shall file with the Court and cause to be published on the case website a notice that contains information about the Stalking Horse Bidder, including the identity of the Stalking Horse Bidder, key terms of the Stalking Horse Bidder's bid, and the proposed Stalking Horse Agreement (the "Stalking Horse Selection Notice").

## IV.        The Assumption and Assignment Procedures.

12.    The Assumption and Assignment Procedures set forth in the Motion regarding the assumption and assignment of the Contracts proposed to be assumed by the Debtors and assigned to a Successful Bidder are approved.

a.    **Cure Notice**. As soon as practicable after entry of this Order, the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Cure Notice, attached as **Exhibit 3** to this Order on certain non-Debtor Contract counterparties (collectively, the "Contract Counterparties," and each, a "Contract Counterparty"), and post the Cure Notice to the case website (https://dm.epiq11.com/chesapeake).

b.    **Content of Cure Notice**. The Cure Notice shall notify the applicable Contract Counterparties that the Contracts may be subject to assumption and assignment in connection with the Sale, and contain the following information: (i) a list of the applicable Contracts that may be assumed and assigned in connection with the Sale (the "Assigned Contracts," each individually, a "Assigned Contract"); (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimate of the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Assigned Contract (the "Cure Costs"); and (iv) the deadline by which any Contract Counterparty to an Assigned Contract must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (the "Cure Objection"); *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

c.    **Cure Objections**. Objections, if any, to a Cure Notice (each, a "Cure Objection") must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court prior to **October 23, 2020 at 4:00 p.m. (prevailing Central Time)**; *provided* that the Debtors may modify the Cure Objection Deadline by filing a notice of such modification on the Court's docket.

d.    **Effects of Filing a Cure Objection**. A properly filed Cure Objection will reserve such objecting party's rights against the Debtors only with respect

to the assumption and assignment of the Assigned Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the Cure Objection, but will not constitute an objection to the remaining relief requested in the Motion.

e.      **Dispute Resolution**.  Any Cure Objection to the proposed assumption and assignment of an Assigned Contract or Cure Costs that remains unresolved after the Sale Hearing, shall be heard at such later date as may be agreed upon by the parties or fixed by the Court.  To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection, to be determined in the Successful Bidder's reasonable discretion.  To the extent a Cure Objection remains unresolved, the Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Cure Objection after notice and a hearing.  If a Cure Objection is not satisfactorily resolved, the Successful Bidder may determine that such Contract should be rejected and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs in respect of such contract.

f.      **Supplemental Cure Notice**.   If the Debtors discover Contracts inadvertently omitted from the Cure Notice or the Successful Bidder identifies other Contracts that it desires to assume or assume and assign in connection with the Sale, the Debtors may, in consultation with the Successful Bidder, at any time before the closing of the Sale supplement the Cure Notice with previously omitted Contracts or modifying a previously filed Cure Notice, including modify the previously stated Cure Costs associated with any Contracts (the "Supplemental Cure Notice").

g.      **Objection to the Supplemental Cure Notice**.  Any Contract Counterparty listed on the Supplemental Cure Notice may file an objection (a "Supplemental Cure Objection") only if such objection is to the proposed assumption or assumption and assignment of the applicable Contracts or the proposed Cure Costs, if any.  All Supplemental Cure Objections must: (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any; (ii) include appropriate documentation in support thereof; and (iii) be filed no later than 4:00 p.m. (prevailing Central Time) on the date that is 14 days following the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice.

h.      **Dispute Resolution of Supplemental Cure Objection**.  If a Contract Counterparty files a Supplemental Cure Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court to determine the Cure Costs, if any, and approve the assumption of the relevant Contracts.  If there is no such objection, then

the Debtors shall obtain an order of this Court fixing the Cure Costs and approving the assumption of any Contract listed on a Supplemental Cure Notice.

i.     **No Cure Objections**.  If there are no Cure Objections or Supplemental Cure Objections, or if a Contract Counterparty does not file and serve a Cure Objection or a Supplemental Cure Notice in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Cost, (i) the Cure Costs, if any, set forth in the Cure Notice (or Supplemental Cure Notice) shall be controlling, notwithstanding anything to the contrary in any Contract or any other document, and (ii) the Contract Counterparty will be deemed to have consented to the assumption or assumption and assignment of the Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption or assumption and assignment of such Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Contract against the Debtors or the Successful Bidder, or the property of any of them.

13.     Any objection to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, must be filed with the Court no later than the earlier of (a) the Sale Objection Deadline or Supplemental Assigned Contract Hearing, as applicable, and (b) 4:00 p.m. (prevailing Central Time) on the date that is 14 days following (x) the Assumption and Assignment Service Date, or (y) the date of Service of the Supplemental Cure Notice, as applicable.

14.     The inclusion of an Assigned Contract in the Cure Notice (or Supplemental Cure Notice) will not: (a) obligate the Debtors to assume any Assigned Contract listed thereon or obligate the Successful Bidder to take assignment of such Assigned Contract; or (b) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease.  Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to the Definitive Purchase Agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Successful Bidder.

IV.     **Sale Notice and Related Relief.**

15.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  As soon as practicable after entry of this Order, the Debtors shall serve the Bidding Procedures, the Sale Notice, and the Cure Notice upon the Notice Parties.  In addition, as soon as practicable after entry of this Order, the Debtors will publish the Sale Notice, with any modifications necessary for ease of publication, once in *New York Times*, the *Oklahoman*, and the *Houston Chronicle*, the *Billings Gazette*, the *Philadelphia Inquirer*, the *Casper Star-Tribune*, the *Canton Repository*, and *The Advocate* to provide notice to any other potential interested parties.

16.     Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including the sureties, the Debtors, the Debtors' lenders, any Stalking Horse Bidder, if applicable, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, surety bonds or related agreements or any letters of credit relating thereto, or any rights, remedies or defenses of the Debtors with respect thereto, including seeking Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, the Sale, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

17.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

19.     The requirements set forth in Bankruptcy Local Rule 9013-1 and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas are satisfied by the contents of the Motion.

20.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon entry hereof.

21.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2020
Houston, Texas

_____
DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Bidding Procedures**

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

BIDDING PROCEDURES FOR THE
SALE OF THE DEBTORS' MID-CON ASSETS

On June 28, 2020, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

On [●], the Court entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Mid-Con Assets, (II) Approving the Bid Protections, (III) Scheduling an Auction, (IV) Approving the Form and Manner of the Notice Thereof, and (V) Approving Contract Assumption and Assignment Procedures* [Docket No. [●]] (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures (the "Bidding Procedures").

These Bidding Procedures set forth the process for a potential auction (the "Auction") for the sale of the Debtors' oil and gas properties and related infrastructure in the state of Oklahoma and Hemphill County in the state of Texas (the "Mid-Con Assets" and the "Sale").[3]

---

**Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Epiq Corporate Restructuring, LLC by calling (855) 907-2082 (Toll Free) or +1 (503) 520-4448 (International) or visiting the Debtors' restructuring website at (https://dm.epiq11.com/chesapeake).**

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake.  The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2]   All capitalized terms used but not immediately defined shall have the meanings ascribed to them elsewhere in these Bidding Procedures.

[3]   For the avoidance of doubt, these Bidding Procedures are subject to the terms and conditions contained in any orders entered by this Court authorizing the use of cash collateral and debtor in possession financing with respect to the Debtors.

## I.        Assets to be Auctioned.

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers which in the aggregate will make the highest or otherwise best offer to purchase the Debtors' Mid-Con Assets.  The Mid-Con Assets will be offered for sale through an Auction.  The Debtors may consider bids from multiple bidders (including multiple bids submitted by the same bidder) for the Mid-Con Assets in any combination.

The following is a table setting forth key dates and deadlines with respect to the Sale process:

| Event or Deadline | Date and Time |
|---|---|
| Deadline to Designate a Stalking Horse Bidder (if any) | October 8, 2020 |
| Qualified Bid Deadline | October 15, 2020, at 12:00 p.m. (prevailing Central Time) |
| Cure Objection Deadline | October 23, 2020, at 4:00 p.m. (prevailing Central Time) |
| Sale Objection Deadline | October 23, 2020 at 4:00 p.m. (prevailing Central Time); *provided, however,* that any objections to the manner in which the Auction was conducted and the identity of the Successful Bidder or Backup Bidder may be filed up to 24 hours prior to the Sale Hearing |
| Auction (if applicable) | An Auction will be held on October 27, 2020 at 10:00 a.m. (prevailing Central Time) via remote video |
| Sale Hearing | October 30, 2020, at 9:30 a.m. (prevailing Central Time) |

## II.       Public Announcement of Auction.

As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall (a) serve on the Notice Parties (as defined below) a notice of the Auction and Sale (the "Sale Notice") and (b) publish the Sale Notice, with any modifications necessary for ease of publication, in *New York Times*, the *Oklahoman*, and the *Houston Chronicle*, the *Billings Gazette*, the *Philadelphia Inquirer*, the *Casper Star-Tribune*, the *Canton Repository*, and *The Advocate* to provide notice to any other potential interested parties.

## III.      Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity (other than any Stalking Horse Bidder) interested in purchasing the Debtors' Mid-Con Assets (a "Potential Bidder") must deliver or have previously delivered to the Debtors the following documents (collectively, the "Preliminary Bid Documents"):

a.       an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors;

b.      a non-binding written indication of interest specifying, among other things, the amount and type of consideration to be offered, and any other material terms to be included in a bid by such party;

c.      preliminary proof by the Potential Bidder of its financial capacity to close the proposed transaction (which may include current audited or verified financial statements of, or verified financial commitments ("Financial Statements") obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach) as well as an overview of any recent transactions), the adequacy of which must be acceptable to the Debtors after consultation with the Consenting Stakeholders;

d.      preliminary proof by the Potential Bidder of its ability to receive any and all necessary governmental, licensing, regulatory, and other approvals;

e.      identity of the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity;

f.      a list with the names and contact information for any financial, legal and other advisors the Potential Bidder has engaged to assist in connection with the proposed Sale; and

g.      a description of the nature and extent of any due diligence the Potential Bidder wishes to conduct.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate a proposed Sale. Promptly after a Potential Bidder delivers Preliminary Bid Documents, the Debtors shall (i) determine and notify each Potential Bidder as to whether such Potential Bidder has submitted acceptable Preliminary Bid Documents, (ii) provide copies of any such notices to the Notice Parties and any Stalking Horse Bidder, as applicable, and (iii) provide copies of such Preliminary Bid Documents to the Consenting Stakeholders. Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors, after consultation with the Consenting Stakeholders, may submit bids to purchase the Debtors' Mid-Con Assets. The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

## IV.  Obtaining Due Diligence Access.

Only Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors, after consultation with the Consenting Stakeholders, including any Stalking Horse Bidder (if any), shall be eligible to receive due diligence information and access to the Debtors' electronic data room and to additional non-public information regarding the Debtors. All due diligence requests must be directed to Intrepid Partners, LLC ("Intrepid"). The Debtors will provide to each Potential Bidder reasonable due

diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room. Potential Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or contractual counterparty of the Debtors without the prior written consent of the Debtors. The due diligence period will end on the Bid Deadline (as defined herein) and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Potential Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential transaction to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; *provided* that the Debtors may decline to provide such information to Potential Bidders who, in the Debtors' reasonable business judgment, after consultation with the Consenting Stakeholders, have not established, or who have raised doubt, that such Potential Bidders intend in good faith to, or have the capacity to, consummate any Sale. For any Bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, the Debtors reserve the right to withhold or modify any diligence materials that the Debtors, in their sole discretion, determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

### A.    Communications with Potential Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Potential Bidders and Qualified Bidders shall be through Intrepid (via email shall be acceptable).

> **Intrepid Partners, LLC, 1201 Louisiana Street, Suite 600, Houston, TX 77002, Attn.: Tony Fernandez (fernandez@intrepidfp.com), shall coordinate all requests for additional information and due diligence access on behalf of the Debtors.**

### B.    Due Diligence from Potential Bidders (including Qualified Bidders).

Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors and the Consenting Stakeholders and their respective advisors, regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated transaction. Failure by a Potential Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, after consultation with the Consenting Stakeholders, to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

V.      **Stalking Horse Bidders and Bid Protections.**

The Debtors shall be authorized, but not obligated, in an exercise of their business judgment, with the consent of the Consenting Stakeholders, to: (a) select one or more Qualified Bidders to act as stalking horse bidders in connection with the Sale (each, a "<u>Stalking Horse Bidder</u>") and enter into purchase agreement with respect to a Sale with such Stalking Horse Bidder (each such agreement, a "<u>Stalking Horse Agreement</u>"); and (b) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder (i) provide a breakup fee of up to 2% of the proposed Purchase Price (as defined herein) (the "<u>Breakup Fee</u>"), (ii) agree to reimburse reasonable and documented out-of-pocket fees and expenses of the Stalking Horse Bidder up to 1% of the proposed Purchase Price (the "<u>Expense Reimbursement</u>"), and/or (iii) provide other appropriate and customary protections that are reasonably acceptable to the Consenting Stakeholders or otherwise approved by the Court (together with the Breakup Fee and the Expense Reimbursement, the "<u>Bid Protections</u>").  No later than three business days after the selection of a Stalking Horse Bidder, the Debtors shall file a notice with the Court of such selection that includes a copy of an executed and binding Stalking Horse Agreement.

The Bid Protections shall be described in detail, including the amount and calculation of such Bid Protections, in the notice of Stalking Horse Bidder.

VI.     **Bid Requirements.**

To be selected to acquire the Mid-Con Assets or to be eligible to participate in the Auction, if applicable, a Potential Bidder (other than a Stalking Horse Bidder) must deliver to the Debtors and their advisors a written, irrevocable and binding offer for purchase of the Mid-Con Assets (the "<u>Bid</u>") that must be determined by the Debtors in their business judgment, after consultation with the Consenting Stakeholders, to satisfy each of the following conditions (collectively, the "<u>Bid Requirements</u>"):

a.      **Identity**: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also include contact information for the specific person(s) whom Intrepid and Kirkland & Ellis LLP ("<u>Kirkland</u>") should contact regarding such Bid;

b.      **Identity of Mid-Con Assets and Purchase Price:** Each Bid must clearly state which of the Mid-Con Assets the Potential Bidder seeks to acquire and which liabilities of the applicable Debtor the Potential Bidder agrees to assume. Each Bid must clearly set forth the purchase price to be paid, including cash and non-cash components, if any, including any assumption of liabilities (collectively, the "<u>Purchase Price</u>").  The Purchase Price should be a single point value in U.S. Dollars for the total enterprise value of the Mid-Con Assets the Potential Bidder seeks to acquire on a cash-free, debt-free basis.

c.  **Good Faith Deposit:** Each Bid, other than a Stalking Horse Bid, must be accompanied by a cash deposit equal to ten percent of the cash consideration of such bid, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors (the "Good Faith Deposit"). To the extent a Qualified Bid (other than a Stalking Horse Bid) is modified before, during, or after the Auction in any manner that increases the purchase price contemplated by such Qualified Bid, the Debtors reserve the right to require that such Qualified Bidder (as defined below) increase its Good Faith Deposit so that it equals ten percent of the increased Purchase Price;

d.  **Markup of the Purchase Agreement:** Each Bid must be accompanied by executed transaction documents, including a draft purchase agreement, the form of which will be provided to any Potential Bidder prior to the Bid Deadline and in the case of an Auction with a Stalking Horse Bidder, a markup of the Stalking Horse Agreement, including the exhibits, schedules and ancillary agreements related thereto and any other related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the proposed Sale transaction, along with copies that are marked to reflect any amendments and modifications from the form purchase agreement provided to such Potential Bidder, which amendments and modifications may not be materially more burdensome or otherwise inconsistent with these Bidding Procedures. The Debtors, in their reasonable business judgment, after consultation with the Consenting Stakeholders, will determine whether any such amendments and modifications are materially more burdensome;

e.  **Committed Financing:** Each Bid must include committed financing, documented to the Debtors' reasonable satisfaction, after consultation with the Consenting Stakeholders, that demonstrates the Potential Bidder has received sufficient debt and equity funding commitments to satisfy such Potential Bidder's Purchase Price and other obligations under its Bid, including the identity and contact information of the specific person(s) or entity(s) responsible for such committed financing whom Intrepid and Kirkland should contact regarding such committed financing. Such funding commitment shall not be subject to any internal approval, syndication requirements, diligence or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors after consultation with the Consenting Stakeholders;

f.  **Pro Forma Capital Structure:** Each Bid must include a description of the Bidder's pro forma capital structure;

g.  **Contingencies; No Financing or Diligence Outs:** Any Bid shall not be conditioned on the obtaining or the sufficiency of financing, any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of the specified representations and warranties, which shall not be more burdensome, in the Debtors' reasonable business judgment after consultation with the Consenting Stakeholders, than those contemplated by the Stalking Horse Bid, if any, and each Bid must identify with particularity each and every condition to

closing, including the executory contracts and unexpired leases for which assumption and assignment is required. The Potential Bidders are expected to have completed all of their due diligence by the Bid Deadline (as defined below), including all business, legal, accounting, and other confirmatory diligence. The extent and nature of any remaining due diligence should be set forth in a specific list attached to each Bid;

h.   **As-Is, Where-Is:** Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith, except as expressly stated in the Potential Bidder's proposed purchase agreement;

i.   **Authorization:** Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its shareholders and/or its board of managers or directors, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

j.   **Adequate Assurance of Future Performance:** Each Bid (other than a Stalking Horse Bid) must (i) identify the Contracts to be assumed and assigned in connection with the proposed Sale, (ii) provide for the payment of all Cure Costs related to such Contract by the Potential Bidder and (iii) demonstrate, in the Debtors' reasonable business judgment that the Potential Bidder can provide adequate assurance of future performance under all such Contracts;

k.   **Government Approvals:** Each Bid, including the Stalking Horse Bid (if any), must include a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Sale, together with evidence satisfactory to the Debtors, after consultation with the Consenting Stakeholders, of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals;

l.   **Government Approvals Timeframe:** Each Bid must set forth (i) an estimated timeframe for obtaining any required governmental, licensing, regulatory, or other approvals or consents for consummating any proposed Sale, and (ii) the basis for such estimate;

m.   **Compliance with Bankruptcy Code and Non-Bankruptcy Law; Acknowledgment:** Each Bid must comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law. Each Bid must also include a written

acknowledgment that the Bidder agrees to all of the terms of the Sale set forth in these Bidding Procedures;

n.    **Irrevocable:** A Potential Bidder's Bid must be binding and irrevocable unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Backup Bidder (as defined herein);

o.    **No Fees:** Other than a Stalking Horse Bidder, each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for breakup fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their discretion, with the consent of the Consenting Stakeholders, to provide the Bid Protections to one or more Stalking Horse Bidders in accordance with these Bidding Procedures;

p.    **Adherence to Bidding Procedures:** By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Sale Process, or the Auction (if held), after conclusion of the selection of the Successful Bidder (as defined herein).  By submitting its Bid, each Potential Bidder is agreeing to comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law;

q.    **Consent to Jurisdiction:** The Potential Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction (if held), the construction and enforcement of these Bidding Procedures, the Plan, the Sale documents, and the Closing, as applicable;

r.    **Backup Bid:** Each Bid shall provide that the Potential Bidder will serve as a backup bidder if the Potential Bidder's bid is the next highest or otherwise best bid;

s.    **Expected Closing Date:** Each Bid must state the Potential Bidder's expected date of closing of the Sale; and

t.    **Letters of Credit:** Any Bid must provide that the applicable bidder agrees that the obligations of any non-Debtor affiliate of the Debtors with regard to any letters of credit issued on behalf of any Debtor with respect to the applicable purchased assets will either be assumed, replaced, or continued, as applicable.

All Bids shall promptly be shared with the Consenting Stakeholders.  Only Bids fulfilling all of the preceding requirements contained in this section may, at the Debtors' reasonable discretion, after consultation with the Consenting Stakeholders, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' reasonable discretion, after consultation with the Consenting Stakeholders, be deemed to be "Qualified Bidders."

Within one business day after the Bid Deadline, the Debtors shall determine, after consultation with the Consenting Stakeholders, which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction.  Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided*, *however*, that if the Debtors receive a Bid prior to the Bid Deadline (as defined below) that does not satisfy the requirements of a Qualified Bid, the Debtors may provide the Potential Bidder with the opportunity to remedy any deficiencies prior to the Auction.  A Stalking Horse Bidder (if any) shall be deemed to be a Qualified Bidder, a Stalking Horse Bid shall be deemed a Qualified Bid, and a Stalking Horse Bidder (if any) may participate in the Auction with respect to the Debtors' Mid-Con Assets.

The Debtors shall provide copies, on a "professionals' eyes only" basis, of the applicable documents provided by all Potential Bidders pursuant to this section VII (excluding underling financial or qualifying documentation) as soon as reasonably practicable, but no later than two business days after receipt thereof, to the Consenting Stakeholders at the addresses contained in section 14.10 of the Restructuring Support Agreement.

## VII.    Bid Deadline.

Binding Bids must be received (via email shall be acceptable) by (a) the Debtors' counsel, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn.: Patrick J. Nash (patrick.nash@kirkland.com), Marc Kieselstein (marc.kieselstein@kirkland.com), and Alexandra Schwarzman (alexandra.schwarzman@kirkland.com); (b) the Debtors' investment banker Intrepid Partners, LLC, 1201 Louisiana Street, Suite 600, Houston, TX 77002, Attn.: Tony Fernandez (fernandez@intrepidfp.com) and David Gehring (gehring@intrepidfp.com); and (c) Shearman & Sterling LLP, Bank of America Tower, 800 Capitol Street, Suite 2200, Houston, TX 77002, Attn.: Jeremy Kennedy (jeremy.Kennedy@Shearman.com) and Ryan Staine (ryan.Staine@Shearman.com), in each case so as to be **actually received** no later than **12:00 p.m. (prevailing Central Time) on October 15, 2020** (the "Bid Deadline").

## VIII.    Evaluation of Qualified Bids.

Prior to the Auction (if held) the Debtors and their advisors will evaluate Qualified Bids and identify the Qualified Bid(s) that is, in the Debtors' reasonable business judgment after consultation with the Consenting Stakeholders the highest or otherwise best Bid (the "Starting Bid").  In the event a Stalking Horse Bidder is selected, the Starting Bid shall include the amount provided for in the Stalking Horse Bid, *plus* the amount of the Bid Protections, *plus* $1.0 million.  In addition, prior to the selection of the Successful Bidder, the Debtors may, in the Debtors' reasonable business judgment engage in negotiations with bidders with respect to their Bids.   For the avoidance of doubt, the Debtors, after consultation with the Consenting Stakeholders, may select more than one Qualified Bid to collectively serve as the Starting Bid in an Auction (if held) if each such Qualified Bid contemplates the purchase of different Mid-Con Assets.  In conducting the evaluation of the Qualified Bids, the Debtors will take into consideration the following non-exclusive factors:

a.      the amount of the Purchase Price of the Qualified Bid;

b.      the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Bid Protections;

c.      the proposed changes or modifications to the form purchase agreement delivered in connection with such Qualified Bid and the comparative favorability of the terms set forth in such proposed purchase agreement versus any Stalking Horse Agreements, to the extent applicable;

d.      the assets and liabilities excluded from the Qualified Bid and any executory contracts or leases or other liabilities proposed to be assumed;

e.      any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

f.      the certainty of a Qualified Bid leading to a confirmed plan (whether the Plan or some other plan);

g.      the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals; and

h.      any other factors the Debtors may, consistent with their fiduciary duties, after consultation with the Consenting Stakeholders, reasonably deem relevant.

Within 24 hours of the determination of the Starting Bid, but in no event later than 24 hours before the Auction, the Debtors will (1) notify any Stalking Horse Bidder(s) as to which Qualified Bid is the Starting Bid and (2) distribute a copy of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Qualified Bidder's Good Faith Deposit within five (5) business days after the Bid Deadline.

## IX.      No Qualified Bids.

If no Qualified Bids other than a Stalking Horse Bid are received by the Bid Deadline, then the Debtors, after consultation with the Consenting Stakeholders, may cancel the Auction, and may decide, in the Debtors' reasonable business judgment and with the consent of the Consenting Stakeholders to designate the Stalking Horse Bid as the Successful Bid, and pursue entry of the Sale Order approving a Sale of the Debtors' assets to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement.  The Debtors shall promptly file notice of any cancellation of the Auction and designation of the Stalking Horse Bid as the Successful Bid with the Bankruptcy Court.

X.      **Right to Credit Bid.**

Any Qualified Bidder that has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; and *provided further* that any credit bid by a junior Secured Creditor shall contain a cash component sufficient to repay secured claims of a senior Secured Creditor.

Notwithstanding anything to the contrary contained herein and absent a further order of the Court, each of (a) the DIP Agent, (b) the Revolving Credit Facility Administrative Agent, (c) the FLLO Term Loan Agent, and (d) the Second Lien Notes Indenture Trustee shall have the right to credit bid all or any portion of the aggregate amount of its applicable outstanding secured obligations pursuant to section 363(k) of the Bankruptcy Code, and any such credit bid will be considered a Qualified Bid to the extent such bid is received by the Bid Deadline and complies with section 363(k) of the Bankruptcy Code and the requirements of this section XI.

XI.     **Auction.**

If one or more Qualified Bids are received by the Bid Deadline with respect to any applicable assets, then the Debtors shall conduct the Auction with respect to such assets.  The Auction for each applicable asset shall commence on **October 27, 2020, at 10:00 a.m. (prevailing Central Time)**, via remote video, or such later time or other place as the Debtors determine, after consultation with the Consenting Stakeholders, in which case the Debtors shall timely notify all Qualified Bidders of such later time or other place, and file a notice of the change on the Court's docket for these chapter 11 cases.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.      except as otherwise provided herein, the Auction will be conducted openly;

b.      only Qualified Bidders, including any Stalking Horse Bidders (if any), shall be entitled to bid at the Auction;

c.      the Qualified Bidders, including any Stalking Horse Bidders (if any), shall appear at the Auction via remote video or through duly authorized representatives via remote video at the Auction;

d.      only the following parties shall be permitted to attend the Auction: authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors and their respective advisors, the Consenting Stakeholders and their respective advisors, the members of the official committee of unsecured creditors and their respective advisors, and any other creditor party who makes a written request upon the Debtors to attend the Auction; *provided* that such request shall be actually received by the Debtors' counsel no later than 24 hours prior to the commencement of the Auction; *provided further* that the Debtors reserve the

right to retract their permission at any point during the Auction if such creditor party does not act in good faith and in orderly fashion during the Auction;

e.    Bids at the Auction, including any Bids by any Stalking Horse Bidder (if any), must be made in minimum increments of $1.0 million (or such other amount as the Debtors may determine, after consultation with the Consenting Stakeholders) of additional value (including after payment of the Bid Protections to any Stalking Horse Bidders, if applicable);

f.    each Qualified Bidder will be permitted a reasonable time to respond to previous bids at the Auction, as determined by the Debtors;

g.    the bidding will be transcribed or recorded to ensure an accurate recording of the bidding at the Auction;

h.    no Qualified Bidder (or its representatives) may communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction, and each Qualified Bidder will be required to confirm on the record of the Auction that (A) it has not engaged in any collusion, coordination, or unfair competitive practices with respect to the bidding or the Sale and (B) its Bid represents an irrevocable, binding, good faith, and bona fide offer to purchase some or all of the Mid-Con Assets identified in such Bid if such Bid is selected as the Successful Bid (as defined herein); *provided, however*, that two or more Qualified Bidders may coordinate to the extent they wish to provide a combined bid if the Debtors, after consultation with the Consenting Stakeholders, approve such coordination in their reasonable discretion;

i.    the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest Bid, subject to the Debtors' right to require last and final Bids to be submitted on a "blind" basis;

j.    the Court and the Debtors will not consider bids made after the Auction has been closed;

k.    the Debtors reserve the right, in their reasonable business judgment, after consultation with the Consenting Stakeholders, to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between the Debtors and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, after consultation with the Consenting Stakeholders, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

l.    the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors, after consultation with the Consenting

Stakeholders, from time to time on the record at the Auction; *provided* that such other Auction Procedures are (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any other order of the Court, (b) disclosed orally or in writing to all Qualified Bidders, and (c) determined by the Debtors, after consultation with the Consenting Stakeholders, to further the goal of attaining the highest or otherwise best offer for the Mid-Con Assets, as applicable.

For the avoidance of doubt, nothing in the Auction Procedures (if an Auction is held) will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors).

**XII.   Acceptance of the Successful Bid.**

The Auction shall continue until only one Qualified Bid is the highest or otherwise best bid to purchase the Debtors' Mid-Con Assets in the Debtors' reasonable business judgment with the consent of the Consenting Stakeholders and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail, (a "Successful Bid"), and that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be acceptable to the Debtors, at which point, the Auction will be closed. When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; and (d) the tax consequences of such Qualified Bid.

Any Qualified Bidder that submits a Successful Bid will be deemed a "Successful Bidder" with respect to the applicable assets.  The Debtors shall promptly file notice of the Successful Bid and the Successful Bidder with the Bankruptcy Court. Within five days following conclusion of the Auction and selection of a Successful Bidder, or as soon as reasonably practicable thereafter, the Debtors shall present the results of the Auction at a hearing (the "Sale Hearing") and shall seek Bankruptcy Court approval to enter into a binding purchase agreement with the Successful Bidder on the terms of the Successful Bid (the order approving such entry, the "Sale Order").  The form of the Sale Order must be acceptable to the DIP Agent.  For the avoidance of doubt, the Sale Order shall deem the Debtors' selection of the Successful Bid final and, subject to the designation of the Backup Bid (defined below), the Debtors shall not solicit or accept any further bids or offers to submit a bid after such selection; provided that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Within one business day of the selection of the Successful Bidder, such Successful Bidder shall make a cash deposit, in addition to its Good Faith Deposit, in the amount of $10 million, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors pursuant to a customary and reasonable escrow agreement.  Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable,

complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XIII.    Designation of Backup Bidder.

The Qualified Bidder with the second highest or otherwise best bid or combination of bids (the "Backup Bid") to purchase any or all of the applicable assets (the "Backup Bidder") will be determined by the Debtors, with the consent of the Consenting Stakeholders, at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction.  If for any reason a Successful Bidder fails to consummate the purchase of such assets within the time permitted after the entry of the Sale Order, then the Backup Bidder will automatically be deemed to have submitted the Successful Bid for such assets, and the Backup Bidder shall be deemed a Successful Bidder for such assets and shall be required to consummate any Sale with the Debtors as soon as is commercially practicable without further order of the Court, *provided* that the Debtors shall file a notice with the Court.

## XIV.    Approval of Sale.

The Debtors will present the results of the Auction to the Court for approval at the Sale Hearing, at which certain findings will be sought from the Court regarding the Auction, including, among other things, that: (a) the Auction was conducted, and the Successful Bidder was selected, in accordance with the Bidding Procedures; (b) the Auction was fair in substance and procedure; (c) the Successful Bid was a Qualified Bid as defined in the Bidding Procedures; and (d) consummation of any Sale as contemplated by the Successful Bid in the Auction will provide the highest or otherwise best offer for the Debtors and the Debtors' Mid-Con Assets, and is in the best interests of the Debtors and their estates.

The Sale Hearing is presently scheduled to commence on **October 30, 2020**, at **9:30 a.m. (prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable David R. Jones, United States Bankruptcy Court for the Southern District of Texas.

## XV.    Return of Good Faith Deposit.

The Good Faith Deposit of a Successful Bidder shall, upon consummation of any Sale, be credited to the purchase price paid for the applicable assets.  If a Successful Bidder fails to consummate any Sale, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors, and all parties in interest, and the Debtors specifically, reserve the right to seek all available damages from the defaulting Successful Bidder.

The Good Faith Deposit of any Qualified Bidders that are not Successful Bidders or Backup Bidders will be returned within five business days after the Auction or upon the permanent withdrawal of the proposed Sale, and the Good Faith Deposit of any Backup Bidders will be returned within five business days after the consummation of any Sale or upon the permanent withdrawal of the proposed Sale.

XVI.    **Reservation of Rights.**

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment, after consultation with the Consenting Stakeholders, in a manner consistent with the exercise of their fiduciary duties, and in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction, additional customary terms and conditions on the sale of the Debtors' Mid-Con Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the applicable minimum overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis; *provided* that the Debtors may not modify the consultation or consent rights provided to any Consenting Stakeholders in the Bidding Procedures without the consent of the applicable Consenting Stakeholders.  For the avoidance of doubt, the Debtors reserve the right at any point prior to the selection of the Successful Bidder to terminate the Sale processes contemplated hereunder with respect to any or all of the Debtors' assets and seek to sell any or all assets pursuant to section 363(b) of the Bankruptcy Code.

XVII.   **Consent to Jurisdiction**

All Qualified Bidders at the Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Sale, the Auction and the construction and enforcement of these Bidding Procedures, or any written indications of interest, Preliminary Bid Documents, or the Bid Documents, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Bankruptcy Court on an expedited basis.

XVIII. **Fiduciary Out.**

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor, after consulting with counsel, to take any action or to refrain from taking any action related to any sale transaction to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures, through the date of the Auction, nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving

any or all of the Debtors' Mid-Con Assets (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases (including any official committee and the United States Trustee), or any other entity regarding Alternate Proposals; *provided, however*, that the Consenting Stakeholders' rights to terminate the Restructuring Support Agreement pursuant to its terms shall be preserved, including upon the occurrence of a sale of any material assets that the Required Consenting Stakeholders have not consented to in writing (as provided for in section 12.01(f) of the Restructuring Support Agreement); *provided, further,* if the Restructuring Support Agreement is terminated pursuant to its terms, the consent and consultation rights provided to the Consenting Stakeholders in these Bidding Procedures shall be inapplicable except for the DIP Agent's consent rights with respect to the Stalking Horse Agreement, Successful Bid, Backup Bid, and Sale Order.

If the Debtors receive any Alternate Proposal, or any update to an Alternate Proposal from the counterparty thereto, then the Debtors shall (i) within two business days of receiving such proposal, provide counsel to the Consenting Stakeholders with all documentation received in connection with such Alternate Proposal; (ii) provide counsel to the Consenting Stakeholders with regular updates as to the status and progress of such Alternate Proposal; and (iii) respond promptly to reasonable information requests and questions from counsel to the Consenting Stakeholders relating to such Alternate Proposal.

[*Remainder of page intentionally left blank*]

**<u>Exhibit 2</u>**

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

### NOTICE OF AUCTION FOR THE
### SALE OF THE DEBTORS' MID-CON ASSETS FREE AND
### CLEAR OF ANY AND ALL CLAIMS, INTERESTS, AND ENCUMBRANCES

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting offers for the purchase of the Debtors' Mid-Con Assets and assumption of certain liabilities of the Debtors consistent with the bidding procedures (the "Bidding Procedures")[2] approved by the United States Bankruptcy Court for the Southern District of Texas (the "Court") by entry of an order on [●] [Docket No. [●]] (the "Bidding Procedures Order").  **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**.  To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

> **Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Epiq Corporate Restructuring, LLC by calling (855) 907-2082 (Toll Free) or +1 (503) 520-4448 (International) or visiting the Debtors' restructuring website at (https://dm.epiq11.com/chesapeake).**

**PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **October 15, 2020**, at **12:00 p.m. (prevailing Central Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which time they will consider proposals submitted to the Debtors and their professionals, by and

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake.  The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **October 27, 2020, at 10:00 am. (prevailing Central Time)** via remote video at [_____].

       **PLEASE TAKE FURTHER NOTICE** that the Debtors expect to seek approval of the Sale at the Sale Hearing, which is presently scheduled to commence on **October 30, at 9:30 a.m. (prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable David R. Jones in the United States Courthouse, 515 Rusk Street, Houston, Texas 77002.

       **PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court by October 23, 2020 at 4:00 p.m. (prevailing Central Time); *provided, however,* that any objections to the manner in which the Auction was conducted and the identity of the Successful Bidder or Backup Bidder may be filed up to 24 hours prior to the Sale Hearing, or, if the Debtors elect not to proceed with an Auction, two business days following the notification filed with the Court of such election not to proceed with an Auction.

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE SELLING DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S).**

## NO SUCCESSOR OR TRANSFEREE LIABILITY

The Sale Order is expected to provide, among other things, that the Successful Bidder from the Sale will have no responsibility for, and the assets will be sold free and clear of, any successor liability, including the following:

To the greatest extent allowable by applicable law, the Successful Bidder shall not be deemed, as a result of any action taken in connection with the Stalking Horse Agreement (in the case where a Stalking Horse Bidder is the Successful Bidder) or a separate purchase agreement entered into with the Successful Bidder (if a Stalking Horse Bidder is not the Successful Bidder), the consummation of the Sale, or the transfer or operation of the assets, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations as an assignee under the Assigned Contracts arising after the Effective Date); (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be an alter ego or mere continuation or substantial continuation of the Debtors, in the case of each of (a), (b), and (c), including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, et seq.), environmental liabilities, debts, claims or obligations, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. All rights of any party to set off any claims, debts or obligations owed by or to the Successful Bidder in connection with the assets shall be extinguished on the Effective Date pursuant to the Sale Order. Other than as expressly set forth in the Stalking Horse Agreement (or another Successful Bidder's purchase agreement, as applicable) with respect to Assumed Liabilities, the Successful Bidder shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the assets or (b) any claims (as such term is defined by section 101(5) of the Bankruptcy Code) against the Debtors or any of their predecessors or affiliates. To the greatest extent allowed by applicable law, the Successful Bidder shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Effective Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the assets prior to the Effective Date. The Stalking Horse Bidder would not have entered into the Stalking Horse Agreement but for the foregoing protections against potential claims based upon "successor liability" theories.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, after consultation with the Consenting Stakeholders and in their reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the Bidding Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Motion, Bidding Procedures, and Bidding Procedures Order, as well as all related exhibits, are available: (a) free of charge upon request to Epiq Corporate Restructuring, LLC (the notice and claims agent retained in these chapter 11 cases) by (a) calling (855) 907-2082 (Toll Free) or +1 (503) 520-4448 (International); (b) visiting the Debtors' restructuring website at (https://dm.epiq11.com/chesapeake); or (c) for a fee via PACER by visiting (http://www.txs.uscourts.gov).

[*Remainder of page intentionally left blank*]

Houston, Texas
[__], 2020

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| Kristhy M. Peguero (TX Bar No. 24102776) | Marc Kieselstein, P.C. (admitted *pro hac vice*) |
| Veronica A. Polnick (TX Bar No. 24079148) | Alexandra Schwarzman (admitted *pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | 300 North LaSalle Street |
| Houston, Texas 77010 | Chicago, Illinois 60654 |

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:          mcavenaugh@jw.com
               jwertz@jw.com
               kpeguero@jw.com
               vpolnick@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
               marc.kieselstein@kirkland.com
               alexandra.schwarzman@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**Exhibit 3**

**Cure Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## NOTICE TO CONTRACT PARTIES TO POTENTIALLY
## ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU**
> **OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN**
> **EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE**
> **OF THE DEBTORS AS SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO.**

**PLEASE TAKE NOTICE** that on [●], 2020, the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Mid-Con Assets, (II) Approving Bid Protections, (III) Scheduling Certain Dates with Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof, and (V) Approving Contract Assumption and Assignment Procedures* [Docket No. [●]] (the "<u>Bidding Procedures Order</u>"),[2] authorizing the Debtors to conduct an auction (the "<u>Auction</u>") to select the party to purchase Debtors' Mid-Con Assets.  The Auction will be governed by the bidding procedures (attached to the Bidding Procedures Order as **<u>Exhibit 1</u>** (the "<u>Bidding Procedures</u>").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **<u>may</u>** assume and assign to the Successful Bidder certain of the Assigned Contracts listed on the Assigned Contracts Schedule, attached hereto as **<u>Exhibit A</u>**, to which you are a counterparty, upon approval of the Sale.  The Assigned Contracts Schedule can also be viewed on the Debtors' case website (https://dm.epiq11.com/chesapeake).  The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contracts is as set forth on **<u>Exhibit A</u>** attached hereto (the "<u>Cure Costs</u>").

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake.  The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2]     All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Costs, object to a proposed assignment to the Successful Bidder of any Assigned Contract, or object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the correct cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) if you object to proposed Cure Costs or a proposed assignment to the Successful Bidder of any Assigned Contract, be filed with the Court **no later than October 23, 2020**, at **4:00 p.m. (prevailing Central Time)** (the "**Cure Objection Deadline**") and if you object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, be filed with the Court **no later than the earlier of (a) the Sale Objection Deadline or Supplemental Assigned Contract Hearing, as applicable**, **and (b) 4:00 p.m. (prevailing Central Time) on the date that is 14 days following (x) the Assumption and Assignment Service Date, or (y) the date of Service of the Supplemental Cure Notice, as applicable**, in each case, by the following parties: (a) counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn.: Patrick J. Nash (patrick.nash@kirkland.com), Marc Kieselstein (marc.kieselstein@kirkland.com), and Alexandra Schwarzman (alexandra.schwarzman@kirkland.com); and (b) Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn.: Stephen Statham.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Costs(s), (b) the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed Assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale.

**PLEASE TAKE FURTHER NOTICE** that any Cure Objection in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date to be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Assigned Contract are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Assigned Contract as either rejected or assumed on a post-closing basis.

2

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract.

[*Remainder of page intentionally left blank*]

Houston, Texas
[__], 2020

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| Kristhy M. Peguero (TX Bar No. 24102776) | Marc Kieselstein, P.C. (admitted *pro hac vice*) |
| Veronica A. Polnick (TX Bar No. 24079148) | Alexandra Schwarzman (admitted *pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | 300 North LaSalle Street |
| Houston, Texas 77010 | Chicago, Illinois 60654 |

Jackson Walker L.L.P.:
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
jwertz@jw.com
kpeguero@jw.com
vpolnick@jw.com

*Co-Counsel to the Debtors
and Debtors in Possession*

Kirkland & Ellis:
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: patrick.nash@kirkland.com
marc.kieselstein@kirkland.com
alexandra.schwarzman@kirkland.com

*Co-Counsel to the Debtors
and Debtors in Possession*