# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) APPROVING THE SOLICITATION PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS' PROPOSED CHAPTER 11 PLAN, (III) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (IV) APPROVING THE RIGHTS OFFERING PROCEDURES AND RELATED MATERIALS, (V) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, AND (VI) GRANTING RELATED RELIEF

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON OCTOBER 14, 2020, AT 11:00 A.M. (CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AUDIO/VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE JONES' CONFERENCE ROOM NUMBER IS 205691.**

**YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEJONES" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE JONES' HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE JONES. UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE". SELECT THE CASE**

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

> **NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state the following in support of this motion:

## Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), granting the following relief:

   a. ***Disclosure Statement***. Approving the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* attached to the Order as **Exhibit 1** (the "Disclosure Statement")[3] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

   b. ***Solicitation Procedures***. Approving procedures for (i) soliciting, receiving, and tabulating votes to accept or reject the Plan, (ii) voting to accept or reject the Plan, and (iii) filing objections to the Plan (the "Solicitation Procedures"), substantially in the form attached to the Order as **Exhibit 2**;

   c. ***Ballots***. Approving the ballots that the Debtors will send to holders of Claims entitled to vote to accept or reject the Plan, substantially in the forms attached to the Order as **Exhibits 3A**, **3B**, **3C**, **3D**, **3E**, **3F**, and **3G** (collectively, the "Ballots");

---

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Domenic J. Dell'Osso, Jr., Executive Vice President and Chief Financial Officer of Chesapeake Energy Corporation in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 37] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on June 28, 2020 (the "Petition Date").

[3] Capitalized terms used but not defined herein have the meanings ascribed to them in the Disclosure Statement or the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates*, filed contemporaneously herewith (as amended, supplemented, or modified from time to time, the "Plan"), as applicable.

d. **_Cover Letter_**.  Approving the form of letter (the "Cover Letter") that the Debtors will send to holders of Claims entitled to vote to accept or reject the Plan urging such parties to vote in favor of the Plan, substantially in the form attached to the Order as **Exhibit 4**;

e. **_Non-Voting Status Notices_**.  Approving:  (i) the form of notice applicable to holders of Claims or Interests that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan; (ii) the form of notice applicable to holders of Interests that are Impaired under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code, conclusively deemed to reject the Plan; and (iii) the form of notice applicable to holders of Claims or Interests that are subject to a pending objection by the Debtors and who are not entitled to vote the disputed portion of such Claims or Interests (each, a "Non-Voting Status Notice"), substantially in the forms attached to the Order as **Exhibits 5**, **6**, and **7** respectively;

f. **_Confirmation Hearing Notice_**.  Approving the form and manner of notice of the hearing to be held by the Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code (the "Confirmation Hearing," and the notice thereof, the "Confirmation Hearing Notice") and the procedures for objecting thereto, substantially in the form attached to the Order as **Exhibit 8**;

g. **_Plan Supplement Notice_**.  Approving the notice related to the filing of the Plan Supplement, substantially in the form attached to the Order as **Exhibit 9** (the "Plan Supplement Notice");

h. **_Assumption and Rejection Notices_**.  Approving the form of notices to counterparties to Executory Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan (the "Assumption Notice" and the "Rejection Notice," respectively), substantially in the forms attached to the Order as **Exhibits 10** and **11**, respectively;

i. **_Solicitation Packages_**. Finding that the solicitation materials and documents included in the solicitation packages (the "Solicitation Packages") that will be sent to holders of Claims entitled to vote to accept or reject the Plan are in compliance with rules 2002(b) and 3017(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules");

j. **_Rights Offering Procedures_**.  Approving the Rights Offering Procedures (as defined herein), related dates and deadlines (the "Rights Offering Dates and Deadlines"), substantially in the forms attached to the Order as **Exhibit 12**, and the form of materials necessary to the consummation of the Rights Offering under the terms of the Rights Offering Procedures, including the Subscription Forms (collectively, the "Rights Offering

Materials"), substantially in the forms attached to the order as **Exhibits 13A**, **13B**, and **13C**; and

k.    ***Confirmation Dates***.  Establishing the following dates and deadlines with respect to Confirmation of the Plan, subject to modification as necessary:

| Event | Date | Description |
|---|---|---|
| Voting Record Date | October 8, 2020 | The date to determine which holders of Claims are entitled to vote to accept or reject the Plan (the "Voting Record Date") |
| Solicitation Mailing Deadline | October 23, 2020 (or as soon as reasonably practicable thereafter) | The deadline by which the Debtors must distribute Solicitation Packages, including Ballots, to holders of Claims entitled to vote to accept or reject the Plan (the "Solicitation Mailing Deadline") |
| Publication Deadline | Nine (9) business days following the entry of the Order (or as soon as reasonably practicable thereafter) | The date by which the Debtors will submit the Confirmation Hearing Notice in a format modified for publication (such notice, the "Publication Notice," and such date, the "Publication Deadline") |
| Plan Supplement Filing Deadline | November 16, 2020 | The date by which the Debtors shall file the Plan Supplement (the "Plan Supplement Deadline") |
| Voting Deadline | November 23, 2020, at 11:59 p.m. (prevailing Central Time) | The deadline by which holders of Claims entitled to vote may vote to accept or reject the Plan (the "Voting Deadline"), which date may be extended by the debtors, with the consent of the Required Plan Sponsors and the DIP Agent. |
| Confirmation Objection Deadline | November 23, 2020, at 5:00 p.m. (prevailing Central Time) | The deadline by which parties in interest may file objections to Confirmation of the Plan (including objections to any assumption or rejection of an Executory Contract or Unexpired Lease thereunder or as set forth in the Plan Supplement) (the "Confirmation Objection Deadline") |
| Deadline to File Voting Report | December 1, 2020, at 5:00 p.m. (prevailing Central Time) | The date by which the report tabulating the voting on the Plan (the "Voting Report") shall be filed with the Court |
| Confirmation Hearing Date | December 7, 2020, or such other date as may be scheduled by the Court | The date of the Confirmation Hearing (the "Confirmation Hearing Date") |

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 363, 502, 1123(a), 1124, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, 3020, and 9006, and rules 2002-1 and 3016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Summary of the Plan

5.      The Plan delivers significant value to all stakeholders in the form of a deleveraged balance sheet and significant new money investment. Among other things, the Plan provides for a fully backstopped $600 million equity rights offering (the "Rights Offering") that, together with the Debtors' $2.5 billion exit financing, will provide sufficient liquidity to fund recoveries under the Plan and meet post-reorganization working capital needs. The Plan provides for the following recoveries, each of which is to be paid on or as soon as reasonably practicable after the Effective Date of the Plan and are subject to the terms set forth in the Plan: [4]

---

[4]     The foregoing description of contemplated recoveries is meant only to summarize certain provisions of the Plan. To the extent there are any discrepancies between the foregoing description of contemplated recoveries and the Plan, the Plan shall control.

- <u>Revolving Credit Facility Claims</u>: each holder of an Allowed Revolving Credit Facility Claim shall receive, in accordance with such holder's prior determined allocation, either (i) Tranche A RBL Exit Facility Loans or (ii) Tranche B Exit Facility Loans on a dollar-for-dollar basis; *provided* that any Claims on account of accrued but unpaid Existing RBL Adequate Protection Payments shall be paid in full as Cash as set forth in Section II.A.1 of the Plan;

- <u>FLLO Term Loan Facility Claims</u>: each holder of an Allowed FLLO Term Loan Facility Claim shall receive its *Pro Rata* share of (i) 76 percent of the New Common Stock (subject to dilution on account of the Management Incentive Plan, the Rights Offering, the Put Option Premium, and the New Warrants) and (ii) the FLLO Rights;

- <u>Second Lien Notes Claims</u>: each holder of an Allowed Second Lien Notes Claim shall receive its *Pro Rata* share of (i) 12 percent of the New Common Stock (subject to dilution on account of the Management Incentive Plan, the Rights Offering, the Put Option Premium, and the New Warrants), (ii) the Second Lien Rights, (iii) the New Class A Warrants, (iv) the New Class B Warrants, and (v) 50 percent of the New Class C Warrants;

- <u>Unsecured Notes Claims</u>: each holder of an Allowed Unsecured Notes Claim shall receive its *Pro Rata* share of (i) the Unsecured Claims Recovery and (ii) 50 percent of the New Class C Warrants; and

- <u>General Unsecured Claims</u>: each holder of an Allowed General Unsecured Claim shall receive its *pro rata* share of the Unsecured Notes Claims Recovery.

6.     In accordance with the foregoing description of the treatment of holders of Claims and Interests, the Debtors intend to solicit the votes of only those holders of Claims that are entitled to vote to accept or reject the Plan.  The following chart summarizes the voting status of the Classes of Claims under the Plan:[5]

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Revolving Credit Facility Claims | Impaired | Entitled to Vote |
| Class 4 | FLLO Term Loan Facility Claims | Impaired | Entitled to Vote |

---

[5]     The Plan constitutes a separate chapter 11 plan for each Debtor.  The Debtors reserve the right to modify the Plan in accordance with the terms thereof, including the right to withdraw the Plan as to an individual Debtor at any time before the Confirmation Date.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 5 | Second Lien Notes Claims | Impaired | Entitled to Vote |
| Class 6 | Unsecured Notes Claims | Impaired | Entitled to Vote |
| Class 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 8 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept / Deemed to Reject) |
| Class 9 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept / Deemed to Reject) |
| Class 10 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

7.      Based on the foregoing (and as discussed in greater detail herein), the Debtors are proposing to solicit votes to accept or reject the Plan from holders of Claims in Classes 3, 4, 5, 6, and 7 (each, a "Voting Class" and collectively, the "Voting Classes").  The Debtors are **not** proposing to solicit votes from holders of Claims and Interests in Classes 1, 2, 8, 9, and 10 (each a "Non-Voting Class" and collectively, the "Non-Voting Classes").

8.      The Plan contains certain customary Debtor and third-party releases (such third-party release, the "Third-Party Release") as described more fully in Article III.P of the Disclosure Statement, for: (a) each Debtor; (b) each Reorganized Debtor; (c) each of the Debtors' current and former directors and officers; (d) each DIP Lender; (e) each Agent; (f) each Trustee; (g) the Consenting Revolving Credit Facility Lenders; (h) the Consenting FLLO Term Loan Facility Lenders; (i) the Consenting Second Lien Noteholders; (j) the Consenting Unsecured Noteholders; (k) the Exit Facilities Lenders; (l) the Backstop Parties; (m) all holders of Interests; and (n) with respect to each of the foregoing (a) through (m), each of such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their

respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in the Plan using the respective opt out forms provided to voting and non-voting parties; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

9.       Confirmation of the Plan will preserve the going-concern value of the Debtors' business and maximize value for the benefit of all stakeholders.  Further, the Disclosure Statement provides adequate information with respect to the Plan, ensuring that holders of Claims entitled to vote on the Plan will receive information of a kind and in sufficient detail to make an informed judgment regarding acceptance or rejection of the Plan.  The proposed schedule and procedures to confirm and consummate the Plan will move these Chapter 11 Cases forward in a timely manner while ensuring due process and providing for the procedural safeguards mandated under the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules.  Accordingly, the Debtors respectfully submit the relief requested in this motion should be approved.

<u>**Basis for Relief**</u>

**I.       The Court Should Approve the Disclosure Statement.**

   **A.       The Standard for Approval of the Disclosure Statement.**

10.       Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan.  11 U.S.C. § 1125.  Specifically, section 1125(a)(1) of the Bankruptcy Code provides, in relevant part, as follows:

> '[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

11.    The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision regarding whether or not to vote for the plan.  *See, e.g.*, *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."); *In re Phoenix Petroleum, Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("The primary purpose of a disclosure statement is to provide all material information which creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan."). Congress intended that such informed judgments would be needed to both negotiate the terms of, and vote on, a plan of reorganization.  *Century Glove, Inc.*, 860 F.2d at 100.

12.    "Adequate information" is a flexible standard, based on the facts and circumstances of each case.  11 U.S.C. § 1125(a)(1) ("[A]dequate information means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor

and the condition of the debtor's books and records"); *see also Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis.  This determination is largely within the discretion of the bankruptcy court."); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("[T]he information required will necessarily be governed by the circumstances of the case").  Accordingly, the determination of whether a disclosure statement contains adequate information must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case.

13.     Courts in the Fifth Circuit acknowledge that determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court.  *See, e.g.*, *Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("The legislative history of § 1125 indicates that, in determining what constitutes 'adequate information' with respect to a particular disclosure statement, 'both the kind and form of information are left essentially to the judicial discretion of the court' and that 'the information required will necessarily be governed by the circumstances of the case.'") (internal citations omitted), *cert. denied*, 526 U.S. 1144 (1999); *In re Tex. Extrusion Corp.*, 844 F.2d at 1157 ("The determination of what is adequate information is subjective and made on a case by case basis.  This determination is largely within the discretion

of the bankruptcy court.").  Accordingly, the determination of whether a disclosure statement contains adequate information must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case.  *See Phoenix Petroleum*, 278 B.R. at 393.

14.     In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

    a.    the events that led to the filing of a bankruptcy petition;

    b.    the relationship of the debtor with its affiliates;

    c.    a description of the available assets and their value;

    d.    the debtor's anticipated future;

    e.    the source of information stated in the disclosure statement;

    f.    the debtor's condition while in chapter 11;

    g.    claims asserted against the debtor;

    h.    the estimated return to creditors under a chapter 7 liquidation;

    i.    the future management of the debtor;

    j.    the chapter 11 plan or a summary thereof;

    k.    financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

    l.    information relevant to the risks posed to creditors under the plan;

    m.    the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

    n.    litigation likely to arise in a nonbankruptcy context; and

    o.    tax attributes of the debtor.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing the

factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same). Disclosure regarding all topics is not necessary in every case.  *See In re U.S. Brass Corp.*, 194 B.R. at 424; *see also In re Phoenix Petroleum Co.*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

      **B.**      **The Disclosure Statement Contains Adequate Information in Accordance with Section 1125 of the Bankruptcy Code.**

15.      The Disclosure Statement provides "adequate information" to allow holders of Claims in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including, without limitation:

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Directors and Officers of the Reorganized Debtors | An overview of the selection and appointment process of the initial boards of directors as well as the officers of each of the Reorganized Debtors. | Article III.W; Article IV.L |
| Debtors' Corporate History, Structure, and Business Overview | An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure. | Article V |
| Events Leading to the Chapter 11 Filings | An overview of the Debtors' out-of-court restructuring efforts in response to deteriorating economic conditions, including the negotiations with respect to the Plan and the Restructuring Support Agreement. | Article VI |
| Material Developments of the Chapter 11 Cases | A summary of the material developments in the Chapter 11 Cases. | Article VII |

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Risk Factors | Certain risks associated with the Debtors' business, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement. | Article VIII |
| Solicitation Procedures | A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan. | Article IX |
| Confirmation of the Plan | Confirmation procedures and statutory requirements for Confirmation and Consummation of the Plan, including a liquidation analysis, financial projections, and a valuation. | Article X |
| Certain Securities Laws Matters | A description of the applicability of section 1145 of the Bankruptcy Code and the issuance of New Common Stock and other Securities under the Plan. | Article XI |
| Certain United States Federal Income Tax Consequences of the Plan | A description of certain U.S. federal income tax law consequences of the Plan. | Article XII |
| Recommendation | A recommendation by the Debtors that holders of Claims in the Voting Classes should vote to accept the Plan. | Article XIII |
| Liquidation Analysis | An analysis of the liquidation value of the Debtors. | Exhibit D |
| Financial Projections | A projected consolidated income statement. | Exhibit E |
| Valuation Analysis | A valuation of the post-Confirmation going concern value of the Debtors. | Exhibit F |

16.     Based on the foregoing, the Debtors submit that the Disclosure Statement complies

with all aspects of section 1125 of the Bankruptcy Code and addresses the information set forth

above in a manner that provides adequate information to holders of Claims entitled to vote to accept or reject the Plan. Accordingly, the Debtors submit that the Disclosure Statement contains "adequate information" and should be approved.

      **C.**     **The Disclosure Statement Provides Sufficient Notice of Injunction, Release, and Exculpation Provisions in the Plan.**

      17.     Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction. Fed. R. Bankr. P. 3016(c). Similarly, Bankruptcy Rule 2002(c) requires that such disclosure be provided for the notice of the time fixed for filing objections and the hearing to consider confirmation of the chapter 11 plan. Fed. R. Bankr. P. 2002(c).

      18.     Article VIII of the Plan and Article III.P of the Disclosure Statement describe in detail the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing. The relevant language in these articles is in bold, making it conspicuous to anyone who reads it. Moreover, these sections of the Plan and Disclosure Statement describe in detail entities subject to or providing a release under the Plan, and the Claims, Interests, and Causes of Action so released, the entities entitled to exculpation under the Plan, and the entities subject to and covered by a permanent injunction. And, the Confirmation Hearing Notice states in clear and bolded text that the Plan contains release, exculpation, and injunction provisions, including the Third-Party Releases. Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined, released, or exculpated by the Plan, and the Confirmation Hearing Notice complies with Bankruptcy Rule 2002(c) by conspicuously describing the nature and entities subject to the injunction under the Plan.

II.     **The Court Should Approve the Solicitation Procedures, the Ballots, the Timeline, and the Forms of Notices Related to Solicitation and Confirmation of the Plan.**

   A.     **The Court Should Approve the Solicitation Procedures.**

   19.     Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under section (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designed under subsection (e) of this section, that have accepted or rejected the plan.

11 U.S.C. § 1126(c).   Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c).   Consistent with these requirements, the Debtors propose to use the Solicitation Procedures to facilitate the process of tabulating all votes received.   Specifically, the Solicitation Procedures provide that the Debtors will not count a Ballot if it is, among other things, illegible, submitted by a holder of a Claim or Interest that is not entitled to vote on the Plan, unsigned, or not clearly marked.   Further, the Debtors, subject to a contrary order of the Court, in consultation with the Required Plan Sponsors and the DIP Agent, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Voting Report.

   20.     The Debtors believe that the proposed Solicitation Procedures will facilitate the Plan confirmation process.   Specifically, the procedures will set forth which holders of Claims are entitled to vote and their Claim amount for voting purposes, clarify any obligations of holders of Claims entitled to vote to accept or reject the Plan, and create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity requirements of section 1126(c) of the Bankruptcy Code.   Accordingly, the Debtors submit that the Solicitation Procedures

15

are in the best interests of their Estates, holders of Claims, and other parties in interest, and that good cause supports the relief requested herein.

21.     Further, the Debtors respectfully request that Epiq Corporate Restructuring, LLC (the "Solicitation Agent") be authorized (to the extent not authorized by another order of the Court) to assist the Debtors in (a) distributing the Solicitation Packages, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by holders of Claims against the Debtors, (c) responding to inquiries from holders of Claims and/or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Solicitation Packages (including the Ballots), and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors or holders of Interests regarding the Plan.  The Debtors respectfully submit that the Solicitation Procedures and the authorization of the Solicitation Agent's assistance therewith complies with Bankruptcy Rule 3018(c) and, therefore, should be approved.

### B.     The Court Should Approve the Forms of the Ballots.

22.     The Debtors have prepared the Ballots in accordance with Bankruptcy Rule 3018(c).  Although based on Official Form B 314, the Ballots have been modified to (a) address the particular circumstances of the Chapter 11 Cases and (b) include certain additional information that is relevant and appropriate for Claims in certain of the Voting Classes.  The proposed Ballots for each Voting Class are annexed as **Exhibits 3A**, **3B**, **3C**, **3D**, **3E**, **3F**, and **3G** to the Order.  The Debtors respectfully submit that the forms of the Ballots comply with Bankruptcy Rule 3018(c) and, therefore, should be approved.

**C.      The Court Should Approve the Form and Distribution of the Solicitation Packages to Parties Entitled to Vote on the Plan.**

23.     Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed claims upon approval of a disclosure statement, including the court-approved plan and disclosure statement and notice of the time within which acceptances and rejections of the plan may be filed.  Fed. R. Bankr. P. 3017(d).

24.     In accordance with this requirement, the Debtors propose to distribute the Solicitation Packages to provide holders of Claims in the Voting Classes with the information they need to be able to make informed decisions with respect to how to vote on the Plan.  Specifically, on or before the Solicitation Mailing Deadline, the Debtors will cause the Solicitation Packages to be distributed by first-class U.S. mail to those holders of Claims in the Voting Classes.  Each Solicitation Package will include the following materials:

        a.      the Order (excluding the schedules thereto, except as set forth below);

        b.      the approved Disclosure Statement (annexed as **<u>Exhibit 1</u>** to the Order) and the schedules attached thereto, including the Plan;

        c.      the Solicitation Procedures (annexed as **<u>Exhibit 2</u>** to the Order);

        d.      the applicable form of Ballot, in substantially the form of the Ballots annexed as **<u>Exhibits 3A</u>**, **<u>3B</u>**, **<u>3C</u>**, **<u>3D</u>**, **<u>3E</u>**, **<u>3F</u>**, and **<u>3G</u>** to the Order;

        e.      the Cover Letter, in substantially the form annexed as **<u>Exhibit 4</u>** to the Order describing the contents of the Solicitation Package and urging the holders of Claims in each of the Voting Classes to vote to accept the Plan;

        f.      the Confirmation Hearing Notice in substantially the form annexed as **<u>Exhibit 8</u>** to the Order;

g.     a pre-addressed, postage pre-paid reply envelope;[6] and

h.     any additional documents that the Court has ordered to be made available to holders of Claims in the Voting Classes.

25.     The Debtors request that they be authorized, but not directed or required, to distribute the Plan, the Disclosure Statement, and the Order (without schedules, except for the Solicitation Procedures) to holders of Claims entitled to vote on the Plan in electronic format (*i.e.*, on a CD-ROM or flash drive).  ***Only*** the Ballots, the Cover Letter, and the Confirmation Hearing Notice will be provided in paper copy.  Distribution in this manner will translate into significant monetary savings for the Debtors' Estates by reducing printing and postage costs (the Plan, the Disclosure Statement, and the Order, collectively, total over 175 pages).  Any party that receives the materials in electronic format but would prefer paper format may contact the Solicitation Agent to request paper copies of the materials previously received in electronic format (to be provided at the Debtors' expense).

26.     In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept (i) Ballots from voters who are not Beneficial Holders (as defined below) of Second Lien Notes Claims or Unsecured Notes Claims via electronic, online transmissions, solely through an online balloting portal on the Debtors' case website to be maintained by the Solicitation Agent ("E-Ballot"); and (ii) Master Ballots (as defined in the Solicitation Procedures) submitted by Nominees via e-mail to tabulation@epiqglobal.com. Parties entitled to vote through E-Ballot may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing E-Ballot.  Instructions for electronic, online transmission

---

[6]     The Debtors will provide pre-addressed, postage pre-paid reply envelopes only to those holders who receive Ballots directly from the Debtors and shall not be responsible for ensuring individual Beneficial Holders receive pre-addressed, postage pre-paid reply envelopes from their respective Nominees.

of Ballots are set forth on the forms of Ballots.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

27.     In many instances, certain brokerage firms and banks or their agents (collectively, the "Nominees") hold Claims against or Interests in certain of the Debtors in "street name" on behalf of the individual holders themselves (collectively, the "Beneficial Holders").  To ensure proper tabulation of votes for such Claims, the Solicitation Agent will deliver Solicitation Packages to holders of record as of the Voting Record Date, including Nominees, with instructions to forward the material to their Beneficial Holder clients.  Additionally, along with delivery of the Solicitation Package to Nominees, the Solicitation Agent will distribute master ballots to Nominees.  The Ballots for Beneficial Holders will instruct each Beneficial Holder voting on the Plan through a Nominee to return the Beneficial Ballot to the appropriate Nominee in sufficient time for such Nominee to timely cast votes to accept or reject the Plan on behalf of the Beneficial Holders.  The Solicitation Agent will then tabulate each such Ballot received.

28.     The Debtors will also provide complete Solicitation Packages (excluding the Ballots and the Cover Letter) to the U.S. Trustee and all parties required to be notified under Rule 2002 of the Bankruptcy Rules and Rule 2002-1 of the Bankruptcy Local Rules (the "2002 List") as of the Voting Record Date.  The Debtors respectfully submit that the Solicitation Packages comply with Bankruptcy Rule 3017(d) and, therefore, should be approved.

### D.     The Court Should Approve the Voting Record Date and Voting Deadline.

29.     Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order

approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes. Fed. R. Bankr. P. 3018(a).

30.     The Debtors request that the Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) to establish October 8, 2020 as the Voting Record Date. Only holders of Claims as of the Voting Record Date shall be entitled to vote to accept or reject the Plan. Further, the Debtors request that the Court direct the applicable Trustees to provide the Solicitation Agent with lists of the registered holders of Second Lien Notes and Unsecured Notes, respectively reflecting the principal amount of Second Lien Notes and Unsecured Notes, in each case, as of the Voting Record Date, as soon as practicable, but no later than five (5) Business Days following the Voting Record Date.

31.     Moreover, the Debtors propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim, *only if* all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date. In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan, distribution election, or opt out election made by the holder of such Claim as of the Voting Record Date.

32.     Further, the Debtors request that, after the Debtors distribute Solicitation Packages to holders of Claims entitled to vote on the Plan by the Solicitation Mailing Deadline, the Court require that all holders of Claims entitled to vote on the Plan complete, execute, and return their Ballots (in accordance with the instructions on the Ballots) so that they are *actually received* by

the Solicitation Agent on or before the Voting Deadline, which the Debtors request be established as November 23, 2020 at 11:59 p.m. (prevailing Central Time).

33.     The foregoing timing and materials will afford holders of Claims entitled to vote on the Plan sufficient time within which to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline consistent with the requirements of the applicable Bankruptcy Rules. *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims). The Debtors respectfully submit that the Voting Record Date and Voting Deadline comply with Bankruptcy Rule 3017(d) and, therefore, should be approved.

**E.     The Court Should Approve the Form of Notices to Non-Voting Classes.**

34.     As discussed above, the Non-Voting Classes are *not* entitled to vote on the Plan. As a result, they will *not* receive Solicitation Packages and, instead, the Debtors propose that such parties (other than holders of Intercompany Claims (Class 8) and Intercompany Interests (Class 9)) receive a Non-Voting Status Notice. Specifically, in lieu of Solicitation Packages, the Debtors propose to provide the following to holders of Claims or Interests in Non-Voting Classes:

| Class(es) | Status | Treatment |
|---|---|---|
| 1, 2 | Unimpaired—Deemed to Accept | Holders of Claims that are deemed to accept the Plan are not entitled to vote. As such, holders of such Claims will receive a notice, substantially in the form attached to the Order as **Exhibit 5**, in lieu of a Solicitation Package. |

| Class(es) | Status | Treatment |
|---|---|---|
| 10 | Impaired—Deemed to Reject | Holders of Interests that are deemed to reject the Plan are not entitled to vote. As such, holders of such Interests will receive a notice, substantially in the form attached to the Order as **Exhibits 6** and **6A**, **6B**, and **6C** (as applicable) in lieu of a Solicitation Package. |
| N/A | Disputed Claims | Holders of Claims that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their Claim.  As such, holders of such Claims will receive a notice, substantially in the form attached to the Order as **Exhibit 7** (which notice shall be served together with such objection). |

35.     Each of the Non-Voting Status Notices will include, among other things: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (***excluding*** Ballots) from the Solicitation Agent free of charge and/or the Court's website via PACER; (b) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article VIII of the Plan, and form for opting out of the Third-Party Release provided by the Plan; (c) notice of the Confirmation Objection Deadline; (d) notice of the Confirmation Hearing Date; and (e) additional information related thereto.

36.     The Debtors further request that they ***not*** be required to mail Solicitation Packages, other solicitation materials, or a Non-Voting Status Notice to:  (a) holders of Claims that have already been paid in full during the Chapter 11 Cases; (b) any party to whom the notice of this motion was sent but was subsequently returned as undeliverable without a forwarding address by

the Voting Record Date; or (c) the holders of Class 8 Intercompany Claims and Class 9 Intercompany Interests.[7]

37.     The Debtors respectfully submit that the mailing of Non-Voting Status Notices in lieu of Solicitation Packages to the holders of Claims and Interests in Non-Voting Classes complies with Bankruptcy Rule 3017(d) and, therefore, should be approved.

> **F.     The Court Should Approve the Confirmation Hearing Notice and Procedures for Objecting to Confirmation of the Plan.**

38.     The Debtors will serve the Confirmation Hearing Notice on all known holders of Claims and Interests and the 2002 List (regardless of whether such parties are entitled to vote on the Plan) by no later than the Solicitation Mailing Deadline.  The Confirmation Hearing Notice will include the following:  (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (*excluding* Ballots) from the Solicitation Agent and/or the Court's website via PACER; (b) notice of the Voting Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the Confirmation Objection Deadline; and (e) notice of the Confirmation Hearing Date and information related thereto.

39.     Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  Fed. R. Bankr. P. 2002(l).  Therefore, in addition to the foregoing distribution of the Confirmation Hearing Notice, the Debtors will publish the Publication Notice nine (9) business days after entry of the

---

[7]     Intercompany Claims and Intercompany Interests shall be reinstated or distributed, contributed, setoff, settled, or canceled and released, or otherwise addressed, as applicable, at the option of the Debtors with the consent of the Required Consenting Stakeholders.  Thus, holders of Intercompany Claims and Intercompany Interests will not be entitled to vote to accept or reject the Plan.  Accordingly, and in light of the fact that the Intercompany Claims and Intercompany Interests are all held by the Debtors or affiliates of the Debtors, the Debtors are requesting a waiver from any requirement to serve holders of Intercompany Claims and Intercompany Interests with a Solicitation Package, other solicitation materials, or a Non-Voting Status Notice.

Order, or as soon as reasonably practicable thereafter, on one occasion in the *New York Times*, the *Oklahoman*, the *Houston Chronicle*, the *Billings Gazette*, the *Casper Star-Tribune*, the *Philadelphia Inquirer*, and *The Advocate*.  The Debtors believe that the Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting Deadline, the Confirmation Objection Deadline, and the Confirmation Hearing to parties who did not otherwise receive notice thereof by mail.  The Debtors respectfully submit that service and publication of the Confirmation Hearing Notice complies with Bankruptcy Rule 2002 and, therefore, should be approved.

40.     Additionally, section 1128 of the Bankruptcy Code provides that a court shall hold a hearing on confirmation of a plan and provides that parties in interest can object to confirmation. 11 U.S.C. § 1128.   The Debtors request that the Court establish **December 7, 2020** as the Confirmation Hearing Date and **November 23, 2020, at 5:00 p.m.** (prevailing Central Time) as the Confirmation Objection Deadline.

41.     Bankruptcy Rule 2002(b) requires that parties be given at least 28 days' notice of the time fixed for filing objections and for the hearing to consider confirmation of a chapter 11 plan.  The schedule proposed herein provides parties 31 days' notice for filing objections to the Plan in accordance with Bankruptcy Rule 2002(b).

42.     The Debtors further request that the Court direct the manner in which parties in interest may object to Confirmation of the Plan.  Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1).  The Confirmation Hearing Notice will require that objections to confirmation of the Plan or requests for modifications to the Plan, if any, must:

        a.       be in writing;

b.        conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court;

c.        state the name and address of the objecting party and the nature and amount of the Claim against or Interests in the Estates or property of the Debtors;

d.        state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and

e.        be filed with the Court on or before **November 23, 2020, at 5:00 p.m.** (prevailing Central Time) the Confirmation Objection Deadline.

43.     The Debtors respectfully submit that such dates and procedures will afford the Court, the Debtors, and other parties in interest reasonable time to consider the objections and proposed modifications to the Plan prior to the Confirmation Hearing, and therefore, should be approved.

44.     Moreover, the Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors, with the prior consent of the Required Plan Sponsors and the DIP Agent, without further notice other than adjournments announced in open Court or as indicated in any notice of reset hearing filed by the Debtors with the Court.

**G.**     **The Court Should Approve the Plan Supplement Notice.**

45.     The Plan defines "Plan Supplement" to mean the compilation of documents and forms of documents, term sheets, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed prior to the Confirmation Hearing to the extent available, and any additional documents Filed prior to the Effective Date as amendments to the Plan Supplement, including the following, as applicable: (a) the New Organizational Documents; (b) to the extent known, the identities of the members of the New Board; (c) the Assumed Executory Contracts and Unexpired Leases Schedule; (d) the

Rejected Executory Contracts and Unexpired Leases Schedule; (e) the Schedule of Retained Causes of Action; (f) the Exit Facilities Documents; (g) the definitive documentation related to the Management Incentive Plan; (h) the Restructuring Transactions Memorandum; (i) the New Warrants Agreements; and (j) the Registration Rights Agreement.  The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement up to the Effective Date as set forth in this Plan and in accordance with the Restructuring Support Agreement and Restructuring Term Sheet (and subject to the applicable consent rights thereunder). To ensure that parties in interest receive notice of the Debtors' filing of the Plan Supplement, the Debtors propose to mail the Plan Supplement Notice on the date the Debtors file the Plan Supplement, or as soon as practicable thereafter.  The Debtors respectfully submit that the Plan Supplement Notice should be approved.

**H.      The Court Should Approve the Notices to Contract and Lease Counterparties.**

46.      Article V.A of the Plan provides, that the Effective Date, all Executory Contracts or Unexpired Leases not otherwise assumed or rejected will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that are: (1) identified on the Rejected Executory Contracts and Unexpired Leases Schedule; (2) previously expired or terminated pursuant to their own terms; (3) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (4) are the subject of a motion to reject that is pending on the Effective Date; or (5) have an ordered or requested effective date of rejection that is after the Effective Date. *See* Plan at Art. V.A.

47.      To ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of assumption (and any corresponding proposed cure amounts ("Cure Claims")) or rejection of their Executory Contract or Unexpired Lease pursuant to the Plan, the Debtors will mail an Assumption Notice or a Rejection Notice, as appropriate, within the time periods specified in the

Plan.  The Debtors respectfully submit that the Assumption Notice and Rejection Notice, attached

to the Order as **Exhibits 10** and **11** respectively, should be approved.

### III.    The Court Should Approve the Rights Offering Procedures and the Form of Rights Offering Materials.

48.    In parallel with the Plan solicitation process, the Debtors intend to commence the

subscription process for the equity Rights Offering contemplated by the Plan.  The Debtors will

consummate the fully-backstopped Rights Offering for an aggregate purchase price of $600

million, which Rights Offering will provide for subscription rights to (a) eligible holders of FLLO

Term Loan Facility Claims and Second Lien Notes Claims as of the FLLO Record Date and

Second Lien Record Date (each as defined herein), respectively, and (b) the Backstop Parties.  The

Rights Offering will, severally and not jointly, be backstopped by the Backstop Parties pursuant

to that certain Backstop Commitment Agreement, dated as of June 28, 2020.  The Rights Offering

will be conducted on the terms and conditions set forth in the Backstop Commitment Agreement

and the Rights Offering Procedures (as defined herein).

49.    All shares of the New Common Stock, the New Warrants (and any shares of the

New Common Stock issuable upon the exercise thereof), and the Rights (and any shares issuable

upon the exercise thereof other than the unsubscribed shares of New Common Stock issued to the

Backstop Parties pursuant to the Backstop Commitment Agreement) and the shares issuable as

part of the Put Option Premium will be issued in reliance upon section 1145 of the Bankruptcy

Code to the extent permitted under applicable law.  The unsubscribed shares of New Common

Stock issued to the Backstop Parties pursuant to the Backstop Commitment Agreement will be

issued in reliance upon section 4(a)(2) of the Securities Act or Regulation D promulgated

thereunder.  Entry of the Confirmation Order shall constitute Bankruptcy Court approval of the

Rights Offering (including the transactions contemplated thereby, and all actions to be undertaken,

undertakings to be made, and obligations to be incurred by Reorganized Chesapeake in connection therewith). On the Effective Date, the rights and obligations of the Debtors under the Backstop Commitment Agreement shall vest in the Reorganized Debtors, as applicable.

50.     For more information regarding the Rights Offering, the Rights Offering Participants should refer to the Rights Offering procedures, the forms of which are attached as **Exhibit 12** to the Order (collectively, the "Rights Offering Procedures"). The Rights Offering Procedures have been designed to efficiently transmit all materials necessary for participation in the Rights Offering in compliance with applicable bankruptcy and non-bankruptcy law. The Subscription Forms, the forms of which are attached as **Exhibits 13A**, **13B**, and **13C**, are designed to assure the clear communication of the requirements for, and to facilitate, such participation. In connection with the foregoing, the Debtors respectfully request that the Court approve the following schedule of proposed dates to govern the Rights Offering:

| Event | Date |
|---|---|
| FLLO Record Date | **4:00 p.m. Central Time on November 23, 2020** |
| Second Lien Record Date | **4:00 p.m. Central Time on November 23, 2020** |
| Subscription Commencement Date | **October 23, 2020** |
| Subscription Expiration Deadline | **4:00 p.m. Central Time on November 23, 2020** |
| Subscription Funding Deadline (only for non-Backstop Parties) | **4:00 p.m. Central Time on November 24, 2020** |

51.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In the Fifth Circuit, bankruptcy courts have authorized the use or sale of property of the estate outside the ordinary course of business when such use or sale is grounded upon a "sound business purpose" and is proposed in good faith. *See,*

*e.g.*, *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989).   Once a debtor articulates a valid business justification under section 363, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief the action was in the best interest of the company.  *See In re Pisces Energy, LLC*, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) (holding that the 'business judgment test' "requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment").  After "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp., (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

52.     The Rights Offering is a key component of the Debtors' proposed restructuring and a key source of value for eligible participants.   The terms of the Rights Offering have been extensively negotiated among the Debtors and the Consenting Stakeholders.   The Debtors submit

that the approval of the Rights Offering Procedures and the Rights Offering Materials are necessary to the successful effectuation of the Rights Offering and provide the holders of FLLO Term Loan Facility Claims and Second Lien Notes Claims a fair and reasonable opportunity to participate in the Rights Offering.  The Debtors believe that approval of the Rights Offering Procedures and the Rights Offering Materials is in the best interests of their Estates, creditors, and all other parties in interest, and constitutes an appropriate exercise of business judgment.

53.     Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  In essence, the Court may enter an order that safeguards the value of the debtor's estate if doing so is consistent with the Bankruptcy Code.  *See e.g., Chinichian v. Campolongo* (*In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.").

54.     Approval of the Rights Offering Procedures and the Rights Offering Materials is necessary to effectuate consummation of the Plan—which represents the Debtors' best means of maximizing the value of their Estates—the Debtors believe that the Court's application of section 105(a) of the Bankruptcy Code here is appropriate.

### Non-Substantive Modifications

55.     The Debtors request authorization to make non-substantive changes, with the prior consent of the Required Plan Sponsors and the DIP Agent, to the Plan, Disclosure Statement, Solicitation Procedures, Ballots, Solicitation Packages, any notice attached to the Order, and any related documents without further order of the Court, including formatting changes, changes to correct typographical and grammatical errors, if any, and to make conforming changes to the

Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

**Notice**

56.     The Debtors will provide notice of this motion to: (a) the United States Trustee for the Southern District of Texas; (b) counsel to the official committee of unsecured creditors; (c) counsel to the official committee of royalty owners; (d) the administrative agent under the Debtors' debtor-in-possession credit facility and counsel thereto; (e) the administrative agent under the Debtors' prepetition revolving credit facility and counsel thereto; (f) the administrative agent for the Debtors' prepetition term loan facility and counsel thereto; (g) the indenture trustee for the Debtors' senior secured second lien notes and counsel thereto; (h) the indenture trustees for the Debtors' unsecured notes; (i) counsel to the ad hoc group of term loan lenders; (j) counsel to Franklin Advisers, Inc., as investment manager on behalf of certain funds and accounts; (k) the United States Attorney's Office for the Southern District of Texas; (l) the Internal Revenue Service; (m) the United States Securities and Exchange Commission; (n) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (o) the state attorneys general for states in which the Debtors conduct business; and (p) all parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
September 11, 2020

*/s/ Matthew D. Cavenaugh*

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:          mcavenaugh@jw.com
                jwertz@jw.com
                kpeguero@jw.com
                vpolnick@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Alexandra Schwarzman  (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
                marc.kieselstein@kirkland.com
                alexandra.schwarzman@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on September 11, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh