**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | **Re:  Docket No. __** |

**ORDER (I) APPROVING THE ADEQUACY OF
THE DISCLOSURE STATEMENT, (II) APPROVING
THE SOLICITATION PROCEDURES WITH RESPECT TO
CONFIRMATION OF THE DEBTORS' PROPOSED CHAPTER 11
PLAN, (III) APPROVING THE FORMS OF BALLOTS AND NOTICES IN
CONNECTION THEREWITH, (IV) APPROVING THE RIGHTS OFFERING
PROCEDURES AND RELATED MATERIALS, (V) SCHEDULING CERTAIN
DATES WITH RESPECT THERETO, AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"), pursuant to sections 105, 363,

502, 1123(a), 1124, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016,

3017, 3018, 3020, and 9006, and Bankruptcy Local Rules 2002-1 and 3016-1:  (a) approving the

adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of*

*Chesapeake Energy Corporation and its Debtor Affiliates*, substantially in the form attached to

this  Order  (the "Disclosure  Statement");  (b)  approving  the  Solicitation  Procedures;

(c) approving the Ballots; (d) approving the Solicitation Packages; (e) approving the Cover Letter;

(f) approving the Confirmation Hearing Notice; (g) approving the Non-Voting Status Notices;

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
claims and noticing agent at https://dm.epiq11.com/chesapeake.  The location of Debtor Chesapeake Energy
Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North
Western Avenue, Oklahoma City, Oklahoma 73118.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(h) approving the Plan Supplement Notice; (i) approving the Assumption Notice and Rejection Notice; (j) approving the Rights Offering Procedures; and (k) approving certain dates and deadlines related to confirmation of the Plan; this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' Estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as provided herein.

**I.      Approval of the Disclosure Statement.**

2.      The Disclosure Statement, attached hereto as **Exhibit 1**, is approved as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

3.      The Disclosure Statement (including all applicable exhibits thereto) provides holders of Claims and Interests, and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article VIII of the Plan, in satisfaction of the requirements of Bankruptcy Rules 2002(c)(3) and 3016(b) and (c).

II.     **Approval of the Procedures, Materials, and Timeline for Soliciting Votes on and Confirming the Plan.**

     A.     **Approval of the Solicitation Procedures.**

     4.     The Debtors are authorized to solicit, receive, and tabulate votes to accept the Plan in accordance with the Solicitation Procedures attached hereto as **Exhibit 2**, which are hereby approved in their entirety.

     B.     **Approval of Certain Dates and Deadlines with Respect to the Plan and Disclosure Statement.**

     5.     The following dates are hereby established (subject to modification as necessary with the consent of the Required Plan Sponsors and the DIP Agent) with respect to the solicitation of votes to accept the Plan, voting on the Plan, and confirming the Plan:

| Event | Date |
|---|---|
| Voting Record Date | October 8, 2020 |
| Solicitation Mailing Deadline | October 23, 2020 (or as soon as reasonably practicable thereafter) |
| Publication Deadline | Nine (9) business days following the entry of the Order (or as soon as reasonably practicable thereafter) |
| Plan Supplement Filing Deadline | November 16, 2020 |
| Voting Deadline | November 23, 2020 at 11:59 p.m. (prevailing Central Time) |
| Confirmation Objection Deadline | November 23, 2020 at 5:00 p.m. (prevailing Central Time) |
| Deadline to File Voting Report | December 1, 2020 at 5:00 p.m. (prevailing Central Time) |
| Confirmation Hearing Date | December 7, 2020 or such other date as may be scheduled by the Court |

     6.     The Second Lien Notes Trustee and the Unsecured Notes Trustee are directed to provide the Solicitation Agent with lists of the registered holders of Second Lien Notes and General Unsecured Notes, respectively, reflecting the principal amount of Second Lien Notes and General Unsecured Notes held as of the Voting Record Date as soon as practicable, but no later than five (5) Business Days following the Voting Record Date.

**C.** **Approval of the Form and Distribution of Solicitation Packages to Parties Entitled to Vote on the Plan.**

7.      The Solicitation Packages to be transmitted on or before the Solicitation Mailing Deadline, or as soon as reasonably practicable thereafter, to those holders of Claims entitled to vote on the Plan as of the Voting Record Date, shall include the following, the form of each of which is hereby approved:

   a.      this Order (excluding the schedules hereto, except as set forth below);

   b.      the Disclosure Statement attached hereto as **Exhibit 1**;

   c.      the Solicitation Procedures attached hereto as **Exhibit 2**;

   d.      the applicable form of Ballot, in substantially the form of the Ballots attached hereto as **Exhibits 3A**, **3B**, **3C**, **3D**, **3E** and **3G**;

   e.      a cover letter, in substantially the form attached hereto as **Exhibit 4** describing the contents of the Solicitation Package and urging the holders of Claims in each of the Voting Classes to vote to accept the Plan;

   f.      the Confirmation Hearing Notice in substantially the form attached hereto as **Exhibit 8**; and

   g.      a pre-addressed, postage pre-paid reply envelope.[3]

8.      The Debtors shall distribute Solicitation Packages to all holders of Claims entitled to vote on the Plan on or before the Solicitation Mailing Deadline, or as soon as reasonably practicable thereafter.  Such service shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

9.      The Debtors are authorized, but not directed or required, to distribute the Plan, the Disclosure Statement, and this Order to holders of Claims entitled to vote on the Plan in electronic format (*i.e.*, on a CD-ROM or flash drive) only.  Any party that receives materials in electronic

---

[3]   The Debtors will provide pre-addressed, postage pre-paid reply envelopes only to those holders who receive Ballots directly from the Debtors and shall not be responsible for ensuring individual Beneficial Holders receive pre-addressed, postage pre-paid reply envelopes from their respective Nominees.

format, but would prefer to receive materials in paper format, may contact the Solicitation Agent and request paper copies of the materials previously received in electronic format (to be provided at the Debtors' expense). **Only** the Ballots, the Solicitation Procedures, the Cover Letter, and the Confirmation Hearing Notice will be provided in paper form. On or before the Solicitation Mailing Deadline, the Debtors shall provide (a) complete Solicitation Packages (other than Ballots) to the U.S. Trustee, and (b) the Order (in electronic format) and the Confirmation Hearing Notice to all parties on the 2002 List as of the Voting Record Date.

10.     The Solicitation Agent is authorized to assist the Debtors in: (a) distributing the Solicitation Packages; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by holders of Claims against in the Debtors; (c) responding to inquiries from holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Solicitation Packages (including the Ballots), and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan or the adequacy of the Disclosure Statement; (d) soliciting votes on the Plan; and (e) if necessary, contacting creditors or interest holders regarding the Plan and/ or the Disclosure Statement.

11.     The Solicitation Agent is also authorized to accept Ballots via electronic online transmission solely through an online balloting portal on the Debtors' case website as set forth in the Solicitation Procedures. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

**D.      Approval of the Form of Notices to Non-Voting Classes.**

12.      Except to the extent the Debtors determine otherwise in consultation with the Required Plan Sponsors and the DIP Agent, the Debtors are not required to provide Solicitation Packages to holders of Claims or Interests in Non-Voting Classes, as such holders are not entitled to vote on the Plan.   Instead, on or before the Solicitation Mailing Deadline, or as soon as reasonably practicable thereafter, the Solicitation Agent shall mail (first-class postage prepaid) a Non-Voting Status Notice in lieu of Solicitation Packages, the form of each of which is approved, to those parties, outlined below, who are not entitled to vote on the Plan:

| Class(es) | Status | Treatment |
|---|---|---|
| 1, 2 | Unimpaired—Deemed to Accept | Holders of Claims that are deemed to accept the Plan are not entitled to vote. As such, holders of such Claims will receive a notice, substantially in the form attached to the Order as **Exhibit 5**, in lieu of a Solicitation Package. |
| 10 | Impaired—Deemed to Reject | Holders of Interests that are deemed to reject the Plan are not entitled to vote. As such, holders of such Interests will receive a notice, substantially in the form attached to the Order as **Exhibits 6** and **6A**, **6B**, and **6C** (as applicable) in lieu of a Solicitation Package. |
| N/A | Disputed Claims | Holders of Claims that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their Claim.   As such, holders of such Claims will receive a notice, substantially in the form attached to the Order as **Exhibit 7** (which notice shall be served together with such objection). |

13.     The Debtors are not required to mail Solicitation Packages, other solicitation materials, or a Non-Voting Status Notice to:  (a) holders of Claims that have already been paid in full during the Chapter 11 Cases; (b) any party to whom the notice of this motion was sent but was subsequently returned as undeliverable without a forwarding address; or (c) holders of Class 8 Intercompany Claims and Class 9 Intercompany Interests.

**E.     Approval of the Confirmation Hearing Notice.**

14.     The Confirmation Hearing Notice, substantially in the form attached hereto as **Exhibit 8**, which shall be filed by the Debtors and served upon parties in interest in these Chapter 11 Cases by October 23, 2020 (or as soon as reasonably practicable thereafter) and published in a format modified for publication one time no later than **nine (9) business days after the entry of this Order, or as soon as reasonably practicable thereafter**, in the *New York Times*, the *Oklahoman*, the *Houston Chronicle*, the *Billings Gazette*, the *Casper Star-Tribune*, the *Philadelphia Inquirer*, and *The Advocate* constitutes adequate and sufficient notice of the hearing to consider approval of the Plan, the manner in which a copy of the Plan and Disclosure Statement can be obtained, and the time fixed for filing objections thereto, in satisfaction of the requirements of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

F.      **Approval of the Procedures for Filing Objections to the Plan.**

15.     Objections to the Plan will not be considered by the Court unless such objections are timely filed in accordance with this Order.  Specifically, all objections to confirmation of the Plan or requests for modifications to the Plan, if any, *must*:  (a) be in writing; (b) conform to the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (d) be filed with the Court by **November 23, 2020 at 5:00 p.m.** (prevailing Central Time).

G.      **Approval of Notice of Filing of the Plan Supplement.**

16.     The Debtors are authorized to send notice of the filing of the Plan Supplement to parties in interest, substantially in the form attached hereto as **Exhibit 9**, within the time periods specified in the Plan.  Notwithstanding the foregoing, the Debtors may amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date in accordance with the Plan.

H.      **Approval of Notices to Contract and Lease Counterparties.**

17.     The Debtors are authorized to mail a notice of assumption (and any corresponding Cure Claims) or rejection of any Executory Contracts or Unexpired Leases, in the forms attached hereto as **Exhibit 10** and **Exhibit 11**, respectively, to the applicable counterparties to Executory Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan, within the time periods specified in the Plan.

I.      **Non-Substantive Modifications.**

18.     The Debtors are authorized to make non-substantive or immaterial changes to the Disclosure Statement, the Plan, the Solicitation Package, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, and to make

conforming changes among the Disclosure Statement, the Plan, and related documents (including the appendices thereto) where, in the Debtors' reasonable discretion, doing so would better facilitate the Plan solicitation process.  Subject to the foregoing, the Debtors are authorized to solicit, receive, and tabulate votes to accept or reject the Plan in accordance with this Order, without further order of the Court.

**III.    Approval of the Rights Offering Procedures.**

19.    The Rights Offering Procedures attached hereto as **Exhibit 12** are approved.

20.    The Subscription Forms attached hereto as **Exhibits 13A**, **13B**, and **13C** are approved.

21.    The Debtors may modify the Rights Offering Procedures or adopt any additional detailed procedures, consistent with the provisions of the Rights Offering Procedures, to effectuate the Rights Offering and to issue the Rights Offering Shares.

22.    The following dates and deadlines regarding the Rights Offering are hereby established, subject to the right of the Debtors to modify the following dates:

      a.    FLLO Record Date:  **4:00 p.m. Central Time on November 23, 2020**, as the record date for determining holders of FLLO Term Loan Facility Claims entitled to participate in the applicable Rights Offering (the "FLLO Record Date");

      b.    Second Lien Record Date:  **4:00 p.m. Central Time on November 23, 2020**, as the record date for determining holders of Second Lien Notes Claims entitled to participate in the applicable Rights Offering (the "Second Lien Record Date");

      c.    Subscription Commencement Date:  **October 23, 2020**, as the commencement of the Rights Offering;

      d.    Subscription Expiration Deadline:  **4:00 p.m. Central Time on November 23, 2020**, as the deadline for Rights Offering Participants to subscribe to the Rights Offering Shares (as defined in the Rights Offering Procedures); and

      e.    Subscription Funding Deadline (only for non-Backstop Parties):  **4:00 p.m. Central Time on November 24, 2020**, as the deadline for Rights Offering

Participants that are not Backstop Parties to deliver the aggregate Purchase Price (as defined in the Rights Offering Procedures).

**IV.     Miscellaneous.**

23.     The Debtors' rights are reserved to modify the Plan without further order of the Court in accordance with Article X of the Plan, including the right to withdraw the Plan as to an individual Debtor at any time before the Confirmation Date.

24.     Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

25.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

26.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Bankruptcy Local Rules are satisfied by such notice.

27.     Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

28.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

29.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Houston, Texas
Dated: _____, 2020

_____
DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Disclosure Statement**

[Filed separately.]

**Exhibit 2**

**Solicitation Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[11] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## SOLICITATION PROCEDURES

      **PLEASE TAKE NOTICE THAT** on [●], 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order"), (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and Its Debtor Affiliates* (the "Disclosure Statement"), (b) approving these solicitation procedures (the "Solicitation Procedures") with respect to confirmation of the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and Its Debtor Affiliates* (the "Plan"),[12] (c) approving the forms of ballots and notices in connection therewith, (d) scheduling certain dates with respect thereto, and (e) granting related relief.

### A.    The Voting Record Date

      The Court has established October 8, 2020 as the record date to determine which Claims and Interests in Classes 3, 4, 5, 6, and 7 are entitled to vote to accept or reject the Plan (the "Voting Record Date").

### B.    The Voting Deadline.

      The Court has established **November 23, 2020 at 11:59 p.m.** (prevailing Central Time) as the voting deadline (the "Voting Deadline") for the Plan.  The Debtors may extend the Voting Deadline, with the consent of the Required Plan Sponsors and the DIP Agent, without further notice or order of the Court.  To be counted as votes to accept or reject the Plan, all ballots ("Ballots") must be properly executed, completed, and delivered pursuant those instructions set forth on the applicable Ballot so that they are ***actually received*** in any case, no later than the Voting Deadline by Epiq Corporate Restructuring, LLC (the "Solicitation Agent").  Delivery of a Ballot to the Solicitation Agent by e-mail, facsimile, or other electronic means shall not be valid with the

---

[11]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake.  The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[12]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

following exceptions: (i) Ballots submitted by voters who are not Beneficial Holders of Second Lien Notes or Unsecured Notes Claims through the online balloting portal on the Debtors' case website maintained by the Solicitation Agent ("E-Ballot"),[13] and (ii) master ballots (the "Master Ballots") submitted by brokers, banks, or other nominees holding the Second Lien Notes Claims or the Unsecured Notes Claims on behalf of the underlying Beneficial Holders (the "Nominees")[14] via e-mail at tabulation@epiqglobal.com.

To have their votes to accept or reject the Plan counted, Beneficial Holders must properly submit their vote to the appropriate Nominee, in sufficient time so that such Nominee can verify, tabulate, and include such Ballots in a master ballot and timely return such master ballot, so that it is *actually received* no later than the Voting Deadline by the Solicitation Agent.  In the case of the Beneficial Holders of the Second Lien Notes Claims or Unsecured Notes who hold their position through a Nominee, such Beneficial Holders will be instructed to comply with the return instructions provided by such Nominee.[15]

### C.    Voting For Claims Filed After the Voting Record Date.

To the extent a holder of a Claim validly files a Proof of Claim after the Voting Record Date but on or prior to the Claims Bar Date, the Solicitation Agent shall send to such holder the appropriate Solicitation Package, including a Ballot if applicable; *provided* that the forgoing shall not extend the Voting Deadline for holders of Claims who file Proofs of Claim after the Voting Record Date.  If the Solicitation Agent previously provided such holder of a Claim with a Ballot on account of a scheduled claim or previous Proof of Claim, the Solicitation Agent shall update such creditor's voting amount, but shall not be obligated to send a new Ballot.[16]

### D.    Form, Content, and Manner of Notices.

1.    The Solicitation Package.

The following materials shall constitute the solicitation package (the "Solicitation Package"):

a.    the Disclosure Statement Order (excluding schedules);

---

[13]    For the avoidance of doubt, votes submitted through E-Ballot and votes submitted by Nominees (as defined herein) via e-mail shall be the only electronic votes accepted by the Solicitation Agent.

[14]    The defined term "Nominee" shall include each Nominee's agents, including mailing agents.

[15]    A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose Claims or Interests have not been satisfied prior to the Voting Record Date pursuant to Court order or otherwise, as reflected in the records maintained by the Nominees holding through the respective indenture trustee or transfer agent (as applicable).

[16]    For the avoidance of doubt, the provisions of this paragraph shall also apply to the extent that a holder of an Interest files a proof of such interest after the Voting Record Date but before the Voting Deadline.

b.       the approved Disclosure Statement (annexed as **Exhibit 1** to the Disclosure Statement Order) and the schedules thereto, including the Plan;

c.       these Solicitation Procedures (annexed as **Exhibit 2** to the Disclosure Statement Order);

d.       the applicable form of Ballot, in substantially the form of the Ballots annexed as **Exhibits 3A**, **3B**, **3C**, **3D**, **3E**, and **3G** to the Disclosure Statement Order;

e.       a cover letter, in substantially the form annexed as **Exhibit 4** to the Disclosure Statement Order, describing the contents of the Solicitation Package and urging the holders of Claims and Interests in each of the Voting Classes to vote to accept the Plan;

f.       the *Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines*, in substantially the form annexed as **Exhibit 8** to the Disclosure Statement Order (the "Confirmation Hearing Notice");

g.       a pre-addressed, postage pre-paid reply envelope;[17] and

h.       any additional documents that the Court has ordered to be made available to holders of Claims and Interests in the Voting Classes.

2.      Distribution of the Solicitation Packages.

The Solicitation Package shall provide the Plan, the Disclosure Statement, and the Disclosure Statement Order (without schedules) in electronic format (*i.e.*, CD-ROM or flash drive format), and all other contents of the Solicitation Package, including Ballots and the Solicitation Procedures, shall be provided in paper format. Any party that receives the materials in electronic format but would prefer paper format may contact the Solicitation Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense) by: (a) writing to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (b) calling (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and requesting to speak with a member of the Solicitation Group; or (c) mail tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line.

The Debtors shall serve, or cause to be served, all of the materials in the Solicitation Package (excluding the Ballots and the Cover Letter) on the U.S. Trustee and all parties who have requested service of papers in this case pursuant to Bankruptcy Rule 2002 and Bankruptcy Local

---

[17]    The Debtors will provide pre-addressed, postage pre-paid reply envelopes only to those holders who receive Ballots directly from the Debtors and shall not be responsible for ensuring individual Beneficial Holders receive pre-addressed, postage pre-paid reply envelopes from their respective Nominees.

Rule 2002-1 as of the Voting Record Date.  In addition, the Debtors shall mail, or cause to be mailed, the Solicitation Package to all holders of Claims in the Voting Classes who are entitled to vote, as described in section D below on October 23, 2020 (or as reasonably practicable thereafter).

To avoid duplication and reduce expenses, the Debtors will use commercially reasonable efforts to ensure that any holder of a Claim or Interest who has filed duplicative Proofs of Claim or proofs of Interest against a Debtor (whether against the same or multiple Debtors) that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claims or Interest and with respect to that Class as against that Debtor.

    3.    <u>Non-Voting Status Notices for Unimpaired Classes and Classes Deemed to Reject the Plan</u>.

    a.    Holders of Claims and Interests that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code or who are not entitled to vote because they are Unimpaired or otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code will receive only the *Notice of Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan*, substantially in the form annexed as **<u>Exhibit 5</u>** to the Disclosure Statement Order.  Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (***excluding*** Ballots), as well as how they may opt out of the third-party release provided by the Plan (the "<u>Third-Party Release</u>").

    b.    Holders of Claims and Interests who are not entitled to vote because they are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code will receive the *Notice of Non-Voting Status to Holders of Impaired Interests Conclusively Presumed to Reject the Plan*, substantially in the form annexed as **<u>Exhibits 6</u>** and **<u>6A</u>**, **<u>6B</u>**, and **<u>6C</u>** to the Disclosure Statement Order.  Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (***excluding*** Ballots), as well as how they may opt out of the Third-Party Release.[18]

---

[18]   Holders of Claims and Interests who hold such Claims and Interests directly (collectively, the "<u>Direct Holders</u>") will receive an *Opt-Out Form for Holders of Impaired Interests Conclusively Presumed to Reject The Plan,* substantially in the form annexed as **<u>Exhibit 6A</u>** to the Disclosure Statement Order.  Holders of Class 10 Existing Equity Interests who hold such Interests through a broker, bank, or other nominee (collectively, the "<u>Beneficial Equity Holders</u>") will receive from such broker, bank, or other nominee, or such firm's agent (each of the foregoing, an "<u>Equity Nominee</u>") an *Opt-Out Form for Holders of Impaired Interests Deemed To Reject The Plan*, substantially in the form annexed as **<u>Exhibit 6B</u>** to the Disclosure Statement Order.  The Equity Nominees for Class 10 Existing Equity Interests will receive the *Master Form for Optional Release Opt-Out for Class 10 Existing Equity Interests*, substantially in the form annexed as **<u>Exhibit 6C</u>** to the Disclosure Statement Order.

c.      Holders of Claims that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their claims and will receive the *Non-Voting Status Notice With Respect to Disputed Claims*, substantially in the form annexed as **Exhibit 7** to the Disclosure Statement Order.  Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (***excluding*** Ballots), as well as how they may opt out of the Third-Party Release.

### E.      Voting and Tabulation Procedures.

1.      <u>Holders of Claims and Interests Entitled to Vote</u>.

Only the following holders of Claims or Interests in the Voting Classes shall be entitled to vote with regard to such Claims or Interests:

a.      Holders of Claims who, on or before the Voting Deadline, have timely filed a Proof of Claim that (i) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Deadline and (ii) is not the subject of a pending objection, other than a "reduce and allow" objection, filed by the Debtors with the Court at least seven days prior to the Voting Deadline, pending a Resolution Event as provided herein; *provided* that a holder of a Claim that is the subject of a pending objection on a "reduce and allow" basis shall be entitled to vote such Claim in the reduced amount contained in such objection absent a further order of the Court;

b.      Holders of Existing Interests as of the Voting Record Date;

c.      Holders of Claims that are listed in the Schedules; *provided* that Claims that are scheduled as contingent, unliquidated, or disputed (excluding such scheduled disputed, contingent, or unliquidated Claims that have been paid or superseded by a timely Filed Proof of Claim) shall be disallowed for voting purposes (unless the applicable Claims Bar Date has not yet expired, in which case such scheduled claims would be allowed to vote in the amount of $1.00);

d.      Holders whose Claims arise (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court, (ii) in an order entered by the Court, or (iii) in a document executed by the Debtors pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed;

e.      Holders of any Disputed Claim or Interest that has been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018; and

f.     the assignee of any Claim or Interest that was transferred on or before the Voting Record Date by any Entity described in subparagraphs (a) through (d) above; *provided* that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date.

2.     <u>Establishing Claim Amounts for Voting Purposes</u>

**Revolving Credit Facility Claims**.  The Claims amount of Revolving Credit Facility Claims for voting purposes only will be established based on the amount of the applicable positions held by such Revolving Credit Facility Claim holder, as of the Voting Record Date, as evidenced by the applicable records provided by the  Revolving Credit Facility Administrative Agent in electronic Microsoft Excel format to the Debtors or the Solicitation Agent no later than five (5) Business Days following the Voting Record Date.

**FLLO Term Loan Facility Claims**.  The Claims amount of FLLO Term Loan Facility Claims for voting purposes only will be established based on the amount of the applicable positions held by such FLLO Term Loan Facility Claim holder, as of the Voting Record Date, as evidenced by the applicable records provided by the FLLO Term Loan Facility Administrative Agent in electronic Microsoft Excel format to the Debtors or the Solicitation Agent no later than five (5) Business Days following the Voting Record Date.

**Second Lien Notes Claims**.  The Claims amounts of Second Lien Notes Claims for voting purposes only will be established by reference to (a) the Debtors' applicable books and records and (b) the list of record holders maintained by the Second Lien Notes Trustee reflected in the securities position report(s) from DTC or other applicable depository firm, dated as of the Voting Record Date, which shall be provided by the Second Lien Notes Trustee to the Debtors or the Solicitation Agent no later than five (5) Business Days following the Voting Record Date.

**Unsecured Notes Claims**.  The Claims amounts of Unsecured Notes Claims for voting purposes only will be established by reference to (a) the Debtors' applicable books and records and (b) the list of record holders maintained by the Unsecured Notes Trustee reflected in the securities position report(s) from DTC or other applicable depository firm, dated as of the Voting Record Date, which shall be provided by the Unsecured Notes Trustee to the Debtors or the Solicitation Agent no later than five (5) Business Days following the Voting Record Date.

**General Unsecured Claims**.  Each holder of a General Unsecured Claim that is not a Unsecured Notes Claim as of the Voting Record Date shall be entitled to vote the amount of its Claim established in accordance with the procedures set forth below for Filed and Scheduled Claims.

**Filed and Scheduled Claims**.  The Claim amount established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim.  Moreover, any amounts filled in on Ballots by the Debtors through the Solicitation Agent, as applicable, are not binding for purposes of allowance and distribution.  In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

a. the Claim amount (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court, (ii) set forth in an order of the Court, (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court, or (iv) set forth in e-mailed instructions from the Debtors' counsel to the Solicitation Agent with the applicable voter copied;

b. the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event under section C.3(d) of these Solicitation Procedures;

c. the Claim amount contained in a Proof of Claim that has been timely filed by the applicable Claims Bar Date (or deemed timely filed by the Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; *provided* that any Ballot cast by a holder of a Claim who timely files a Proof of Claim in respect of (i) a contingent Claim or a Claim in a wholly-unliquidated or unknown amount (based on a reasonable review by the Debtors and/or the Solicitation Agent) that is not the subject of an objection will count toward satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count as a Ballot for a Claim in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and (ii) a partially liquidated and partially unliquidated Claim will be Allowed for voting purposes only in the liquidated amount; *provided*, further, that to the extent the Claim amount contained in the Proof of Claim is different from the Claim amount set forth in a document filed with the Court as referenced in subparagraph (a) above, the Claim amount in the document filed with the Court shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes; *provided*, further, that any Claim filed in an amount denominated by a currency other than USD will vote at $1.00;

d. the Claim amount listed in the Schedules (to the extent such Claim is not superseded by a timely filed Proof of Claim); *provided* that such Claim is not scheduled as contingent, disputed, or unliquidated and/or has not been paid; *provided*, further, that if the applicable Claims Bar Date has not expired prior to the Voting Record Date, a Claim listed in the Schedules as contingent, disputed, or unliquidated shall vote at $1.00;

e. Proofs of Claim filed for $0.00 are not entitled to vote;

f. notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same voting Class shall be provided with only one Solicitation Package

9

and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims;

g.   if a Proof of Claim has been amended by a later Proof of Claim that is filed on or prior to the Voting Record Date, the later-filed amending Claim shall be entitled to vote in a manner consistent with these Solicitation Procedures, and the earlier-filed Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended Claim.  Except as otherwise ordered by the Court, any amendments to Proofs of Claim after the Voting Record Date shall not be considered for purposes of these Solicitation Procedures; and

h.   in the absence of any of the foregoing, such Claim shall be disallowed for voting purposes.

3.   <u>Resolution of Disputed Claims for Voting Purposes; Resolution Event</u>**.**

a.   Absent a further order of the Court, the holder of a Claim in a Voting Class that is the subject of a pending objection by the Debtors on a "reduce and allow" basis that is filed with the Court on or prior to seven days before the Voting Deadline shall be entitled to vote such Claim in the reduced amount contained in such objection.

b.   If a Claim in a Voting Class is subject to an objection by the Debtors other than a "reduce and allow" objection that is filed with the Court on or prior to seven days before the Voting Deadline:  (i) the Debtors shall cause the applicable holder to be served with a Disputed Claim Notice substantially in the form annexed as <u>Exhibit 7</u> to the Disclosure Statement Order (which notice shall be served together with such objection); and (ii) the applicable holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event (as defined herein) occurs as provided herein.

c.   If a Claim in a Voting Class is subject to an objection by the Debtors other than a "reduce and allow" objection that is filed with the Court less than seven days prior to the Voting Deadline, the applicable Claim shall be deemed temporarily allowed for voting purposes only, without further action by the holder of such Claim and without further order of the Court, unless the Court orders otherwise.

d.   A "Resolution Event" means the occurrence of one or more of the following events no later than two Business Days prior to the Voting Deadline:

10

i.      an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

ii.     an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

iii.    a stipulation or other agreement is executed between the holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed upon amount; or

iv.     the Debtors' pending objection is voluntarily withdrawn by the objecting party.

e.      No later than two Business Days following the occurrence of a Resolution Event, the Debtors shall cause the Solicitation Agent to distribute via email, hand delivery, or overnight courier service a Solicitation Package to the relevant holder to the extent such holder has not already received a Solicitation Package containing a Ballot that reflects the outcome of the Resolution Event.

4.      <u>Tabulation of Ballots</u>.

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right to waive any of the below specified requirements for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Local Rules:

a.      except as otherwise provided in the Solicitation Procedures, unless the Ballot being furnished is timely submitted and actually received by the Solicitation Agent on or prior to the Voting Deadline (as the same may be extended by the Debtors with the consent of the Required Plan Sponsors and the DIP Agent), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with Confirmation of the Plan;

b.      the Debtors will file with the Court, by no later than four Business Days prior to the Confirmation Hearing, a voting report (the "<u>Voting Report</u>").  The Voting Report shall, among other things, delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or lacking necessary information, sent by improper means, or damaged (collectively, in each case, the "<u>Irregular Ballots</u>").  The Voting Report shall indicate the Debtors' intentions with regard to each Irregular Ballot;

11

c.      the method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Solicitation Agent actually receives the executed Ballot;

d.      an executed Ballot is required to be submitted by the Entity submitting such Ballot.  Delivery of a Ballot to the Solicitation Agent by facsimile, or any electronic means other than as expressly approved by the Statement Order or these Solicitation Procedures will not be valid;[19]

e.      no Ballot should be sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), the Debtors' financial or legal advisors, and if so sent will not be counted;

f.      if multiple Ballots are received from the same holder with respect to the same Claim or Interest prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot;

g.      holders must vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and may not split any votes.  Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.  Further, to the extent there are multiple Claims or Interests within the same Class, the applicable Debtor may, in its discretion, aggregate the Claims or Interests of any particular holder within a Class for the purpose of counting votes;

h.      a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a holder of Claims or Interests should indicate such capacity when signing;

i.      the Debtors, subject to a contrary order of the Court in consultation with the Required Plan Sponsors and the DIP Agent, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report;

j.      neither the Debtors, nor any other Entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor

---

[19]   For the avoidance of doubt, a Ballot may be submitted via the online electronic ballot portal and, solely for Nominees, via electronic mail to the Solicitation Agent at tabulation@epiqglobal.com with a reference to "Chesapeake Master Ballot" in the subject line.

will any of them incur any liability for failure to provide such notification; unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

k.      any Class that contains Claims or Interests entitled to vote but for which no votes are returned shall be deemed to have accepted the Plan;

l.      in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim or Interest will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

m.      subject to any order of the Court, the Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors in consultation with the Required Plan Sponsors and the DIP Agent, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; provided that any such rejections will be documented in the Voting Report;

n.      if a Claim has been estimated or otherwise Allowed only for voting purposes by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

o.      if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

p.      the following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the holder of such Claim or Interest; (ii) any Ballot cast by any Entity that does not hold a Claim or Interest in a Voting Class; (iii) any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed by the Voting Record Date (unless the applicable bar date has not yet passed, in which case such Claim or Interest shall be entitled to vote in the amount of $1.00); (iv) any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot submitted via the Solicitation Agent online balloting portal shall be deemed an original signature); (v) any Ballot not marked to accept or reject the

Plan or marked both to accept and reject the Plan; (vi) any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein; and (vii) any Ballot submitted by improper means;

q.      after the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors and the Required Plan Sponsors and the DIP Agent;

r.      the Debtors are authorized to enter into stipulations with the holder of any Claim or Interest agreeing to the amount of a Claim or Interest for voting purposes;

s.      where any portion of a single Claim or Interest has been transferred to a transferee, all holders of any portion of such single Claim or Interest may be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other voting and solicitation procedures set forth herein), and (ii) required to vote every portion of such Claim or Interest collectively to accept or reject the Plan.  In the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the various holders of multiple portions of a single Claim or Interest partially reject and partially accept the Plan, such Ballots may not be counted in the Debtors' discretion; and

t.      for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims or Interests held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim or Interest in such Class, and all votes related to such Claim or Interest will be treated as a single vote to accept or reject the Plan; *provided*, *however*, that if separate affiliated entities, including any funds or accounts that are advised or managed by the same entity or by affiliated entities, hold Claims or Interests in a particular Class, these Claims or Interests will not be aggregated and will not be treated as if such creditor held one Claim or Interest in such Class, and the vote of each affiliated entity or managed fund or account will be counted separately as a vote to accept or reject the Plan.

5.      Tabulation of Master Ballots**.**

These rules will apply with respect to the tabulation of Master Ballots cast by Nominees for Beneficial Holders of certain Second Lien Notes Claims and Unsecured Notes Claims:

a.      the Solicitation Agent shall distribute or cause to be distributed through a Nominee or its agent the appropriate number of copies of

Ballots to each Beneficial Holder (a "<u>Beneficial Holder Ballot</u>") of a Second Lien Notes Claims and Unsecured Notes Claim as of the Voting Record Date;

b.   Nominees identified by the Solicitation Agent as Entities through which Beneficial Holders hold their Claims or Interests will be provided with (i) Solicitation Packages for each Beneficial Holder represented by the Nominee as of the Voting Record Date, which will contain, among other things, a Beneficial Holder Ballot for each Beneficial Holder, and (ii) a Master Ballot;

c.   any Nominee that is a holder of record with respect to a Second Lien Notes Claim or Unsecured Notes Claim shall vote on behalf of Beneficial Holders of such Claims or Interests by:  (i) immediately, and in any event within five Business Days after its receipt of the Solicitation Packages, distributing the Solicitation Packages, including Beneficial Holder Ballots, it receives from the Solicitation Agent to all such Beneficial Holders;[20] (ii) providing such Beneficial Holders with a return address or other means of returning the completed Beneficial Holder Ballots; (iii) compiling and validating the votes and other relevant information of all such Beneficial Holders on the Master Ballot; and (iv) transmitting the Master Ballot to the Solicitation Agent on or before the Voting Deadline;

d.   any Beneficial Holder holding a Second Lien Notes Claims or Unsecured Notes Claim as a record holder in its own name shall vote on the Plan by completing and signing a Ballot or Master Ballot and returning it directly to the Solicitation Agent on or before the Voting Deadline;

e.   any Beneficial Holder Ballot returned to a Nominee by a Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until such Nominee properly completes and delivers to the Solicitation Agent a Master Ballot that reflects the vote of such Beneficial Holders on or before the Voting Deadline or otherwise validates the Beneficial Holder Ballot in a manner acceptable to the Solicitation Agent.  Nominees shall retain all Beneficial Holder

---

[20]   Solicitation Packages may be sent in paper format or via electronic transmission in accordance with the customary requirements of each Nominee.  Each Nominee will then distribute the Solicitation Packages, as appropriate, in accordance with their customary practices and obtain votes to accept or to reject the Plan also in accordance with their customary practices.  If it is the Nominee's customary and accepted practice to submit a "voting instruction form" to the Beneficial Holders for the purpose of recording the Beneficial Holder's vote, the Nominee will be authorized to send the voting instruction form in lieu of, or in addition to, a Beneficial Holder Ballot.

Ballots returned by Beneficial Holders for a period of one year after the Effective Date of the Plan;

f.  if a Beneficial Holder holds a Second Lien Notes Claim or Unsecured Notes Claim through more than one Nominee or through multiple accounts, such Beneficial Holder may receive more than one Beneficial Holder Ballot and each such Beneficial Holder should execute a separate Beneficial Holder Ballot for each block of Second Lien Notes Claims or Unsecured Notes Claims that it holds through any Nominee and must return each such Beneficial Holder Ballot to the appropriate Nominee;

g.  votes cast by Beneficial Holders through a Master Ballot submitted by a Nominee (or its agent) will be applied against the positions held by such Nominee in the securities as of the Voting Record Date, as evidenced by the record and depository listings.  Votes submitted by a Nominee (or its agent) will not be counted in excess of the Record Amount of such securities held by such Nominee; *provided* that the Solicitation Agent may adjust such record amount to reflect the amount in accordance with subparagraph (d) below;

h.  if conflicting votes or "over-votes" are submitted by a Nominee, the Debtors will use reasonable efforts to reconcile discrepancies with the Nominee;

i.  if over-votes on a Master Ballot are not reconciled prior to the preparation of the Voting Report, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of the Nominee's position, as of the Voting Record Date, of certain Second Lien Notes Claims or Unsecured Notes Claims;

j.  for the purposes of tabulating votes, each Beneficial Holder shall be deemed (regardless of whether such holder includes interest in the amount counted on its Ballot) to have voted only the principal amount of its position in the applicable Second Lien Notes Claims or Unsecured Notes Claims; and

k.  a single Nominee may complete and deliver to the Solicitation Agent multiple Master Ballots.  Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots.   If two or more Master Ballots are inconsistent, the last-dated valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior dated Master Ballot.

### F.    Amendments to the Plan and Solicitation Procedures.

The Debtors with the consent of the Required Plan Sponsors and the DIP Agent reserve the right to make non-substantive or immaterial changes to the Disclosure Statement, Plan, Ballots, Confirmation Hearing Notice, and related documents, without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, if any, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package before their distribution.

[*Remainder of page intentionally left blank*]

## Exhibit 3A

**Form of Ballot for Revolving Credit Facility Claims**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**BALLOT FOR VOTING TO ACCEPT OR**
**REJECT THE JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF CHESAPEAKE ENERGY CORPORATION AND ITS DEBTOR AFFILIATES**

**CLASS 3 BALLOT FOR HOLDERS OF REVOLVING CREDIT FACILITY CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE").**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [●], 2020 (the "Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Class 3 ballot (this "Class 3 Ballot") because you are a Holder of a Revolving Credit Facility Claim in Class 3 as of **[October 8], 2020** (the "Voting Record Date"). Accordingly, you have a right to vote to accept or reject the Plan.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 3 Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Epiq Corporate Restructuring, LLC (the "Solicitation Agent") at no charge by: (i) accessing the Debtors' restructuring website at https://dm.epiq11.com/chesapeake; (ii) writing to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (iii) calling (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and requesting to

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

speak with a member of the Solicitation Group; or (iv) emailing tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line; or (b) for a fee via PACER at http://www.txs.uscourts.gov/bankruptcy.

This Class 3 Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Class 3 Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class 3, Revolving Credit Facility Claims, under the Plan.  If you hold Claims in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

**Item 1.  Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of a Class 3 Claim in the following aggregate unpaid amount:[2]



**Item 2.    Vote on Plan.**

The Holder of the Class 3 Revolving Credit Facility Claims against the Debtors set forth in Item 1 votes to (please check one):

| □ **ACCEPT** (vote FOR) the Plan | □ **REJECT** (vote AGAINST) the Plan |
|---|---|

**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**

---

[2]     For voting purposes only, subject to tabulation rules.

**Item 3.**  **Important information regarding the Third Party Release.**[3]

**AS A "<u>RELEASING PARTY</u>" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN SET FORTH BELOW:**

> **Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Revolving Credit Facility, the FLLO Term Loan Facility, the Second Lien Notes, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or**

---

[3]    Under the Plan, "*Released Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each of the Debtors' current and former directors and officers; (d) each DIP Lender; (e) each Agent; (f) each Trustee; (g) the Consenting Revolving Credit Facility Lenders; (h) the Consenting FLLO Term Loan Facility Lenders; (i) the Consenting Second Lien Noteholders; (j) the Consenting Unsecured Noteholders; (k) the Exit Facilities Lenders; (l) the Backstop Parties; (m) all holders of Interests; and (n) with respect to each of the foregoing (a) through (m), each of such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

Under the Plan, "*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each DIP Lender; (d) each Agent; (e) each Trustee; (f) the Consenting Revolving Credit Facility Lenders; (g) the Consenting FLLO Term Loan Facility Lenders; (h) the Consenting Second Lien Noteholders; (i) the Consenting Unsecured Noteholders; (j) the Exit Facilities Lenders; (k) the Backstop Parties; (l) all holders of Claims; (m) all holders of Interests; (n) with respect to each of the foregoing (a) through (m), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case, solely in their respective capacities as such with respect to such Entity and solely to the extent such Entity has the authority to bind such Affiliate in such capacity; *provided* that in each case, an Entity shall not be a Releasing Party if it:  (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party other than a Debtor that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facilities Credit Agreements, or any other financing document under and as defined therein) or (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facilities Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third party releases are:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the third-party releases; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the third-party releases.

<p style="text-align:center">*          *          *</p>

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**<u>OPTIONAL RELEASE ELECTION</u>. YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN <u>ONLY IF</u> YOU CHECK THE BOX BELOW:**

> ☐  **The Undersigned Holder of the Claim elects to <u>OPT OUT of the Third Party Release</u>**

<p style="text-align:center">[<em>Remainder of page intentionally left blank; continued next page.</em>]</p>

**Item 4.**  **Certifications.**

By signing this Class 3 Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(a)  **that, as of the Voting Record Date, either:  (i) the Entity is the Holder of the Revolving Credit Facility Claims being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Revolving Credit Facility Claims being voted;**

(b)  **that the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;**

(c)  **that the Entity has cast the same vote with respect to all Revolving Credit Facility Claims in a single Class; and**

(d)  **that no other Class 3 Ballots with respect to the amount of the Revolving Credit Facility Claims identified in Item 1 have been cast or, if any other Class 3 Ballots have been cast with respect to such Revolving Credit Facility Claims, then any such earlier Class 3 Ballots are hereby revoked.**

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| | |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

6

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE)
*PROMPTLY* BY *ONLY ONE* OF THE FOLLOWING RETURN METHODS:**

---

If by First Class mail:

      Chesapeake Energy Corporation
      Ballot Processing
      c/o Epiq Corporate Restructuring, LLC
      P.O. Box 4422
      Beaverton, OR 97076-4422

---

If by overnight courier or hand delivery:

      Chesapeake Energy Corporation
      Ballot Processing
      c/o Epiq Corporate Restructuring, LLC
      10300 SW Allen Boulevard
      Beaverton, OR 97005

---

By electronic, online submission:

      Please visit https://dm.epiq11.com/chesapeake. Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your E-Ballot.  If you choose to submit your Ballot via Epiq's E-Ballot system, you should <u>not</u> also return a hard copy of your Ballot.

      **IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized E-Ballot:**

      **Unique E-Ballot ID#:** _____

      <u>"E-Balloting" is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile or email will not be counted</u>.

---

<u>Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.</u>

<u>Creditors who cast a Ballot using the Solicitation Agent's online portal should NOT also submit a paper Ballot</u>.

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020 AT 11:59 P.M., PREVAILING CENTRAL TIME**

**THE SOLICITATION AGENT MUST ACTUALLY RECEIVE YOUR CLASS 3 BALLOT
ON OR BEFORE THE VOTING DEADLINE.**

[*Remainder of page intentionally left blank; continued next page.*]

| **Class 3 — Revolving Credit Facility Claims** |
| --- |

**INSTRUCTIONS FOR COMPLETING THIS CLASS 3 BALLOT**

1. The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in the Class 3 Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Class 3 Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2. The Plan can be confirmed by the Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. To ensure that your Class 3 Ballot is counted, you *must either*: (a) complete and submit this hard copy Class 3 Ballot or (b) vote through the Debtors' online balloting portal accessible through the Debtors' case website https://dm.epiq11.com/chesapeake. **Ballots will not be accepted by facsimile or other electronic means (other than the online portal).**

4. **Use of Hard Copy Ballot**. To ensure that your hard copy Class 3 Ballot is counted, you must: (a) complete your Class 3 Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Class 3 Ballot; and (c) clearly sign and return your original Class 3 Ballot in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery one of the following addresses or in accordance with paragraph 5 below.

| If by First Class Mail: | If by overnight courier or hand delivery: |
| --- | --- |
| Chesapeake Energy Corporation<br>Ballot Processing<br>c/o Epiq Corporate Restructuring, LLC<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | Chesapeake Energy Corporation<br>Ballot Processing<br>c/o Epiq Corporate Restructuring, LLC<br>10300 SW Allen Boulevard<br>Beaverton, OR 97005 |

5. **Use of Online Ballot Portal**. To ensure that your electronic Class 3 Ballot is counted, please follow the instructions of the Debtors' case administration website at https://dm.epiq11.com/chesapeake. You will need to enter your unique E-Ballot identification number indicated above. The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission. **Ballots will not be accepted by facsimile or electronic means (other than the online portal).**

6. Your Class 3 Ballot *must* be returned to the Solicitation Agent so as to be *actually received* by the Solicitation Agent on or before the Voting Deadline. **The Voting Deadline is [November 23], 2020, at 11:59 p.m.,** prevailing Central Time.

7. If a Class 3 Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted in the discretion of the Debtors with the consent of the Required Plan Sponsors and the DIP Agent. Additionally, **the following Class 3 Ballots will *not* be counted**:

    **(a)** any Class 3 Ballot that partially rejects and partially accepts the Plan;
    **(b)** Class 3 Ballots sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), an administrative agent, any indenture trustee, or the Debtors' financial or legal advisors;
    **(c)** Class 3 Ballots sent by facsimile or any electronic means other than via the online portal;
    **(d)** any Class 3 Ballot that is illegible or contains insufficient information to permit the

identification of the Holder of the Claim;

    (e) **any Class 3 Ballot cast by an Entity that does not hold a Claim in Class 3;**

    (f) **any Class 3 Ballot submitted by a Holder not entitled to vote pursuant to the Plan;**

    (g) **any unsigned Class 3 Ballot;**

    (h) **any Class 3 Ballot not bearing an original signature, except as provided above; and/or**

    (i) **any Class 3 Ballot not marked to accept or reject the Plan or any Class 3 Ballot marked both to accept and reject the Plan.**

8. The method of delivery of Class 3 Ballots to the Solicitation Agent is at the election and risk of each Holder of a Revolving Credit Facility Claim. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent *actually receives* the originally executed Class 3 Ballot. In all cases, Holders should allow sufficient time to assure timely delivery.

9. If multiple Class 3 Ballots are received from the same Holder of a Revolving Credit Facility Claim with respect to the same Revolving Credit Facility Claim prior to the Voting Deadline, the latest, timely received, and properly completed Class 3 Ballot will supersede and revoke any earlier received Class 3 Ballots.

10. You must vote all of your Revolving Credit Facility Claims within Class 3 either to accept or reject the Plan and may **not** split your vote. Further, if a Holder has multiple Revolving Credit Facility Claims within Class 3, the Debtors may, in their discretion, aggregate the Claims of any particular Holder with multiple Revolving Credit Facility Claims within Class 3 for the purpose of counting votes.

11. This Class 3 Ballot does *not* constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

12. **Please be sure to sign and date your Class 3 Ballot**. If you are signing a Class 3 Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Class 3 Ballot.

13. If you hold Claims in more than one Class under the Plan you may receive more than one ballot coded for each different Class. Each ballot votes *only* your Claims indicated on that ballot, so please complete and return each ballot that you received.

<div align="center">

**PLEASE MAIL YOUR CLASS 3 BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 3 BALLOT,**
**THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING,**
**PLEASE CALL THE SOLICITATION AGENT AT:**
**(855) 907-2082 (TOLL FREE) OR +1 (503) 520-4448  (INTERNATIONAL)**
**(ASK TO SPEAK WITH A MEMBER OF THE SOLICITATION GROUP)**
**OR EMAIL TABULATION@EPIQGLOBAL.COM**
**AND REFERENCE "CHESAPEAKE" IN THE SUBJECT LINE.**

</div>

---

<div align="center">

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020 AT 11:59 P.M., PREVAILING CENTRAL TIME**

**THE SOLICITATION AGENT MUST ACTUALLY RECEIVE YOUR CLASS 3 BALLOT**
**ON OR BEFORE THE VOTING DEADLINE.**

</div>

---

**<u>Exhibit 3B</u>**

**Form of Ballot for FLLO Term Loan Facility Claims**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**BALLOT FOR VOTING TO ACCEPT OR
REJECT THE JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF CHESAPEAKE ENERGY CORPORATION AND ITS DEBTOR AFFILIATES**

**CLASS 4 BALLOT FOR HOLDERS OF FLLO TERM LOAN FACILITY CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS
CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED,
EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE SOLICITATION
AGENT BY [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME (THE "VOTING
DEADLINE").**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on **[●], 2020** (the "Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Class 4 ballot (this "Class 4 Ballot") because you are a Holder of a FLLO Term Loan Facility Claim in Class 4 as of **[October 8], 2020** (the "Voting Record Date"). Accordingly, you have a right to vote to accept or reject the Plan.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 4 Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Epiq Corporate Restructuring, LLC (the "Solicitation Agent") at no charge by: (i) accessing the Debtors' restructuring website at https://dm.epiq11.com/chesapeake; (ii) writing to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (iii) calling calling (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

requesting to speak with a member of the Solicitation Group; or (iv) emailing tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line; or (b) for a fee via PACER at http://www.txs.uscourts.gov/bankruptcy.

This Class 4 Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Class 4 Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class 4, FLLO Term Loan Facility Claims, under the Plan.  If you hold Claims in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

**Item 1.  Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of a Class 4 Claim in the following aggregate unpaid amount: [2]



**Item 2.   Vote on Plan.**

The Holder of the Class 4 FLLO Term Loan Facility Claims against the Debtors set forth in Item 1 votes to (please check one):

| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |
|---|---|

**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**

---

[2]   For voting purposes only, subject to tabulation rules.

**Item 3.**  **Important information regarding the Third Party Release.**[3]

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN SET FORTH BELOW:**

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Revolving Credit Facility, the FLLO Term Loan Facility, the Second Lien Notes, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or**

---

[3]    Under the Plan, "*Released Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each of the Debtors' current and former directors and officers; (d) each DIP Lender; (e) each Agent; (f) each Trustee; (g) the Consenting Revolving Credit Facility Lenders; (h) the Consenting FLLO Term Loan Facility Lenders; (i) the Consenting Second Lien Noteholders; (j) the Consenting Unsecured Noteholders; (k) the Exit Facilities Lenders; (l) the Backstop Parties; (m) all holders of Interests; and (n) with respect to each of the foregoing (a) through (m), of such Entity and its current and former Affiliates, and such Entities' and their current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

Under the Plan, "*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each DIP Lender; (d) each Agent; (e) each Trustee; (f) the Consenting Revolving Credit Facility Lenders; (g) the Consenting FLLO Term Loan Facility Lenders; (h) the Consenting Second Lien Noteholders; (i) the Consenting Unsecured Noteholders; (j) the Exit Facilities Lenders; (k) the Backstop Parties; (l) all holders of Claims; (m) all holders of Interests; (n) with respect to each of the foregoing (a) through (m), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case, solely in their respective capacities as such with respect to such Entity and solely to the extent such Entity has the authority to bind such Affiliate in such capacity; *provided* that in each case, an Entity shall not be a Releasing Party if it:  (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party other than a Debtor that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facilities Credit Agreements, or any other financing document under and as defined therein) or (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facilities Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third party releases are:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the third-party releases; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the third-party releases.

<center>*        *        *</center>

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**OPTIONAL RELEASE ELECTION. YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW:**

> ☐  **The Undersigned Holder of the Claim elects to OPT OUT of the Third Party Release**

<center>[*Remainder of page intentionally left blank; continued next page.*]</center>

**Item 4.**  **Certifications.**

By signing this Class 4 Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

    (a)  **that, as of the Voting Record Date, either:  (i) the Entity is the Holder of the FLLO Term Loan Facility Claims being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the FLLO Term Loan Facility Claims being voted;**

    (b)  **that the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;**

    (c)  **that the Entity has cast the same vote with respect to all FLLO Term Loan Facility Claims in a single Class; and**

    (d)  **that no other Class 4 Ballots with respect to the amount of the FLLO Term Loan Facility Claims identified in Item 1 have been cast or, if any other Class 4 Ballots have been cast with respect to such FLLO Term Loan Facility Claims, then any such earlier Class 4 Ballots are hereby revoked.**

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND**
**RETURN IT (WITH AN ORIGINAL SIGNATURE)**
*PROMPTLY* **BY** *ONLY ONE* **OF THE FOLLOWING RETURN METHODS:**

---

If by First Class mail:

    Chesapeake Energy Corporation
    Ballot Processing
    c/o Epiq Corporate Restructuring, LLC
    P.O. Box 4422
    Beaverton, OR 97076-4422

---

If by overnight courier or hand delivery:

    Chesapeake Energy Corporation
    Ballot Processing
    c/o Epiq Corporate Restructuring, LLC
    10300 SW Allen Boulevard
    Beaverton, OR 97005

---

By electronic, online submission:

    Please visit https://dm.epiq11.com/chesapeake. Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your E-Ballot.  If you choose to submit your Ballot via Epiq's E-Ballot system, you should <u>not</u> also return a hard copy of your Ballot.

    **IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized E-Ballot:**

    **Unique E-Ballot ID#:** _____

    "E-Balloting" is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile or email will not be counted.

---

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.

Creditors who cast a Ballot using the Solicitation Agent's online portal should NOT also submit a paper Ballot**.**

6

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020 AT 11:59 P.M., PREVAILING CENTRAL TIME**

**THE SOLICITATION AGENT MUST ACTUALLY RECEIVE YOUR CLASS 4 BALLOT
ON OR BEFORE THE VOTING DEADLINE.**

[*Remainder of page intentionally left blank; continued next page.*]

| **Class 4 — FLLO Term Loan Facility Claims** |
|---|

**INSTRUCTIONS FOR COMPLETING THIS CLASS 4 BALLOT**

1.  The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement.   Capitalized terms used in the Class 4 Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Class 4 Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.  The Plan can be confirmed by the Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  To ensure that your Class 4 Ballot is counted, you **must either**:  (a) complete and submit this hard copy Class 4 Ballot or (b) vote through the Debtors' online balloting portal accessible through the Debtors' case website https://dm.epiq11.com/chesapeake.  **Ballots will not be accepted by facsimile or other electronic means (other than the online portal).**

4.  **Use of Hard Copy Ballot**.  To ensure that your hard copy Class 4 Ballot is counted, you must:  (a) complete your Class 4 Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Class 4 Ballot; and (c) clearly sign and return your original Class 4 Ballot in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery one of the following addresses or in accordance with paragraph 5 below.

| If by First Class Mail: | If by overnight courier or hand delivery: |
|---|---|
| Chesapeake Energy Corporation<br>Ballot Processing<br>c/o Epiq Corporate Restructuring, LLC<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | Chesapeake Energy Corporation<br>Ballot Processing<br>c/o Epiq Corporate Restructuring, LLC<br>10300 SW Allen Boulevard<br>Beaverton, OR 97005 |

5.  **Use of Online Ballot Portal**.  To ensure that your electronic Class 4 Ballot is counted, please follow the instructions of the Debtors' case administration website at https://dm.epiq11.com/chesapeake.  You will need to enter your unique E-Ballot identification number indicated above.  The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots will not be accepted by facsimile or electronic means (other than the online portal).**

6.  Your Class 4 Ballot **must** be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is [November 23], 2020, at 11:59 p.m.,** prevailing Central Time.

7.  If a Class 4 Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted in the discretion of the Debtors with the consent of the Required Plan Sponsors and the DIP Agent. Additionally, **the following Class 4 Ballots will not be counted**:

    (a) **any Class 4 Ballot that partially rejects and partially accepts the Plan;**
    (b) **Class 4 Ballots sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), an administrative agent, any indenture trustee, or the Debtors' financial or legal advisors;**
    (c) **Class 4 Ballots sent by facsimile or any electronic means other than via the online portal;**
    (d) **any Class 4 Ballot that is illegible or contains insufficient information to permit the**

       **identification of the Holder of the Claim;**

(e)   **any Class 4 Ballot cast by an Entity that does not hold a Claim in Class 4;**

(f)   **any Class 4 Ballot submitted by a Holder not entitled to vote pursuant to the Plan;**

(g)   **any unsigned Class 4 Ballot;**

(h)   **any Class 4 Ballot not bearing an original signature, except as provided above; and/or**

(i)   **any Class 4 Ballot not marked to accept or reject the Plan or any Class 4 Ballot marked both to accept and reject the Plan.**

8.   The method of delivery of Class 4 Ballots to the Solicitation Agent is at the election and risk of each Holder of a FLLO Term Loan Facility Claim. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent *actually receives* the originally executed Class 4 Ballot. In all cases, Holders should allow sufficient time to assure timely delivery.

9.   If multiple Class 4 Ballots are received from the same Holder of a FLLO Term Loan Facility Claim with respect to the same FLLO Term Loan Facility Claim prior to the Voting Deadline, the latest, timely received, and properly completed Class 4 Ballot will supersede and revoke any earlier received Class 4 Ballots.

10.   You must vote all of your FLLO Term Loan Facility Claims within Class 4 either to accept or reject the Plan and may **not** split your vote. Further, if a Holder has multiple FLLO Term Loan Facility Claims within Class 4, the Debtors may, in their discretion, aggregate the Claims of any particular Holder with multiple FLLO Term Loan Facility Claims within Class 4 for the purpose of counting votes.

11.   This Class 4 Ballot does *not* constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

12.   **Please be sure to sign and date your Class 4 Ballot**. If you are signing a Class 4 Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Class 4 Ballot.

13.   If you hold Claims in more than one Class under the Plan you may receive more than one ballot coded for each different Class. Each ballot votes *only* your Claims indicated on that ballot, so please complete and return each ballot that you received.

<div align="center">

**PLEASE MAIL YOUR CLASS 4 BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 4 BALLOT,
THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING,
PLEASE CALL THE SOLICITATION AGENT AT:
(855) 907-2082 (TOLL FREE) OR +1 (503) 520-4448 (INTERNATIONAL)
(ASK TO SPEAK WITH A MEMBER OF THE SOLICITATION GROUP)
OR EMAIL TABULATION@EPIQGLOBAL.COM
AND REFERENCE "CHESAPEAKE" IN THE SUBJECT LINE.**

</div>

---

<div align="center">

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME**

**THE SOLICITATION AGENT MUST ACTUALLY RECEIVE YOUR CLASS 4 BALLOT
ON OR BEFORE THE VOTING DEADLINE.**

</div>

---

**Exhibit 3C**

**Form of Master Ballot for Second Lien Notes Claims**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

MASTER BALLOT FOR VOTING TO ACCEPT OR
REJECT THE JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF CHESAPEAKE ENERGY CORPORATION AND ITS DEBTOR AFFILIATES

CLASS 5 HOLDERS OF SECOND LIEN NOTES CLAIMS

11.500% senior notes due 2025
(CUSIP No. 165167DD6)

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS
CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE
*ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY [NOVEMBER 23], 2020, AT 11:59 P.M.,
PREVAILING CENTRAL TIME (THE "VOTING DEADLINE").**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on **[●], 2020** (the "Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this master ballot (the "Master Ballot") because you are the Nominee (as defined below) of a Beneficial Holder[2] of Class 5 Second Lien Notes Claims as of **[October 8], 2020** (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy Holder of a Nominee for certain**

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2]    A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose claims have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees holding through DTC.

Beneficial Holders' Class 5 Second Lien Notes Claims (the "<u>Class 5 Claims</u>"), to transmit to the Solicitation Agent (as defined below) the votes of such Beneficial Holders in respect of their Class 5 Claims to accept or reject the Plan.  The CUSIP number (the "<u>CUSIP</u>") for the Class 5 Claims entitled to vote and of which you are the Nominee is 165167DD6.  This ballot may not be used for any purpose other than for submitting votes with respect to the Plan.

The rights and treatment for each Class are described in the Disclosure Statement, which was included in the package (the "<u>Solicitation Package</u>") you are receiving with this Master Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials).  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Epiq Corporate Restructuring, LLC (the "<u>Solicitation Agent</u>"), at no charge by: (i) accessing the Debtors' restructuring website at <u>https://dm.epiq11.com/chesapeake</u>; (ii) writing to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (iii) calling (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and requesting to speak with a member of the Solicitation Group; or (iv) emailing tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line; or (b) for a fee via PACER at <u>http://www.txs.uscourts.gov/bankruptcy</u>.

This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Master Ballot in error, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

**YOUR VOTE ON THIS MASTER BALLOT FOR BENEFICIAL HOLDERS OF SECOND LIEN NOTES CLAIMS IN CLASS 5 SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM SUCH BENEFICIAL HOLDERS HAVE A CLASS 5 CLAIM.**

You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

The Court may confirm the Plan and thereby bind all Holders of Claims and Interests.  To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Solicitation Agent *actually receives* it on or before the Voting Deadline.

**THE VOTING DEADLINE IS ON [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME.**

<u>**Item 1**</u>.  **Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

    ☐  Is a broker, bank, or other nominee for the Beneficial Holders of the aggregate principal amount of the Class 5 Claims listed in Item 2 below, and is the record Holder of such bonds, or

    ☐  Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered Holder of the aggregate principal amount of Class 5 Claims listed in Item 2 below, or

    ☐  Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner, that is the registered Holder of the aggregate principal amount of Class 5 Claims listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the Beneficial Holders of the Class 5 Claims described in Item 2.

2

**Item 2.  Class 5 Claims Vote on Plan**

The undersigned transmits the following votes, and releases of Beneficial Holders of Class 5 Claims and certifies that the following Beneficial Holders of Class 5 Claims, as identified by their respective customer account numbers set forth below, are the Beneficial Holders of such Claims as of the Voting Record Date and have delivered to the undersigned, as Nominee, ballots (the "Ballots") casting such votes.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Holder must vote all such Beneficial Holder's Class 5 Claims to accept or reject the Plan and may not split such vote.  Any Beneficial Holder Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

**A SEPARATE MASTER BALLOT MUST BE USED FOR EACH CUSIP.**

| CUSIP VOTED ON THIS MASTER BALLOT:   ☐ **CUSIP No. 165167DD6** | | | | |
|---|---|---|---|---|
| **Your Customer Account Number for Each Beneficial Holder of Class 5 Claims** | **Principal Amount Held as of Voting Record Date** | **Item 2** <br><br> **Indicate the vote cast on the Beneficial Holder Ballot by checking the appropriate box below.** | | **Item 3** <br><br> **Check the box below if the Beneficial Holder checked the box in Item 3 of their Ballot** |
| | | **Accept the Plan** | **Reject the Plan** | |
| 1 | $ | ☐ | ☐ | ☐ |
| 2 | $ | ☐ | ☐ | ☐ |
| 3 | $ | ☐ | ☐ | ☐ |
| 4 | $ | ☐ | ☐ | ☐ |
| 5 | $ | ☐ | ☐ | ☐ |
| 6 | $ | ☐ | ☐ | ☐ |
| **TOTALS** | $ | | | |

3

**Item 3.**  **Important information regarding the Third Party Release.**[3]

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN SET FORTH BELOW:**

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Revolving Credit Facility, the FLLO Term Loan Facility, the Second Lien Notes, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or**

---

[3]    Under the Plan, "*Released Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each of the Debtors' current and former directors and officers; (d) each DIP Lender; (e) each Agent; (f) each Trustee; (g) the Consenting Revolving Credit Facility Lenders; (h) the Consenting FLLO Term Loan Facility Lenders; (i) the Consenting Second Lien Noteholders; (j) the Consenting Unsecured Noteholders; (k) the Exit Facilities Lenders; (l) the Backstop Parties; (m) all holders of Interests; and (n) with respect to each of the foregoing (a) through (m), each of such Entity and its current and former Affiliates, and such Entities' and their current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

Under the Plan, "*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each DIP Lender; (d) each Agent; (e) each Trustee; (f) the Consenting Revolving Credit Facility Lenders; (g) the Consenting FLLO Term Loan Facility Lenders; (h) the Consenting Second Lien Noteholders; (i) the Consenting Unsecured Noteholders; (j) the Exit Facilities Lenders; (k) the Backstop Parties; (l) all holders of Claims; (m) all holders of Interests; (n) with respect to each of the foregoing (a) through (m), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case, solely in their respective capacities as such with respect to such Entity and solely to the extent such Entity has the authority to bind such Affiliate in such capacity; *provided* that in each case, an Entity shall not be a Releasing Party if it:  (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party other than a Debtor that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facilities Credit Agreements, or any other financing document under and as defined therein) or (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facilities Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third party releases are:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the third-party releases; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the third-party releases.

<center>*        *        *</center>

**Item 4.  Other Class 5 Ballots Submitted by Beneficial Holders.**  The undersigned certifies that it has transcribed in the following table the information, if any, provided by the Beneficial Holders in Item 4 of the Beneficial Holder Ballot:

| YOUR customer account number and/or Customer Name for each Beneficial Holder who completed Item 4 of the Beneficial Holder Ballot. | Transcribe from Item 4 of the Beneficial Holder Ballot | | |
| --- | --- | --- | --- |
| | **Account Number** | **Name of Record Holder or Nominee** | **Principal Amount of other Class 5 Second Lien Notes Claims** | **CUSIP of other Class 5 Second Lien Notes Claims Votes** |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |

**Item 5.  Certifications.**

Upon execution of this Master Ballot, the undersigned certifies that:

(a) **it has received a copy of the Disclosure Statement, the Plan, the Master Ballots, the Beneficial Holder Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Holders of the Class 5 Claims listed in Item 2 above;**

(b) **it has received a completed and signed Beneficial Holder Ballot from each Beneficial Holder listed in Item 2 of this Master Ballot;**

<center>5</center>

(c)  **it is the registered Holder of all Class 5 Claims listed in Item 2 above being voted, or**

(d)  **it has been authorized by each Beneficial Holder of Class 5 Claims listed in Item 2 above to vote on the Plan;**

(e)  **no other Master Ballots with respect to the same Class 5 Claims identified in Item 2 have been cast or, if any other Master Ballots have been cast with respect to such Claims, then any such earlier Master Ballots are hereby revoked;**

(f)  **it has properly disclosed:  (a) the number of Beneficial Holder of Class 5 Claims who completed the Beneficial Holder Ballots; (b) the respective amounts of the Class 5 Claims owned, as the case may be, by each Beneficial Holder of Class 5 Claims who completed a Beneficial Holder Ballot; (c) each such Beneficial Holder of Class 5 Claims' respective vote concerning the Plan; (e) each such Beneficial Holder of Class 5 Claims' certification as to other Class 5 Claims voted; and (f) the customer account or other identification number for each such Beneficial Holder of Class 5 Claims; and**

(g)  **it will maintain ballots and evidence of separate transactions returned by Beneficial Holder of Class 5 Claims (whether properly completed or defective) for at least one (1) year after the Effective Date of the Plan and disclose all such information to the Bankruptcy Court or the Debtors, if so ordered.**

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Participant Number | |
| Name of Proxy Holder or Agent for Nominee (if applicable) | |
| Signature: | |
| Name of Signatory: | |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND
RETURN IT *PROMPTLY* BY *ONLY ONE* OF THE FOLLOWING METHODS:**

1. **In the envelope provided via first class mail, by overnight courier, or by hand delivery to:**

> If by First Class mail:
>
> Chesapeake Energy Corporation
> Ballot Processing
> c/o Epiq Corporate Restructuring, LLC
> P.O. Box 4422
> Beaverton, OR 97076-4422
>
> If by overnight courier or hand delivery:
>
> Chesapeake Energy Corporation
> Ballot Processing
> c/o Epiq Corporate Restructuring, LLC
> 10300 SW Allen Boulevard
> Beaverton, OR 97005

2. **Via electronic mail service to:**

> tabulation@epiqglobal.com
> with a reference to "Chesapeake Master Ballot" in the subject line.

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME.**

**THE SOLICITATION AGENT MUST ACTUALLY RECEIVE THE
CLASS 5 MASTER BALLOT ON OR BEFORE THE VOTING DEADLINE.**

[*Remainder of page intentionally left blank; continued next page.*]

| Class 5 — Second Lien Notes Claims |
|---|

## INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT

1.  The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in the Master Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Master Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.**

2.  The Plan can be confirmed by the Court and thereby made binding upon the Holders if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  You should immediately distribute the Beneficial Holder Ballots and the Solicitation Package to all Beneficial Holders of Class 5 Claims and take any action required to enable each such Beneficial Holder to vote timely the Claims that it holds.  You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices.  You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a beneficial ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.  Any Beneficial Holder Ballot returned to you by a Beneficial Holder of a Class 5 Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Solicitation Agent, a Master Ballot that reflects the vote of such Beneficial Holders by **[November 23], 2020, at 11:59 p.m.**, prevailing Central Time.

4.  If you are transmitting the votes of any Beneficial Holder of Class 5 Claims other than yourself, you may either:

    (a)  **"Pre-validate" the individual Class 5 Second Lien Notes Claim Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Class 5 Claim for voting within five (5) Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Solicitation Agent in the return envelope to be provided in the Solicitation Package.  A Nominee "pre-validates" a Beneficial Holder's Ballot by signing the Beneficial Holder Ballot and including their DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of Class 5 Claim held by the Nominee for such Beneficial Holder; and then forwarding the Beneficial Holder Ballot together with the Solicitation Package to the Beneficial Holder.  The Beneficial Holder then completes the information requested on the Beneficial Holder Ballot and returns the Beneficial Holder Ballot directly to the Solicitation Agent.  A list of the Beneficial Holders to whom "pre-validated" Beneficial Holder Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date.**

    (b)  **Within five (5) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Class 5 Claim for voting along with a return envelope provided by and addressed to the Nominee, with the Beneficial Holder then returning the individual Beneficial Holder Ballot to the Nominee.  In such case, the Nominee will tabulate the votes of its respective owners on a Master Ballot that will be provided to the Nominee separately by the Solicitation Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Solicitation Agent.  The Nominee should advise the Beneficial Holder to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is actually received by the Solicitation Agent on or before the Voting Deadline.**

5.  With regard to any Beneficial Holder Ballots returned to you by a Beneficial Holder, you must:  (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the

customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Solicitation Agent by the Voting Deadline; and (d) retain such Beneficial Holder Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date of the Plan.  You may be ordered to produce the Beneficial Holder Ballots to the Debtors or the Bankruptcy Court.

The Master Ballot **must** be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is [November 23], 2020, at 11:59 p.m.**, prevailing Central Time.

6.   If a Master Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, it may be counted in the discretion of the Debtors with the consent of the Required Plan Sponsors and the DIP Agent.  Additionally, **the following Master Ballots will _not_ be counted**:

> (a)   **any Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;**
> (b)   **any Master Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan;**
> (c)   **any Master Ballot sent by facsimile or any electronic means other than electronic mail;**
> (d)   **any unsigned Master Ballot;**
> (e)   **any Master Ballot that does not contain an original signature provided however, that any Master Ballot submitted via electronic mail shall be deemed to contain an original signature;**
> (f)   **any Master Ballot not marked to accept or reject the Plan; and**
> (g)   **any Master Ballot submitted by any party not entitled to cast a vote with respect to the Plan.**

7.   The method of delivery of Master Ballots to the Solicitation Agent is at the election and risk of each Nominee of Class 5 Claim.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** the originally executed Master Ballot.  In all cases, Beneficial Holders and Nominees should allow sufficient time to assure timely delivery.

8.   If a Beneficial Holder or Nominee holds a Claim in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Beneficial Holder or Nominee has a Claim, as applicable, in that Voting Class.

9.   If multiple Master Ballots are received from the same Nominee with respect to the same Beneficial Holder Ballot belonging to a Beneficial Holder of a Claim prior to the Voting Deadline, the latest, timely received, and properly completed Master Ballot will supersede and revoke any earlier received Master Ballots.

10.  The Master Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

11.  **Please be sure to sign and date the Master Ballot**.  You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

12.  If you are both the Nominee and the Beneficial Holder of any of the Class 5 Claims and you wish to vote such Class 5 Claims, you may return a Beneficial Holder Ballot or Master Ballot for such Class 5 Claims and you must vote all of your Class 5 Claims to either to accept or reject the Plan and may not split your vote.  Accordingly, a Beneficial Holder Ballot, other than a Master Ballot with the votes of multiple Beneficial Holders, that partially rejects and partially accepts the Plan will not be counted.

13. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided* that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity may be counted separately as a vote to accept or reject the Plan.

14. The following additional rules shall apply to Master Ballots:

   (a) Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Class 5 Claims as of the Record Voting Date, as evidenced by the record and depository listings.

   (b) Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Holder Ballots, will not be counted in excess of the record amount of the Class 5 Claims held by such Nominee;

   (c) To the extent that conflicting votes or "over-votes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Holder Beneficial Holder Ballots, the Solicitation Agent will attempt to reconcile discrepancies with the Nominee;

   (d) To the extent that over-votes on a Master Ballot or pre-validated Holder Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Holder Ballots that contained the over-vote, but only to the extent of the Nominee's position in Class 5 Claims; and

   (e) For purposes of tabulating votes, each Holder holding through a particular account will be deemed to have voted the principal amount relating to its holding in that particular account, although the Solicitation Agent may be asked to adjust such principal amount to reflect the claim amount.

<div align="center">

**PLEASE RETURN YOUR MASTER BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 5 BALLOT,
THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING,
PLEASE CALL THE SOLICITATION AGENT AT:
(855) 907-2082 (TOLL FREE) OR +1 (503) 520-4448  (INTERNATIONAL)
(ASK TO SPEAK WITH A MEMBER OF THE SOLICITATION GROUP)
OR EMAIL TABULATION@EPIQGLOBAL.COM
AND REFERENCE "CHESAPEAKE" IN THE SUBJECT LINE.**

</div>

---

<div align="center">

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME.**

**THE SOLICITATION AGENT MUST ACTUALLY RECEIVE
THE CLASS 5 MASTER BALLOT ON OR BEFORE THE VOTING DEADLINE.**

</div>

**Exhibit 3D**

**Form of Beneficial Holder Ballot for Second Lien Notes Claims**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**BENEFICIAL BALLOT FOR VOTING TO ACCEPT OR**
**REJECT THE JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF CHESAPEAKE ENERGY CORPORATION AND ITS DEBTOR AFFILIATES**

**CLASS 5 BALLOT FOR BENEFICIAL HOLDERS**
**OF SECOND LIEN NOTES CLAIMS**

**11.500% senior notes due 2025**
**(CUSIP No. 165167DD6)**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**THE DEADLINE FOR THE RECEIPT OF BALLOTS AND MASTER BALLOTS IS [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE").**

***IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO THE SOLICITATION AGENT (EPIQ CORPORATE RESTRUCTURING, LLC)*, PLEASE COMPLETE THE BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.**

***IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE*, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.  PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE.**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [●], 2020 (the "Disclosure Statement Order").  Bankruptcy Court approval of the Disclosure Statement does not

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake.  The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

indicate approval of the Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Class 5 ballot for Beneficial Holders[2] (the "Class 5 Beneficial Holder Ballot") because you are a Beneficial Holder of a Second Lien Notes Claim in Class 5 as of **[October 8], 2020** (the "Voting Record Date").  Accordingly, you have a right to vote to accept or reject the Plan.  You can cast your vote through this Class 5 Beneficial Holder Ballot and return it to your broker, bank, or other nominee, or the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"), in accordance with the instructions provided by your Nominee, who will then submit a master ballot (the "Master Ballot") on behalf of the Beneficial Holders of Class 5 Claims.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 5 Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials).  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Epiq Corporate Restructuring, LLC (the "Solicitation Agent"), at no charge by: (i) accessing the Debtors' restructuring website at https://dm.epiq11.com/chesapeake; (ii) writing to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (iii) calling (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and requesting to speak with a member of the Solicitation Group; or (iv) emailing tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line; or (b) for a fee via PACER at http://www.txs.uscourts.gov/bankruptcy.

This Class 5 Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Class 5 Beneficial Holder Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class 5, Second Lien Notes Claims, under the Plan.  If you hold Claims in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

In order for your vote to count, your Nominee must receive this Class 5 Beneficial Holder Ballot in sufficient time for your Nominee to include your vote on a Master Ballot that must be received by the Solicitation Agent on or before the Voting Deadline, which is **[November 23], 2020, at 11:59 p.m.**, prevailing Central Time.  Please allow sufficient time for your vote to be included on the Master Ballot completed by your Nominee.  If a Master Ballot recording your vote is not received by the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count.

**Item 1.    Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Holder of Class 5 Second Lien Notes Claims in the following principal amount (insert amount in box below, unless otherwise completed by your Nominee):



$_____

---

[2]    A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose claims have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees holding through DTC.

<u>**Item 2.**</u>     **Vote on Plan.**

The Beneficial Holder of the Class 5 Second Lien Notes Claims against the Debtors set forth in Item 1 votes to (please check <u>one</u>):

| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |
| --- | --- |

      <u>**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**</u>

*[Remainder of page intentionally left blank; continued next page.]*

3

**Item 3.**  **Important information regarding the Third Party Release.**[3]

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN SET FORTH BELOW:**

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Revolving Credit Facility, the FLLO Term Loan Facility, the Second Lien Notes, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or**

---

[3]     Under the Plan, "*Released Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each of the Debtors' current and former directors and officers; (d) each DIP Lender; (e) each Agent; (f) each Trustee; (g) the Consenting Revolving Credit Facility Lenders; (h) the Consenting FLLO Term Loan Facility Lenders; (i) the Consenting Second Lien Noteholders; (j) the Consenting Unsecured Noteholders; (k) the Exit Facilities Lenders; (l) the Backstop Parties; (m) all holders of Interests; and (n) with respect to each of the foregoing (a) through (m), each of such Entity and its current and former Affiliates, and such Entities' and their current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

Under the Plan, "*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each DIP Lender; (d) each Agent; (e) each Trustee; (f) the Consenting Revolving Credit Facility Lenders; (g) the Consenting FLLO Term Loan Facility Lenders; (h) the Consenting Second Lien Noteholders; (i) the Consenting Unsecured Noteholders; (j) the Exit Facilities Lenders; (k) the Backstop Parties; (l) all holders of Claims; (m) all holders of Interests; (n) with respect to each of the foregoing (a) through (m), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case, solely in their respective capacities as such with respect to such Entity and solely to the extent such Entity has the authority to bind such Affiliate in such capacity; *provided* that in each case, an Entity shall not be a Releasing Party if it:  (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party other than a Debtor that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facilities Credit Agreements, or any other financing document under and as defined therein) or (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facilities Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third party releases are:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the third-party releases; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the third-party releases.

*        *        *

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**OPTIONAL RELEASE ELECTION. YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW:**

---

☐  **The Undersigned Holder of the Claim elects to
OPT OUT of the Third Party Release**

---

**Item 4.  Other Class 5 Beneficial Holder Ballots Submitted.**  By returning this Beneficial Holder Ballot, the Holder of the Class 5 Second Lien Notes Claims identified in Item 1 certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for Second Lien Notes Claims owned by such Holder, except as identified in the following table, and (b) *all* Beneficial Holder Ballots submitted by the Holder indicate the same vote to accept or reject the Plan that the Holder has indicated in Item 2 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary):

**ONLY COMPLETE THIS TABLE IF YOU HAVE VOTED <u>OTHER</u>
CLASS 5 SECOND LIEN NOTES CLAIMS ON OTHER BENEFICIAL HOLDER BALLOTS**

| Account Number of other Class 5 Second Lien Notes Claims Voted | Name of Record Holder or Nominee | Principal Amount of other Class 5 Second Lien Notes Claims | CUSIP of Other Class 5 Second Lien Notes Claims |
|---|---|---|---|
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

<u>**Item 5**</u>. **Certifications.**

By signing this Class 5 Beneficial Holder Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(a) **that, as of the Voting Record Date, either:  (i) the Entity is the Holder of the Class 5 Second Lien Notes Claims being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Note Claims being voted;**

(b) **that the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;**

(c) **that the Entity has cast the same vote with respect to all Second Lien Notes Claims in a single Class; and**

(d) **that no other Class 5 Beneficial Holder Ballots with respect to the amount of the Second Lien Notes Claims identified in Item 1 have been cast or, if any other Class 5 Beneficial Holder Ballots have been cast with respect to such Second Lien Notes Claims, then any such earlier Class 5 Beneficial Holder Ballots are hereby revoked.**

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* IN THE ENVELOPE PROVIDED OR
OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

THE VOTING DEADLINE IS
**[NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME.**

THE SOLICITATION AGENT MUST ***ACTUALLY RECEIVE***
THE CLASS 5 BENEFICIAL HOLDER BALLOT REFLECTING YOUR VOTE (OR PRE-VALIDATED
BALLOT, IF APPLICABLE) ON OR BEFORE THE VOTING DEADLINE.

[*Remainder of page intentionally left blank; continued next page.*]

7

| Class 5 — Second Lien Notes Claims |
|---|

## INSTRUCTIONS FOR COMPLETING THIS CLASS 5 BENEFICIAL HOLDER BALLOT

1.  The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in the Class 5 Beneficial Holder Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Class 5 Beneficial Holder Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.  The Plan can be confirmed by the Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  Unless otherwise instructed by your Nominee, to ensure that your vote is counted, you must submit your Class 6 Beneficial Holder Ballot to your Nominee so that your Nominee can submit a Master Ballot that reflects your vote so that the Master Ballot is actually received by the Solicitation Agent by the Voting Deadline.  You may instruct your Nominee to vote on your behalf in the Master Ballot as follows:  (a) complete the Class 5 Beneficial Holder Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Class 5 Beneficial Holder Ballot; and (c) sign and return the Class 5 Beneficial Holder Ballot to your Nominee in accordance with the instructions provided by your Nominee.  The Voting Deadline for the receipt of Master Ballots by the Solicitation Agent is **[November 23], 2020, at 11:59 p.m.**, prevailing Central Time.  Your completed Class 5 Beneficial Holder Ballot must be received by your Nominee in sufficient time to permit your Nominee to deliver your votes to the Solicitation Agent on or before the Voting Deadline.

4.  **The following Class 5 Ballots submitted to your Nominee will *not* be counted**:

    (a)  **any Class 5 Beneficial Holder Ballot that partially rejects and partially accepts the Plan;**
    (b)  **Class 5 Beneficial Holder sent to the Debtors, the Debtors' agents, any indenture trustee, or the Debtors' financial or legal advisors;**
    (c)  **Class 5 Beneficial Holder Ballots sent by facsimile or any electronic means other than in accordance with the instructions of your Nominee (however, if you are directed by your Nominee to submit the Beneficial Holder Ballot to the Nominee via electronic means, such instructions to your Nominee shall have the same effect as if you had completed and returned a physical Beneficial Holder Ballot, including all certifications);**
    (d)  **any Class 5 Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;**
    (e)  **any Class 5 Beneficial Holder Ballot cast by an Entity that does not hold a Claim in Class 5;**
    (f)  **any unsigned Class 5 Beneficial Holder Ballot;**
    (g)  **any Class 5 Beneficial Holder Ballot submitted by a holder not entitled to vote pursuant to the Plan.**
    (h)  **any Class 5 Beneficial Holder Ballot not bearing an original signature, except as provided above; and/or**
    (i)  **any Class 5 Beneficial Holder Ballot not marked to accept or reject the Plan or any Class 5 Ballot marked both to accept and reject the Plan.**

5.  If your Class 5 Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted unless the Debtors determine otherwise.  In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Class 5 Beneficial Holder Ballot to your Nominee.  No Class 5 Beneficial Holder Ballot should be sent to any of the Debtors, the Debtors' agents, the Debtors' financial or legal advisors, and if so sent will not be counted.

6.  If you deliver multiple Class 5 Beneficial Holder Ballots to the Nominee with respect to the same Claim prior to the Voting Deadline, the last received valid Class 5 Beneficial Holder Ballot timely received will supersede and revoke any earlier received Class 5 Beneficial Holder Ballots.

7.  You must vote all of your Claims within Class 5 either to accept or reject the Plan and may **not** split your vote. Further, if a Holder has multiple Claims within Class 5, the Debtors may, in their discretion, aggregate the Claims of any particular Holder with multiple Claims within Class 5 for the purpose of counting votes.

8.  This Class 5 Beneficial Holder Ballot does *not* constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

9.  **Please be sure to sign and date your Class 5 Beneficial Holder Ballot**.  If you are signing a Class 5 Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.

10. If you hold Claims in more than one Class under the Plan you may receive more than one ballot coded for each different Class.  Each ballot votes *only* your Claims indicated on that ballot, so please complete and return each ballot that you receive.

11. The Class 5 Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with a ballot.

**PLEASE RETURN YOUR CLASS 5 BENEFICIAL HOLDER BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 5 BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE SOLICITATION AGENT AT: (855) 907-2082 (TOLL FREE) OR +1 (503) 520-4448  (INTERNATIONAL) (ASK TO SPEAK WITH A MEMBER OF THE SOLICITATION GROUP) OR EMAIL TABULATION@EPIQGLOBAL.COM AND REFERENCE "CHESAPEAKE" IN THE SUBJECT LINE.**

---

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME.**

**THE SOLICITATION AGENT MUST ACTUALLY RECEIVE THE CLASS 5 BENEFICIAL HOLDER BALLOT (OR PRE-VALIDATED BALLOT, IF APPLICABLE) ON OR BEFORE THE VOTING DEADLINE.**

---

**Exhibit A**

*Your Nominee may have checked a box below to indicate the CUSIP to which this Beneficial Holder Ballot pertains, or otherwise provided that information to you on a label or schedule attached to the Beneficial Holder Ballot:*

| Class 5 (Second Lien Notes Claims) | | |
|---|---|---|
| ☐ | 11.500% senior notes due 2025 | (CUSIP No. 165167DD6) |

**Exhibit 3E**

**Form of Master Ballot for Unsecured Notes Claims**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**MASTER BALLOT FOR VOTING TO ACCEPT OR**
**REJECT THE JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF CHESAPEAKE ENERGY CORPORATION AND ITS DEBTOR AFFILIATES**

<u>**CLASS 6 HOLDERS OF UNSECURED NOTES CLAIMS**</u>

| | |
|---|---|
| **6.625% senior notes due 2020**<br>**(CUSIP No. 165167CF2)** | **8.000% senior notes due 2025**<br>**(CUSIP No. 165167CU9)** |
| **6.125% senior notes due 2021**<br>**(CUSIP No. 165167CG0)** | **8.000% senior notes due 2026**<br>**(CUSIP No. U16450AY1 )** |
| **5.375% senior notes due 2021**<br>**(CUSIP No. 165167CK1)** | **7.500% senior notes due 2026**<br>**(CUSIP No. 165167DB0)** |
| **4.875% senior notes due 2022**<br>**(CUSIP No. 165167CN5)** | **8.000% senior notes due 2027**<br>**(CUSIP No. 165167CZ8)** |
| **5.750% senior notes due 2023**<br>**(CUSIP No. 165167CL9)** | **5.500% convertible senior notes due 2026**<br>**(CUSIP No. 165167CY1)** |
| **7.000% senior notes due 2024**<br>**(CUSIP No. 165167DA2)** | **6.875% senior notes due 2025**<br>**(CUSIP No. 96812TAB8)** |

<div style="border:1px solid black; padding:10px;">

**<u>PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.</u>**

**<u>THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY  [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE").</u>**

</div>

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake.  The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

be amended, supplemented, or otherwise modified from time to time, the "Plan") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on **[●], 2020** (the "Disclosure Statement Order").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this master ballot (the "Master Ballot") because you are the Nominee (as defined below) of a Beneficial Holder[1] of Class 6 Unsecured Notes Claims as of  **[October 8], 2020** (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy Holder of a Nominee for certain Beneficial Holders' Class 6 Unsecured Notes Claims (the "Class 6 Claims"), to transmit to the Solicitation Agent (as defined below) the votes of such Beneficial Holders in respect of their Class 6 Claims to accept or reject the Plan.  The CUSIP number (the "CUSIP") for the Class 6 Claims entitled to vote and of which you are the Nominee are 165167CF2, 165167CG0, 165167CK1, 165167CN5, 165167CL9, 165167DA2, 165167CU9, U16450AY1, 165167DB0, 165167CY1, 165167CZ8, and 96812TAB8.**  This ballot may not be used for any purpose other than for submitting votes with respect to the Plan.

The rights and treatment for each Class are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Master Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials).  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Epiq Corporate Restructuring, LLC (the "Solicitation Agent"), at no charge by: (i) accessing the Debtors' restructuring website at https://dm.epiq11.com/chesapeake; (ii) writing to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (iii) calling (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and requesting to speak with a member of the Solicitation Group; or (iv) emailing tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line; or (b) for a fee via PACER at http://www.txs.uscourts.gov/bankruptcy.

This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Master Ballot in error, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

**YOUR VOTE ON THIS MASTER BALLOT FOR BENEFICIAL HOLDERS OF UNSECURED NOTES CLAIMS IN CLASS 6 SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM SUCH BENEFICIAL HOLDERS HAVE A CLASS 6 CLAIM.**

You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

The Court may confirm the Plan and thereby bind all Holders of Claims and Interests.  To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Solicitation Agent *actually receives* it on or before the Voting Deadline.

---

[1]   A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose claims have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees holding through DTC.

**THE VOTING DEADLINE IS ON [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME.**

<u>Item 1</u>.  **Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐     Is a broker, bank, or other nominee for the Beneficial Holders of the aggregate principal amount of the Class 6 Claims listed in Item 2 below, and is the record Holder of such bonds, or

☐     Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered Holder of the aggregate principal amount of Class 6 Claims listed in Item 2 below, or

☐     Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner, that is the registered Holder of the aggregate principal amount of Class 6 Claims listed in Item 2 below,

and accordingly, has full power and authority to accept or reject the Plan, on behalf of the Beneficial Holders of the Class 6 Claims described in Item 2.

<u>Item 2</u>.  **Class 6 Claims Vote on Plan**

The undersigned transmits the following votes, and releases of Beneficial Holders of Class 6 Claims and certifies that the following Beneficial Holders of Class 6 Claims, as identified by their respective customer account numbers set forth below, are the Beneficial Holders of such Claims as of the Voting Record Date and have delivered to the undersigned, as Nominee, ballots (the "<u>Ballots</u>") casting such votes.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Holder must vote all such Beneficial Holder's Class 6 Claims to accept or reject the Plan and may not split such vote.  Any Beneficial Holder Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

**<u>A SEPARATE MASTER BALLOT MUST BE USED FOR EACH CUSIP.</u>**

| | | CUSIP VOTED ON THIS MASTER BALLOT: | | |
|---|---|---|---|---|
| | | ☐ CUSIP No. 165167CF2   ☐ CUSIP No. 165167CU9<br>☐ CUSIP No. 165167CG0   ☐ CUSIP No. U16450AY1<br>☐ CUSIP No. 165167CK1   ☐ CUSIP No. 165167DB0<br>☐ CUSIP No. 165167CN5   ☐ CUSIP No. 165167CZ8<br>☐ CUSIP No. 165167CL9   ☐ CUSIP No. 165167CY1<br>☐ CUSIP No. 165167DA2   ☐ CUSIP No. 96812TAB8 | | |
| **Your Customer Account Number for Each Beneficial Holder of Class 6 Claims** | **Principal Amount Held as of Voting Record Date** | **Item 2**<br><br>Indicate the vote cast on the Beneficial Holder Ballot by checking the appropriate box below. | | **Item 3**<br><br>Check the box below if the Beneficial Holder checked the box in Item 3 of their Ballot |
| | | **Accept the Plan** | **Reject the Plan** | |
| 1 | $ | ☐ | ☐ | ☐ |
| 2 | $ | ☐ | ☐ | ☐ |
| 3 | $ | ☐ | ☐ | ☐ |
| 4 | $ | ☐ | ☐ | ☐ |
| 5 | $ | ☐ | ☐ | ☐ |
| 6 | $ | ☐ | ☐ | ☐ |
| **TOTALS** | $ | | | |

<u>**Item 3.**</u>  **Important information regarding the Third Party Release.**[2]

**AS A "<u>RELEASING PARTY</u>" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN SET FORTH BELOW:**

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed,

---

[2]   Under the Plan, "*Released Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each of the Debtors' current and former directors and officers; (d) each DIP Lender; (e) each Agent; (f) each Trustee; (g) the Consenting Revolving Credit Facility Lenders; (h) the Consenting FLLO Term Loan Facility Lenders; (i) the Consenting Second Lien Noteholders; (j) the Consenting Unsecured Noteholders; (k) the Exit Facilities Lenders; (l) the Backstop Parties; (m) all holders of Interests; and (n) with respect to each of the foregoing (a) through (m), each of such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in the Plan; or (y)

each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Revolving Credit Facility, the FLLO Term Loan Facility, the Second Lien Notes, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party other than a Debtor that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facilities Credit Agreements, or any other financing document under and as defined therein) or (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facilities Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the

---

timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

Under the Plan, "*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each DIP Lender; (d) each Agent; (e) each Trustee; (f) the Consenting Revolving Credit Facility Lenders; (g) the Consenting FLLO Term Loan Facility Lenders; (h) the Consenting Second Lien Noteholders; (i) the Consenting Unsecured Noteholders; (j) the Exit Facilities Lenders; (k) the Backstop Parties; (l) all holders of Claims; (m) all holders of Interests; (n) with respect to each of the foregoing (a) through (m), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case, solely in their respective capacities as such with respect to such Entity and solely to the extent such Entity has the authority to bind such Affiliate in such capacity; *provided* that in each case, an Entity shall not be a Releasing Party if it:  (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

third party releases are:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the third-party releases; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the third-party releases.

<p style="text-align:center">*        *        *</p>

**Item 4.  Other Class 6 Ballots Submitted by Beneficial Holders.**  The undersigned certifies that it has transcribed in the following table the information, if any, provided by the Beneficial Holders in Item 4 of the Beneficial Holder Ballot:

| YOUR customer account number and/or Customer Name for each Beneficial Holder who completed Item 4 of the Beneficial Holder Ballot. | Transcribe from Item 4 of the Beneficial Holder Ballot | | | |
|---|---|---|---|---|
| | **Account Number** | **Name of Record Holder or Nominee** | **Principal Amount of other Class 6 Unsecured Notes Claims** | **CUSIP of other Class 6 Unsecured Notes Claims Votes** |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |

**Item 5.  Certifications.**

Upon execution of this Master Ballot, the undersigned certifies that:

(a) **it has received a copy of the Disclosure Statement, the Plan, the Master Ballots, the Beneficial Holder Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Holders of the Class 6 Claims listed in Item 2 above;**

(b) **it has received a completed and signed Beneficial Holder Ballot from each Beneficial Holder listed in Item 2 of this Master Ballot;**

(c) **it is the registered Holder of all Class 6 Claims listed in Item 2 above being voted, or**

(d) **it has been authorized by each Beneficial Holder of Class 6 Claims listed in Item 2 above to vote on the Plan;**

(e) **no other Master Ballots with respect to the same Class 6 Claims identified in Item 2 have been cast or, if any other Master Ballots have been cast with respect to such Claims, then any such earlier Master Ballots are hereby revoked;**

(f) **it has properly disclosed:  (a) the number of Beneficial Holder of Class 6 Claims who completed the Beneficial Holder Ballots; (b) the respective amounts of the Class 6 Claims owned, as the case may be, by each Beneficial Holder of Class 6 Claims who completed a Beneficial Holder Ballot; (c) each such Beneficial Holder of Class 6 Claims' respective vote concerning the Plan; (e) each such Beneficial Holder of Class 6 Claims' certification as to other Class 6 Claims voted; and (f) the**

customer account or other identification number for each such Beneficial Holder of Class 6 Claims; and

(g) it will maintain ballots and evidence of separate transactions returned by Beneficial Holder of Class 6 Claims (whether properly completed or defective) for at least one (1) year after the Effective Date of the Plan and disclose all such information to the Bankruptcy Court or the Debtors, if so ordered

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Participant Number | |
| Name of Proxy Holder or Agent for Nominee (if applicable) | |
| Signature: | |
| Name of Signatory: | |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT *PROMPTLY* BY *ONLY ONE* OF THE FOLLOWING METHODS:**

1. **In the envelope provided via first class mail, by overnight courier, or by hand delivery to:**

If by First Class mail:

Chesapeake Energy Corporation
Ballot Processing
c/o Epiq Corporate Restructuring, LLC
P.O. Box 4422
Beaverton, OR 97076-4422

If by overnight courier or hand delivery:

Chesapeake Energy Corporation
Ballot Processing
c/o Epiq Corporate Restructuring, LLC

10300 SW Allen Boulevard
Beaverton, OR 97005

2. **Via electronic mail service to:**

tabulation@epiqglobal.com
with a reference to "Chesapeake Master Ballot" in the subject line.

---

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME.**

**THE SOLICITATION AGENT MUST ACTUALLY RECEIVE THE
CLASS 6 MASTER BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

[*Remainder of page intentionally left blank; continued next page.*]

| Class 6 — Unsecured Notes Claims |
|---|

## INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT

1. The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in the Master Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Master Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.**

2. The Plan can be confirmed by the Court and thereby made binding upon the Holders if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. You should immediately distribute the Beneficial Holder Ballots and the Solicitation Package to all Beneficial Holders of Class 6 Claims and take any action required to enable each such Beneficial Holder to vote timely the Claims that it holds. You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices. You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a beneficial ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means. Any Beneficial Holder Ballot returned to you by a Beneficial Holder of a Class 6 Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Solicitation Agent, a Master Ballot that reflects the vote of such Beneficial Holders by **[November 23], 2020, at 11:59 p.m.**, prevailing Central Time.

4. If you are transmitting the votes of any Beneficial Holder of Class 6 Claims other than yourself, you may either:

   (a) **"Pre-validate" the individual Class 6 Unsecured Notes Claim Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Class 5 Claim for voting within five (5) Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Solicitation Agent in the return envelope to be provided in the Solicitation Package. A Nominee "pre-validates" a Beneficial Holder's Ballot by signing the Beneficial Holder Ballot and including their DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of Class 6 Claim held by the Nominee for such Beneficial Holder; and then forwarding the Beneficial Holder Ballot together with the Solicitation Package to the Beneficial Holder. The Beneficial Holder then completes the information requested on the Beneficial Holder Ballot and returns the Beneficial Holder Ballot directly to the Solicitation Agent. A list of the Beneficial Holders to whom "pre-validated" Beneficial Holder Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date.**

   (b) **Within five (5) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Class 6 Claim for voting along with a return envelope provided by and addressed to the Nominee, with the Beneficial Holder then returning the individual Beneficial Holder Ballot to the Nominee. In such case, the Nominee will tabulate the votes of its respective owners on a Master Ballot that will be provided to the Nominee separately by the Solicitation Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Solicitation Agent. The Nominee should advise the Beneficial Holder to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is actually received by the Solicitation Agent on or before the Voting Deadline.**

5. With regard to any Beneficial Holder Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the

customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Solicitation Agent by the Voting Deadline; and (d) retain such Beneficial Holder Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date of the Plan. You may be ordered to produce the Beneficial Holder Ballots to the Debtors or the Bankruptcy Court.

The Master Ballot **must** be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline. **The Voting Deadline is [November 23], 2020, at 11:59 p.m.**, prevailing Central Time.

6. If a Master Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, it may be counted in the discretion of the Debtors with the consent of the Required Plan Sponsors and the DIP Agent. Additionally, **the following Master Ballots will *not* be counted**:

   (a) **any Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;**
   (b) **any Master Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan;**
   (c) **any Master Ballot sent by facsimile or any electronic means other than electronic mail;**
   (d) **any unsigned Master Ballot;**
   (e) **any Master Ballot that does not contain an original signature provided however, that any Master Ballot submitted via electronic mail shall be deemed to contain an original signature;**
   (f) **any Master Ballot not marked to accept or reject the Plan; and**
   (g) **any Master Ballot submitted by any party not entitled to cast a vote with respect to the Plan.**

7. The method of delivery of Master Ballots to the Solicitation Agent is at the election and risk of each Nominee of Class 6 Claim. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** the originally executed Master Ballot. In all cases, Beneficial Holders and Nominees should allow sufficient time to assure timely delivery.

8. If a Beneficial Holder or Nominee holds a Claim in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Beneficial Holder or Nominee has a Claim, as applicable, in that Voting Class.

9. If multiple Master Ballots are received from the same Nominee with respect to the same Beneficial Holder Ballot belonging to a Beneficial Holder of a Claim prior to the Voting Deadline, the latest, timely received, and properly completed Master Ballot will supersede and revoke any earlier received Master Ballots.

10. The Master Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

11. **Please be sure to sign and date the Master Ballot**. You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

12. If you are both the Nominee and the Beneficial Holder of any of the Class 6 Claims and you wish to vote such Class 6 Claims, you may return a Beneficial Holder Ballot or Master Ballot for such Class 6 Claims and you must vote all of your Class 6 Claims to either to accept or reject the Plan and may not split your vote. Accordingly, a Beneficial Holder Ballot, other than a Master Ballot with the votes of multiple Beneficial Holders, that partially rejects and partially accepts the Plan will not be counted.

13. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided* that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity may be counted separately as a vote to accept or reject the Plan.

14. The following additional rules shall apply to Master Ballots:

    (a) Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Class 6 Claims as of the Record Voting Date, as evidenced by the record and depository listings.

    (b) Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Holder Ballots, will not be counted in excess of the record amount of the Class 6 Claims held by such Nominee;

    (c) To the extent that conflicting votes or "over-votes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Holder Beneficial Holder Ballots, the Solicitation Agent will attempt to reconcile discrepancies with the Nominee;

    (d) To the extent that over-votes on a Master Ballot or pre-validated Holder Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Holder Ballots that contained the over-vote, but only to the extent of the Nominee's position in Class 6 Claims; and

    (e) For purposes of tabulating votes, each Holder holding through a particular account will be deemed to have voted the principal amount relating to its holding in that particular account, although the Solicitation Agent may be asked to adjust such principal amount to reflect the claim amount.

<div align="center">

**PLEASE RETURN YOUR MASTER BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 6 BALLOT,
THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING,
PLEASE CALL THE SOLICITATION AGENT AT:
(855) 907-2082 (TOLL FREE) OR +1 (503) 520-4448  (INTERNATIONAL)
(ASK TO SPEAK WITH A MEMBER OF THE SOLICITATION GROUP)
OR EMAIL TABULATION@EPIQGLOBAL.COM
AND REFERENCE "CHESAPEAKE" IN THE SUBJECT LINE.**

</div>

---

<div align="center">

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME.**

**THE SOLICITATION AGENT MUST ACTUALLY RECEIVE
THE CLASS 6 MASTER BALLOT ON OR BEFORE THE VOTING DEADLINE.**

</div>

---

**<u>Exhibit 3F</u>**

**Form of Beneficial Holder Ballot for Unsecured Notes Claims**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**BENEFICIAL BALLOT FOR VOTING TO ACCEPT OR**
**REJECT THE JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF CHESAPEAKE ENERGY CORPORATION AND ITS DEBTOR AFFILIATES**

**CLASS 6 BALLOT FOR BENEFICIAL HOLDERS**
**OF UNSECURED NOTES CLAIMS**

| | |
|---|---|
| **6.625% senior notes due 2020** | **8.000% senior notes due 2025** |
| **(CUSIP No. 165167CF2)** | **(CUSIP No. 165167CU9)** |
| | |
| **6.125% senior notes due 2021** | **8.000% senior notes due 2026** |
| **(CUSIP No. 165167CG0)** | **(CUSIP No. U16450AY1 )** |
| | |
| **5.375% senior notes due 2021** | **7.500% senior notes due 2026** |
| **(CUSIP No. 165167CK1)** | **(CUSIP No. 165167DB0)** |
| | |
| **4.875% senior notes due 2022** | **8.000% senior notes due 2027** |
| **(CUSIP No. 165167CN5)** | **(CUSIP No. 165167CZ8)** |
| | |
| **5.750% senior notes due 2023** | **5.500% convertible senior notes due 2026** |
| **(CUSIP No. 165167CL9)** | **(CUSIP No. 165167CY1)** |
| | |
| **7.000% senior notes due 2024** | **6.875% senior notes due 2025** |
| **(CUSIP No. 165167DA2)** | **(CUSIP No. 96812TAB8)** |

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**THE DEADLINE FOR THE RECEIPT OF BALLOTS AND MASTER BALLOTS IS [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE").**

***IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO THE SOLICITATION AGENT (EPIQ CORPORATE RESTRUCTURING, LLC),* PLEASE COMPLETE THE BALLOT AND RETURN IT***

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake.  The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

**PROMPTLY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.**

*IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE,* **PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.   PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on **[●], 2020** (the "Disclosure Statement Order").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Class 6 ballot for Beneficial Holders[1] (the "Class 6 Beneficial Holder Ballot") because you are a Beneficial Holder of an Unsecured Notes Claim in Class 6 as of **[October 8], 2020** (the "Voting Record Date"). Accordingly, you have a right to vote to accept or reject the Plan.  You can cast your vote through this Class 6 Beneficial Holder Ballot and return it to your broker, bank, or other nominee, or the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"), in accordance with the instructions provided by your Nominee, who will then submit a master ballot (the "Master Ballot") on behalf of the Beneficial Holders of Class 6 Claims.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 6 Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Epiq Corporate Restructuring, LLC (the "Solicitation Agent"), at no charge by: (i) accessing the Debtors' restructuring website at https://dm.epiq11.com/chesapeake; (ii) writing to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (iii) calling (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and requesting to speak with a member of the Solicitation Group; or (iv) emailing tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line; or (b) for a fee via PACER at http://www.txs.uscourts.gov/bankruptcy.

This Class 6 Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Class 6 Beneficial Holder Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class 6, Unsecured Lien Notes Claims, under the Plan.  If you hold Claims in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

In order for your vote to count, your Nominee must receive this Class 6 Beneficial Holder Ballot in sufficient time for your Nominee to include your vote on a Master Ballot that must be received by the Solicitation Agent on or before the Voting Deadline, which is **[November 23], 2020, at 11:59 p.m.**, prevailing Central Time.  Please allow sufficient

---

[1]   A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose claims have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees holding through DTC.

time for your vote to be included on the Master Ballot completed by your Nominee.  If a Master Ballot recording your vote is not received by the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count.

**Item 1.    Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Holder of Class 6 Unsecured Notes Claims in the following principal amount (insert amount in box below, unless otherwise completed by your Nominee):



**Item 2.    Vote on Plan.**

The Beneficial Holder of the Class 6 Unsecured Notes Claims against the Debtors set forth in Item 1 votes to (please check <u>one</u>):

☐  **ACCEPT** (vote FOR) the Plan                    ☐  **REJECT** (vote AGAINST) the Plan

**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**

*[Remainder of page intentionally left blank; continued next page.]*

3

<u>Item 3.</u>  **Important information regarding the Third Party Release.**[2]

**AS A "<u>RELEASING PARTY</u>" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN SET FORTH BELOW:**

> **Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Revolving Credit Facility, the FLLO Term Loan Facility, the Second Lien Notes, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or**

---

[2]     Under the Plan, "*Released Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each of the Debtors' current and former directors and officers; (d) each DIP Lender; (e) each Agent; (f) each Trustee; (g) the Consenting Revolving Credit Facility Lenders; (h) the Consenting FLLO Term Loan Facility Lenders; (i) the Consenting Second Lien Noteholders; (j) the Consenting Unsecured Noteholders; (k) the Exit Facilities Lenders; (l) the Backstop Parties; (m) all holders of Interests; and (n) with respect to each of the foregoing (a) through (m), of each such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

Under the Plan, "*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each DIP Lender; (d) each Agent; (e) each Trustee; (f) the Consenting Revolving Credit Facility Lenders; (g) the Consenting FLLO Term Loan Facility Lenders; (h) the Consenting Second Lien Noteholders; (i) the Consenting Unsecured Noteholders; (j) the Exit Facilities Lenders; (k) the Backstop Parties; (l) all holders of Claims; (m) all holders of Interests; (n) with respect to each of the foregoing (a) through (m), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case, solely in their respective capacities as such with respect to such Entity and solely to the extent such Entity has the authority to bind such Affiliate in such capacity; *provided* that in each case, an Entity shall not be a Releasing Party if it:  (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party other than a Debtor that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facilities Credit Agreements, or any other financing document under and as defined therein) or (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facilities Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third party releases are:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the third-party releases; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the third-party releases.

\*          \*          \*

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**OPTIONAL RELEASE ELECTION. YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW:**

---

☐ **The Undersigned Holder of the Claim elects to OPT OUT of the Third Party Release**

---

**Item 4.  Other Class 6 Beneficial Holder Ballots Submitted.**  By returning this Beneficial Holder Ballot, the Holder of the Class 6 Unsecured Notes Claims identified in Item 1 certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for Notes Claims owned by such Holder, except as identified in the following table, and (b) *all* Beneficial Holder Ballots submitted by the Holder indicate the same vote to accept or reject the Plan that the Holder has indicated in Item 2 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary):

**ONLY COMPLETE THIS TABLE IF YOU HAVE VOTED <u>OTHER</u>
CLASS 6 UNSECURED NOTES CLAIMS ON OTHER BENEFICIAL HOLDER BALLOTS**

| Account Number of other Class 6 Unsecured Notes Claims Voted | Name of Record Holder or Nominee | Principal Amount of other Class 6 Unsecured Notes Claims | CUSIP of Other Class 6 Unsecured Notes Claims |
|---|---|---|---|
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

<u>**Item 5**</u>.  **Certifications.**

By signing this Class 6 Beneficial Holder Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(a) **that, as of the Voting Record Date, either:  (i) the Entity is the Holder of the Class 6 Unsecured Notes Claims being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Note Claims being voted;**

(b) **that the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;**

(c) **that the Entity has cast the same vote with respect to all Unsecured Notes Claims in a single Class; and**

(d) **that no other Class 6 Beneficial Holder Ballots with respect to the amount of the Unsecured Notes Claims identified in Item 1 have been cast or, if any other Class 6 Beneficial Holder Ballots have been cast with respect to such Unsecured Notes Claims, then any such earlier Class 6 Beneficial Holder Ballots are hereby revoked.**

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

6

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* IN THE ENVELOPE PROVIDED OR
OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

---

THE VOTING DEADLINE IS
**[NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME.**

THE SOLICITATION AGENT MUST ***ACTUALLY RECEIVE***
THE CLASS 6 BENEFICIAL HOLDER BALLOT REFLECTING YOUR VOTE (OR PRE-VALIDATED
BALLOT, IF APPLICABLE) ON OR BEFORE THE VOTING DEADLINE.

---

[*Remainder of page intentionally left blank; continued next page.*]

---

**Class 6 — Unsecured Notes Claims**

---

## INSTRUCTIONS FOR COMPLETING THIS CLASS 5 BENEFICIAL HOLDER BALLOT

1.  The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in the Class 6 Beneficial Holder Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Class 6 Beneficial Holder Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.  The Plan can be confirmed by the Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  Unless otherwise instructed by your Nominee, to ensure that your vote is counted, you must submit your Class 6 Beneficial Holder Ballot to your Nominee so that your Nominee can submit a Master Ballot that reflects your vote so that the Master Ballot is actually received by the Solicitation Agent by the Voting Deadline.  You may instruct your Nominee to vote on your behalf in the Master Ballot as follows:  (a) complete the Class 6 Beneficial Holder Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Class 6 Beneficial Holder Ballot; and (c) sign and return the Class 6 Beneficial Holder Ballot to your Nominee in accordance with the instructions provided by your Nominee.  The Voting Deadline for the receipt of Master Ballots by the Solicitation Agent is **[November 23], 2020, at 11:59 p.m.**, prevailing Central Time.  Your completed Class 6 Beneficial Holder Ballot must be received by your Nominee in sufficient time to permit your Nominee to deliver your votes to the Solicitation Agent on or before the Voting Deadline.

4.  **The following Class 6 Ballots submitted to your Nominee will *not* be counted**:

    (a) **any Class 6 Beneficial Holder Ballot that partially rejects and partially accepts the Plan;**
    (b) **Class 6 Beneficial Holder sent to the Debtors, the Debtors' agents, any indenture trustee, or the Debtors' financial or legal advisors;**
    (c) **Class 6 Beneficial Holder Ballots sent by facsimile or any electronic means other than in accordance with the instructions of your Nominee (however, if you are directed by your Nominee to submit the Beneficial Holder Ballot to the Nominee via electronic means, such instructions to your Nominee shall have the same effect as if you had completed and returned a physical Beneficial Holder Ballot, including all certifications);**
    (d) **any Class 6 Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;**
    (e) **any Class 6 Beneficial Holder Ballot cast by an Entity that does not hold a Claim in Class 5;**
    (f) **any unsigned Class 6 Beneficial Holder Ballot;**
    (g) **any Class 6 Beneficial Holder Ballot submitted by a holder not entitled to vote pursuant to the Plan.**
    (h) **any Class 6 Beneficial Holder Ballot not bearing an original signature, except as provided above; and/or**
    (i) **any Class 6 Beneficial Holder Ballot not marked to accept or reject the Plan or any Class 6 Ballot marked both to accept and reject the Plan.**

5.  If your Class 6 Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted unless the Debtors determine otherwise.  In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Class 6 Beneficial Holder Ballot to your Nominee.  No Class 6 Beneficial Holder Ballot should be sent to any of the Debtors, the Debtors' agents, the Debtors' financial or legal advisors, and if so sent will not be counted.

6.  If you deliver multiple Class 6 Beneficial Holder Ballots to the Nominee with respect to the same Claim prior to the Voting Deadline, the last received valid Class 6 Beneficial Holder Ballot timely received will supersede and revoke any earlier received Class 6 Beneficial Holder Ballots.

7.  You must vote all of your Claims within Class 6 either to accept or reject the Plan and may **not** split your vote. Further, if a Holder has multiple Claims within Class 6, the Debtors may, in their discretion, aggregate the Claims of any particular Holder with multiple Claims within Class 6 for the purpose of counting votes.

8.  This Class 6 Beneficial Holder Ballot does *not* constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

9.  **Please be sure to sign and date your Class 6 Beneficial Holder Ballot**.  If you are signing a Class 6 Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.

10. If you hold Claims in more than one Class under the Plan you may receive more than one ballot coded for each different Class.  Each ballot votes *only* your Claims indicated on that ballot, so please complete and return each ballot that you receive.

11. The Class 6 Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with a ballot.

**PLEASE RETURN YOUR CLASS 6 BENEFICIAL HOLDER BALLOT PROMPTLY IN THE ENVELOPE
PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR
NOMINEE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 6 BALLOT,
THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING,
PLEASE CALL THE SOLICITATION AGENT AT:
(855) 907-2082 (TOLL FREE) OR +1 (503) 520-4448  (INTERNATIONAL)
(ASK TO SPEAK WITH A MEMBER OF THE SOLICITATION GROUP)
OR EMAIL TABULATION@EPIQGLOBAL.COM
AND REFERENCE "CHESAPEAKE" IN THE SUBJECT LINE.**

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME.**

**THE SOLICITATION AGENT MUST ACTUALLY RECEIVE
THE CLASS 6 BENEFICIAL HOLDER BALLOT (OR PRE-VALIDATED BALLOT, IF APPLICABLE)
ON OR BEFORE THE VOTING DEADLINE.**

**Exhibit A**

*Your Nominee may have checked a box below to indicate the CUSIP to which this
Beneficial Holder Ballot pertains, or otherwise provided that information to you on a label or
schedule attached to the Beneficial Holder Ballot:*

| Class 6 (Unsecured Notes Claims) | | |
|---|---|---|
| ☐ | 6.625% senior notes due 2020 | CUSIP No. 165167CF2 |
| ☐ | 6.125% senior notes due 2021 | CUSIP No. 165167CG0 |
| ☐ | 5.375% senior notes due 2021 | CUSIP No. 165167CK1 |
| ☐ | 4.875% senior notes due 2022 | CUSIP No. 165167CN5 |
| ☐ | 5.750% senior notes due 2023 | CUSIP No. 165167CL9 |
| ☐ | 7.000% senior notes due 2024 | CUSIP No. 165167DA2 |
| ☐ | 8.000% senior notes due 2025 | CUSIP No. 165167CU9 |
| ☐ | 8.000% senior notes due 2026 | CUSIP No. U16450AY1 |
| ☐ | 7.500% senior notes due 2026 | CUSIP No. 165167DB0 |
| ☐ | 8.000% senior notes due 2027 | CUSIP No. 165167CZ8 |
| ☐ | 5.500% convertible senior notes due 2026 | CUSIP No. 165167CY1 |
| ☐ | 6.875% senior notes due 2025 | CUSIP No. 96812TAB8 |

**<u>Exhibit 3G</u>**

**Form of Ballot for General Unsecured Claims**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**BALLOT FOR VOTING TO ACCEPT OR
REJECT THE JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF CHESAPEAKE ENERGY CORPORATION AND ITS DEBTOR AFFILIATES**

**CLASS 7 BALLOT FOR HOLDERS OF GENERAL UNSECURED CLAIMS**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS
> CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED,
> EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE SOLICITATION
> AGENT BY, [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME (THE "VOTING
> DEADLINE")**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [●], 2020 (the "Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Class 7 ballot (this "Class 7 Ballot") because you are a Holder of a General Unsecured Claim in Class 7 as of **[October 8], 2020** (the "Voting Record Date"). Accordingly, you have a right to vote to accept or reject the Plan.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 7 Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Epiq Corporate Restructuring, LLC (the "Solicitation Agent"), at no charge by: (i) accessing the Debtors' restructuring website at https://dm.epiq11.com/chesapeake; (ii) writing to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (iii) calling (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and requesting to

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake.  The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

speak with a member of the Solicitation Group; or (iv) emailing tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line; or (b) for a fee via PACER at http://www.txs.uscourts.gov/bankruptcy.

This Class 7 Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Class 7 Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class 7, General Unsecured Claims, under the Plan.  If you hold Claims in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

**Item 1**.  **Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of a Class 7 Claim in the following aggregate unpaid amount:[2]

> $_____
>
> Debtor:_____

**Item 2**.   **Vote on Plan.**

The Holder of the Class 7 General Unsecured Claim against the Debtor set forth in Item 1 votes to (please check <u>one</u>):

| | |
|---|---|
| ☐  **ACCEPT** (vote FOR) the Plan | ☐  **REJECT** (vote AGAINST) the Plan |

**<u>You will receive a separate ballot for each Debtor for General Unsecured Claims.</u>**

[*Remainder of page intentionally left blank; continued next page.*]

---

[2]      For voting purposes only, subject to tabulation rules.

**Item 3.**  **Important information regarding the Third Party Release.**[3]

**AS A "<u>RELEASING PARTY</u>" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN SET FORTH BELOW:**

> **Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Revolving Credit Facility, the FLLO Term Loan Facility, the Second Lien Notes, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or**

---

[3]   Under the Plan, "*Released Parties*" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each of the Debtors' current and former directors and officers; (d) each DIP Lender; (e) each Agent; (f) each Trustee; (g) the Consenting Revolving Credit Facility Lenders; (h) the Consenting FLLO Term Loan Facility Lenders; (i) the Consenting Second Lien Noteholders; (j) the Consenting Unsecured Noteholders; (k) the Exit Facilities Lenders; (l) the Backstop Parties; (m) all holders of Interests; and (n) with respect to each of the foregoing (a) through (m), each of such Entity and its current and former Affiliates, and such Entities' and their current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

Under the Plan, "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each DIP Lender; (d) each Agent; (e) each Trustee; (f) the Consenting Revolving Credit Facility Lenders; (g) the Consenting FLLO Term Loan Facility Lenders; (h) the Consenting Second Lien Noteholders; (i) the Consenting Unsecured Noteholders; (j) the Exit Facilities Lenders; (k) the Backstop Parties; (l) all holders of Claims; (m) all holders of Interests; (n) with respect to each of the foregoing (a) through (m), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case, solely in their respective capacities as such with respect to such Entity and solely to the extent such Entity has the authority to bind such Affiliate in such capacity; *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party other than a Debtor that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facilities Credit Agreements, or any other financing document under and as defined therein) or (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facilities Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third party releases are:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the third-party releases; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the third-party releases.

<center>*          *          *</center>

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**OPTIONAL RELEASE ELECTION. YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW:**

---

☐ **The Undersigned Holder of the Claim elects to OPT OUT of the Third Party Release**

---

**Item 4**.  **Certifications.**

By signing this Class 7 Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(a) that, as of the Voting Record Date, either:  (i) the Entity is the Holder of the General Unsecured Claims being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the General Unsecured Claims being voted;

(b) that the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c) that the Entity has cast the same vote with respect to all General Unsecured Claims in a single Class; and

<center>4</center>

(d) **that no other Class 7 Ballots with respect to the amount of the General Unsecured Claims identified in Item 1 have been cast or, if any other Class 7 Ballots have been cast with respect to such General Unsecured Claims, then any such earlier Class 7 Ballots are hereby revoked.**

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| | |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

## PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* BY *ONLY ONE* OF THE FOLLOWING RETURN METHODS:

If by First Class mail:

    Chesapeake Energy Corporation
    Ballot Processing
    c/o Epiq Corporate Restructuring, LLC
    P.O. Box 4422
    Beaverton, OR 97076-4422

If by overnight courier or hand delivery:

    Chesapeake Energy Corporation
    Ballot Processing
    c/o Epiq Corporate Restructuring, LLC
    10300 SW Allen Boulevard
    Beaverton, OR 97005

By electronic, online submission:

    Please visit https://dm.epiq11.com/chesapeake. Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your E-Ballot. If you choose to submit your

5

Ballot via Epiq's E-Ballot system, you should <u>not</u> also return a hard copy of your Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized E-Ballot:**

**Unique E-Ballot ID#: _____**

<u>"E-Balloting" is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile or email will not be counted.</u>

<u>Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.</u>

<u>Creditors who cast a Ballot using the Solicitation Agent's online portal should NOT also submit a paper Ballot</u>.

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME**

**THE SOLICITATION AGENT MUST ACTUALLY RECEIVE YOUR CLASS 7 BALLOT ON OR BEFORE THE VOTING DEADLINE.**

*[Remainder of page intentionally left blank; continued next page.]*

| Class 7 — General Unsecured Claims |
|---|

## INSTRUCTIONS FOR COMPLETING THIS CLASS 7 BALLOT

1. The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in the Class 7 Ballot or in these instructions (the "<u>Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Class 7 Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2. The Plan can be confirmed by the Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. To ensure that your Class 7 Ballot is counted, you ***must either***: (a) complete and submit this hard copy Class 7 Ballot or (b) vote through the Debtors' online balloting portal accessible through the Debtors' case website https://dm.epiq11.com/chesapeake. **Ballots will not be accepted by facsimile or other electronic means (other than the online portal).**

4. <u>Use of Hard Copy Ballot</u>. To ensure that your hard copy Class 7 Ballot is counted, you must: (a) complete your Class 7 Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Class 7 Ballot; and (c) clearly sign and return your original Class 7 Ballot in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery one of the following addresses or in accordance with paragraph 5 below.

| If by First Class Mail: | If by overnight courier or hand delivery: |
|---|---|
| Chesapeake Energy Corporation<br>Ballot Processing<br>c/o Epiq Corporate Restructuring, LLC<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | Chesapeake Energy Corporation<br>Ballot Processing<br>c/o Epiq Corporate Restructuring, LLC<br>10300 SW Allen Boulevard<br>Beaverton, OR 97005 |

5. <u>Use of Online Ballot Portal</u>. To ensure that your electronic Class 7 Ballot is counted, please follow the instructions of the Debtors' case administration website at https://dm.epiq11.com/chesapeake. You will need to enter your unique E-Ballot identification number indicated above. The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission. **Ballots will not be accepted by facsimile or electronic means (other than the online portal).**

6. Your Class 7 Ballot ***must*** be returned to the Solicitation Agent so as to be ***actually received*** by the Solicitation Agent on or before the Voting Deadline. **The Voting Deadline is [November 23], 2020, at 11:59 p.m.**, prevailing Central Time.

7. If a Class 7 Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted in the discretion of the Debtors with the consent of the Required Plan Sponsors and the DIP Agent. Additionally, **the following Class 7 Ballots will *not* be counted**:

    (a) **any Class 7 Ballot that partially rejects and partially accepts the Plan;**
    (b) **Class 7 Ballots sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), an administrative agent, any indenture trustee, or the Debtors' financial or legal advisors;**

<div align="center">7</div>

    (c) **Class 7 Ballots sent by facsimile or any electronic means other than via the online portal;**

    (d) **any Class 7 Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;**

    (e) **any Class 7 Ballot cast by an Entity that does not hold a Claim in Class 7;**

    (f) **any Class 7 Ballot submitted by a Holder not entitled to vote pursuant to the Plan;**

    (g) **any unsigned Class 7 Ballot;**

    (h) **any Class 7 Ballot not bearing an original signature, except as provided above; and/or**

    (i) **any Class 7 Ballot not marked to accept or reject the Plan or any Class 7 Ballot marked both to accept and reject the Plan.**

8. The method of delivery of Class 7 Ballots to the Solicitation Agent is at the election and risk of each Holder of a General Unsecured Claim. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent *actually receives* the originally executed Class 7 Ballot. In all cases, Holders should allow sufficient time to assure timely delivery.

9. If multiple Class 7 Ballots are received from the same Holder of a General Unsecured Claim with respect to the same General Unsecured Claim prior to the Voting Deadline, the latest, timely received, and properly completed Class 7 Ballot will supersede and revoke any earlier received Class 7 Ballots.

10. You must vote all of your General Unsecured Claims within Class 7 either to accept or reject the Plan and may **not** split your vote. Further, if a Holder has multiple General Unsecured Claims within Class 7, the Debtors may, in their discretion, aggregate the Claims of any particular Holder with multiple General Unsecured Claims within Class 7 for the purpose of counting votes.

11. This Class 7 Ballot does *not* constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

12. **Please be sure to sign and date your Class 7 Ballot**. If you are signing a Class 7 Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Class 7 Ballot.

13. If you hold Claims in more than one Class under the Plan you may receive more than one ballot coded for each different Class. Each ballot votes *only* your Claims indicated on that ballot, so please complete and return each ballot that you received.

<div align="center">

**PLEASE MAIL YOUR CLASS 7 BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 7 BALLOT,
THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING,
PLEASE CALL THE SOLICITATION AGENT AT:
(855) 907-2082 (TOLL FREE) OR +1 (503) 520-4448  (INTERNATIONAL)
(ASK TO SPEAK WITH A MEMBER OF THE SOLICITATION GROUP)
OR EMAIL TABULATION@EPIQGLOBAL.COM
AND REFERENCE "CHESAPEAKE" IN THE SUBJECT LINE.**

</div>

---

<div align="center">

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME**

**THE SOLICITATION AGENT MUST ACTUALLY RECEIVE YOUR CLASS 7 BALLOT
ON OR BEFORE THE VOTING DEADLINE.**

</div>

---

**Exhibit 4**

**Form of Cover Letter**



_____, 2020

RE:    **In re Chesapeake Energy Corporation, _et al._,**
        **Chapter 11 Case No. 20-33233 (DRJ) (Jointly Administered)**

TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN:

Chesapeake Energy Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors")[1] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court") on [●], 2020.

You have received this letter and the enclosed materials because you are entitled to vote on the _Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates_ [Docket No. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").[2]  On [●], 2020, the Court entered an order [Docket No. [●]] (the "Disclosure Statement Order"):  (a) approving the adequacy of the _Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates_ [Docket No. [●]] (the "Disclosure Statement"); (b) approving the solicitation procedures (the "Solicitation Procedures") with respect to the Plan; (c) approving the forms of ballots and notices in connection therewith; (d) scheduling certain dates with respect thereto; and (e) granting related relief.

> **YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE PLAN. THEREFORE, YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

In addition to this cover letter, the enclosed materials comprise your Solicitation Package, and were approved by the Court for distribution to holders of Claims in connection with the solicitation of votes to accept the Plan.  The Solicitation Package consists of the following:

a.    the Disclosure Statement Order (excluding exhibits);

b.    the approved Disclosure Statement (annexed as **Exhibit 1** to the Disclosure Statement Order) and the exhibits thereto, including the Plan;

c.    these Solicitation Procedures (annexed as **Exhibit 2** to the Disclosure Statement Order);

d.    the applicable form of Ballot, in substantially the form of the Ballots annexed as **Exhibits 3A**, **3B**, **3C**, **3D**, **3E**, **3F**, and **3G** the Disclosure Statement Order;

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake.  The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2]    Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

e.  a cover letter, in substantially the form annexed as **Exhibit 4** to the Disclosure Statement Order describing the contents of the Solicitation Package and urging the holders of Claims in each of the Voting Classes to vote to accept the Plan;

f.  the *Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Procedures*, in substantially the form annexed as **Exhibit 8** to the Disclosure Statement Order (the "Confirmation Hearing Notice");

g.  a pre-addressed, postage pre-paid reply envelope;[3] and

h.  any additional documents that the Court has ordered to be made available.

Chesapeake Energy Corporation (on behalf of itself and each of the other Debtors) has approved the filing of the Plan and the solicitation of votes to accept the Plan.  The Debtors believe that the acceptance of the Plan is in the best interests of their Estates, holders of Claims and Interests, and all other parties in interest.  Moreover, the Debtors believe that any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller distributions (or no distributions) on account of Claims or Interests in the Chapter 11 Cases.

> **THE DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN.  BALLOTS SHOULD BE SUBMITTED IN ACCORDANCE WITH THE INSTRUCTIONS INDICATED ON YOUR BALLOT.**
>
> **THE VOTING DEADLINE IS AT 11:59 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 23], 2020.**

The materials in the Solicitation Package are intended to be self-explanatory.  If you should have any questions, however, please feel free to contact Epiq Corporate Restructuring, LLC, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by:  (a) accessing the Solicitation Agent's website at https://dm.epiq11.com/chesapeake;; (b) writing to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (c) emailing tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line; or (d) calling  (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and requesting to speak with a member of the Solicitation Group.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at:  http://www.txs.uscourts.gov/bankruptcy.

Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, the solicitation materials, but may *not* advise you as to whether you should vote to accept or reject the Plan or provide any legal advice.

Sincerely,

Chesapeake Energy Corporation, on its own behalf and for each of the Debtors

_____
Domenic J. Dell'Osso, Jr.
Executive Vice President & Chief Financial Officer

---

[3]  The Debtors will provide pre-addressed, postage pre-paid reply envelopes only to those holders who receive Ballots directly from the Debtors and shall not be responsible for ensuring individual Beneficial Holders receive pre-addressed, postage pre-paid reply envelopes from their respective Nominees.

**<u>Exhibit 5</u>**

**Form of Non-Impaired Non-Voting Status Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**NOTICE OF NON-VOTING STATUS TO HOLDERS OF
UNIMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN**

**PLEASE TAKE NOTICE THAT** on [●], 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No.[●]] (the "Disclosure Statement Order"): (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (the "Disclosure Statement"), (b) approving the solicitation procedures (the "Solicitation Procedures") with respect to confirmation of the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (the "Plan"),[2] (c) approving the forms of ballots and notices in connection therewith, (d) scheduling certain dates with respect thereto, and (e) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim under the Plan, *you are not entitled to vote on the Plan*. Specifically, under the terms of the Plan, as a holder of a Claim (as currently asserted against the Debtors) that is not Impaired and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are *not* entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and related voting and objection procedures (the "Confirmation Hearing") will commence on **[December 7], 2020 at [●] a/p.m.,** prevailing Central Time, before the Honorable David R. Jones in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Houston, Texas 77002.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **[November 23], 2020 at 5:00 p.m.,** prevailing Central Time (the "Confirmation Objection Deadline"). Any objection to the Plan *must*: (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) on or before the Confirmation Objection Deadline.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement Order, the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you may: (a) access the Debtors' restructuring website at https://dm.epiq11.com/chesapeake; (b) write to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (c) call (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and requesting to speak with a member of the Solicitation Group; or (d) email tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.txs.uscourts.gov/bankruptcy.

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2]   Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.  PURSUANT TO THE PLAN YOU ARE DEEMED TO ACCEPT THE PLAN AND THEREFORE ARE DEEMED TO HAVE CONSENTED TO THE RELEASES SET FORTH IN ARTICLE VIII.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII OF THE PLAN USING THE ENCLOSED OPT OUT FORM OR BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.  BY OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

Houston, Texas
[●], 2020

/s/
_____

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:       (713) 752-4200
Facsimile:       (713) 752-4221
Email:           mcavenaugh@jw.com
                 jwertz@jw.com
                 kpeguero@jw.com
                 vpolnick@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:           patrick.nash@kirkland.com
                 marc.kieselstein@kirkland.com
                 alexandra.schwarzman@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**OPTIONAL:  RELEASE OPT OUT FORM**

You are receiving this opt out form (the "Opt Out Form") because you are a holder of a Claim that is not entitled to vote on the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").

**Article VIII.D of the Plan contains the following provision:**

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY IS, AND IS DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE CAPITAL STRUCTURE, MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE REVOLVING CREDIT FACILITY, THE FLLO TERM LOAN FACILITY, THE SECOND LIEN NOTES, THE ASSERTION OR ENFORCEMENT OF RIGHTS AND REMEDIES AGAINST THE DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR AND ANOTHER DEBTOR, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE RESTRUCTURING SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE EXIT FACILITIES, THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE PLAN SUPPLEMENT), OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE PLAN SUPPLEMENT, BEFORE OR DURING THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED OR RELATING TO ANY OF THE FOREGOING TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY OTHER THAN A DEBTOR THAT CONSTITUTES ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, EACH SOLELY TO THE EXTENT AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (I) ANY PARTY OF ANY OBLIGATIONS RELATED TO CUSTOMARY BANKING PRODUCTS, BANKING SERVICES OR OTHER FINANCIAL ACCOMMODATIONS (EXCEPT AS MAY BE EXPRESSLY AMENDED OR MODIFIED BY THE PLAN AND THE EXIT FACILITIES CREDIT AGREEMENTS, OR ANY OTHER FINANCING DOCUMENT UNDER AND AS DEFINED THEREIN) OR (II) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY RESTRUCTURING

TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, INCLUDING THE EXIT FACILITIES DOCUMENTS, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASES ARE: (A) CONSENSUAL; (B) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (C) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (D) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASES; (E) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (F) FAIR, EQUITABLE, AND REASONABLE; (G) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (H) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASES.

\*        \*        \*

UNDER THE PLAN, "*RELEASED PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH OF THE DEBTORS' CURRENT AND FORMER DIRECTORS AND OFFICERS; (D) EACH DIP LENDER; (E) EACH AGENT; (F) EACH TRUSTEE; (G) THE CONSENTING REVOLVING CREDIT FACILITY LENDERS; (H) THE CONSENTING FLLO TERM LOAN FACILITY LENDERS; (I) THE CONSENTING SECOND LIEN NOTEHOLDERS; (J) THE CONSENTING UNSECURED NOTEHOLDERS; (K) THE EXIT FACILITIES LENDERS; (L) THE BACKSTOP PARTIES; (M) ALL HOLDERS OF INTERESTS; AND (N) WITH RESPECT TO EACH OF THE FOREGOING (A) THROUGH (M), EACH OF SUCH ENTITY AND ITS CURRENT AND FORMER AFFILIATES, AND SUCH ENTITIES' AND THEIR CURRENT AND FORMER AFFILIATES' CURRENT AND FORMER MEMBERS, DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), PREDECESSORS, SUCCESSORS AND ASSIGNS, SUBSIDIARIES, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, EQUITY HOLDERS, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "*RELEASING PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH DIP LENDER; (D) EACH AGENT; (E) EACH TRUSTEE; (F) THE CONSENTING REVOLVING CREDIT FACILITY LENDERS; (G) THE CONSENTING FLLO TERM LOAN FACILITY LENDERS; (H) THE CONSENTING SECOND LIEN NOTEHOLDERS; (I) THE CONSENTING UNSECURED NOTEHOLDERS; (J) THE EXIT FACILITIES LENDERS; (K) THE BACKSTOP PARTIES; (L) ALL HOLDERS OF CLAIMS; (M) ALL HOLDERS OF INTERESTS; (N) WITH RESPECT TO EACH OF THE FOREGOING (A) THROUGH (M), SUCH ENTITY AND ITS CURRENT AND FORMER AFFILIATES, AND SUCH ENTITIES' AND THEIR CURRENT AND FORMER AFFILIATES' CURRENT AND FORMER MEMBERS, DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), PREDECESSORS, SUCCESSORS AND ASSIGNS, SUBSIDIARIES, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, EQUITY HOLDERS, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS,

CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, IN EACH CASE, SOLELY IN THEIR RESPECTIVE CAPACITIES AS SUCH WITH RESPECT TO SUCH ENTITY AND SOLELY TO THE EXTENT SUCH ENTITY HAS THE AUTHORITY TO BIND SUCH AFFILIATE IN SUCH CAPACITY; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.

Notwithstanding the foregoing, an entity **shall be neither a Releasing Party nor a Released Party if it: (a) validly opts out of the releases contained in Article VIII.D of the Plan or (b) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in Article VIII of the plan that is not resolved before confirmation.**

As a "Releasing Party" under the Plan, you are deemed to provide the releases contained in Article VIII.D of the Plan, as set forth above. You may elect not to grant the releases contained in Article VIII.D of the plan **_only if_** you (a) check the box below or (b) timely file with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the released contained in Article VIII of the Plan that is not resolved before confirmation. The election to withhold consent to grant such release is at your option. By opting out of the releases set forth in Article VIII.D of the Plan, you will forego the benefit of obtaining the releases set forth in Article VIII of the Plan if you are a Released Party in connection therewith.

**OPTIONAL RELEASE ELECTION. YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN <u>ONLY IF</u> YOU CHECK THE BOX BELOW:**

<div style="border:1px solid black; padding:10px;">

☐ **The Undersigned holder of the Claim elects to <u>OPT OUT of the Third Party Release</u>**

</div>

**Certifications.**

By signing this Opt Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)   as of the Voting Record Date, either: (i) the Entity is the holder of a Claim; or (ii) the Entity is an authorized signatory for the Entity that is a holder of the Claim;

(b)   the Entity (or in the case of an authorized signatory, the holder) has received a copy of the *Notice of Non-Voting Status to Holders of Impaired Claims Conclusively Presumed to Accept the Plan* and that this Opt Out Form is made pursuant to the terms and conditions set forth therein;

(c)   the Entity has submitted the same respective election concerning the releases with respect to all Claims in a single Class; and

(d)   no other Opt Out Form has been submitted or, if any other Opt Out Forms have been submitted with respect to such Claims, then any such earlier Opt Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

***IF YOU HAVE MADE THE OPTIONAL OPT OUT ELECTION*, PLEASE COMPLETE, SIGN, AND DATE THIS OPT OUT FORM AND RETURN IT *PROMPTLY* BY *ONLY ONE* OF THE METHODS BELOW.**

<u>If by First Class mail:</u>

Chesapeake Energy Corporation
Ballot Processing
c/o Epiq Corporate Restructuring, LLC
P.O. Box 4422
Beaverton, OR 97076-4422

<u>If by overnight courier or hand delivery:</u>

Chesapeake Energy Corporation
Ballot Processing
c/o Epiq Corporate Restructuring, LLC
10300 SW Allen Boulevard
Beaverton, OR 97005

<u>By electronic, online submission:</u>

Please visit https://dm.epiq11.com/chesapeake. Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your Opt Out Form. If you choose to submit your Opt Out Form via Epiq's E-Ballot system, you should <u>not</u> also return a hard copy of your Opt Out Form.

10

> "E-Balloting" is the sole manner in which Opt Out Forms will be accepted via electronic or online transmission. Opt Out Forms submitted by facsimile or email will not be counted.

> **THE VOTING DEADLINE IS [NOVEMBER 23], 2020, AT 11:59 P.M.,** PREVAILING CENTRAL TIME. THE SOLICITATION AGENT MUST ***ACTUALLY RECEIVE*** YOUR OPT OUT ELECTION ON OR BEFORE THE VOTING DEADLINE.

**<u>Exhibit 6</u>**

**Form of Impaired Non-Voting Status Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

NOTICE OF NON-VOTING STATUS TO HOLDERS OF
IMPAIRED INTERESTS CONCLUSIVELY PRESUMED TO REJECT THE PLAN

PLEASE TAKE NOTICE THAT on [●], 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No.[●]] (the "Disclosure Statement Order"): (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (the "Disclosure Statement"), (b) approving the solicitation procedures (the "Solicitation Procedures") with respect to confirmation of the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (the "Plan"),[2] (c) approving the forms of ballots and notices in connection therewith, (d) scheduling certain dates with respect thereto, and (e) granting related relief.

PLEASE TAKE FURTHER NOTICE THAT because of the nature and treatment of your Interest under the Plan, *you are not entitled to vote on the Plan*. Specifically, under the terms of the Plan, as a holder of an Interest (as currently asserted against the Debtors) that is Impaired and conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, you are *not* entitled to vote on the Plan.

PLEASE TAKE FURTHER NOTICE THAT the hearing at which the Court will consider Confirmation of the Plan and related voting and objection procedures (the "Confirmation Hearing") will commence on **[December 7], 2020 at [●] a/p.m.**, prevailing Central Time, before the Honorable David R. Jones in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Houston, Texas 77002.

PLEASE TAKE FURTHER NOTICE THAT the deadline for filing objections to the Plan is **[November 23], 2020, at 5:00 p.m.**, prevailing Central Time (the "Confirmation Objection Deadline"). Any objection to the Plan *must*: (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) on or before the Confirmation Objection Deadline.

PLEASE TAKE FURTHER NOTICE THAT if you would like to obtain a copy of the Disclosure Statement Order, the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you may: (a) access the Debtors' restructuring website at https://dm.epiq11.com/chesapeake; (b) write to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (c) call (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and requesting to speak with a member of the Solicitation Group; or (d) email tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.txs.uscourts.gov/bankruptcy.

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2]  Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

**ARTICLE VIII** OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE**. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII OF THE PLAN USING THE ENCLOSED OPT OUT FORM OR BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. BY OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.

Houston, Texas
[●], 2020

/s/

| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
|---|---|
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:       (713) 752-4200
Facsimile:        (713) 752-4221
Email:        mcavenaugh@jw.com
                    jwertz@jw.com
                    kpeguero@jw.com
                    vpolnick@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:        (312) 862-2200
Email:        patrick.nash@kirkland.com
                    marc.kieselstein@kirkland.com
                    alexandra.schwarzman@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Exhibit 6A</u>**

**Opt Out Form for Holders of Impaired Interests Deemed To Reject The Plan
(Direct Holders)**

**OPTIONAL:  RELEASE OPT OUT FORM**

You are receiving this opt out form (the "Opt Out Form") because you are a Holder of a Claim or Interest that is not entitled to vote on the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").

**Article VIII.D of the Plan contains the following provision:**

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY IS, AND IS DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE CAPITAL STRUCTURE, MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE REVOLVING CREDIT FACILITY, THE FLLO TERM LOAN FACILITY, THE SECOND LIEN NOTES, THE ASSERTION OR ENFORCEMENT OF RIGHTS AND REMEDIES AGAINST THE DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR AND ANOTHER DEBTOR, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE RESTRUCTURING SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE EXIT FACILITIES, THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE PLAN SUPPLEMENT), OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE PLAN SUPPLEMENT, BEFORE OR DURING THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED OR RELATING TO ANY OF THE FOREGOING TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY OTHER THAN A DEBTOR THAT CONSTITUTES ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, EACH SOLELY TO THE EXTENT AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (I) ANY PARTY OF ANY OBLIGATIONS RELATED TO CUSTOMARY BANKING PRODUCTS, BANKING SERVICES OR OTHER FINANCIAL ACCOMMODATIONS (EXCEPT AS MAY BE EXPRESSLY AMENDED OR MODIFIED BY THE PLAN AND THE EXIT FACILITIES CREDIT AGREEMENTS, OR ANY OTHER FINANCING DOCUMENT UNDER AND AS DEFINED THEREIN) OR (II) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY

PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, INCLUDING THE EXIT FACILITIES DOCUMENTS, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASES ARE: (A) CONSENSUAL; (B) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (C) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (D) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASES; (E) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (F) FAIR, EQUITABLE, AND REASONABLE; (G) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (H) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASES.

UNDER THE PLAN, "*RELEASED PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH OF THE DEBTORS' CURRENT AND FORMER DIRECTORS AND OFFICERS; (D) EACH DIP LENDER; (E) EACH AGENT; (F) EACH TRUSTEE; (G) THE CONSENTING REVOLVING CREDIT FACILITY LENDERS; (H) THE CONSENTING FLLO TERM LOAN FACILITY LENDERS; (I) THE CONSENTING SECOND LIEN NOTEHOLDERS; (J) THE CONSENTING UNSECURED NOTEHOLDERS; (K) THE EXIT FACILITIES LENDERS; (L) THE BACKSTOP PARTIES; (M) ALL HOLDERS OF INTERESTS; AND (N) WITH RESPECT TO EACH OF THE FOREGOING (A) THROUGH (M), EACH OF SUCH ENTITY AND ITS CURRENT AND FORMER AFFILIATES, AND SUCH ENTITIES' AND THEIR CURRENT AND FORMER AFFILIATES' CURRENT AND FORMER MEMBERS, DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), PREDECESSORS, SUCCESSORS AND ASSIGNS, SUBSIDIARIES, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, EQUITY HOLDERS, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "*RELEASING PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH DIP LENDER; (D) EACH AGENT; (E) EACH TRUSTEE; (F) THE CONSENTING REVOLVING CREDIT FACILITY LENDERS; (G) THE CONSENTING FLLO TERM LOAN FACILITY LENDERS; (H) THE CONSENTING SECOND LIEN NOTEHOLDERS; (I) THE CONSENTING UNSECURED NOTEHOLDERS; (J) THE EXIT FACILITIES LENDERS; (K) THE BACKSTOP PARTIES; (L) ALL HOLDERS OF CLAIMS; (M) ALL HOLDERS OF INTERESTS; (N) WITH RESPECT TO EACH OF THE FOREGOING (A) THROUGH (M), SUCH ENTITY AND ITS CURRENT AND FORMER AFFILIATES, AND SUCH ENTITIES' CURRENT AND FORMER AFFILIATES' CURRENT AND FORMER MEMBERS, DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), PREDECESSORS, SUCCESSORS AND ASSIGNS, SUBSIDIARIES, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, EQUITY HOLDERS, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, IN EACH CASE, SOLELY IN THEIR RESPECTIVE CAPACITIES AS SUCH WITH RESPECT TO SUCH ENTITY AND SOLELY TO THE EXTENT SUCH ENTITY HAS THE AUTHORITY TO BIND SUCH AFFILIATE IN SUCH CAPACITY;

PROVIDED THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.

Notwithstanding the foregoing, an entity **shall be neither a Releasing Party nor a Released Party if it:  (a) validly opts out of the releases contained in Article VIII.D of the Plan or (b) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in Article VIII of the plan that is not resolved before confirmation.**

As a "Releasing Party" under the Plan, you are deemed to provide the releases contained in Article VIII.D of the Plan, as set forth above.  You may elect not to grant the releases contained in Article VIII.D of the plan _**only if**_ you (a) check the box below or (b) timely file with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the released contained in Article VIII of the Plan that is not resolved before confirmation.  The election to withhold consent to grant such release is at your option.  By opting out of the releases set forth in Article VIII.D of the Plan, you will forego the benefit of obtaining the releases set forth in Article VIII of the Plan if you are a Released Party in connection therewith.

**<u>OPTIONAL RELEASE ELECTION</u>.  YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN <u>ONLY IF</u> YOU CHECK THE BOX BELOW:**

> ☐ **The Undersigned holder of the Claim elects to <u>OPT OUT of</u> the Third Party Release**

**Certifications.**

By signing this Opt Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)     as of the Voting Record Date, either:  (i) the Entity is the holder of Existing Equity Interests; or (ii) the Entity is an authorized signatory for the Entity that is a holder of the Claim;

(b)     the Entity (or in the case of an authorized signatory, the holder) has received a copy of the _Notice of Non-Voting Status to Holders of Impaired Interests Conclusively Presumed to Reject the Plan_ and that this Opt Out Form is made pursuant to the terms and conditions set forth therein;

(c)     the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class; and

(d)     no other Opt Out Form has been submitted or, if any other Opt Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

***IF YOU HAVE MADE THE OPTIONAL OPT OUT ELECTION*, PLEASE COMPLETE, SIGN, AND DATE THIS OPT OUT FORM AND RETURN IT *PROMPTLY* BY *ONLY ONE* OF THE METHODS BELOW.**

<u>If by First Class mail:</u>

    Chesapeake Energy Corporation
    Ballot Processing
    c/o Epiq Corporate Restructuring, LLC
    P.O. Box 4422
    Beaverton, OR 97076-4422

<u>If by overnight courier or hand delivery:</u>

    Chesapeake Energy Corporation
    Ballot Processing
    c/o Epiq Corporate Restructuring, LLC
    10300 SW Allen Boulevard
    Beaverton, OR 97005

<u>By electronic, online submission:</u>

    Please visit https://dm.epiq11.com/chesapeake. Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your Opt Out Form. If you choose to submit your Opt Out Form via Epiq's E-Ballot system, you should <u>not</u> also return a hard copy of your Opt Out Form.

4

"E-Balloting" is the sole manner in which Opt Out Forms will be accepted via electronic or online transmission. Opt Out Forms submitted by facsimile or email will not be counted.

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020, AT 11:59 P.M.,** PREVAILING CENTRAL TIME. THE SOLICITATION AGENT MUST *ACTUALLY RECEIVE* YOUR OPT OUT ELECTION ON OR BEFORE THE VOTING DEADLINE.

**<u>Exhibit 6B</u>**

**Opt Out Form for Holders of Impaired Interests Deemed To Reject The Plan
(Beneficial Equity Holders)**

**OPTIONAL:  RELEASE OPT OUT FORM**

You are receiving this opt out form (the "Opt Out Form") because you are a holder of a Class 10 Existing Equity Interests that is not entitled to vote on the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").

Article VIII.D of the Plan contains the following provision:

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY IS, AND IS DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE CAPITAL STRUCTURE, MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE REVOLVING CREDIT FACILITY, THE FLLO TERM LOAN FACILITY, THE SECOND LIEN NOTES, THE ASSERTION OR ENFORCEMENT OF RIGHTS AND REMEDIES AGAINST THE DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR AND ANOTHER DEBTOR, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE RESTRUCTURING SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE EXIT FACILITIES, THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE PLAN SUPPLEMENT), OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE PLAN SUPPLEMENT, BEFORE OR DURING THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED OR RELATING TO ANY OF THE FOREGOING TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY OTHER THAN A DEBTOR THAT CONSTITUTES ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, EACH SOLELY TO THE EXTENT AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (I) ANY PARTY OF ANY OBLIGATIONS RELATED TO CUSTOMARY BANKING PRODUCTS, BANKING SERVICES OR OTHER FINANCIAL ACCOMMODATIONS (EXCEPT AS MAY BE EXPRESSLY AMENDED OR MODIFIED BY THE PLAN AND THE EXIT FACILITIES CREDIT AGREEMENTS, OR ANY OTHER FINANCING DOCUMENT UNDER AND AS DEFINED THEREIN) OR (II) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY RESTRUCTURING

TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, INCLUDING THE EXIT FACILITIES DOCUMENTS, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASES ARE:  (A) CONSENSUAL; (B) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (C) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (D) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASES; (E) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (F) FAIR, EQUITABLE, AND REASONABLE; (G) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (H) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASES.

UNDER THE PLAN, "*RELEASED PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH OF THE DEBTORS' CURRENT AND FORMER DIRECTORS AND OFFICERS; (D) EACH DIP LENDER; (E) EACH AGENT; (F) EACH TRUSTEE; (G) THE CONSENTING REVOLVING CREDIT FACILITY LENDERS; (H) THE CONSENTING FLLO TERM LOAN FACILITY LENDERS; (I) THE CONSENTING SECOND LIEN NOTEHOLDERS; (J) THE CONSENTING UNSECURED NOTEHOLDERS; (K) THE EXIT FACILITIES LENDERS; (L) THE BACKSTOP PARTIES; (M) ALL HOLDERS OF INTERESTS; AND (N) WITH RESPECT TO EACH OF THE FOREGOING (A) THROUGH (M), EACH OF SUCH ENTITY AND ITS CURRENT AND FORMER AFFILIATES, AND SUCH ENTITIES' AND THEIR CURRENT AND FORMER AFFILIATES' CURRENT AND FORMER MEMBERS, DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), PREDECESSORS, SUCCESSORS AND ASSIGNS, SUBSIDIARIES, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, EQUITY HOLDERS, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "*RELEASING PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH DIP LENDER; (D) EACH AGENT; (E) EACH TRUSTEE; (F) THE CONSENTING REVOLVING CREDIT FACILITY LENDERS; (G) THE CONSENTING FLLO TERM LOAN FACILITY LENDERS; (H) THE CONSENTING SECOND LIEN NOTEHOLDERS; (I) THE CONSENTING UNSECURED NOTEHOLDERS; (J) THE EXIT FACILITIES LENDERS; (K) THE BACKSTOP PARTIES; (L) ALL HOLDERS OF CLAIMS; (M) ALL HOLDERS OF INTERESTS; (N) WITH RESPECT TO EACH OF THE FOREGOING (A) THROUGH (M), SUCH ENTITY AND ITS CURRENT AND FORMER AFFILIATES, AND SUCH ENTITIES' AND THEIR CURRENT AND FORMER AFFILIATES' CURRENT AND FORMER MEMBERS, DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), PREDECESSORS, SUCCESSORS AND ASSIGNS, SUBSIDIARIES, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, EQUITY HOLDERS, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, IN EACH CASE, SOLELY IN THEIR RESPECTIVE CAPACITIES AS SUCH WITH RESPECT TO SUCH ENTITY AND SOLELY TO THE EXTENT SUCH ENTITY HAS THE AUTHORITY TO BIND SUCH AFFILIATE IN SUCH CAPACITY; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT:  (X) ELECTS

TO OPT OUT OF THE RELEASES CONTAINED IN THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.

Notwithstanding the foregoing, an entity **shall be neither a Releasing Party nor a Released Party if it: (a) validly opts out of the releases contained in Article VIII.D of the Plan or (b) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in Article VIII of the plan that is not resolved before confirmation.**

As a "Releasing Party" under the Plan, you are deemed to provide the releases contained in Article VIII.D of the Plan, as set forth above. You may elect not to grant the releases contained in Article VIII.D of the plan ***only if*** you (a) check the box below or (b) timely file with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the released contained in Article VIII of the Plan that is not resolved before confirmation. The election to withhold consent to grant such release is at your option. By opting out of the releases set forth in Article VIII.D of the Plan, you will forego the benefit of obtaining the releases set forth in Article VIII of the Plan if you are a Released Party in connection therewith.

**OPTIONAL RELEASE ELECTION. YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN <u>ONLY IF</u> YOU CHECK THE BOX BELOW:**

> ☐ **The Undersigned holder of the Claim elects to <u>OPT OUT of the Third Party Release</u>**

**Certifications.**

By signing this Opt Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)     as of the Voting Record Date, either: (i) the Entity is the holder of Existing Equity Interests; or (ii) the Entity is an authorized signatory for the Entity that is a holder of the Claim;

(b)     the Entity (or in the case of an authorized signatory, the holder) has received a copy of the *Notice of Non-Voting Status to Holders of Impaired Interests Conclusively Presumed to Reject the Plan* and that this Opt Out Form is made pursuant to the terms and conditions set forth therein;

(c)     the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class; and

(d)     no other Opt Out Form has been submitted or, if any other Opt Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| | |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| | |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |
| | |

***IF YOU HAVE MADE THE OPTIONAL OPT OUT ELECTION*, PLEASE COMPLETE, SIGN, AND DATE THIS OPT OUT FORM AND RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.  PLEASE ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO PROCESS YOUR OPT OUT FORM AND SUBMIT YOUR ELECTION SO THAT IT IS RECEIVED BY SOLICITATION AGENT BY THE VOTING DEADLINE.**

| |
|---|
| **THE VOTING DEADLINE IS [NOVEMBER 23], 2020, AT 11:59 P.M.,** PREVAILING CENTRAL TIME. THE SOLICITATION AGENT MUST ***ACTUALLY RECEIVE*** YOUR OPT OUT ELECTION ON OR BEFORE THE VOTING DEADLINE. |

**Exhibit 6C**

**Opt Out Form for Holders of Impaired Interests Deemed To Reject The Plan**
**(Equity Nominees)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**MASTER FORM FOR OPTIONAL RELEASE
OPT OUT FOR CLASS 10 EXISTING EQUITY INTERESTS**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS FORM**
>
> **THIS MASTER FORM MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE NOTICE AND CLAIMS AGENT BY [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE").**

Beneficial Holders of Existing Equity Interests deemed to reject the Plan received a Notice of Non-Voting Status and an Optional Release Opt Out Form.

You are receiving this master form (the "Master Opt Out Form") because you are the Nominee (as defined below) of a Beneficial Holder[2] of Class 10 Existing Equity Interests as of **[October 8], 2020** (the "Voting Record Date").

**This Master Opt Out Form is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy Holder of a Nominee for certain Beneficial Holders' Class 10 Existing Equity Interests (the "Class 10 Interests"), to transmit to the Solicitation Agent (as defined below) the optional elections of such Beneficial Holders in respect of their Class 10 Interests to opt out of the Releases.  The CUSIP number (the "CUSIP") for the Class 10 Interests entitled to make the optional opt out elections and of which you are the Nominee is 165167107. This Master Opt Out Form may not be used for any purpose other than for submitting optional opt out elections with respect to the Plan.**

If you desire copies, of the Disclosure Statement and Plan, you may obtain them from (a) Epiq Corporate Restructuring, LLC (the "Solicitation Agent"), at no charge by: (i) accessing the Debtors' restructuring website at https://dm.epiq11.com/chesapeake; (ii) writing to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (iii) calling (855) 907-2082 (toll free) or +1 (503) 520-4488 (international) and requesting to speak with a member of the Solicitation Group; or (iv) mail tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line; or (b) for a fee via PACER at http://www.txs.uscourts.gov/bankruptcy.

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' and noticing agent at https://dm.epiq11.com/chesapeake.  The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2]     A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose claims have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees holding through DTC.

This Master Opt Out Form may not be used for any purpose other than transmitting elections to opt out of the releases. If you believe you have received this form in error, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You are authorized to collect elections to opt out of the releases from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Release Opt Out Form, and collecting elections from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

To have valid opt out elections of your Beneficial Holders, you must complete and return this Master Opt Out Form so that the Solicitation Agent *actually receives* it on or before the Voting Deadline.

**THE VOTING DEADLINE IS ON [NOVEMBER 23], 2020, AT 11:59 P.M., PREVAILING CENTRAL TIME.**

<u>**Item 1**</u>.  **Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

  ☐ Is a broker, bank, or other nominee for the Beneficial Holders of the Class 10 Interests listed in Item 2 below, and is the record Holder of such bonds, or

  ☐ Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered Holder of the of Class 10 Interests listed in Item 2 below, or

  ☐ Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner, that is the registered Holder of the of Class 10 Interests listed in Item 2 below,

and accordingly, has full power and authority to transmit the optional opt out release elections on behalf of the Beneficial Holders of the Class 10 Interests.

<u>**Item 2**</u>.  **Class 10 Interests Opting Out of the Releases.**

The undersigned transmits the following releases of Beneficial Holders of Class 10 Interests and certifies that the following Beneficial Holders of Class 10 Interests, as identified by their respective customer account numbers set forth below, are the Beneficial Holders of such Interests as of the Voting Record Date and have delivered to the undersigned, as Nominee, Optional Release Opt Out Form with such election.

Indicate in the appropriate column below the aggregate number of shares held for each account or attach such information to this Master Opt Out Form in the form of the following table.  Please note that each Holder must elect all such Beneficial Holder's Class 10 Interests to opt out of the releases and may not split such election.  Any Beneficial Holder Optional Release Opt Out Form executed by the Beneficial Holder that does not indicate an election to opt out of the releases will not be counted.

**Item 3.**  **Important information regarding the Third Party Release.**[3]

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN SET FORTH BELOW:**

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Revolving Credit Facility, the FLLO Term Loan Facility, the Second Lien Notes, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or

---

[3]   Under the Plan, "*Released Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each of the Debtors' current and former directors and officers; (d) each DIP Lender; (e) each Agent; (f) each Trustee; (g) the Consenting Revolving Credit Facility Lenders; (h) the Consenting FLLO Term Loan Facility Lenders; (i) the Consenting Second Lien Noteholders; (j) the Consenting Unsecured Noteholders; (k) the Exit Facilities Lenders; (l) the Backstop Parties; (m) all holders of Interests; and (n) with respect to each of the foregoing (a) through (m), of such Entity and its current and former Affiliates, and such Entities' and their current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

Under the Plan, "*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each DIP Lender; (d) each Agent; (e) each Trustee; (f) the Consenting Revolving Credit Facility Lenders; (g) the Consenting FLLO Term Loan Facility Lenders; (h) the Consenting Second Lien Noteholders; (i) the Consenting Unsecured Noteholders; (j) the Exit Facilities Lenders; (k) the Backstop Parties; (l) all holders of Claims; (m) all holders of Interests; (n) with respect to each of the foregoing (a) through (m), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case, solely in their respective capacities as such with respect to such Entity and solely to the extent such Entity has the authority to bind such Affiliate in such capacity; *provided* that in each case, an Entity shall not be a Releasing Party if it:  (x) elects to opt out of the releases contained in the Plan; or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation.

distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party other than a Debtor that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facilities Credit Agreements, or any other financing document under and as defined therein) or (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facilities Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third party releases are:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the third-party releases; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the third-party releases.

\*          \*          \*

HOLDERS THAT ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF THEY ARE A RELEASED PARTY IN CONNECTION THEREWITH.

[*Remainder of page intentionally left blank; continued next page.*]

| Your Customer Account Number for Each Beneficial Holder of Class 10 Interests | Number of Shares Held as of Voting Record Date | Holder Elected to Opt Out of the Third Party Release |
|---|---|---|
| 1 | | ☐ |
| 2 | | ☐ |
| 3 | | ☐ |
| 4 | | ☐ |
| 5 | | ☐ |
| 6 | | ☐ |
| **TOTALS** | | |

**Item 4.  Certifications.**

Upon execution of this Master Opt Out Form, the undersigned certifies that:

    (a)  **it has received a copy of the Notice of Non-Voting Status to Holders of Impaired Interests Conclusively Presumed to Reject the Plan and has delivered the same to the Beneficial Holders of the Class 10 Interests listed in Item 2 above;**

    (b)  **it has received a completed and signed Release Opt Out Form from each Beneficial Holder listed in Item 2 of this Master Opt Out Form;**

    (c)  **it is the record Holder of all Class 10 Interests listed in Item 2 above, or**

    (d)  **it has been authorized by each Beneficial Holder of Class 10 Interests listed in Item 2 above to transmit an Optional Release Election on such Beneficial Holders behalf;**

    (e)  **no other Master Opt Out Forms with respect to the same Class 10 Interests identified in Item 2 have been cast or, if any other Master Opt Out Forms have been submitted with respect to such Interests, then any such earlier Master Opt Out Forms are hereby revoked;**

    (f)  **it has properly disclosed: (a) the Beneficial Holder of Class 10 Interests who completed the Release Opt Out Form; (b) the respective number of the Class 10 Interests owned, as the case may be, by each Beneficial Holder of Class 10 Interests who completed a Release Opt Out Form; and (c) the customer account or other identification number for each such Beneficial Holder of Class 10 Interests; and**

    (g)  **it will maintain the Release Opt Out Forms and evidence of separate transactions returned by Beneficial Holder of Class 10 Interests (whether properly completed or defective) for at least one (1) year after the Effective Date of the Plan and disclose all such information to the Bankruptcy Court or the Debtors, if so ordered.**

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Participant Number | |
| Name of Proxy Holder or Agent for Nominee (if applicable) | |
| Signature: | |
| Name of Signatory: | |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER OPT OUT FORM AND RETURN IT *PROMPTLY* BY *ONLY ONE* OF THE FOLLOWING METHODS:**

**In the envelope provided via first class mail, by overnight courier, or by hand delivery to:**

> <u>If by First Class mail:</u>
>
> Chesapeake Energy Corporation
> Ballot Processing
> c/o Epiq Corporate Restructuring, LLC
> P.O. Box 4422
> Beaverton, OR 97076-4422
>
> <u>If by overnight courier or hand delivery:</u>
>
> Chesapeake Energy Corporation
> Ballot Processing
> c/o Epiq Corporate Restructuring, LLC
> 10300 SW Allen Boulevard
> Beaverton, OR 97005

**Via electronic mail service to:**

> tabulation@epiqglobal.com
> with a reference to "Chesapeake Master Ballot" in the subject line.

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020 AT 11:59 P.M., PREVAILING CENTRAL TIME.**

**THE SOLICITATION AGENT MUST ACTUALLY RECEIVE THE
CLASS 10 MASTER BALLOT ON OR BEFORE THE VOTING DEADLINE.**

**<u>Exhibit 7</u>**

**Form of Disputed Non-Voting Status Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**NOTICE OF NON-VOTING STATUS WITH RESPECT TO DISPUTED CLAIMS**

      **PLEASE TAKE NOTICE THAT** on **[●], 2020**, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No.[●]] (the "Disclosure Statement Order"): (a) approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (the "Disclosure Statement"), (b) approving the solicitation procedures (the "Solicitation Procedures") with respect to confirmation of the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (the "Plan"),[2] (c) approving the forms of ballots and notices in connection therewith, (d) scheduling certain dates with respect thereto, and (e) granting related relief.

      **PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because you are the holder of a Claim or Interest that is subject to a pending objection by the Debtors. ***You are not entitled to vote any disputed portion of your Claim unless one or more of the following events has taken place before [November 19], 2020 (the date that is two Business Days before the Voting Deadline)*** (each, a "Resolution Event"):

      1.    an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

      2.    an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

      3.    a stipulation or other agreement is executed between the holder of such Claim and the Debtors temporarily allowing the holder of such Claim to vote its Claim in an agreed upon amount; or

      4.    the pending objection to such Claim is voluntarily withdrawn by the objecting party.

Accordingly, this notice is being sent to you for informational purposes only.

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2]    Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and related voting and objection procedures (the "Confirmation Hearing") will commence on **[December 7], 2020 at [●] a/p.m.,** prevailing Central Time, before the Honorable David R. Jones in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Houston, Texas 77002.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement Order, the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you may: (a) access the Debtors' restructuring website at https://dm.epiq11.com/chesapeake; (b) write to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (c) call (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and requesting to speak with a member of the Solicitation Group; or (d) email tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.txs.uscourts.gov/bankruptcy.

**PLEASE TAKE FURTHER NOTICE THAT** if a timely Resolution Event occurs, then no later than one business day thereafter, the Solicitation Agent shall distribute a ballot, and a pre-addressed, postage pre-paid envelope to you, which must be returned to the Solicitation Agent no later than the Voting Deadline, which is on **[November 23], 2020, at 11:59 p.m.,** prevailing Central Time.

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Claims, you should contact the Solicitation Agent in accordance with the instructions provided above.

---

**ARTICLE VIII** OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII OF THE PLAN USING THE ENCLOSED OPT OUT FORM OR BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. BY OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.

---

Houston, Texas
[●], 2020

/s/
_____

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:       (713) 752-4200
Facsimile:        (713) 752-4221
Email:             mcavenaugh@jw.com
                       jwertz@jw.com
                       kpeguero@jw.com
                       vpolnick@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:        (312) 862-2200
Email:             patrick.nash@kirkland.com
                       marc.kieselstein@kirkland.com
                       alexandra.schwarzman@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**OPTIONAL:  RELEASE OPT OUT FORM**

You are receiving this opt out form (the "Opt Out Form") because you are a holder of a Claim that is not entitled to vote on the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").

**Article VIII.D of the Plan contains the following provision:**

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY IS, AND IS DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE CAPITAL STRUCTURE, MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE REVOLVING CREDIT FACILITY, THE FLLO TERM LOAN FACILITY, THE SECOND LIEN NOTES, THE ASSERTION OR ENFORCEMENT OF RIGHTS AND REMEDIES AGAINST THE DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR AND ANOTHER DEBTOR, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE RESTRUCTURING SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE EXIT FACILITIES, THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE PLAN SUPPLEMENT), OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE PLAN SUPPLEMENT, BEFORE OR DURING THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED OR RELATING TO ANY OF THE FOREGOING TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY OTHER THAN A DEBTOR THAT CONSTITUTES ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, EACH SOLELY TO THE EXTENT AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (I) ANY PARTY OF ANY OBLIGATIONS RELATED TO CUSTOMARY BANKING PRODUCTS, BANKING SERVICES OR OTHER FINANCIAL ACCOMMODATIONS (EXCEPT AS MAY BE EXPRESSLY AMENDED OR MODIFIED BY THE PLAN AND THE EXIT FACILITIES CREDIT AGREEMENTS, OR ANY OTHER FINANCING DOCUMENT UNDER AND AS DEFINED THEREIN) OR (II) ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY RESTRUCTURING

TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, INCLUDING THE EXIT FACILITIES DOCUMENTS, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASES ARE:  (A) CONSENSUAL; (B) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (C) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (D) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASES; (E) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (F) FAIR, EQUITABLE, AND REASONABLE; (G) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (H) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASES.

UNDER THE PLAN, "*RELEASED PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH OF THE DEBTORS' CURRENT AND FORMER DIRECTORS AND OFFICERS; (D) EACH DIP LENDER; (E) EACH AGENT; (F) EACH TRUSTEE; (G) THE CONSENTING REVOLVING CREDIT FACILITY LENDERS; (H) THE CONSENTING FLLO TERM LOAN FACILITY LENDERS; (I) THE CONSENTING SECOND LIEN NOTEHOLDERS; (J) THE CONSENTING UNSECURED NOTEHOLDERS; (K) THE EXIT FACILITIES LENDERS; (L) THE BACKSTOP PARTIES; (M) ALL HOLDERS OF INTERESTS; AND (N) WITH RESPECT TO EACH OF THE FOREGOING (A) THROUGH (M), EACH OF SUCH ENTITY AND ITS CURRENT AND FORMER AFFILIATES, AND SUCH ENTITIES' AND THEIR CURRENT AND FORMER AFFILIATES' CURRENT AND FORMER MEMBERS, DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), PREDECESSORS, SUCCESSORS AND ASSIGNS, SUBSIDIARIES, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, EQUITY HOLDERS, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "*RELEASING PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH DIP LENDER; (D) EACH AGENT; (E) EACH TRUSTEE; (F) THE CONSENTING REVOLVING CREDIT FACILITY LENDERS; (G) THE CONSENTING FLLO TERM LOAN FACILITY LENDERS; (H) THE CONSENTING SECOND LIEN NOTEHOLDERS; (I) THE CONSENTING UNSECURED NOTEHOLDERS; (J) THE EXIT FACILITIES LENDERS; (K) THE BACKSTOP PARTIES; (L) ALL HOLDERS OF CLAIMS; (M) ALL HOLDERS OF INTERESTS; (N) WITH RESPECT TO EACH OF THE FOREGOING (A) THROUGH (M), SUCH ENTITY AND ITS CURRENT AND FORMER AFFILIATES, AND SUCH ENTITIES' AND THEIR CURRENT AND FORMER AFFILIATES' CURRENT AND FORMER MEMBERS, DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), PREDECESSORS, SUCCESSORS AND ASSIGNS, SUBSIDIARIES, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, EQUITY HOLDERS, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, IN EACH CASE, SOLELY IN THEIR RESPECTIVE CAPACITIES AS SUCH WITH RESPECT TO SUCH ENTITY AND SOLELY TO THE

5

EXTENT SUCH ENTITY HAS THE AUTHORITY TO BIND SUCH AFFILIATE IN SUCH CAPACITY; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.

Notwithstanding the foregoing, an entity **shall be neither a Releasing Party nor a Released Party if it: (a) validly opts out of the releases contained in Article VIII.D of the Plan or (b) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in Article VIII of the plan that is not resolved before confirmation.**

As a "Releasing Party" under the Plan, you are deemed to provide the releases contained in Article VIII.D of the Plan, as set forth above.  You may elect not to grant the releases contained in Article VIII.D of the plan **_only if_** you (a) check the box below or (b) timely file with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the released contained in Article VIII of the Plan that is not resolved before confirmation.  The election to withhold consent to grant such release is at your option.  By opting out of the releases set forth in Article VIII.D of the Plan, you will forego the benefit of obtaining the releases set forth in Article VIII of the Plan if you are a Released Party in connection therewith.

**OPTIONAL RELEASE ELECTION.  YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN _ONLY IF_ YOU CHECK THE BOX BELOW:**

> ☐ **The Undersigned holder of the Claim elects to OPT OUT of the Third Party Release**

**Certifications.**

By signing this Opt Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)    as of the Voting Record Date, either:  (i) the Entity is the holder of a Claim; or (ii) the Entity is an authorized signatory for the Entity that is a holder of the Claim;

(b)    the Entity (or in the case of an authorized signatory, the holder) has received a copy of the *Notice of Non-Voting Status to Holders of Impaired Interests Conclusively Presumed to Reject the Plan* and that this Opt Out Form is made pursuant to the terms and conditions set forth therein;

(c)    the Entity has submitted the same respective election concerning the releases with respect to all Claims in a single Class; and

(d)    no other Opt Out Form has been submitted or, if any other Opt Out Forms have been submitted with respect to such Claims, then any such earlier Opt Out Forms are hereby revoked.

6

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| | |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | (If other than the holder) |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

***IF YOU HAVE MADE THE OPTIONAL OPT OUT ELECTION*, PLEASE COMPLETE, SIGN, AND DATE THIS OPT OUT FORM AND RETURN IT *PROMPTLY* BY *ONLY ONE* OF THE METHODS BELOW.**

<u>If by First Class mail:</u>

Chesapeake Energy Corporation
Ballot Processing
c/o Epiq Corporate Restructuring, LLC
P.O. Box 4422
Beaverton, OR 97076-4422

<u>If by overnight courier or hand delivery:</u>

Chesapeake Energy Corporation
Ballot Processing
c/o Epiq Corporate Restructuring, LLC
10300 SW Allen Boulevard
Beaverton, OR 97005

<u>By electronic, online submission:</u>

Please visit https://dm.epiq11.com/chesapeake. Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your Opt Out Form. If you choose to submit your Opt Out Form via Epiq's E-Ballot system, you should <u>not</u> also return a hard copy of your Opt Out Form.

7

"E-Balloting" is the sole manner in which Opt Out Forms will be accepted via electronic or online transmission.  Opt Out Forms submitted by facsimile or email will not be counted.

**THE VOTING DEADLINE IS [NOVEMBER 23], 2020, AT 11:59 P.M.,** PREVAILING CENTRAL TIME.  THE SOLICITATION AGENT MUST *ACTUALLY RECEIVE* YOUR OPT OUT ELECTION ON OR BEFORE THE VOTING DEADLINE.

**<u>Exhibit 8</u>**

**Form of Confirmation Hearing Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
|  | § |  |
| Debtors. | § | (Jointly Administered) |
|  | § |  |

NOTICE OF HEARING TO CONSIDER
CONFIRMATION OF THE CHAPTER 11 PLAN FILED BY
THE DEBTORS AND RELATED VOTING AND OBJECTION DEADLINES

        **PLEASE TAKE NOTICE THAT** on [●], 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") that, among other things: (a) approved the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* [Docket No. [●]] (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125(a) of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"); and (b) authorized the above-captioned debtors and debtors in possession (the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* [Docket No. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").[2]

        **PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and related voting and objection procedures (the "Confirmation Hearing") will commence on **[December 7], 2020 at [●] a/p.m.,** prevailing Central Time, before the Honorable David R. Jones in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Houston, Texas 77002.

---

**PLEASE BE ADVISED:  THE CONFIRMATION HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE COURT OR THE DEBTORS WITHOUT FURTHER NOTICE OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.**

---

CRITICAL INFORMATION REGARDING VOTING ON THE PLAN

        **Voting Record Date**.  The voting record date is **[October 8], 2020**, which is the date for determining which holders of Claims in Classes 3, 4, 5, 6 and 7 are entitled to vote on the Plan.

        **Voting Deadline**.  The deadline for voting on the Plan is **[November 23], 2020, at 11:59 p.m.,** prevailing Central Time (the "Voting Deadline").  If you received a Solicitation Package, including a Ballot, and intend to vote on the Plan you ***must***:  (a) follow the instructions carefully; (b) complete *all* of the required information on the Ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2]     Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

that it is ***actually received*** by the Debtors' solicitation agent, Epiq Corporate Restructuring, LLC (the "Solicitation Agent") on or before the Voting Deadline. ***A failure to follow such instructions may disqualify your vote.***

       **Confirmation Objection Deadline**. The deadline for filing objections to the Plan, including with regard to the treatment of Executory Contracts and Unexpired Leases thereunder, is **[November 23], 2020, at 5:00 p.m.**, prevailing Central Time (the "Confirmation Objection Deadline"). Any objection to the relief sought at the Confirmation Hearing ***must***: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas; (c) state, with particularity, the name and address of the objecting party, the basis and nature of any objection to the Plan, and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on or before the **Confirmation Objection Deadline**.

## CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**Please be advised that Article VIII of the Plan contains the following release, exculpation, and injunction provisions:**

### RELEASES BY THE DEBTORS.

       **Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, or that any holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Revolving Credit Facility, the FLLO Term Loan Facility, the Second Lien Notes, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Disclosure Statement, the Backstop Commitment Agreement, the DIP Facility, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Backstop Commitment Agreement, the DIP Facility, the Plan, the Plan Supplement, or the Exit Facilities before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission,**

transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facilities Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the debtors' release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the debtors' release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the debtors' release; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the debtors' release.

## RELEASES BY THE RELEASING PARTIES.

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Revolving Credit Facility, the FLLO Term Loan Facility, the Second Lien Notes, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party other than a Debtor that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facilities Credit Agreements, or any other financing document under and as defined therein) or (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including

those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facilities Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the third party releases are: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the third-party releases; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the third-party releases.

UNDER THE PLAN, "*RELEASED PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH OF THE DEBTORS' CURRENT AND FORMER DIRECTORS AND OFFICERS; (D) EACH DIP LENDER; (E) EACH AGENT; (F) EACH TRUSTEE; (G) THE CONSENTING REVOLVING CREDIT FACILITY LENDERS; (H) THE CONSENTING FLLO TERM LOAN FACILITY LENDERS; (I) THE CONSENTING SECOND LIEN NOTEHOLDERS; (J) THE CONSENTING UNSECURED NOTEHOLDERS; (K) THE EXIT FACILITIES LENDERS; (L) THE BACKSTOP PARTIES; (M) ALL HOLDERS OF INTERESTS; AND (N) WITH RESPECT TO EACH OF THE FOREGOING (A) THROUGH (M), EACH OF SUCH ENTITY AND ITS CURRENT AND FORMER AFFILIATES, AND SUCH ENTITIES' AND THEIR CURRENT AND FORMER AFFILIATES' CURRENT AND FORMER MEMBERS, DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), PREDECESSORS, SUCCESSORS AND ASSIGNS, SUBSIDIARIES, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, EQUITY HOLDERS, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "*RELEASING PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH DIP LENDER; (D) EACH AGENT; (E) EACH TRUSTEE; (F) THE CONSENTING REVOLVING CREDIT FACILITY LENDERS; (G) THE CONSENTING FLLO TERM LOAN FACILITY LENDERS; (H) THE CONSENTING SECOND LIEN NOTEHOLDERS; (I) THE CONSENTING UNSECURED NOTEHOLDERS; (J) THE EXIT FACILITIES LENDERS; (K) THE BACKSTOP PARTIES; (L) ALL HOLDERS OF CLAIMS; (M) ALL HOLDERS OF INTERESTS; (N) WITH RESPECT TO EACH OF THE FOREGOING (A) THROUGH (M), SUCH ENTITY AND ITS CURRENT AND FORMER AFFILIATES, AND SUCH ENTITIES' AND THEIR CURRENT AND FORMER AFFILIATES' CURRENT AND FORMER MEMBERS, DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), PREDECESSORS, SUCCESSORS AND ASSIGNS, SUBSIDIARIES, AND EACH OF THEIR RESPECTIVE CURRENT AND FORMER MEMBERS, EQUITY HOLDERS, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, IN EACH CASE, SOLELY IN THEIR RESPECTIVE CAPACITIES AS SUCH WITH RESPECT TO SUCH ENTITY AND SOLELY TO THE EXTENT SUCH ENTITY HAS THE AUTHORITY TO BIND SUCH AFFILIATE IN SUCH CAPACITY; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.

### EXCULPATION.

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

UNDER THE PLAN, "*EXCULPATED PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) ANY OFFICIAL COMMITTEES APPOINTED IN THE CHAPTER 11 CASES AND EACH OF THEIR RESPECTIVE MEMBERS; (C) THE DIP LENDERS; (D) THE EXIT FACILITIES LENDERS; (E) THE CONSENTING REVOLVING CREDIT FACILITY LENDERS; (F) THE CONSENTING FLLO TERM LOAN FACILITY LENDERS; (G) THE CONSENTING SECOND LIEN NOTEHOLDERS; (H) THE CONSENTING UNSECURED NOTEHOLDERS; (I) THE AGENTS; (J) EACH TRUSTEE; (K) THE BACKSTOP PARTIES; AND (L) WITH RESPECT TO EACH OF THE FOREGOING, SUCH ENTITY AND ITS CURRENT AND FORMER AFFILIATES, AND SUCH ENTITY'S AND ITS CURRENT AND FORMER AFFILIATES' CURRENT AND FORMER EQUITY HOLDERS, SUBSIDIARIES, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH.

### INJUNCTION.

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of

or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Except as otherwise set forth in the Confirmation Order, each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article VIII.F of the Plan.

## ADDITIONAL INFORMATION

**Obtaining Solicitation Materials**. The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions or if you would like to obtain a copy of the Disclosure Statement Order, Disclosure Statement, the Plan, the Plan Supplement, or related documents, you may: (a) access the Debtors' restructuring website at https://dm.epiq11.com/chesapeake; (b) write to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (c) call (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and requesting to speak with a member of the Solicitation Group; or (d) email tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.txs.uscourts.gov/bankruptcy. Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may ***not*** advise you as to whether you should vote to accept or reject the Plan or provide legal advice.

**The Plan Supplement**. The Debtors will file the Plan Supplement (as defined in the Plan) on or before **[November 16], 2020**, and will serve notice on parties in interest, which will: (a) inform parties that the Debtors filed the Plan Supplement; (b) list the information contained in the Plan Supplement; and (c) explain how parties may obtain copies of the Plan Supplement.

---

### BINDING NATURE OF THE PLAN

IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASES, OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

---

Houston, Texas
[●], 2020

/s/

| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:      (713) 752-4200
Facsimile:      (713) 752-4221
Email:        mcavenaugh@jw.com
              jwertz@jw.com
              kpeguero@jw.com
              vpolnick@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:        patrick.nash@kirkland.com
              marc.kieselstein@kirkland.com
              alexandra.schwarzman@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Exhibit 9</u>**

**Form of Plan Supplement Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** on **[●], 2020**, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") that, among other things: (a) approved the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* [Docket No. [●]] (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125(a) of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"); and (b) authorized the above-captioned debtors and debtors in possession (the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* [Docket No. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan and the Disclosure Statement Order, the Debtors filed the Plan Supplement with the Court on **[●], 2020** [Docket No. [●]]. The Plan Supplement is comprised of the following: (a) the New Organizational Documents; (b) to the extent known, the identities of the members of the New Board; (c) the Assumed Executory Contracts and Unexpired Leases Schedule; (d) the Rejected Executory Contracts and Unexpired Leases Schedule; (e) the Schedule of Retained Causes of Action; (f) the Exit Facilities Documents; (g) the definitive documentation related to the Management Incentive Plan; (h) the Restructuring Transactions Memorandum; (i) the New Warrants Agreements; and (j) the Registration Rights Agreement. The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement up to the Effective Date as set forth in the Plan and in accordance with the Restructuring Support Agreement and Restructuring Term Sheet (and subject to the applicable consent rights thereunder).

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and related voting and objection procedures (the "Confirmation Hearing") will commence on **[December 7], 2020 at [●] a/p.m.**, prevailing Central Time, before the Honorable David R. Jones in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Houston, Texas 77002.

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2]     Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

   **PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan (including any assumption of an Executory Contract or Unexpired Lease as contemplated in the Plan Supplement) is **[November 23], 2020 at 5:00 p.m.**, prevailing Central Time (the "Confirmation Objection Deadline").  Any objection to the Plan *must*: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas; (c) state, with particularity, the name and address of the objecting party, the basis and nature of any objection to the Plan, and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on or before the Confirmation Objection Deadline.

   **PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement Order, the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you may:  (a) access the Debtors' restructuring website at https://dm.epiq11.com/chesapeake; (b) write to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (c) call (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and requesting to speak with a member of the Solicitation Group; or (d) email tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at:  http://www.txs.uscourts.gov/bankruptcy.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

---

Houston, Texas
[●], 2020

/s/
_____

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:      (713) 752-4200
Facsimile:      (713) 752-4221
Email:          mcavenaugh@jw.com
                jwertz@jw.com
                kpeguero@jw.com
                vpolnick@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                marc.kieselstein@kirkland.com
                alexandra.schwarzman@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Exhibit 10</u>**

**Form of Notice of Assumption of Executory Contracts and Unexpired Leases**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**NOTICE OF (I) EXECUTORY CONTRACTS
AND UNEXPIRED LEASES TO BE ASSUMED BY THE
DEBTORS PURSUANT TO THE PLAN, (II) CURE AMOUNTS,
IF ANY, AND (III) RELATED PROCEDURES IN CONNECTION THEREWITH**

**PLEASE TAKE NOTICE THAT** on **[●], 2020**, the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") entered an order [Docket No. [●]] (the "<u>Disclosure Statement Order</u>") that, among other things: (a) approved the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* [Docket No. [●]] (the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125(a) of title 11 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>"); and (b) authorized the above-captioned debtors and debtors in possession (the "<u>Debtors</u>") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* [Docket No. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>").[2]

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the *Assumed Executory Contract and Unexpired Lease List* [Docket No. [●]] (the "<u>Assumption Schedule</u>") with the Court as part of the Plan Supplement on **[●], 2020**, as contemplated under the Plan. The Debtors' determination to assume the agreements identified on the Assumption Schedule is subject to revision.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and related voting and objection procedures (the "<u>Confirmation Hearing</u>") will commence on **[December 7], 2020 at [●] a/p.m.,** prevailing Central Time, before the Honorable David R. Jones in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Houston, Texas 77002.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtors' records reflect that you are a party to a contract that is listed on the Assumption Schedule. Therefore, you are advised to review carefully the information contained in this notice and the related provisions of the Plan, including the Assumption Schedule.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors are proposing to assume the Executory Contract(s) and Unexpired Lease(s) listed in **<u>Schedule A</u>** attached hereto to which you are a party.[3]

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2]   Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

[3]   Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumption Schedule, nor anything contained in the Plan or each Debtor's schedule of assets and liabilities, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of assumption, that any Reorganized Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement. Further, the Debtors expressly reserve the right to: (a) remove any Executory Contract or Unexpired

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption.  Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in the table on **Schedule A** attached hereto.  Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no cure amount outstanding for such contract or lease.

**PLEASE TAKE FURTHER NOTICE THAT** absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contract(s) and Unexpired Lease(s) identified on **Schedule A** attached hereto will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtors in Cash on the Effective Date or as soon as reasonably practicable thereafter.  In the event of a dispute, however, payment of the cure amount would be made following the entry of a final order(s) resolving the dispute and approving the assumption.  If an objection to the proposed assumption or related cure amount is sustained by the Court, however, the Debtors may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan (including any assumption of an Executory Contract or Unexpired Lease as contemplated in the Plan Supplement) is **[November 23], 2020, at 5:00 p.m.**, prevailing Central Time (the "Confirmation Objection Deadline").  Any objection to the Plan **must**:  (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas; (c) state, with particularity, the name and address of the objecting party, the basis and nature of any objection to the Plan, and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on or before the **Confirmation Objection Deadline**.

**PLEASE TAKE FURTHER NOTICE THAT** any objections to Plan in connection with the assumption of the Executory Contract(s) and Unexpired Lease(s) proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the first omnibus hearing following the Confirmation Hearing (or such other date as fixed by the Court).

> **PLEASE TAKE FURTHER NOTICE THAT ANY COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT FAILS TO OBJECT TIMELY TO THE PROPOSED ASSUMPTION OR CURE AMOUNT WILL BE DEEMED TO HAVE ASSENTED TO SUCH ASSUMPTION AND CURE AMOUNT.**

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE OF THE DEBTORS OR REORGANIZED DEBTORS ASSUME SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE.  ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement Order, Disclosure Statement, the Plan, the Plan Supplement, or related documents, you may: (a) access the Debtors' restructuring website at https://dm.epiq11.com/chesapeake; (b) write to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (c) call (855) 907-2082 (toll

---

Lease from the Assumption Schedule and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until and including 30 days after the Effective Date; and (b) contest any Claim (or cure amount) asserted in connection with assumption of any Executory Contract or Unexpired Lease.

free) or +1 (503) 520-4448 (international) and requesting to speak with a member of the Solicitation Group; or (d) email tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at:  http://www.txs.uscourts.gov/bankruptcy.

        **THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

Houston, Texas
[●], 2020

/s/
_____

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:       (713) 752-4200
Facsimile:       (713) 752-4221
Email:       mcavenaugh@jw.com
            jwertz@jw.com
            kpeguero@jw.com
            vpolnick@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:       patrick.nash@kirkland.com
            marc.kieselstein@kirkland.com
            alexandra.schwarzman@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Schedule A</u>**

**Schedule of Assumed Contracts and Leases and Proposed Cure Cost**

| Debtor | Counterparty | Description of Assumed Contracts or Leases | Cure Cost |
|--------|--------------|--------------------------------------------|-----------|
|        |              |                                            |           |

## Exhibit 11

**Form of Notice of Rejection of Executory Contracts and Unexpired Leases**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | § | Case No. 20-33233 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**NOTICE REGARDING EXECUTORY CONTRACTS
AND UNEXPIRED LEASES TO BE REJECTED PURSUANT TO THE PLAN**

      **PLEASE TAKE NOTICE THAT** on **[●], 2020**, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") that, among other things: (a) approved the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* [Docket No. [●]] (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125(a) of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"); and (b) authorized the above-captioned debtors and debtors in possession (the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and its Debtor Affiliates* [Docket No. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").[2]

      **PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the *Rejected Executory Contract and Unexpired Lease List* [Docket No. [●]] (the "Rejection Schedule") with the Court as part of the Plan Supplement on **[●], 2020**, as contemplated under the Plan.  The Debtors' determination to reject the agreements identified on the Rejection Schedule is subject to revision.

      **PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and related voting and objection procedures (the "Confirmation Hearing") will commence on **[December 7], 2020 at [●] a/p.m.,** prevailing Central Time, before the Honorable David R. Jones in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Houston, Texas 77002.

---

**PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE THE DEBTORS' RECORDS REFLECT THAT YOU ARE A PARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT WILL BE REJECTED PURSUANT TO THE PLAN, SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE BEING LISTED IN SCHEDULE A ATTACHED HERETO. THEREFORE, YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN.[3]**

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake.  The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2]    Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

[3]    Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. Further, the Debtors expressly reserve the right to:  (a) remove any Executory Contract or Unexpired Lease from the Rejection Schedule and assume such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until and including 30 days after the Effective Date; and (b) contest any Claim asserted in connection with rejection of any Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE THAT** all Proofs of Claim with respect to Claims arising from the rejection of the Executory Contract(s) or Unexpired Leases identified on **Schedule A** attached hereto, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.**

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan (including any rejection of an Executory Contract or Unexpired Lease as contemplated in the Plan Supplement) is **[November 23], 2020 at 5:00 p.m.**, prevailing Central Time (the "Confirmation Objection Deadline").  Any objection to the Plan *must*: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas; (c) state, with particularity, the name and address of the objecting party, the basis and nature of any objection to the Plan, and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on or before the **Confirmation Objection Deadline**.

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the rejection of the Executory Contract(s) and Unexpired Lease(s) identified above and/or related rejection damages proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the first omnibus hearing following the Confirmation Hearing (or such other date as fixed by the Court).

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement Order, Disclosure Statement, the Plan, the Plan Supplement, or related documents, you may:  (a) access the Debtors' restructuring website at https://dm.epiq11.com/chesapeake; (b) write to Chesapeake Energy Corporation c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005; (c) call (855) 907-2082 (toll free) or +1 (503) 520-4448 (international) and requesting to speak with a member of the Solicitation Group; or (d) email tabulation@epiqglobal.com and referencing "Chesapeake" in the subject line.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at:  http://www.txs.uscourts.gov/bankruptcy.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

Houston, Texas
[●], 2020

/s/

| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
|---|---|
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| Kristhy M. Peguero (TX Bar No. 24102776) | Marc Kieselstein, P.C.(admitted *pro hac vice*) |
| Veronica A. Polnick (TX Bar No. 24079148) | Alexandra Schwarzman (admitted *pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | 300 North LaSalle Street |
| Houston, Texas 77010 | Chicago, Illinois 60654 |
| Telephone:   (713) 752-4200 | Telephone:   (312) 862-2000 |
| Facsimile:   (713) 752-4221 | Facsimile:   (312) 862-2200 |
| Email:        mcavenaugh@jw.com | Email:        patrick.nash@kirkland.com |
|                   jwertz@jw.com |                   marc.kieselstein@kirkland.com |
|                   kpeguero@jw.com |                   alexandra.schwarzman@kirkland.com |
|                   vpolnick@jw.com | |
| | |
| *Co-Counsel to the Debtors* | *Co-Counsel to the Debtors* |
| *and Debtors in Possession* | *and Debtors in Possession* |

**<u>Schedule A</u>**

**Schedule of Rejected Contracts and Leases**

| Debtor | Counterparty | Description of Rejected Contracts or Leases |
|--------|--------------|---------------------------------------------|
|        |              |                                             |

## **Exhibit 12**

**Rights Offering Procedures**

[To come.]

## **Exhibit 13A**

### **Second Lien Claims Subscription Forms**

[To come.]

## **Exhibit 13B**

**FLLO Claims Subscription Forms**

[To come.]

**<u>Exhibit 13C</u>**

**Backstop Subscription Forms**

[To come.]