IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | CASE NO. 20-33233 (DRJ) |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et. al.*, | § § § | Jointly Administered |
| | § | Chapter 11 |
| Debtors. | § § | |

**MOTION OF JUSTIN COBB, KRISTINE COBB, AND LINDA MILANOVICH
FOR RELIEF FROM THE AUTOMATIC STAY**

**This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.**

**Represented parties should act through their attorney.**

**There will be a hearing on this matter on November 20, 2020 at 2:00 p.m. in courtroom 400, 515 Rusk, Houston, Texas 77002.**

TO THE HONORABLE DAVID R. JONES, CHIEF U.S. BANKRUPTCY JUDGE:

COME NOW Justin Cobb, individually and as next friend of M.C. and R.C., minors, Kristine Cobb, individually and as next friend of K.C. and M.C., minors, and Linda Milanovich (collectively, the "Movants"), creditors in the above styled and numbered jointly administered Chapter 11 case of Chesapeake Energy Corporation and its affiliated debtors and debtors-in-possession (the "Debtors"), and file this their *Motion for Relief from the Stay* (the "Motion"), respectfully stating as follows:

I.   **RELIEF REQUESTED**

1.      The Movants, wrongful death and personal injury claimants against the Debtors and non-debtor third parties, seek relief from the automatic stay solely to liquidate their claims to finality, but not to collect on any judgment against the Debtors or their Estates except through the

bankruptcy process. The Movants have suffered severe and catastrophic injuries due to a well blowout that killed three workers, including Milanovich's son, Windell Beddingfield, and permanently disabled Justin Cobb. Movants now seek their "day in court." To deny them that right would deprive them of their Constitutional rights, result in severe financial distress that, among other things, could deprive Justin Cobb of access to critical medical care, and contravene the established and longstanding equitable principles of the Bankruptcy Code. As this Court lacks jurisdiction to liquidate the Movants' claims, the Debtors' insurers are (or presumably will be) defending against the claims, and the underlying litigation involves non-debtor third parties, the lifting of the automatic stay will neither cause nor result in any prejudice to the Debtors or their Estates. Because the requisite "cause" for relief from the automatic stay is clearly present, the Motion should be granted.

## II.     PROCEDURAL BACKGROUND

2. On June 28, 2020 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), thereby creating their bankruptcy estates (the "Estates") and commencing their bankruptcy cases, jointly administered as the Bankruptcy Case.

3. The Debtors remain in possession of their Estates, and no trustee has been appointed in the Bankruptcy Case.

4. The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this Motion is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

### III. FACTUAL BACKGROUND

A. **WELL BLOWOUT, EXPLOSION, AND FIRE**

5. The Movants' claims arise out of a catastrophic and tragic oil well blowout and explosion that occurred on January 29, 2020 at the 5200 block of County Road 127 in Burleson County, Texas, near Deanville, Texas on the Wendland lease (the "Wendland 1H Well"). The Wendland 1H Well was owned by, operated by, and otherwise in the custody of one or more of the Debtors, including Chesapeake Operating, L.L.C. and Chesapeake Energy Corporation.

6. These Debtors contracted with Justin Cobb and Wendell Beddingfield, who worked on behalf of Eagle PCO, LLC *d/b/a* Eagle Pressure Control ("Eagle"), to assist in workover operations at the Wendland 1H Well.

7. The Debtors also contracted with non-Debtors Forbes Energy Services, LTD, C.C. Forbes, LLC and Forbes Energy Services, LLC (collectively, "Forbes") to perform a workover, including rig installation, rod pulling, and tube setting, at the Wendland 1H Well. Forbes failed, among other things, to maintain, follow, and enforce policies and procedures for safe workover operations at the Wendland 1H Well.

8. The Debtors also contracted with non-Debtor SDS Petroleum Consultants, LLC ("SDS"), to assist in the provision of well supervision at the Wendland 1H Well. SDS and/or the Debtors failed, among other things, to maintain, follow, and enforce policies and procedures for safe workover operations. The Debtors also contracted with non-Debtor A & L Hot Oil Service Inc. ("A&L") to pump fluids down the wellbore and to assist with "killing" the well. A&L failed, among other things, to safely and properly prevent hydrocarbons and gas from escaping the well and to maintain, follow, and enforce policies and procedures for safe workover operations.

B.  **MOVANTS' INJURIES**

9. As a result of these acts and/or omissions, a blowout, explosion, and subsequent fire occurred at the Wendland 1H Well, which tragically killed Windell Beddingfield and catastrophically and permanently injured and disfigured Justin Cobb.

10. Movant Linda Milanovich is a "parent" and statutory beneficiary of Windell Beddingfield under section 71.004 of the Texas Civil Practice and Remedies Code, the Wrongful Death Act. She holds claims against the Debtors and others for the wrongful death suffered by her son as a result of the blowout, explosion, and subsequent fire at the Wendland 1H Well.

11. Movant Justin Cobb has been seriously and permanently injured and disfigured as a result of the blowout, explosion, and subsequent fire at the Wendland 1H Well. His injuries are horrific, to put it mildly, and include burns to approximately 60% of his body, many of which are third degree. After being air-lifted to Memorial Hermann Hospital, Mr. Cobb was hospitalized for over four months. While hospitalized, Mr. Cobb suffered two cardiac arrests, experienced heart, lung, and renal failure, which required him to be placed on two "ECMO" (advanced life support) machines, and endured numerous painful skin grafts and invasive surgeries. When he was finally released from the burn unit, Mr. Cobb was transferred to TIRR Memorial Hermann, where he underwent extensive rehabilitation and additional surgeries. Mr. Cobb continues to go in and out of the hospital due to complications from his injuries, will never be able to care for himself, and is expected to require at least twenty (20) more surgeries in the future. Mr. Cobb, a Wellhead Intervention Manager, was only thirty-three (33) years old at the time of the explosion. Not only did he suffer horrific, life-altering injuries, but he saw two of his closest friends die in the explosion and fire. As a result, he now faces a future that will indubitably involve extreme trauma, pain, and physical, emotional and financial hardship.

12.     Movant Kristine Cobb is Justin Cobb's wife.  As with their children, she too has had to directly experience and relive the trauma and horrific physical, mental, and emotional nightmare that her husband has been forced and will continue to endure for the rest of his life.

13.     The Cobbs have two minor children, as well as two minor children who preceded their marriage (*i.e.*, Kristine Cobb's stepchildren), whose lives have also been irreversibly affected by the trauma that their father has and will continue to experience for the rest of his life.

C.     **PREPETITION LITIGATION**

14.     As a result of the foregoing, the Movants filed their *Original Petition and Request for Disclosure* (the "Petition") with the 116th Judicial District Court for Dallas County, Texas (the "State Court") on May 18, 2020, a true and correct copy of which is attached hereto as Exhibit "A," thereby initiating Case Number DC-20-06977 (the "State Court Action").

15.     Other plaintiffs with claims arising from the explosion have also filed separate state court actions against the Debtors and others.  Some of these plaintiffs filed suit in Duval County, Harris County, and Dallas County.  Subsequently, the Harris and Duval County suits were non-suited and refiled in Dallas County, where approximately nine actions remain pending before six judges.  In an effort to coordinate and consolidate the various state court cases, minimize expenses and costs, and promote efficiency, the Debtors and other plaintiffs jointly filed a motion with the Supreme Court of Texas Judicial Panel on Multidistrict Litigation, in proceeding No. 20-0286 (the "MDL Proceeding"), seeking to transfer all nine actions, including the State Court Action, to one pretrial court for pretrial proceedings.

16.     By order entered June 30, 2020, and in light of the filing of the Bankruptcy Case, the State Court administratively closed the State Court Action pending potential relief from the automatic stay.  Several weeks later (on July 20, 2020), the Multidistrict Litigation Panel

suspended and stayed the MDL proceeding, stating that it "would immediately consider a motion filed by any party requesting reinstatement, specifying what further action, if any, is required by the Panel."

## IV.   ARGUMENTS AND AUTHORITIES

17.   Prior to or concurrently herewith, the Movants filed unliquidated proofs of claim asserting unsecured claims against the Debtors and the Estates based on the Petition. These filings, along with the fact that Debtors are disputing the allowance of these claims, confirms that a liquidation and adjudication of these claims is necessary and appropriate.

18.   Under the Bankruptcy Code, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay— (1) for cause."  11 U.S.C. § 362(d)(1). As recently emphasized by the Fifth Circuit, "[c]ourts often grant creditors relief from the automatic stay so they can adjudicate their unliquidated claims against a debtor outside of bankruptcy court, particularly when the claims are already the subject of pending litigation." *Kipp Flores Architects LLC v. Mid-Continent Cas. Co.*, 852 F.3d 405, 414 (5th Cir. 2017); *see also Bouchillon v. Caffey*, 539 B.R. 102, 104 (Bankr. N.D. Miss. 2015) ("This Court is bound by clear Congressional intent to deny bankruptcy courts the jurisdiction to hear such personal injury torts. This Court may only determine dischargeability of any debts arising from the tort, but not the underlying tort itself. The state court is the more appropriate forum for resolution of the underlying case.").

19.   This principle is supported and confirmed by the legislative history of the automatic stay. As stated in the Senate Report accompanying the Bankruptcy Reform Act of 1978, "[i]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great

prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." S. Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836; *see also* 2 Collier on Bankruptcy § 362.07[3], at 362-71 (15th ed. 1991); *In re Robbins*, 964 F.2d 342, 345-46 (4th Cir. 1992). This is especially true in cases, like here, that are based on state law and lack any connection with or interference with the pending bankruptcy case. *See Kipp Flores,* 852 F.3d at 414; *In re Fowler*, 259 B.R. 856, 858 (Bankr. E.D. Tex. 2001) (noting that "[t]his Court, like all bankruptcy courts, routinely lifts the stay to allow tort suits to go forward in state court to determine the liability, if any, of the Debtor").

20.     More importantly—and notwithstanding the filing of the proof of claims—this Court is without jurisdiction to liquidate or otherwise adjudicate the Movants' claims, which seek damages for wrongful death and personal injuries. Indeed, 28 U.S.C. § 157(b)(2)(o) explicitly excludes "personal injury tort or wrongful death claims" from "core proceedings." 28 U.S.C. § 157(b)(2)(o) ("Core proceedings include . . . other proceedings affecting the liquidation of the assets of the estate . . . except personal injury tort or wrongful death claims"); *see also id*. at (b)(5); *In re Fowler*, 259 B.R. at 861 ("[A] personal injury and wrongful death claim cannot be tried in this Court . . . and if the creditor is not granted relief from the stay, he is left with no remedy in any court. That simply does not comport with due process"). Where the prepetition action concerns a personal injury suit, the case law overwhelmingly supports relief from the stay to permit the personal injury claim to be liquidated, as opposed to collection against a debtor. *See In re Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982); *In re Fowler,* 259 B.R. at 858; *In re McGraw*, 18 B.R. 140, 142 (Bankr. W.D. Wis. 1982) ("no 'great prejudice' resulted to the bankruptcy estate

from the 11 U.S.C. § 362(a) modification because the bankruptcy court's modification order only allowed the state court to determine the debtor's liability").

21. Likewise, where a debtor has insurance in place covering the personal injury claim, "continuation of the civil action should be permitted since hardship to the debtor is likely to be outweighed by hardship to the plaintiff." *In re McGraw*, 18 B.R. at 142. *Accord In re Turner*, 55 B.R. 498, 501-02 (Bankr. N.D. Ohio 1985); *In re Honosky*, 6 B.R. 667, 669 (Bankr. W. Va. 1980); *see also In re Edgeworth v. Edgeworth*, 993 F.2d 51 (5th Cir. 1993),; *In re Fowler*, 259 B.R. at 858 (noting that "[t]his Court, like all bankruptcy courts, routinely lifts the stay to allow tort suits to go forward in state court to determine the liability, if any, of the Debtor"); *Bouchillon*, 539 B.R. at 102.

22. In considering whether cause exists for relief from the automatic stay with respect to the continuation of prepetition litigation, this Court employs the following twelve-factor analysis:

> 1) whether the relief will result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves debtor as a fiduciary; 4) whether a specialized tribunal has been established to hear the particular cause of action; 5) whether the debtor's insurer has assumed full responsibility; 6) whether the action primarily involves third parties; 7) whether litigation in the other forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether movant's success would result in a judicial lien avoidable by the debtor; 10) interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the proceedings have progressed to the point that parties are ready for trial; and 12) impact of the stay on the parties and the balance of harm.

*In re Xenon Anesthesia of Tex. PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014). The burden of proof is a shifting one: the creditor must make an initial showing of "cause," whereafter the burden on all other issues, including retaining the automatic stay in place, is on the debtor. *See, e.g., In re Mosher*, 578 B.R. 765, 772 (Bankr. S.D. Tex. 2017).

23. Here, the Movants submit that an application of these factors weighs heavily in favor of granting relief from the stay to liquidate their claims:

(i) Most importantly, as this Court does not have jurisdiction to liquidate the Movants' wrongful death and personal injury claims, some other court will inevitably have to do so, meaning that relief from the automatic stay is necessary to enable the Movants to prove their claims. Preventing the Movants from doing so would deprive them of due process and result in great and manifest injustice, leaving the Movants with no remedy at all. *See In re Fowler*, 259 B.R. at 858. Likewise, the Debtors and the Estates will also benefit from an adjudication of these claims because the Movants' claims must be adjudicated to determine the respective distributions and recoveries of all unsecured creditors.

(ii) Upon information and belief, insurance is providing a defense to the Movants' claims, meaning that the Debtors should not incur any material costs in defending against those claims but, even if the Debtors have or will incur costs defending the claims, costs alone are not sufficient to deny relief from the automatic stay. *See id.*, at 861 ("Cost of defending an action is but one factor for the court to consider which alone does not constitute grounds for denying a movant relief from the automatic stay."). *See also In re Steffens Farm Supply Inc.*, 35 B.R. 73, 75 (Bankr. N.D. Iowa 1983).

(iii) The Movants are not seeking to recover on their claims as against the Debtors or the Estates outside of the bankruptcy process, consequently no other creditor will be prejudiced if relief from the automatic stay is granted. On the contrary, as the Movants may be able to recover from non-Debtors and non-Estate property, the Debtors and other creditors may benefit from having the Movants' substantial claims satisfied in whole or in part from collateral sources of recovery.

(iv) Severance of the Movants' claims against the Debtors from their claims against non-Debtors is not feasible and would be grossly wasteful. Indeed, it was the Debtors who first sought relief in the form of prepetition consolidation in the MDL Proceeding, confirming that relief from the stay to permit the State Court Action to proceed is preferable to piecemeal litigation from a cost and efficiency perspective. And given that there are other potentially responsible parties, as well as questions of comparative and proportional liability, a severance would be impractical and may lead to a multiplicity of suits that, in the end, would lead to greater costs and burdens on the Debtors and all other parties, as well as potentially inconsistent results.

(v) Similarly, since the State Court Action involves several non-debtor defendants, those defendants may be able to argue against continued litigation on the grounds that Debtors are necessary and indispensable parties, thus potentially leading to additional, severe, and actual prejudice on the Movants.

(vi)     While the Movants' claims are significant, so too is the insurance coverage. This Bankruptcy Case is also a very large case that involves billions of dollars in other claims. If the automatic stay is lifted, the Debtors will not be required to devote substantial resources and efforts to defend against the Movants' claims, further confirming that granting relief will not interfere with the Bankruptcy Case. Indeed, the Debtors are well on their way to a potential plan confirmation and reorganization; the liquidation of the Movants' claims will not delay or prejudice that process.

(vii)     The prepetition litigation does not involve the Debtors as fiduciaries, there are no grounds to equitably subordinate the Movants' claims, and any successful judgment would not result in an avoidable judicial lien against the Debtors.

(viii)     The interests of judicial economy and the expeditious and economical resolution of litigation strongly support granting relief from the automatic stay, as the MDL Proceeding is already pending with the consent of all plaintiffs and defendants, and that proceeding can provide all plaintiffs and defendants involved full relief, in the most efficient and economical manner possible (which, indeed, is the very purpose of proceeding before an MDL court).

(ix)     Continuance of the prepetition litigation would not harm the interests of other creditors in the Bankruptcy Case; on the contrary, insofar as the Debtors have insurance in place to satisfy any allowed claims, the interests of other creditors would be served from a prompt resolution because the payment of the Movants' claims, in whole or in part, from insurance coverage would result in greater recoveries for other creditors in the Bankruptcy Case.

(x)     The impact of the automatic stay and the balance of harms greatly support granting relief from the automatic stay: the Movants have already suffered unimaginable, permanent, and catastrophic injuries (and death), which have and will continue to result in lifelong physical, emotional, and economic damages and harm. To deny them their "day in court" would violate their due process and constitutional rights, contravene both the statutory language and legislative history of 28 U.S.C. § 157(b) and 11 U.S.C. § 362, and—most importantly—subject them to significant economic—and, in Mr. Cobb's case, physical—harm by preventing the Movants from receiving meaningful and actual redress for their injuries, as well as unnecessarily delaying their ability to obtain and pay for necessary medical treatment and care, while offering no material benefit to the Debtors or to the Estates, given the Movants' claims must inevitably be liquidated by another court.

24.     The purpose of the automatic stay is to prevent a "race to the courthouse," to protect a debtor and its property in order to ensure an equitable distribution amongst all creditors, and to afford a debtor time to propose a plan of reorganization. None of these purposes are served by

continuing the automatic stay here: there is no "race" to the courthouse because this Court cannot liquidate the underlying claims, and these claims undeniably require liquidation; the Movants do not seek relief from the automatic stay to recover on their claims against the Debtors and the Estates; and the Debtors have already filed their plan and are well on their way to confirming it. Nor is the purpose of the automatic stay to permanently enjoin creditors or protect third parties. Denying the Movants' Motion and depriving them of their requested relief will subject them to continuing, needless delay by depriving them of their day in court, while benefiting the interests of insurance carriers and non-debtor defendants, none of whom are entitled to protection by the automatic stay.

### V.  PRAYER

WHEREFORE, PREMISES CONSIDERED, the Movants respectfully request that the Court enter an order: (i) granting this Motion; (ii) granting them relief from the automatic stay to liquidate their claims to finality; (iii) retaining the automatic stay in place for purposes of any collection as against the Debtors or the Estates; and (iv) granting them such other and further relief to which they may be justly entitled.

RESPECTFULLY SUBMITTED this 19th day of October, 2020.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
Davor Rukavina, Esq.
Texas Bar No. 24030781
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 978-5359

**ATTORNEYS FOR JUSTIN COBB, KRISTINE COBB, and LINDA MILANOVICH**

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that he discussed the relief requested herein with Alexandra Schwarzman, Esq., counsel of record for the Debtors, who informed the undersigned that the Debtors oppose said relief.

By:  /s/ Davor Rukavina
Davor Rukavina, Esq.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this the 19th day of October, 2020, true and correct copies of this Motion, with all exhibits attached hereto, was electronically served by the Court's ECF system on parties entitled to notice thereof, and that, on the same date, the undersigned caused true and correct copies of this Motion, with the proposed order thereto, to be served by U.S. first class mail, postage prepaid, on the parties listed on the attached Service List.

By:  /s/ Davor Rukavina
Davor Rukavina, Esq.