WWW.CHKAQ.COM

| | |
|---|---|
| **To:** | The Honourable David R. Jones Chief Judge, United States Bankruptcy Court for the Southern District of Texas |
| **From:** | Victor Franjul, CHK Equity Holder – www.chkaq.com |
| **Date:** | November 18, 2020. |
| **Subject:** | ***Shareholder Activism Campaign Notice: Unofficial Equity Committee & Action by Written Consent*** |

United States Courts
Southern District of Texas
FILED

*November 19, 2020*

David J. Bradley, Clerk of Court

Honourable Chief Judge Jones:

I am a non-attorney individual holder of Chesapeake Energy Corporation common (CHKAQ) and preferred (CHKVQ) shares.

Several stakeholders have expressed serious concerns about the Debtor in Possession good faith and the Unsecured Creditors Committee have expressed their conviction that the TEV is higher than the TEV presented in the DIP Disclosure Statement.

Docket 37 shows the DIP efforts to preserve the NOL's with a value that is not included in the TEV calculations.

When the value of the NOL's is added to the DIP TEV (which I agree with the UCC to be understated) equity holders are not "out of the money".

Also, the secured creditors under the existing plan will receive more than 100% of their claim creating a "super creditor" class, a term coined by a member of the online forums.

Therefore, considering that Section 4 of Article IX of the RESTATED CERTIFICATE OF INCORPORATION OF CHESAPEAKE ENERGY CORPORATION states that:

"*Action by Written Consent*. Any action required or permitted to be taken at a meeting of the shareholders may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes which would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted. Prompt notice of the taking of corporate action without a meeting by less than unanimous written consent shall be given to those shareholders who have not consented in writing."

I have created a mailing list landing page at www.chkaq.com with the purpose of gathering shareholders support to create an unofficial equity committee.

My initial goals include:

1. Determine if enough shareholder support can be attained to complete an action by written consent as per Chesapeake bylaws to remove the existing Board of Directors.

2. If enough support is gathered, propose to the unofficial committee created by this effort to participate in a crowdfunding campaign to pool the resources to seek and retain legal counsel to complete the solicitation/proxy for the Action by Written Consent and any appeals that may be required to enforce our shareholder rights to corporate democracy.

I am fully aware of the authority of the Bankruptcy Court to ban or prohibit the execution of the actions agreed by written consent. But previous decisions in other courts (stare decisis) have upheld the shareholder rights to remove and appoint directors under chapter 11 if there is no "clear abuse" or "risk of irreparable harm to rehabilitation". Please find attached as Appendix 1, David S. Kupetz article titled: "Conflicting Views on Shareholder Rights in Chapter 11" for case references.

The article can also be downloaded here: https://sulmeyerlaw.com/wp/wp-content/uploads/2016/02/David-Kupetz-2.23-Law360.pdf

Since the DIP is incorporated in the state of Oklahoma, I have also reviewed Oklahoma Title 18.

If my fellow shareholders rally behind this effort by signing up to the mailing list in a number that allow us to act, I will notify this court.

I will also update the court in a weekly or bi-weekly basis regarding the progress on shareholders support to the initiative (mailing list sign-ups) if significant.

Respectfully,


www.chkaq.com


Victor Franjul
chkconsent@gmail.com

Case 20-33233   Document 1859   Filed in TXSB on 11/19/20   Page 3 of 6

WWW.CHKAQ.COM

# Appendix 1

WWW.CHKAQ.COM   3

# Conflicting Views On Shareholder Rights In Chapter 11

Law360, New York (February 23, 2016, 10:40 AM ET) -- Corporate "democracy" involves the manner in which decisions governing the activities of a corporate entity are made. Courts have taken inconsistent views of whether shareholder participation in corporate democracy continues or is suspended following the commencement of a case under Chapter 11 of the Bankruptcy Code. In In re SS Body Armor I Inc., 577 B.R. 597 (Bankr. Del. 2015), the Delaware bankruptcy court held that a shareholder bringing a lawsuit to compel a corporate debtor to conduct a shareholder meeting is not required to obtain relief from the automatic bankruptcy stay. The court also ruled, however, that a bankruptcy court may enjoin the occurrence of a shareholder meeting as well as the implementation of any directives resulting from such a meeting if it is shown that they would severely undermine the debtor's reorganization.



David Kupetz

There is no provision in the Bankruptcy Code that directly addresses the issue of post-bankruptcy corporate governance in Chapter 11 cases. However, there are numerous sections of the code that protect the interests of the debtor's equity holders. In the context of these protections and the circumstances of a case, including the economic realities, the tension between state corporate governance law (and shareholder participation rights thereunder) and federal bankruptcy reorganization (Chapter 11 may also be used for liquidation) law plays out.

There is a judicial reluctance to enjoin or otherwise address through the bankruptcy process shareholder democracy rights following a corporation's commencement of a Chapter 11 case. Some courts have found that disputes regarding corporate governance issues are not within the scope of bankruptcy jurisdiction. In the Texaco case, Carl Icahn sought to change certain of Texaco's corporate governance provisions through the bankruptcy process. The bankruptcy court presiding over Texaco's Chapter 11 case rejected this approach, stating that the "Chapter 11 Reorganization process is not the appropriate vehicle for introducing changes in Texaco's existing system of corporate governance. The changes proposed by the Icahn Group should be dealt with in an appropriate state law forum, rather than in the Bankruptcy Court." In re Texaco Inc., 81 B.R. 806, 813 (Bankr. S.D.N.Y. 1988).

Other courts have found that the Bankruptcy Code itself supplements or supersedes state corporate governance law when a corporation is in Chapter 11. "[W]hile state law standards continue to apply to post-petition fiduciary obligations, the rights and remedies of aggrieved shareholders and creditors during the post-petition/pre-confirmation period are regulated by the Bankruptcy Code which controls state law pursuant to the Supremacy Clause of the United States Constitution." In re Schepps Food Stores Inc., 160 B.R. 792, 799 (Bankr. S.D. Tex 1993), citing U.S. Const. Art. VI.

There are numerous provisions in the Bankruptcy Code that can collectively be viewed as supplementing corporate governance protections for shareholders during the Chapter 11 reorganization process. Advance notice and court approval is required for transactions

outside of the ordinary course of business. The court may terminate the exclusivity period during which only the debtor in possession may submit a plan of reorganization. Adequate information must be provided to parties in interest with regard to a plan.

Creditors and shareholders with claims impaired under a plan have the right to vote to accept or reject the plan (or, if they receive and retain nothing under the plan, are deemed to vote to reject the plan). Shareholders may object to confirmation of a plan, including objecting to improper dilution of their rights and/or voting power. Under certain circumstances, insider claims may be subordinated. If there is director or officer malfeasance or other "cause," the court may displace the debtor in possession by appointing an independent trustee. The court may appoint an examiner to conduct such examination of the debtor's affairs as is appropriate. Where the situation is incapable of remedy under Chapter 11, the court may convert the case to a Chapter 7 liquidation case. Further, the Bankruptcy Code provides the opportunity to have a shareholders committee appointed in the Chapter 11 case. However, unlike unsecured creditors committees, equity holders committees are not routinely appointed.

Chapter 11 allows shareholders an opportunity to participate in the reorganization process and provides them with procedural and substantive safeguards. However, the economic realities of the situation will frequently minimize or eliminate the ability of equity holders to effectively participate in the process. The interests of shareholders are subordinated to the interests of creditors. Moreover, some courts view the comprehensive federal reorganization law as necessarily superseding state corporate governance law in order to prevent inappropriate shareholder interference. The conflict between state corporate governance law and federal bankruptcy reorganization law has been most stark in cases where shareholders have sought to compel a special shareholders meeting to elect a new board of directors during the course of the company's Chapter 11 case. The court in SS Body Armor adopted the approach previously taken by the Second Circuit Court of Appeals in In re <u>Johns-Manville Corp.</u>, 801 F.2d 60 (2nd Cir. 1986), and by a Delaware district court in In re <u>Marvel Entertainment Group</u>, 209 B.R. 832 (D. Del. 1997).

The general view is that the right to compel a shareholders meeting to elect a new board subsists during a Chapter 11 case. However, an argument might be made that efforts of shareholders to call a special or annual meeting to elect a new board requires relief form the automatic stay provisions of Section 362(a)(3) of the Bankruptcy Code precluding any act to exercise control over property of the estate without advance court approval. While the appointment of a receiver for the corporation would clearly constitute such an act, courts are likely to view shareholder efforts to call a meeting as being directed toward control of corporate governance rights and not "property of the estate" and, therefore, outside the parameters of the automatic stay.

Manville recognizes state law shareholder election rights, but gives priority to federal interests in successful reorganization in the event of conflict between the state law right to elect a board and the federal law goal of reorganizing the corporation into a viable entity (or otherwise maximizing the value of property of the estate). In Manville, the Second Circuit held that the issuance of an injunction to prevent a shareholders meeting to replace the board of a Chapter 11 debtor was appropriate if : (1) there was clear abuse present in calling the meeting (this takes the form of intent to jeopardize the reorganization); and (2) there is the risk of irreparable harm from such a meeting (this takes the form of a real risk to rehabilitation). Manville, 801 F.2d at 65-69. On remand, the bankruptcy court, in Manville, found that the debtor in possession was entitled to an injunction to prevent the shareholders meeting. Manville Corp. v. Equity Security Holders' Committee (In re Johns-Manville Corp.), 66 B.R. 517 (Bankr. S.D.N.Y. 1986).

The case was extremely complicated, involved numerous competing interests, had an arduous history, and recent negotiations had resulted in a consensual plan. The court found that there was clear abuse by concluding that the proposed meeting was intended to torpedo the plan and was intended to place the reorganization in jeopardy. The court found that the second prong of the test was also satisfied because the consensus on the plan was fragile and the meeting would present a real risk to successful rehabilitation. Id., at 534-36.

In the Marvel case, a Delaware district court addressed a complaint for declaratory and injunctive relief seeking to prevent bondholders and an indenture trustee from voting pledged shares to replace the parent company's board of directors. Relying, in part, on Manville, the court held that the Bankruptcy Code's automatic stay was not implicated by the exercise of shareholders' corporate governance rights. The court found that the right of a shareholder to compel a shareholders meaning for the purpose of electing of a new board of directors continues during the Chapter 11 case. The court stated that "[t]he right of shareholders to be represented by directors of their choice and thus to control corporate policy is paramount." This right, however, was not unlimited. The court held that the election of a new board of directors can be enjoined when circumstances demonstrating "clear abuse" exist. The court explained that "'[c]lear abuse' requires a showing that the shareholders' action in seeking to elect a new board of directors demonstrates a willingness to risk rehabilitation all together in order to win a larger share for equity. The fact that the shareholders' action may be motivated by desire to arrogate more bargaining power in the negotiation of a reorganization plan, without more, does not constitute abuse." In re Marvel Entertainment Group Inc., 209 B.R. 932, 838 (D. Del. 1997).

Adopting the holdings of Manville and Marvel, the SS Body Armor court concluded that the right of a shareholder to commence state court proceedings to compel a shareholder meeting continues during a Chapter 11 case and the shareholder is not required to seek relief from the automatic bankruptcy stay. The court stated that "[t]he right to such a meeting, however, is not unfettered." When there is "clear abuse" involving delay and real jeopardy to a debtor's reorganization, the bankruptcy court may enjoin a shareholder meeting from taking place as well as the implementation of the results of such a meeting.

—By David Kupetz, SulmeyerKupetz PC

*David Kupetz is a shareholder in SulmeyerKupetz's Los Angeles office. His practice focuses on restructuring, business reorganization, bankruptcy, assignments for the benefit of creditors, and other insolvency solutions.*

*The opinions expressed are those of the author(s) and do not necessarily reflect the views of the firm, its clients, or Portfolio Media Inc., or any of its or their respective affiliates. This article is for general information purposes and is not intended to be and should not be taken as legal advice.*