IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| CHESAPEAKE ENERGY | ) | |
| CORPORATION, *et al.*, | ) | Case No. 20-33233 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**PA LESSORS' REQUEST FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIMS**

The PA Lessors, a group of Pennsylvania oil and gas lessors (the "PA Lessors"),[1] by and through their undersigned counsel, by way of Request for Allowance and Payment of Administrative Claims (the "Request"), hereby state:

**BACKGROUND**

*A.   The Leases*

1.   The PA Lessors are parties to oil and gas leases (the "Leases") with Chesapeake with regard to multiple parcels of real property located in the Commonwealth of Pennsylvania (the "Leased Premises").

2.   Pursuant to the Leases, Chesapeake's payment of royalties and compliance with the terms and provisions of the Leases, is secured by a lien in favor of the PA Lessors on (a) all the oil and gas produced and saved from the leased premises (or lands pooled therewith pursuant

---

[1] The PA Lessors are: William R. Ruark and WLR Family Partnership (together, the "Ruark Lessors"); Sally Steele, Esquire, Herbert D. Steele and Leola B. Steele (together, the "Steele Lessors"); Raynold W. Wilson, Judith A. Wilson, R&J Partners, L.P. and Cemetery Road Hunt Club, Inc. (together, the "Wilson Lessors"); Placewood Resource Management, L.L.C., Placewood Resources, L.P., Richard E. Place, Charlotte E. Place, the Richard E. Place Trust, the Charlotte E. Place Trust and Jesse C. Place (together, the "Place Lessors").

PHDATA 7782307_2

to the Leases) and (b) all proceeds of sale of such oil and gas and all accounts arising therefrom. Leases at § 4.

3. The Leases provide that they are to be governed by and interpreted in accordance with Pennsylvania law. Leases at § 28.

4. Pre-bankruptcy audits conducted by each of the PA Lessors under the terms of the Leases revealed that Chesapeake underpaid royalties due and owing under the Leases. For example, (a) Chesapeake failed to pay the PA Lessors royalties calculated upon the entire gross proceeds of gas, computed at the point of sale, as required under the Leases; (b) Chesapeake failed to pay royalties on some gas volumes, as required under the Leases; and (c) Chesapeake took unauthorized deductions from royalties due and owing to the PA Lessors.

5. Chesapeake breached the Leases through at least the following: (a) its underpayment of royalties; (b) its failure to provide production data to the PA Lessors, upon reasonable request; and (c) its failure to establish production unit sizes as required by the terms of the Leases.

6. Chesapeake failed to cure its breach of the Leases after receiving written default notices, and Chesapeake's underpayment of royalties is ongoing.

7. The Leases provide that royalties not paid when due accrue interest at the prime rate plus five percent (5%).

### B. The PA Lessors' Arbitration Proceedings.

8. The Leases require that any disputes under the Leases are to be resolved in arbitration before the American Arbitration Association ("AAA"). Leases at § 24.

9. Moreover, the Leases require that the "[a]rbitration shall take place within one hundred (100) miles of the leased premises." *Id*.

10. Long before the Petition Date, the PA Lessors filed with the AAA demands for arbitration against Chesapeake. (the "Arbitration Proceedings").

C. **The Debtors' Chapter 11 Cases and the PA Lessors' Proofs of Claim**

11. On June 28, 2020 (the "Petition Date"), the Debtors, including Chesapeake Appalachia ("Chesapeake"), filed petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code").

12. The PA Lessors timely filed secured proofs of claim for the amounts due under the Leases, Claim Nos. 12936, 12951, 12965 and 12977 (the "Proofs of Claim").

13. The Proofs of Claim provide, *inter alia*, that the PA Lessors possess administrative claims and that the PA Lessors reserved the right to seek allowance and payment of administrative claims "for all unpaid amounts due under the Leases after the Petition Date."

D. **The Debtors' Plan**

14. On September 11, 2020, the Debtors filed a proposed plan of reorganization [Docket No. 1150], and the Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and Its Debtor Affiliates [Docket No. 1151], both of which were subsequently amended.

15. On October 8, 2020, the Debtors' filed their amended disclosure statement [Docket No. 1331] (the "Disclosure Statement").

16. On October 30, 2020, the Bankruptcy Court entered an Order approving the Disclosure Statement [Docket No. 1633].

17. On December 7, 2020, the PA Lessors filed an objection to the Debtors' proposed reorganization plan. [Docket No. 2142].

18. On January 12, 2021, the Debtors filed their Fifth Amended Joint Chapter 11 Plan of Reorganization (the "Plan"). [Docket No. 2833].

19. The Plan provides for a complete pass-through of the PA Lessors' rights under the Leases. The Plan states that "all Royalty and Working Interests shall remain in full force and effect in accordance with the terms of the granting instruments or other governing documents applicable to such Royalty and Working Interests." Plan, Article IV. T.

20. The Plan further states that "Royalty and Working Interests shall not be modified, affected or impaired in any manner by any provision of the Plan or the Confirmation Order, including but not limited to any injunctive or stay relief, and the legal and equitable rights, interests, defenses, and obligations of holders of Royalty and Working Interests, with respect to such Royalty and Working Interests, shall not be modified, affected or impaired in any manner by the provisions of the Plan or the Confirmation Order." *Id*.

21. On January 16, 2021, the Court entered an Order Confirming the Debtors' Fifth Amended Joint Chapter 11 Plan of Reorganization [Docket No. 2915].

22. On February 9, 2021, the Debtors filed and served a Notice of Entry of Order Confirming the Fifth Amended Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and Its Debtor Affiliates (the "Notice") [Docket No. 3058].

23. Pursuant to the Notice, the Plan became effective on February 9, 2021 (the "Effective Date").

24. In addition, the Notice provides that requests for payment Royalty and Working Interests Administrative Claims must be filed on or before June 9, 2021.

25. On March 29, 2021, the PA Lessors filed a motion seeking to compel arbitration and, alternatively, for permissive abstention [Docket No. 3348] (the "Arbitration Motion").

PHDATA 7782307_2

26. In the Arbitration Motion, the PA Lessors seek, *inter alia*, an order compelling arbitration of the PA Lessors' claims relating to alleged pre-Effective Date breaches of the Leases for the limited purposes of determining whether the Leases have been breached and the amount of any unpaid or underpaid royalties under the Leases, including the amount of unpaid or underpaid royalties for the period of time that would qualify as an administrative claim.

27. The hearing on the Arbitration Motion is scheduled for July 21, 2021. *See* Docket No. 3662.

## JURISDICTION AND VENUE

28. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

29. Venue is proper pursuant to 28 U.S.C. § 1408.

30. The statutory basis for the relief requested herein is Sections 105(a) and 503(b) of title 11 of the United States Code (the "Bankruptcy Code").

## RELIEF REQUESTED

31. Section 503(b)(1) of the Bankruptcy Code provides that there shall be allowed administrative expenses for the "actual, necessary costs and expenses of preserving the estate."

32. In addition, the Disclosure Statement states that "any post-petition, pre-Effective Date right to payment arising from a Royalty and Working Interest, if any, shall be treated by the Plan as an Administrative Claim." Disclosure Statement at 10.

33. Further, the Plan provides that "any postpetition, pre-Effective Date rights to payment arising on account of Royalty and Working Interests" shall constitute administrative claims. Plan, Article I. A. 172.

34. Under the Plan, allowed administrative claims are to be paid in full no later than thirty (30) days after the date on which an order allowing the administrative claim becomes a final order, or as soon as reasonably practicable thereafter. Plan, Article II. A. 1.

35. Between the Petition Date and the Effective Date (the "<u>Administrative Claim Period</u>"), the Debtors breached the Leases by underpaying the royalties due and owing to the PA Lessors.

36. As a result, the PA Lessors are entitled to an administrative claim for all unpaid or underpaid royalties due under the Leases during the Administrative Claim Period.

37. The estimated total amount due the PA Lessors pursuant to the Leases for unpaid or underpaid royalties during the Administrative Claim Period, exclusive of interest as provided for under the Leases, is not less than $243,004.73, as follows: Ruark Lessors, $111,147.30; Steele Lessors, $5,856.89; Wilson Lessors, $13,539.51; and Place Lessors, $112,461.03.[2]

38. Consequently, the PA Lessors request the entry of an order allowing them administrative claims for all amounts due under the Leases during the Administrative Claim Period as established in the Arbitration Proceedings.

---

[2] As set forth in the Proofs of Claim, until additional information is provided by Chesapeake, the PA Lessors will be unable to determine the exact amount of the royalty underpayments and other charges due under the Leases.

**CONCLUSION**

39. For the foregoing reasons, the PA Lessors respectfully request that the Court enter an Order allowing the PA Lessors' administrative claims for all unpaid and underpaid royalties due under the Leases during the Administrative Claims Period as determined in the Arbitration Proceedings, and for such other and further relief as the Court deems just and equitable.

Dated: June 9, 2021                                     SCHNADER HARRISON SEGAL & LEWIS LLP

By: /s/ Ira N. Richards
Ira N. Richards (admitted *pro hac vice*)
Richard A. Barkasy (admitted *pro hac vice*)
Arleigh P. Helfer III (admitted *pro hac vice*)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: (215) 751-2000
Facsimile: (215) 751-2205
irichards@schnader.com
rbarkasy@schnader.com
ahelfer@schnader.com