IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| CHESAPEAKE ENERGY | ) | |
| CORPORATION, *et al.,* | ) | Case No. 20-33233 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**ROBERTA BAKER REQUEST FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE CLAIMS**

Roberta Baker("**Claimant**") by and through her undersigned counsel, by way of Request for Allowance and Payment of Administrative Claims (the "Request"), hereby states:

**BACKGROUND**

*A.    The Leases*

1. In September of 2009 and in November of 2019, Claimant's predecessor in interest Deer Park Holdings ("DPH") or its owners entered into the following 3 leases, a) Wyoming County Instr. #210-0796, 432.69 acres, signed 9/24/09, b) Wyoming County Instrument #2010-5969, 474.58 acres, signed 9/26/09, and c) Wyoming County Instrument #2010-5949, 141.50 acres, signed 9/26/09. In 2009, a 1/3 interest in these three 2009 leases was transferred to Jennings Partners LP. Subsequently, in 2019, Claimant signed a fourth lease of another 13.8 acres, signed 11/30/19, recorded as Wyoming County Instrument #2020-2132. These 4 oil and gas leases (the "Leases") with Chesapeake burden multiple parcels of real property located in Wyoming County, Pennsylvania (the "Leased Premises"). The 2009 leases are identical in all material respects other than property description. Copies of the Leases dated 9/24/2009 and 11/30/2019 are attached to Claimant's Original Claim in this Action.

2.      Pursuant to the terms of the Leases, Claimant is permitted to conduct audits to determine whether Chesapeake has paid all sums due and owing under the Leases.

3.      Claimant arranged for an examination of Chesapeake's operations under the Leases for the period from January 2012 through December 31, 2013 (the "Examination").

4.      The Examination revealed that Chesapeake underpaid royalties due and owing to Claimant under the Leases. For example, Chesapeake has failed to pay Claimant royalties calculated upon the revenue realized from the sale of gas without deductions of post-production costs as required by the Leases, and were underreporting gas volumes and prices, among other things.

5.      Chesapeake refused to respond to the audit exception reports prepared on behalf of Claimant.

6.      Chesapeake breached the Leases through at least the following: (a) its underpayment of royalties, which were underpaid or not paid by Chesapeake's unauthorized deduction of post-production costs; and (b) its failure to provide production data and otherwise comply with its obligations under the Leases' audit clauses.

7.      Chesapeake failed to cure its breach of the Leases after receiving written default notices, and Chesapeake's underpayment of royalties and is ongoing.

**B.      *The Debtors' Chapter 11 Cases and the Claimant's Proofs of Claim***

8.      On June 28, 2020 (the "Petition Date"), the Debtors, including Chesapeake Appalachia, ("Chesapeake") filed petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code").

9.      Claimant timely filed secured proofs of claim for the amounts due under the Leases, Claim Nos. 12919 & 12930 (the "Proofs of Claim").

10. The Proofs of Claim provide, *inter alia*, that Claimant possesses administrative claims, and that Claimant reserved the right to seek allowance and payment of administrative claims "for all unpaid amounts due under the Leases after the Petition Date."

### D. The Debtors' Plan

15. On September 11, 2020, the Debtors' filed a proposed plan of reorganization [Docket No. 1150], and the Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and Its Debtor Affiliates [Docket No. 1151], both of which were subsequently amended.

16. On October 8, 2020, the Debtors filed their amended disclosure statement [Docket No. 1331] (the "Disclosure Statement").

17. On October 30, 2020, the Bankruptcy Court entered an Order approving the Disclosure Statement [Docket No. 1633].

18. On December 7, 2020, Claimant filed an objection to the Debtors' proposed reorganization plan. [Docket No. 2149].

19. On January 12, 2021, the Debtors filed their Fifth Amended Joint Chapter 11 Plan of Reorganization (the "Plan"). [Docket No. 2833].

20. The Plan provides for a complete pass-through of Claimant's rights under the Leases. The Plan states that "all Royalty and Working Interests shall remain in full force and effect in accordance with the terms of the granting instruments or other governing documents applicable to such Royalty and Working Interests." Plan, Article IV. T.

21. The Plan further states that "Royalty and Working Interests shall not be modified, affected or impaired in any manner by any provision of the Plan or the Confirmation Order, including but not limited to any injunctive or stay relief, and the legal and equitable rights,

interests, defenses, and obligations of holders of Royalty and Working Interests, with respect to such Royalty and Working Interests, shall not be modified, affected or impaired in any manner by the provisions of the Plan or the Confirmation Order." *Id*.

22. On January 16, 2021, the Court entered an Order Confirming the Debtors' Fifth Amended Joint Chapter 11 Plan of Reorganization [Docket No. 2915].

23. On February 9, 2021, the Debtors filed and served a Notice of Entry of Order Confirming the Fifth Amended Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and Its Debtor Affiliates (the "Notice") [Docket No. 3058].

24. Pursuant to the Notice, the Plan became effective on February 9, 2021 (the "Effective Date").

25. In addition, the Notice provides that requests for payment Royalty and Working Interests Administrative Claims must be filed on or before June 9, 2021.

## JURISDICTION AND VENUE

26. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

27. Venue is proper pursuant to 28 U.S.C. § 1408.

28. The statutory basis for the relief requested herein is Sections 105(a) and 503(b) of title 11 of the United States Code (the "Bankruptcy Code").

## RELIEF REQUESTED

29. Section 503(b)(1) of the Bankruptcy Code provides that there shall be allowed administrative expenses for the "actual, necessary costs and expenses of preserving the estate."

30. In addition, the Disclosure Statement states that "any post-petition, pre-Effective Date right to payment arising from a Royalty and Working Interest, if any, shall be treated by the Plan as an Administrative Claim." Disclosure Statement at 10.

31. Further, the Plan provides that "any postpetition, pre-Effective Date rights to payment arising on account of Royalty and Working Interests" shall constitute administrative claims. Plan, Article I. A. 172.

32. Under the Plan, allowed administrative claims are to be paid in full no later than thirty (30) days after the date on which an order allowing the administrative claim becomes a final order, or as soon as reasonably practicable thereafter. Plan, Article II. A. 1.

33. Between the Petition Date and the Effective Date (the "<u>Administrative Claim Period</u>"), the Debtors breached the Leases by underpaying the royalties due and owing to the Claimant.

34. As a result, the Claimant is entitled to an administrative claim for all unpaid or underpaid royalties due under the Leases during the Administrative Claim Period.

35. The estimated total amount due the Claimant pursuant to the Leases for unpaid or underpaid royalties during the Administrative Claim Period, exclusive of interest as provided for under the Leases, is not less than $9,925.35. [1]

39. Consequently, the Claimant requests the entry of an order allowing her administrative claims for all amounts due under the Leases during the Administrative Claim Period.

## **CONCLUSION**

40. For the foregoing reasons, Claimant respectfully requests that the Court enter an Order allowing the Claimant's administrative claims for all unpaid and underpaid royalties due

---

[1] As set forth in the Proofs of Claim, until additional information is provided by Chesapeake, the Claimant will be unable to determine the exact amount of the royalty underpayments and other charges due under the Leases.

under the Leases during the Administrative Claims Period, and for such other and further relief as the Court deems just and equitable.

| | |
|---|---|
| Dated:  June 8th, 2021 | By: /s/ Aaron D. Hovan<br>Aaron D. Hovan (admitted *pro hac vice*)<br>Law Office of Aaron Hovan<br>154 Warren St.<br>Tunkhannock, PA 18657<br>Telephone: (570) 836-3121<br>aaron@hovanlaw.com<br><br>Ira N. Richards (admitted *pro hac vice*)<br>Richard A. Barkasy (admitted *pro hac vice*)<br>Schnader Harrison Segal & Lewis LLP<br>1600 Market Street<br>Suite 3600<br>Philadelphia, PA 19103-7286<br>Telephone: (215) 751-2000<br>Facsimile: (215) 751-2205<br>irichards@schnader.com<br>rbarkasy@schnader.com<br><br>*Attorneys for Claimant Roberta Baker* |