IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| CHESAPEAKE EXPLORATION, L.L.C.,[1] | § § | Case No. 20-33239 (CML) |
| Reorganized Debtor. | § § § § | (formerly Jointly Administered under Lead Case Chesapeake Energy Corporation, Case No. 20-33233) |

**PRELIMINARY RESPONSE OF JACKSON WALKER LLP TO RECENT FILINGS
BY THE OFFICE OF THE UNITED STATES TRUSTEE**
[Relates to Dkt. Nos. 4514 & 4515][2]

1.  With respect to the relationship between former Jackson Walker LLP ("Jackson Walker" or "Firm") partner Elizabeth Freeman ("Ms. Freeman") and former Bankruptcy Judge David R. Jones ("Judge Jones") there have been recent filings made in certain bankruptcy cases involving Jackson Walker by the Office of the United States Trustee (the "U.S. Trustee") (collectively, the "Filings").[3] Jackson Walker has a long and productive working relationship with the U.S. Trustee for whom it has great respect. The Filings, however, make allegations based, in part, on largely unsubstantiated media stories and from preliminary *allegations* made by the Fifth Circuit in a complaint against Judge Jones filed on October 23, 2023. The Filings are premised upon incorrect and incomplete facts, and necessarily rely upon some degree of speculation about Jackson Walker's knowledge and conduct. The Firm seeks to supplement the record with this statement regarding those issues.

2.  In summary, Jackson Walker's management first learned in March of 2021 that a *pro se* litigant had *alleged* a romantic relationship between Ms. Freeman and Judge Jones. The Firm immediately asked Ms. Freeman to confirm or deny the allegation. She denied the charge of a *current* romantic relationship but admitted to a past relationship which had ended. Nevertheless, the Firm retained and consulted with a prominent ethics expert regarding the matter and set up certain safeguards regarding Ms. Freeman's future involvement in Judge Jones' cases. As part of the ethics expert's review, the Firm's General Counsel prepared a statement of relevant facts and presented a draft to Ms. Freeman who, after reviewing it, stated in writing that she had no issues

---

[1] A complete list of each of the Reorganized Debtors in these chapter 11 cases may be obtained on the website of the Reorganized Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Reorganized Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2] The Motion for Relief from Judgment for Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving any Jackson Walker Applications for Compensation and Reimbursement of Expenses [Dkt. No. 4514] and Motion for Withdrawal of the Reference and Referral of Motion for Relief Under Rule 60(b)(6) and Related Matters [Dkt. No. 4515] were filed in the former lead Case No. 20-33233.

[3] Jackson Walker intends to separately respond to the various Filings at the appropriate time, but submits this Preliminary Response now.

with its accuracy. The factual summary that was confirmed by Ms. Freeman stated, among other things as described below, that there was no ongoing intimate relationship with Judge Jones. As a result, Jackson Walker did **_not_** know of any ongoing intimate relationship between Ms. Freeman and Judge Jones until 2022 when it learned, quite by accident, that Ms. Freeman's denial was possibly false or at least no longer true. When confronted again she initially denied the relationship but later on admitted to a current romantic relationship. Jackson Walker then commenced discussions with Ms. Freeman and her counsel that ultimately resulted in her separation from the Firm.

3. This filing details the timeline of events, Jackson Walker's knowledge—or lack thereof—of Ms. Freeman's relationship with Judge Jones, and Jackson Walker's actions to address these issues.[4]

## FACTS AND TIMELINE OF EVENTS

### *Application and Employment of Ms. Freeman at Jackson Walker*

4. In early 2018, Ms. Freeman, a law clerk for Judge Jones at the time, sought a potential partnership position at Jackson Walker. As customary, Ms. Freeman was provided with a "Lateral Partner Questionnaire" which she was asked to complete and return in writing. One section asked her to disclose any possible conflicts of interest. In her questionnaire, Ms. Freeman did not disclose any conflicts other than she could not work on matters "currently pending" during her clerkship before Judge Jones.

5. Pursuant to Judge Jones's practice, Ms. Freeman, after she left the Court, could not appear in person before Judge Jones in his court or sign pleadings for cases in his court for six years mirroring in time her clerkship tenure. Importantly, Judge Jones' practice did not prohibit her from working on cases assigned to his Court, and permitted her work to be included in fee applications that came before him.

6. At no time during the interview process did Ms. Freeman mention or indicate that she had in the past—or was currently having—an intimate relationship with Judge Jones. Nor did Ms. Freeman state that she was living with him at the time.

7. Ms. Freeman was ultimately hired by Jackson Walker on May 14, 2018, as an income partner in the bankruptcy group.[5] She was later promoted to equity partner effective January 1, 2021.

---

[4] To this date, Jackson Walker *still* does not know the state or history of the relationship between Judge Jones and Ms. Freeman over time since Judge Jones gave another version of their relationship to *The Wall Street Journal* when he purportedly admitted that he and Ms. Freeman have been living together for years. *See* The Wall Street Journal, "*Bankruptcy Judge Jones Named in a Lawsuit Over Romantic Relationship With Local Lawyer*," dated Oct. 7, 2023.

[5] Jackson Walker, like many other firms, has two tiers of partnership: an income partner where such partners' compensation consists of a salary and potential bonus, but they do not share in the profits of the firm; and an equity partner who does receive a share of the firm's profits.

*First Allegation of an Intimate Relationship*

8. On January 21, 2020, McDermott International filed for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of Texas (Bankr. SDTX Case No. 20-30336). Jackson Walker was retained to serve as co-counsel for McDermott. Judge Jones was assigned the bankruptcy case. Judge Jones ultimately confirmed McDermott's plan of reorganization on March 12, 2020.

9. Following confirmation of the plan of reorganization by Judge Jones, on July 17, 2020, pro se litigant, Mr. Michael Van Deelen ("Van Deelen") filed a lawsuit in Texas state court against various officers of McDermott. That state court lawsuit was removed to federal court as part of the McDermott bankruptcy case and became an adversary proceeding. *See* Adv. Proc. No. 20-03309. Unhappy with Judge Jones' rulings in the McDermott bankruptcy case, Mr. Van Deelen filed a motion to recuse Judge Jones on July 31, 2020. The focus of that recusal motion was Mr. Van Deelen's criticisms of Judge Jones's rulings; there were no allegations of any relationship between Judge Jones and Ms. Freeman in that initial recusal motion.

10. Thereafter, on Saturday, March 6, 2021, Mr. Van Deelen sent an email to a Jackson Walker partner raising for the first time a question as to whether Ms. Freeman and Judge Jones were in a romantic relationship. Jackson Walker immediately delivered that email to the Southern District of Texas Bankruptcy Court on Monday morning, March 8, 2021. *See* Adv. Pro. No. 20-03309 at Dkt. Nos. 36, 37 & 78. The document was filed under seal given concerns of Mr. Van Deelen's credibility that were raised previously in the bankruptcy case,[6] and given the highly personal nature of the allegation.

11. Mr. Van Deelen thereafter supplemented his motion to recuse, this time attaching the alleged anonymous letter that he previously referenced in his March 6, 2021 email to Jackson Walker. Judge Isgur was ultimately assigned to consider the recusal motion, which recusal motion was ultimately denied after an evidentiary hearing. *See* Adv. Pro. No. 20-03309 at Dkt. No. 42.

12. According to Chief Judge Priscilla Richman:

> "Judge Jones referred the motion to recuse to another bankruptcy judge but did not disclose to that judge the facts regarding his relationship with Ms. Freeman. On information and belief, the judge who ruled on the motion to recuse was unaware that Judge Jones was romantically involved with Ms. Freeman or that they were cohabiting. The motion to recuse was denied and appealed to a federal district court judge, and on information and belief, Judge Jones did not apprise that district court judge of the relationship with Ms. Freeman, and that judge was also unaware of the facts regarding the relationship. The appeal was denied."

---

[6] *See e.g.*, McDermott International Case No. 20-30336 at Dkt. No. 694 (*Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not be Held in Contempt of Court and Prohibited from Further Contact with the Debtors, Their Officers, or Their Counsel*).

*See Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones, Southern District of Texas, Under the Judicial Improvements Act of 2002*, Complaint No. 05-24-9002 at pp. 2-3 (5th Cir. Oct. 13, 2023).

### Steps Taken by Jackson Walker

13. After receipt of the March 6, 2021 email alleging a romantic relationship between Ms. Freeman and Judge Jones, Jackson Walker discussed the allegations therein with Ms. Freeman. Ms. Freeman acknowledged that there had been a romantic relationship between her and Judge Jones, but that such relationship was well in the past, was not ongoing, and was not likely to rekindle. In light of this information, Jackson Walker instructed Ms. Freeman that she could not and should not work on any matters that were assigned to Judge Jones, and Jackson Walker advised that it would deduct from Ms. Freeman's compensation as an equity partner any profits associated with work that was performed by Jackson Walker in cases pending before Judge Jones.

14. Jackson Walker also took the additional step of consulting with outside ethics counsel to ensure that it understood its legal and ethical obligations. Specifically, and beginning on March 8, 2021, Jackson Walker contacted Peter Jarvis, Esq. of the respected law firm of Holland & Knight. Mr. Jarvis is a nationally recognized expert on lawyer professional responsibility and ethics, and was a co-author of *The Law of Lawyering*, a leading treatise on the subject.

15. The General Counsel for the Firm presented Ms. Freeman with a draft letter that Jackson Walker intended to provide to Mr. Jarvis as part of his analysis. That draft letter, a copy of which is attached hereto as **Exhibit 1**, contained several important components. First, the draft letter was presented to Ms. Freeman with a specific request to review it for factual accuracy.[7] To this point, the draft letter stated, as factual assumptions based on Jackson Walker's knowledge at the time, (a) that Ms. Freeman and Judge Jones were close personal friends; (b) that Jackson Walker's understanding was that Judge Jones precluded Ms. Freeman from appearing personally in his court for six years (*i.e.*, the length of Ms. Freeman's judicial clerkship); (c) the draft letter outlined the claims and allegations asserted by Mr. Van Deelen; and (d) that Jackson Walker then understood that, while there had been a romantic relationship between Ms. Freeman and Judge Jones prior to March 2020, that such relationship had ended and that there was no ongoing romantic relationship, nor any romantic relationship expected going forward. The draft letter also stated—and asked Ms. Freeman to confirm—that Judge Jones and Ms. Freeman did not live together. The draft letter also informed Ms. Freeman of Jackson Walker's view that an ongoing intimate relationship with Judge Jones (as opposed to an intimate relationship that had terminated in the past) would be incompatible with Jackson Walker continuing to participate in cases before Judge Jones. Ms. Freeman reviewed the draft letter and confirmed in writing that "I reviewed the letter and have no questions or issues." *See* Exhibit 1. Jackson Walker's outside ethics counsel

---

[7] The cover email to Ms. Freeman states, in relevant part: "I will appreciate your review. I want to be sure that the statements of fact are accurate and that the terms described in the letter that will apply to you are consistent with what you have understood and can go along with. Once we have your concurrence, I will sen[d] the letter to Peter [Jarvis] in draft form, to be sure it provides the information he needs, after which I will send in final form and look for his opinion."

concluded that the measures taken by Jackson Walker, based on the facts stated in the letter, which were confirmed by Ms. Freeman, were sufficient to meet Jackson Walker's obligations.

16. Notwithstanding the above confirmation from Ms. Freeman and actions taken by Jackson Walker, months later in 2022, a credible third party volunteered new information to a Jackson Walker partner which led Jackson Walker to again question Ms. Freeman about these allegations. Ms. Freeman again denied any current intimate relationship with Judge Jones. When Jackson Walker continued to question Ms. Freeman, she ultimately admitted that the relationship had resumed. Shortly after these follow up conversations with Ms. Freeman, Ms. Freeman retained her own legal counsel.

17. Upon learning from Ms. Freeman that her relationship with Judge Jones had resumed, Jackson Walker again reached out to its outside ethics counsel, Mr. Jarvis. Mr. Jarvis discussed the situation with Ms. Freeman's attorney. Jackson Walker concluded that the only solution was for Ms. Freeman to leave.

18. Ms. Freeman ultimately agreed separation was appropriate and Ms. Freeman left Jackson Walker to start her own firm.

## CONCLUSION

19. The above represents the facts and timeline of events as known to Jackson Walker as of the date of this filing.

20. While Jackson Walker has found itself dealing with a very difficult and challenging set of circumstances, the Firm takes very seriously its responsibility to operate in accordance with professional ethics and integrity, as the Firm has done for more than 130 years. Jackson Walker is not perfect—no firm is. But in the case of the relationship that has come to light between Ms. Freeman and Judge Jones, Jackson Walker believes the Firm acted responsibly.

Dated:  November 13, 2023
        Houston, Texas

        Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

/s/ *William R. Greendyke*
Jason L. Boland (SBT 24040542)
William R. Greendyke (SBT 08390450)
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
Email: jason.boland@nortonrosefulbright.com
Email: william.greendyke@nortonrosefulbright.com

*Counsel for Jackson Walker LLP*

**CERTIFICATE OF SERVICE**

I certify that on November 13, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

By: */s/ William R. Greendyke*

38096160v.1